# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| DAVID DATE, JR.,<br><br>Plaintiff,<br><br>v.<br><br>SONY ELECTRONICS, INC. and ABC APPLIANCE, INC. d/b/a/ ABC WAREHOUSE,<br><br>Defendants. | Case No. 2:07-cv-15474-PDB-RSW<br><br>Hon. Paul D. Borman<br><br>Date:  March 17, 2008<br>Time: 11:00 a.m. |
| Nancy Sher Cohen<br>Ronald A. Valenzuela<br>HELLER EHRMAN LLP<br>333 South Hope Street, 39th Floor<br>Los Angeles, CA 90071-3043<br>(213) 689-0200<br><br>Attorneys for Sony Electronics Inc. and ABC Appliance, Inc.<br><br><br>Richard Zuckerman<br>HONIGMAN MILLER SCHWARTZ AND COHEN LLP<br>2290 First National Building<br>Detroit, Michigan  48226<br>(313) 465-7618<br><br>Attorneys for Sony Electronics Inc. | Lance A. Raphael<br>THE CONSUMER ADVOCACY CENTER, P.C.<br>180 West Washington Street, Suite 700<br>Chicago, IL  60602<br>(312) 782-5808<br><br>Alan Mansfield<br>John Hanson<br>ROSNER & MANSFIELD, LLP<br>10085 Carroll Canyon Road, First Floor<br>San Diego, CA  92131<br>(858) 348-1005<br><br>Dani K. Liblang<br>LIBLANG & ASSOCIATES, P.C.<br>260 East Brown Street, Ste. 320<br>Birmingham, MI 48009<br><br>Attorneys for David Date, Jr. |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT APPLICATION FOR PRELIMINARY APPROVAL OF SETTLEMENT OF CLASS ACTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND .............................................................................2

I.  The Sony High-Definition Televisions...................................................2

    A.  Product History...................................................................................2

    B.  Display Resolution Versus Video Input Signal Capability ...........3

II.  This Lawsuit And Related 1080p Litigation .........................................5

III.  The Proposed Settlement ......................................................................7

    A.  Settlement Negotiations.....................................................................7

    B.  Summary of Settlement Terms .........................................................9

        1.  Settlement class and benefits..............................................9

        2.  Obtaining a benefit ...........................................................10

    C.  The Parties' Basis For The Proposed Settlement Structure ........11

    D.  Proposed Notice To The Class And Federal And State
        Officials .............................................................................................11

DISCUSSION.....................................................................................................12

I.  The Proposed Settlement Is Within The Range Of Possible
    Judicial Approval....................................................................................12

    A.  Legal Standard Under Which the Proposed Settlement
        Warrants Preliminary Approval ....................................................12

    B.  The Proposed Settlement Is the Product of Serious,
        Informed, Non-Collusive Negotiations .......................................14

II.  The Proposed Form and Manner of Notifying the Settlement
    Class of the Settlement Satisfy Rule 23 Requirements of Due
    Process .....................................................................................................16

III.  Class Certification For Settlement Purposes Is Appropriate .................17

A.    The Proposed Class Satisfies the Numerosity,
Commonality, Typicality and Adequacy Requirements
of Rule 23(a)................................................................................................ 17

B.    The Proposed Settlement Class Satisfies the
Requirements of Rule 23(b)(1) and (3) .................................................... 19

C.    Rule 23(g) Is Satisfied ............................................................................... 20

CONCLUSION............................................................................................................ 23

**TABLE OF AUTHORITIES**

<u>**Page**</u>

**CASES**

*Am. Med. Sys., Inc.*,
   75 F.3d 1069, 1080 (6th Cir. 1996)...........................................................................17

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591, 619-29 (1997)......................................................................................17

*Bank of America Nat'l Trust & Sav. Assoc. v. Hotel Rittenhouse Assoc.*,
   800 F.2d 339 (3d Cir. 1986) ......................................................................................12

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ...................................................................................15

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
   332 F.3d 976 (6th Cir. 2003) .....................................................................................12

*Hemphill v. San Diego Ass'n of Realtors Inc.*,
   225 F.R.D. 616 (S.D. Cal. 2005) ..........................................................................14, 15

*Henry v. Cash Today, Inc.*
   199 F.R.D. 566, 569 (S.D. Tex. 2000).......................................................................17

*In re Amino Acid Lysine Antitrust Litig.*,
   MDL No. 1083 LEXIS 5308,
   at *11 (N.D. Ill. Apr. 22, 1996) ................................................................................13

*In re Telectronics Pacing Systems, Inc.*
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................................15

*Initial Public Offering Securities Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ...............................................................................14

*Int'l Union et al. v. Ford Motor Co.*,
   Case No. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS,
   * 73 (E.D. Mich. Jul. 13, 2006) .................................................................................15

*IUE-CWA et al. v. General Motors Corp.*
   238 F.R.D. 583 (E.D. Mich. 2006) ............................................................................15

*Little Caesar Enters., Inc. v. Smith,*
   172 F.R.D. 236, 242-43 (E.D. Mich. 1997) .................................................. 18

*Mayborg v. City of St. Bernard,*
   Case No. 1:04CV-00249, 2007 U.S. Dist. LEXIS 77492,
   at *6-7 (S.D. Ohio Oct. 18, 2007) .............................................................. 13

*Orthopedic Bone Screw Prod. Liab. Litig.,*
   176 F.R.D. 158, 184 (E.D. Pa. 1997) ......................................................... 16

Rankin v. Rots,
   *220 F.R.D. 511, 517 (E.D. Mich. 2004)* ......................................... 17, 18, 19

*Senter v. General Motors Corp.*,
   32 F.2d 511, 525 (6th Cir. [1976]) ............................................................ 19

Smith v. Sprint Communications Co.*,*
   *87 F.3d 612, 614 (7th. Cir. 2004)* ............................................................ 20

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388, 397 (6th Cir. 1998) ............................................................. 17

*Stolicker v. Muller,*
   Case No. 1:04-cv-733, 2007 U.S. Dist. LEXIS 26338,
   *2-3 (S.D. Ohio Apr. 10, 2007) .................................................................. 13

*United Bd. of Carpenters & Joiners,Local 899 v. Phoenix Assocs., Inc.*,
   152 F.R.D. 518 (S.D. W. Va. 1994) ........................................................... 18

*Williams v. Vukovich,*
   720 F.2d 909 (6th Cir. 1983) ..................................................................... 13

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. 16

Fed. R. Civ. P. 23(a)(1) .................................................................................... 17

Fed. R. Civ. P. 23(a)(2) .................................................................................... 17

Fed. R. Civ. P. 23(c)(2) .................................................................................... 16

Fed. R. Civ. Proc. 23(e) ................................................................................... 12

Rule 12(b)(6) ..................................................................................................... 6

Rule 23 .................................................................................................. 16, 17

Rule 23(a) ............................................................................................. 17, 19

Rule 23(a)(1) .............................................................................................. 17

Rule 23(a)(3) .............................................................................................. 18

Rule 23(a)(4) .............................................................................................. 19

Rule 23(b) ................................................................................................... 17

Rule 23(b)(1) .............................................................................................. 19

*Rule 23(b)(3)* .............................................................................................. 20

Rule 23(g) ................................................................................................... 20

## INTRODUCTION

In this lawsuit, plaintiff David Date, Jr. ("Plaintiff") alleges that defendants Sony Electronics Inc. ("SEL") and ABC Appliance, Inc. (dba ABC Warehouse) ("ABC") (collectively, "Defendants") made misleading representations about four Sony high-definition television models that were sold and marketed several years ago. Specifically, Mr. Date alleges that in describing the television's display resolution as "1080p," Defendants misled consumers because the televisions do not always display 1080p resolutions, are incapable of accepting 1080p video signals, and cannot accept and display video content at 1080p resolution. Mr. Date filed this lawsuit on behalf of himself and all other consumers in the United States who purchased, or received as a gift, any of the four television models at issue. SEL and ABC emphatically deny Mr. Date's allegations.

After five months of extensive, informed, and adversarial settlement negotiations, the parties have reached an agreement to settle the claims asserted in this case. Under the terms of the proposed settlement, Mr. Date and the Settlement Class (as defined below) agree to release their claims against Defendants. In exchange, every member of the Settlement Class is eligible to receive a benefit. Some are eligible for cash payments, and others are eligible to receive free electronic products, movies, CDs and other items available at SEL's online store.

As is the case with any settlement negotiated at arm's length by experienced counsel zealously committed to their clients' interests, this settlement is not a complete victory for either side. It is a fair, reasonable, and adequate resolution of this lawsuit. Accordingly, Plaintiff, SEL and ABC respectfully request that the Court grant preliminarily approval of the proposed settlement.

- 1 -

## FACTUAL BACKGROUND

I.    **The Sony High-Definition Televisions**

A.    **Product History**

This lawsuit involves four Sony high-definition television models that SEL first introduced in the United States beginning almost four years ago.  Decl. of Jeff Goldstein In Supp. of Joint App. for Prelim. Approval of Settlement ¶ 1.  SEL introduced two of these models, the KDS-70Q006 and KDX-46Q005 (the "QUALIA Televisions"), in 2004, and the other two models, the KDS-R50XBR1 and KDS-R60XBR1 (the "XBR1 Televisions") (collectively, "Televisions"), in the Summer of 2005.  *Id.*

SEL sold the overwhelming majority of these Televisions to third-party retailers, such as ABC, which in turn sold them to the public.  *Id.* ¶ 2.  SEL sold a relatively small number directly to consumers via its website and outlet stores.  *Id.*  In all, SEL sold to consumers and retailers approximately 3,000 QUALIA Televisions and 172,000 XBR1 Televisions.  *Id.*

In the Summer and Fall of 2006, SEL introduced a new high-definition television product line to succeed the XBR1 Televisions.  *Id.* ¶ 3.  The QUALIA Televisions were never succeeded by a second generation product line, and SEL no longer manufactures or sells either the QUALIA or XBR1 Televisions.  *Id.*  The last shipment of XBR1 Televisions was sent to retailers in September 2006.  *Id.* ¶ 2.

**B.     Display Resolution Versus Video Input Signal Capability**

At the center of this lawsuit are two features of the Televisions: (1) the display resolution and (2) the video input signal capability.[1] Display resolution simply refers to the level of detail or "sharpness" of the television's picture quality.  Decl. of Jean-Pierre Guillou In Supp. of Joint App. for Prelim. Approval of Settlement ¶ 4.  The higher the resolution, the more detailed and sharper the picture.  *Id.*

The Televisions have a display resolution often referred to using the shorthand term "1080p," the highest television resolution commercially available today for consumers.  The other display resolutions that are most widely available in other televisions are 480i, 480p, 720p, and 1080i.  *Id.* ¶ 8.  The display resolution is "hard wired" into the Television, meaning it will not change.  *Id.* ¶ 9.  SEL contends that so long as the Television is properly connected (*i.e.*, using the appropriate input jack) to a video device (*e.g.*, a television cable box, VCR or DVD player) that outputs a video signal that the Television will accept, it will display all video images at a 1080p display resolution.  *Id.* ¶¶ 9, 13.

Video input signal capability refers to the types of video signals that a television can accept or "read" from external sources.  *Id.* ¶ 10.  Video devices transmit images to televisions via a variety of signals, though few devices can transmit every type of signal. *Id.* ¶ 11.  These video signals include traditional analog signals and modern digital signals.  *Id.* ¶ 10.  There are five types of digital signals.  *Id.*  These signals can be

---

[1] For a more comprehensive explanation of these two features, s*ee* Guillou Decl.

- 3 -

described using the same shorthand nomenclature that is used in describing display resolutions: 480i, 480p, 720p, 1080i, and 1080p.  *Id.*  Some televisions can accept or "read" all of these digital signals, others accept only some.  *Id.*  The Televisions can accept 4 of the 5 types of digital signals: 480i, 480p, 720p, and 1080i.  *Id.*  Similar to other televisions available in 2004 and 2005, the Televisions do not accept the 1080p digital signal.  *Id.*

Only a limited number of devices are capable of transmitting a 1080p video signal. These include Blu-ray Disc Players and some HD-DVD Players.[2]  *Id.* ¶ 11.  "Over-the-air" television broadcasts transmitted digitally via cable or satellite services use 480i, 720p, and 1080i video signals.  *Id.* ¶ 12.  Over-the-air television broadcasts will likely never be transmitted via a 1080p signal because the necessary bandwidth (i.e., the "highways" along which these broadcast signals travel through the air) is not available. *Id.*

Although the nomenclature used to describe the display resolution and video signal input capability features may be the same, they are separate and distinct features — one does ***not*** describe or denote the other.  *Id.* ¶ 6.  SEL contends, but Plaintiff disagrees, that knowing that a television has a certain display resolution tells a consumer nothing about which of the many types of video signals the television can accept, and visa versa.  A television with a 720p display resolution, for example, may accept the

---

[2] HD-DVD Players are not likely to remain on the market much longer.  Toshiba, a leader in the HD-DVD initiative, has announced it is discontinuing HD-DVD products. *See* Valenzuela Decl., Ex. B.

same range of video signals supported by a television with a 1080p display resolution. *Id.* ¶ 10.

## II.    This Lawsuit And Related 1080p Litigation

Michigan resident David Date, Jr. purchased an XBR1 Television in March 2006 from one of ABC's retail stores near his home.  *See* Request for Judicial Notice ("RFJN"), Ex. A (Second Am. Compl. ¶ 23), filed concurrently herewith.  He asserts that he bought his television based on purported representations made by SEL and ABC that the television had a 1080p display resolution.  *Id.* (Second Am. Compl. ¶ 21).  Mr. Date further contends that after he took the television home and connected it to his personal computer, he discovered that his television would not always "run at 1080p resolution." *Id.* (Second Am. Compl. ¶ 25).

Mr. Date filed this action against SEL and ABC in April 2007 in federal court in San Diego.  See RFJN, Ex. B (Original Complaint).  In his complaint, he alleges that SEL and ABC misled consumers in describing the Televisions' display resolution as "1080p" because the Televisions do not always display 1080p resolutions, are incapable of accepting 1080p video signals, and cannot accept and display video content at 1080p resolution via the their PC or HDMI input jacks.  RFJN, Ex. A (Second Am. Compl. ¶¶ 21, 25, 27).

At Mr. Date's request, the case was transferred to this Court pursuant to 28 U.S.C. § 1406(a).  Decl. of Ronald A. Valenzuela In Supp. of Joint App. for Prelim. Approval of Settlement ¶ 2.  SEL has moved to dismiss the claims against it for failure to state a

claim.  *Id.*  That motion has been fully briefed and is currently set for hearing on May 15.
*Id.*  ABC also filed a Rule 12(b)(6) motion, which is also set for hearing on May 15.  The
parties have agreed to suspend further briefing on that motion pending the Court's
decision on the parties' request to approve the proposed settlement.  *Id.*

There are two other class-action lawsuits pending against SEL that make claims
similar to those asserted by Mr. Date.  *Id.* ¶ 3.  One, brought by New York resident Elliott
Handler, was filed last August in federal court in Los Angeles.  *Id.*; RFJN, Ex. C
(*Handler* Am. Compl.).  SEL moved to dismiss several of Handler's claims, which the
court granted in part and denied in part.  There has been no other activity in this case
since the court's ruling.  Valenzuela Decl. ¶ 3.

A second lawsuit, brought by Illinois residents Jason Demas and John Renninger,
was filed last September in federal court in San Diego.  *Id.* ¶ 4; RFJN, Ex. D (*Demas*
First Am. Compl.).  There are several motions pending in that case.  SEL moved to
dismiss the lawsuit for failure to state a claim.  Valenzuela Decl ¶ 4.  Plaintiffs have
asked the court for injunctive relief, including a constructive trust, and for class
certification to the extent necessary for obtaining preliminary relief.  *Id.*  They have also
asked the United States Multidistrict Litigation Panel to transfer the *Date* and *Handler*
lawsuits to the Southern District of California.[3]  *Id.*  The Court has taken SEL's Rule
12(b)(6) motion under submission.  *Id.*  The parties are still briefing the Plaintiffs' motion

---

[3] SEL is the only defendant named in *Handler* and *Demas*.  *See* RFJN, Exs. C
(*Handler* Am. Compl.) and D (*Demas* First Am. Compl.).

for preliminary relief.  The MDL motion to transfer is fully briefed and set for hearing

before the MDL Panel on March 27 in Austin, Texas.  *Id.*  The parties believe that the

settlement, if approved, will dispose of the issues pending before the MDL Panel as this

settlement encompasses the issues raised in the litigation subject to the MDL Proceeding.

The classes alleged in *Handler* and *Demas* are similar to the class alleged in this

lawsuit.  *See* RFJN, Exs. C (*Handler* Am. Compl. ¶ 41) and D (*Demas* First Am. Compl.

¶ 22).  The class alleged in Mr. Date's Second Amended Complaint, however,

encompasses the classes alleged in *Handler* and *Demas* and covers all of the television

models identified in the *Handler* and *Demas* lawsuits.  Valenzuela Decl. ¶ 5.

### III.    The Proposed Settlement

#### A.    Settlement Negotiations

The parties have been discussing a class-wide settlement since September 2007.

Valenzuela Decl. ¶ 6; Decl. of Alan Mansfield In Supp. of Joint App. for Prelim.

Approval of Settlement ¶ 5.  Although the parties almost immediately reached an impasse

on the scope of the settlement class and the basic structure of the settlement, the parties

continued to work toward a compromise over the next several months.  *Id*.  They engaged

in arms-length, often contentious, settlement negotiations via a series of telephonic

conferences and e-mail correspondence.  *Id*.

On January 23 and 29, the parties participated in two all-day mediation sessions

before Justice Howard B. Wiener, former Associate Justice of the California Court of

Appeal.  Decl. of Justice Howard B. Wiener In Supp. of Joint App. for Prelim. Approval

of Settlement ¶¶ 2, 6.  During the mediation, SEL performed a side-by-side comparison

of three of its televisions, including the model that Mr. Date purchased.  *Id.* ¶ 4.  Justice

Wiener concluded that the demonstration supported the value of the proposed settlement .

*Id*.

Throughout the settlement negotiations, the parties exchanged extensive

information about the sales and marketing of the Televisions, the number of customer

inquiries about the display resolution and video input signal capability of the Televisions,

the nature and number of compatible video devices, and the limited availability of

external sources that can generate a 1080p video signal.  Valenzuela Decl. ¶ 7; Mansfield

Dec. ¶¶ 4-5.  Counsel for Mr. Date also deposed an SEL engineer concerning the

technology at issue in this lawsuit, and thoroughly reviewed and analyzed, with the

assistance with a retained expert, all of the information made available to them.  *Id.* ¶ 7;

Mansfield Dec. ¶¶ 3, 4.

On February 4, 2008, the parties agreed upon the principal terms of a settlement

involving a nationwide class, and thereafter spent the next month documenting the terms

of the settlement.  The parties believe that they have achieved a fair result for all

impacted by the settlement, a belief shared by the party's mediator, Justice Wiener.  *See*

J. Wiener Decl. ¶ 7.

**B.      Summary of Settlement Terms**

**1.  Settlement class and benefits**

The proposed settlement class consists of all original United States end user

consumers who, up to the date the Court grants preliminary approval of this proposed

settlement, purchased, or received as a gift from the original purchaser at retail, a

QUALIA Television or XBR1 Television ("Settlement Class").[4]  *See* Valenzuela Decl.,

Ex. A (Settlement Agreement § 1.10).  The proposed settlement offers two types of

benefits: cash payments and free merchandise available at SEL's online store.[5]  *Id.*

(Settlement Agreement § 3.1).  Settlement Class members who have contacted SEL

regarding issues with the computer input capability of his or her Television would receive

a $90 cash payment.  *Id.* (Settlement Agreement § 3.1.1).

Every Settlement Class member, including those who are eligible for a $90 cash

payment, can qualify to receive a credit for any item sold at sonystyle.com, SEL's online

store, worth $180, $75, $60, or $28, depending on the model Television they purchased,

plus a voucher for free shipping and handling..  *Id.* (Settlement Agreement § 3.1.2 -

3.1.5).  To qualify, the member must (a) have purchased a video device capable of

transmitting a 1080p video signal (a "1080p Device"), or (b) must purchase a Sony Blu-

ray Disc Player between the date the Court grants preliminary approval of this proposed

settlement and 30 days following the expiration of the deadline to appeal the Court's final

order and judgment approving this settlement.  *Id.* (Settlement Agreement § 3.1.2 - 3.1.3).

The amount of the credit that members would receive depends upon (a) the model

---

[4] The Settlement Class does not include employees or agents of SEL, any Judge of this Court, any claims aggregator or assignees, or anyone who purchased a Television for resale or commercial use.  *See* Valenzuela Decl., Ex. A (Settlement Agreement § 1.10).

[5] Mr. Date is also entitled to modest compensation and payment of certain costs he incurred in connection with this action and his Television purchase.  *Id.* (Settlement Agreement § 3.4).

television that the Settlement Class member has, and (2) when the Settlement Class member purchased a 1080p Device or Sony Blu-ray Disc Player. *Id.* (Settlement Agreement § 3.1.2 – 3.1.3).

### 2. Obtaining a benefit

Settlement Class members who are eligible for the $90 cash payment need not file a claim for this benefit; SEL will automatically send these payments to eligible members. *Id.* (Settlement Agreement § 3.3.1). Those who are eligible for a credit on the sonystyle website, must submit a claim form and proof of purchase of their Television and their 1080p Device or Sony Blu-ray Disc Player. *Id.* (Settlement Agreement § 3.3.1). A sample claim form is attached as Exhibit 4 to the Settlement Agreement.

Members can satisfy the proof-of-purchase requirement for their Television by providing the serial number of the television. *Id.* (Settlement Agreement § 3.2). Proof of purchase of a 1080p Device can be satisfied using a variety of alternatives, including the original receipt identifying the 1080p Device; cancelled check or credit card bill that identifies the purchase of the 1080p Device; or by providing the original box for the 1080p Device along with an attestation certifying the purchase date, and the name and location of the retailer where the member bought the 1080p Device, and that the SETTLEMENT CLASS member was unable to locate the receipt for the 1080p Device. *Id.* (Settlement Agreement § 3.2).

### C.   The Parties' Basis For The Proposed Settlement Structure

Two important facts underlie the parties' basis for structuring the compromise as they have.  First, SEL contends, though Plaintiff disagrees, that unless a Settlement Class member has a device that generates a 1080p video signal, that member is not impacted by the fact that the Televisions cannot accept a 1080p signal.  This is why the e-credit benefit is limited to members who have such a device or will have one by the time SEL begins distributing the benefits.[6]

Second, even though the Televisions cannot accept a 1080p signal, SEL contends that they still work with 1080p Devices, because these devices offer not only a 1080p signal, but also a variety of other input video signals the Televisions can accept.  Guillou Decl.  ¶ 10.  If, for example, a Sony Blu-ray Disc Player is connected to a Television and delivers a 1080p signal to it, the disc player will receive an electronic message from the Television "telling" it that the Television cannot accept the 1080p signal.  The disc player then sends a 1080i video signal to the Television that the Television can accept.

### D.   Proposed Notice To The Class And Federal And State Officials

If the Court grants preliminary approval of the settlement, SEL will send notice of the settlement to the Settlement Class.  *See* Valenzuela Decl., Ex. A (Settlement Agreement § 4.3, and Exs. 6 (long-form notice) and 7 (summary-form notice)).  SEL will provide notice via (1) regular and electronic mail to all known owners of the Televisions

---

[6] Members of the Settlement Class who are eligible for the cash payment do not have to own a 1080p Device to receive the $90 payment.

- 11 -

(approximately 65,000 persons), (2) newspaper publication, (3) a website dedicated to providing information about this proposed settlement, and (4) links to that website posted on several pages at SEL's e-support website. *Id.*, Ex. A (Settlement Agreement § 4.3.2). SEL will also provide notice of the proposed settlement to the United States Attorney General, each state attorney general, and other state officers,[7] as required under Section 1715 of the 2005 Class Action Fairness Act ("CAFA").

## DISCUSSION

I.   **The Proposed Settlement Is Within The Range Of Possible Judicial Approval**

   A.   **Legal Standard Under Which the Proposed Settlement Warrants Preliminary Approval**

Public policy favors voluntary settlements of civil lawsuits. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir. 2003). Settlements spare the parties of the expense and delay of litigation and save courts the burden of trial and conserve judicial resources. *See Bank of America Nat'l Trust & Sav. Assoc. v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 350 (3d Cir. 1986).

When the parties to a class-action lawsuit agree to settle their dispute on a class–wide basis, the court must approve the settlement. Fed. R. Civ. Proc. 23(e). There are three steps to the approval process: (1) the court must preliminarily approve the proposed settlement, (2) members of the settlement class must be notified of the proposed

---

[7] SEL believes that CAFA requires that notice of the proposed settlement only needs to be provided to the U.S. Attorney General and each state attorney general. In an abundance of caution, however, it is also providing notice to the department of consumer affairs in each state that has such a department.

- 12 -

settlement, and (3) the court must grant final approval of the settlement after holding a hearing to determine whether the settlement is fair, adequate, and reasonable. *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983). A settlement that receives preliminary approval is presumptively reasonable and any objector has a heavy burden of demonstrating that it is unreasonable. *Id.*; *Stolicker v. Muller,* Case No. 1:04-cv-733, 2007 U.S. Dist. LEXIS 26338, *2-3 (S.D. Ohio Apr. 10, 2007).

Here, the parties ask the Court to take the first step in this process: to grant preliminary approval of the proposed settlement. Preliminary approval is appropriate if the proposed compromise is within the "range of possible judicial approval" such that notice of the proposed settlement should be given to the class and a formal fairness hearing scheduled. 4 Newberg on Class Actions 4th ("Newberg") § 11.25, at 38 (2002); *see also In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083, 1996 U.S. Dist. LEXIS 5308, at *11 (N.D. Ill. Apr. 22, 1996) (court must conduct preliminary review of whether proposed settlement is within the range of reasonableness) *cited in* Moore's Federal Practice, Manual for Complex Litigation, Fourth, § 21.632, at 320 n.976 (Fed. Judicial Center 2004). The central inquiry in this analysis is whether the settlement is the product of serious, informed, and non-collusive negotiations. *Vukovich,* 720 F.2d at 921; *Mayborg v. City of St. Bernard,* Case No. 1:04CV-00249, 2007 U.S. Dist. LEXIS 77492, at *6-7 (S.D. Ohio Oct. 18, 2007); *cf Smith v. Ajax Magnethermic Corp.*, Case No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, at *15-16 (N.D. Ohio Nov. 7, 2007). The parties' proposed settlement meets these criteria.

- 13 -

**B.**    **The Proposed Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations**

Counsel for the parties first began discussing settlement of the issues raised in this action last September. Those discussions continued at arm's length, and often contentiously, for five months, and culminated in a two-day mediation before Justice Wiener, former Associate Justice of the California Court of Appeal. As Justice Wiener agrees, the parties' efforts to reach a compromise were hard fought and involved considerable give-and-take from both sides. *See* J. Wiener Decl. ¶ 6; *see also* Valenzuela Decl. ¶ 6; Mansfield Decl. ¶¶ 3-6. Where parties have conducted settlement discussions with the help of a mediator, courts routinely conclude that the settlement is non-collusive. *See Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005) (rejecting claim of collusive settlement where negotiations supervised by court-appointed mediator); *see also In re Initial Public Offering Securities Litig.*, 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (same).

Both sides entered into the Settlement Agreement with a clear understanding of the legal and factual issues involved in the lawsuit and with sufficient information to make an informed and reasoned evaluation of the settlement. They have conducted their own investigation of the claims. They have researched and analyzed the legal sufficiency of the asserted claims, and have expressed those positions in the course of in briefing SEL's motion to dismiss. Plaintiff's counsel has reviewed and analyzed the information and discovery obtained to date, including hard-copy and electronic documents produced by SEL, declarations provided by SEL personnel, and the deposition of a SEL engineer

- 14 -

who testified about the technological issues that are at the center of Plaintiff's claims. Plaintiff, his counsel, and his retained expert also attended a demonstration of the disputed televisions that SEL conducted during the mediation.

Despite this effort, settling this case in its relatively early stages procedurally does not preclude preliminary approval.  To the contrary, settlements reached at earlier stages of proceedings are favored as they help to dispose of cases that may use valuable court resources, financially burden the parties, and may require extensive discovery.  *See Cotton v. Hinton,* 559 F.2d 1326, 1332-3 (5th Cir. 1977) (affirming district court's settlement approval though parties conducted less formal discovery than is common in class-action cases); *see also Int'l Union et al. v. Ford Motor Co.*, Case No. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS, * 73 (E.D. Mich. Jul. 13, 2006) (noting that the absence of formal discovery is not obstacle to final approval); *IUE-CWA et al. v. General Motors Corp.*, 238 F.R.D. 583, 597-8 (E.D. Mich. 2006) (same).

Plaintiff's counsel agree that the proposed settlement is in the best interest of the Plaintiff and the Settlement Class.  The Settlement Agreement, therefore, is presumptively the result of good-faith, arm's-length negotiations in the absence of evidence to the contrary.  *IUE-CWA et al. v. General Motors Corp.*, 238 F.R.D. 583, 597-8 (E.D. Mich. 2006) (courts presume absence of fraud or collusion absent evidence to the contrary); *Hemphill*, 225 F.R.D. at 621 (same) (quoting 4 Newberg on Class Actions 4th § 11.51, at 158); *see also In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) (courts should give significant weight to the belief of experienced counsel that the settlement is in the best interest of the class) (citing *In re*

*Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997)).  Given

this presumption and the ample evidence supporting it, the proposed settlement is well

within the range of possible judicial approval and, accordingly, should be granted

preliminary approval.

## II.     The Proposed Form and Manner of Notifying the Settlement Class of the Settlement Satisfy Rule 23 Requirements of Due Process

The proposed form and manner of Notice complies with the standards of fairness,

completeness, and neutrality required under Federal Rule of Civil Procedure 23 and due

process.  It provides information on the meaning and nature of the proposed Settlement

Class; the terms and provisions of the proposed settlement; the relief the settlement will

provide and the attorneys' fees that SEL has agreed to pay Plaintiff's counsel, subject to

approval by the Court; the date, time and place of the final approval hearing; and the

procedure and deadlines for submitting comments and objections to the proposed

settlement.  *See* Fed. R. Civ. P. 23(c)(2), (e); 3 Newberg, §§ 8.21, 8.39 (describing

information class members must receive for notice to meet requirements of Rule 23 and

due process).

SEL will provide Notice in a variety of ways, including *direct* notice to

approximately 65,000 Television owners and via the Internet.  SEL believes that direct

and Internet notice would undoubtedly suffice.   Plaintiff believes that publication notice

via an advertisement in USA Today will help fill any possible gaps to better ensure that

each class member's due process rights are being protected for those who will not receive

direct notice.  Providing notice to the various federal and state officials as required by

CAFA additionally ensures that those who may be affected by the proposed settlement learn about it.

### III.   Class Certification For Settlement Purposes Is Appropriate

Class certification is governed by Rule 23, whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement. *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 619-29 (1997). Thus, the Court may certify the proposed class now, for settlement purposes, upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the three subdivisions of Rule 23(b). *Id.*

#### A.   The Proposed Class Satisfies the Numerosity, Commonality, Typicality and Adequacy Requirements of Rule 23(a).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, according to SEL, the Settlement Class includes approximately 175,000 individuals. Thus, the Settlement Class is too large for joinder to be practicable and the numerosity requirement is satisfied. *See, e.g., Rankin v. Rots,* 220 F.R.D. 511, 517 (E.D. Mich. 2004).

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." This standard "is not a high burden." *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000). "[T]here need be only a single issue common to all members of the class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), and "the resolution of [that common issue] will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

- 17 -

In the present case, Plaintiff has identified a series of common questions of law and fact, including: (a) whether Defendants' representations about the 1080p capabilities of the Televisions were correct; (b) whether Defendants breached their warranties issued in connection with the Televisions; (c) whether Defendants violated state consumer-protection laws and the Magnus-Moss Warranty Act; and (d) whether the members of the class have sustained damages and, if so, what is the proper measure of damages.  All of these issues are common to the Settlement Class. *See, e.g., Rankin*, 220 F.R.D. at 517-18.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class." *Rankin,* 220 F.R.D. at 518.  "The typicality requirement is met if the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory.'" *Id*. (*quoting Little Caesar Enters., Inc. v. Smith,* 172 F.R.D. 236, 242-43 (E.D. Mich. 1997)).  Representatives and class members need not, however, have suffered identical injuries or damages.  *United Bd. of Carpenters & Joiners, Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D. W. Va. 1994).  As detailed in the Second Amended Complaint, Plaintiff's claims arise from the same course of events as the claims of the Settlement Class, and each member can make the same arguments in support of the Defendants' asserted liability.

- 18 -

Finally, Rule 23(a)(4) requires that the class representative fairly and

adequately protect the interests of the class.  As this District Court previously noted:

> In *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.
> [1976]), the Sixth Circuit articulated two criteria for determining
> adequacy of representation: "1) the representative must have common
> interests with unnamed members of the class, and 2) it must appear
> that the representatives will vigorously prosecute the interests of the
> class through qualified counsel."

*Rankin,* 220 F.R.D. at 520.  Furthermore, "[b]ased on the language in *Senter*, the

Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether

plaintiff has a conflicting interest, not the personal qualifications of the named

plaintiff." *Id.*

These requirements are all met here.  Mr. Date's interests are the same as those

of the absent class members; and all seek to obtain appropriate redress for the

Televisions in light of the risks of this litigation.  There can be no question that

the Plaintiff's interests are aligned with those of the Settlement Class, and they

have retained qualified counsel with extensive experience in representing plaintiffs in class

litigation, including consumer fraud cases.  *See* Mansfield Decl. ¶ 3.

### B.     The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(1) and (3)

A class may be certified for settlement purposes under Rule 23(b)(1) if, in

addition to meeting the requirements of Rule 23(a), the prosecution of separate

actions by individual class members would create the risk of inconsistent adjudications,

which would create incompatible standards of conduct for the defendant, or would as a

- 19 -

practical matter be dispositive of the interests of absent members. Fed R. Civ. P.

23(b)(1)(A) and (B).  Moreover, in light of the fact no individual actions have been

brought to date, and any who desire can opt out of the class, while there are two

related actions pending, this action has been pending the longest and has already

been the subject of substantial motion practice.  Further, in the instant action, there

has been an extensive exchange of discovery as well as a fully informed discussion

of the strengths and weaknesses of the claims and defenses raised by the parties.  In

addition, the Court where this action was originally filed found it was more efficient

to litigate these claims in this forum.  The fact this matter is at the settlement stage

means that trial management issues are not relevant for settlement class certification

purposes (*Amchem Prod., Inc. v. Windsor, supra,* 521 U.S. at 619-29; *Smith v. Sprint

Communications Co.*, 387 F.3d 612, 614 (7th. Cir. 2004)).   Thus, the requirements of

Rule 23(b)(3) are satisfied under these circumstances.

### C.     Rule 23(g) Is Satisfied

Rule 23(g) requires the Court to examine the capabilities and resources of

class counsel to determine whether they will provide adequate representation to

the class.  Plaintiff's counsel have spent significant effort to litigate these claims over

the past year and are well-versed in class action practice.  *See* Mansfield Decl. ¶ 3,

Ex. 1; *see also* Certification of Lance Raphael Pursuant to 28 U.S.C. § 1746.

Thus, as all the requirements for certification of the class for settlement

purposes are satisfied, the Court should certify the class for settlement purposes,

- 20 -

subject to any additional information that may be considered at the final approval hearing that may bear upon the certification issue.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court certify the proposed Settlement Class, and the parties jointly request that the Court grant preliminary approval of the proposed settlement; approve the proposed form and manner of providing notice of the proposed settlement to the Settlement Class and federal and state officials as require by CAFA; set a date by which Settlement Class members must submit any objections or opt out of the proposed settlement; and schedule the final settlement approval hearing.

Dated: March 12, 2008               Respectfully submitted,

                                    LIBLANG & ASSOCIATES, P.C.


                                    By s/ with  consent of Dani K. Liblang
                                         Dani K. Liblang

                                    Attorneys for Plaintiff



                                    HELLER EHRMAN LLP


                                    By s/Ronald A. Valenzuela
                                         Ronald A. Valenzuela

                                    Attorneys for Defendants Sony Electronics Inc. and
                                    ABC Appliance, Inc.

## CERTIFICATE OF SERVICE

I, Debora Biggers, declare as follows:

I am employed with the law firm of Heller Ehrman LLP, whose address is 333 South Hope Street, 39th Floor, Los Angeles, CA 90071-3043. I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen years and not a party to this action.

I hereby certify that on March 12, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of each filing to the following: **Dani K. Liblang**, **Douglas C. Salzenstein** and **Richard E. Zuckerman** and I hereby certify that I have mailed by United States Postal Service the pages to the following non-ECF participants:

**Lance A. Raphael**
**THE CONSUMER ADVOCACY**
    **CENTER, P.C.**
180 West Washington Street
Suite 700
Chicago, IL 60602
Telephone: (312) 782-5808

**Alan Mansfield**
**John Hanson**
**ROSNER & MANSFIELD, LLP**
10085 Carroll Canyon Road
First Floor
San Diego, CA 92131
Telephone: (858) 348-1005

I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California on March 12, 2008.

Debora Biggers

Heller Ehrman LLP
333 South Hope Street, 39th Floor
Los Angeles, CA 90071-3034
Telephone: (213) 689-0200