**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| DAVID DATE, JR.,<br><br>          Plaintiffs,<br>     v.<br><br>SONY ELECTRONICS, INC., et al.,<br><br>          Defendants. | Case No. 2:07-cv-15474 PDB RSW<br><br><u>CLASS ACTION</u><br><br>Hon. Paul D. Borman<br><br>Date:        November 3, 2008<br>Time:        11:00 a.m.<br><br>ELECTRONICALLY FILED |
| Lance A. Raphael<br>lance@caclawyers.com<br>THE CONSUMER ADVOCACY CENTER,<br>P.C.<br>180 West Washington Street, Ste. 700<br>Chicago, IL 60602<br>Tel: (312) 782-5808<br><br>Alan M. Mansfield<br>alan@rosnerandmansfield.com<br>ROSNER & MANSFIELD, LLP<br>10085 Carroll Canyon Rd., Ste. 100<br>San Diego, Ca 92131<br>Tel: (858) 348-1005<br><br>Dani K. Liblang (P33713)<br>danil@lemonlawlawyers.com<br>LIBLANG & ASSOCIATES, P.C.<br>346 Park Street, Ste. 200<br>Birmingham, MI 48009<br>Tel: (248) 540-9270<br><br>Attorneys for David Date, Jr. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES APPLICATION</u>**

## TABLE OF CONTENTS

Page

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    OVERVIEW OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DESCRIPTION OF SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Settlement Class and Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  THE CLASS MEMBER RESPONSE HAS BEEN FAVORABLE AND THE
      RANGE OF OBJECTIONS ACTUALLY SUPPORT ITS APPROVAL . . . . . . . . . . . . 5

IV.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
      SETTLEMENTS ARE SATISFIED HERE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    This Settlement was the Product of Serious, Informed Litigation and
            Non-Collusive Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    The Views of Experienced Counsel Support Approving this Settlement  . . . . . . 11

      C.    The Settlement Terms are Fair, Reasonable, and Adequate Considering the
            Relevant Risk Factors  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.    The Strength of Plaintiff's Claims and the Range of Possible
                  Recovery  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    Risks of Establishing Liability and the Complexity of the Litigation . . . 13

            3.    The Risk of Maintaining Class Action Status Through Trial and
                  Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      D.    The Case was Sufficiently Advanced that Plaintiff's Counsel Could Make an
            Informed Judgment Regarding the Merits of the Settlement . . . . . . . . . . . . . . . 16

V.    THE COURT SHOULD APPROVE PLAINTIFF'S FEE APPLICATION . . . . . . . . . . 17

**TABLE OF CONTENTS** (Cont'd)

**Page**

A.    The Requested Fee is Appropriate Based on the Lodestar Incurred
      by Counsel, Which Results in No Multiplier . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.    The Fee is Reasonable when Cross-Checked as a Percentage of
      the Overall Settlement Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.    The Fact Sony Agreed to this Amount Also Shows the
      Reasonableness of this Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brotherton v. Cleveland*, 141 F.Supp.2d 854 (S.D. Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Cardizem DC Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) . . . . . . . . . . . 8, 9, 10, 11

*In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992) . . . . . . . . . . . . . . 20

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D.
    Ohio 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Jiffy Lube Sec. Lit.*, 927 F.2d 155 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re McDonnell Douglas Equipment Leasing Sec. Litig.*, 838 F.Supp. 729
    (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*In re Paine Webber Ltd. P'ship Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . 10

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) . . . . . . . . . . . . . . . . 20

*North v. Merrill Lynch*, 855 F.Sup. 825 (E.D.N.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979) . . . . 18

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) . . . . . . . . . 7, 9, 10

*People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir, 1996) . . . . . . . . . . . . . . . . . 18

*Ramey v. Cincinnati Enquirer*, 508 F.2d 1188 (6th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rankin v. Rots*, 2006 U.S. Dist. LEXIS 45706 *2 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . 6

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES (Cont'd)

*Rawlings v. Prudential-Bache*, 9 F.3d 513 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Steiner v. Fruehauf Corp.*, 121 F.R.D. 304 (E.D. Mich. 1988) . . . . . . . . . . . . . . . . . . . . . . . 7, 18

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williams v. MGM-Pathe Communications*, 129 F.3d 1026 (9th Cir. 1997) . . . . . . . . . . . . . 13, 19

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 11, 14, 17

### FEDERAL STATUTES

United States Code, Title 15

       Section 2301 (Magnuson-Moss Warranty Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### FEDERAL RULES

Federal Rules of Civil Procedure

       Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

### MICHIGAN STATUTES

Michigan Consumer Protection Act

       Section 445.901, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### CALIFORNIA STATUTES

Business and Professions Code

       Section 17200, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Civil Code

       Section 1750, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ISSUES PRESENTED**

1.    Whether this global settlement should be finally approved as fair, reasonable and

        adequate?

        ANSWER:     Yes.

2.    Whether the award of plaintiff's and his counsel's fees and expenses should be granted as

        reasonable?

        ANSWER:     Yes.

## CONTROLLING AUTHORITY

1.      Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e).  The Sixth Circuit discussed approval of class action settlements in *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).   This Court discussed approval of class action settlements and the applicable standards in *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003).

2.      The award of attorneys' fees and expenses in class action litigation under the lodestar method, as cross-checked as a percentage of the funds made available to the class, is discussed in *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996), and *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 642 (6th Cir. 1979).

## MEMORANDUM OF LAW

The undersigned submits this Memorandum of Law requesting this Court finally approve as fair, reasonable, and adequate the class action settlement this Court preliminarily approved on July 25, 2008, and enter the Final Approval Order submitted herewith, as well as approve the settlement provision providing for payment to plaintiff and his counsel for fees and expenses.

## I. OVERVIEW OF FACTS[1]

Plaintiff filed the Complaint in this action on April 2, 2007 in the United States District Court for the Southern District of California. In the Second Amended Complaint plaintiff alleged various claims on behalf of a nationwide class of consumers against Defendants Sony Electronics, Inc. and ABC Appliance (collectively, "Sony"), relating to the advertising and sale of certain Sony televisions as being capable of displaying "1080p" resolution, when the televisions were allegedly not capable of doing so and could not output a true 1080p signal (or sometimes any signal) when interfacing with certain devices, including personal computers. Plaintiff claimed that the technical characteristics, uses and benefits of these televisions was contrary to what was represented in Sony's promotional materials, manuals, and customer warranties, and that there appeared to be no material difference between a 1080p television and a less expensive 1080i television. The operative Complaint contains claims based upon breach of contract and warranty, declaratory relief, unjust enrichment, violations of California Business and Professions Code §17200, *et seq.,* and California Civil Code §1750, *et seq.,* as well as the federal Magnuson-Moss Warranty Act, 15 U.S.C. §2301,

---

[1]    The technical aspects of the underlying claims are set forth in detail in the Joint Application for Preliminary Approval of Settlement and the accompanying Declarations, which are incorporated herein by reference.

and the Michigan Consumer Protection Act, MCLA §§445.901, *et seq.* Plaintiff sought damages, primarily calculated as the out-of-pocket losses from having over-paid for a "pure" 1080p television.

Sony responded that its conduct was lawful, that the characteristics of these televisions (approximately 175,000 in total were sold throughout the United States) were properly disclosed based on relevant industry standards or that any incorrect disclosures were not material based on the technical material hardware, algorithms, and software in the televisions and the televisions' display characteristics, which "upcoded" the signal allegedly to a 1080p resolution. Therefore, Sony contended these practices were not actionable by plaintiff and members of the class, and claimed that neither plaintiff nor any member of the class suffered any actionable or unreimbursed damage.

After motion practice directed at the pleadings and venue (which resulted in this action being transferred to this Court), and an exchange of extensive information between the parties, much of which was later confirmed in a deposition of Sony's technical expert Jean-Pierre Guillou, the parties reached a settlement on a nationwide basis in principle in February 2008. In negotiating this settlement, counsel factored in both the case's strengths and weaknesses and negotiated the settlement at arm's-length with experienced counsel. Such negotiations were conducted with the oversight of retired California appellate Justice Howard Wiener at two mediations in January and February, 2008 and several follow-up conferences. *See* Declaration of Alan M. Mansfield in Support of Motion for Entry of Order Finally Approving Settlement ("Mansfield Decl."), ¶¶5, 10.

The parties thereafter engaged in the time-consuming process of negotiating the language of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"). This process raised numerous issues that, even though the settlement had been agreed to in principle, required extensive additional consultation and effort, taking over a month to complete. *Id.* at ¶11. While the

2

additional issues raised by Sony during the course of that negotiation process were ultimately resolved and resulted in improvements to the settlement notice and claims process, these facts show that the settlement negotiation process was conducted at arm's-length and in an adversarial manner.

Since, as documented in the Declarations filed in support of this Motion and the request for preliminary settlement approval, this settlement provides significant monetary relief to the individual class members, to date 17 objections have been filed out of 175,000 class members, and only 13 exclusions have been submitted, the Court should finally approve this settlement.

## II. DESCRIPTION OF SETTLEMENT

### A.    Settlement Class and Benefits

The Settlement Class, which the Court has preliminarily certified for settlement purposes (and should finally approve as no objection has been raised thereto), consists of all original United States end user consumers who purchased or received as a gift from the original purchaser at retail, a QUALIA Television or XBR1 Television ("Settlement Class")[2].  *See* Declaration of Ronald Valenzuela in Support of Joint Application for Preliminary Approval of Settlement ("Valenzuela Decl."), Ex. A (Settlement Agreement § 1.10). The proposed settlement offers two types of benefits: cash payments and free merchandise available at Sony's online store. Settlement Agreement § 3.1. Settlement Class members who have contacted Sony regarding issues with the computer input capability of his or her television would receive a $90 cash payment. Settlement Agreement § 3.1.1.

There are approximately 175,000 class members. Over 65,000 of these class members (all Sony could identify) received direct mail or e-mail notice of this settlement. Mansfield Decl., ¶¶22,

---

[2]      The Settlement Class does not include employees or agents of Sony, any Judge of this Court, any claims aggregator or assignees, or anyone who purchased a Television for resale or commercial use.

24. Every Settlement Class member, including those who are eligible for a $90 cash payment, can also qualify to receive a credit for any item sold at sonystyle.com, Sony's online store, worth $180, $75, $60, or $28, depending on the model television they purchased, plus a voucher for free shipping and handling. Settlement Agreement § 3.1.2 - 3.1.5. To qualify, the member must (a) have previously purchased a video device capable of transmitting a 1080p video signal (a "1080p Device") which contrary to the claims in some objections discussed *infra*, is reasonable (since the issue in this case involves the televisions displaying 1080p signals, which only come through such devices), or (b) must purchase a Sony 1080p device between the date the Court grants preliminary approval of this proposed settlement and 30 days following the expiration of the deadline to appeal the Court's final order approving this settlement. Settlement Agreement § 3.1.2 - 3.1.3.

Settlement Class members are thus provided the opportunity to request payment for a significant percentage of their out-of-pocket losses, estimated as what they paid for the televisions less what they might have paid for a 1080i television. Mansfield Decl., ¶¶6, 16. The benefits made available to the Settlement Class as a whole, as compared to what they might have obtained at trial, thus provide for fair, reasonable and adequate compensation of such claims based on the particular facts and circumstances of this case. See *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1993).

Attorneys' fees, costs and administrative expenses will be paid on top of the Settlement Class member consideration. Additional compensation is to be provided to Mr. Date for his separate individual claims and for acting as the class representative in the amount of $5,000, plus up to $1,600 in unreimbursed costs, based on the approximately 50 hours he expended helping to investigate, monitor and participation in this case. Declaration of Lance Raphael ("Raphael Decl.") at ¶¶20-21. While objector Elliott Handler claims this payment is unreasonable based simply on

4

what other class members are receiving, such an amount is in fact reasonable because it compensates for the additional effort undertaken by Mr. Date as the class representative that other members did not incur, and for his separate individual claims he asserted against defendants. *In Re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366, 374 (S.D. Ohio 1990). Plaintiff's counsel are also requesting the Court approve the agreement between the parties to reimburse counsel for their attorneys' fees and litigation costs incurred in the amount of $300,000, plus $25,000 in litigation expenses. Settlement Agreement, §3.6.1. Such an amount is reasonable and actually less than the lodestar and expenses plaintiff's counsel have incurred in this action. Mansfield Decl., ¶¶8-11, 25; Raphael Decl., ¶ 18; Declaration of Dani L. Liblang ("Liblang Decl."), ¶9.

In return for these settlement benefits, if the Final Approval Order (submitted herewith) is entered, the claims of all members of the Settlement Class against Sony and any of their Related Third Parties arising out of the affected televisions' ability to provide 1080p resolution or inability to accept a 1080p input signal as asserted in the Second Amended Complaint will be dismissed with prejudice, and all members of the Settlement Class will release and be permanently barred from pursing any such claims. All released parties shall also release any claims against plaintiff or plaintiff's counsel arising out of the investigation, filing, or prosecution and resolution of this action.

## III.   THE CLASS MEMBER RESPONSE HAS BEEN FAVORABLE AND THE RANGE OF OBJECTIONS ACTUALLY SUPPORT ITS APPROVAL

As detailed below, support or a lack of substantial opposition to a settlement is an important factor to consider in deciding whether to approve that settlement. As detailed in the Declaration of Ronald Valenzuela ("Valenzuela Decl."), and the Declaration of Alexis Cohen, class notice either was mailed, or e-mailed as applicable, to the U.S. Attorney General, 50 State Attorneys General, the

5

consumer protection agencies of each state, and over 65,000 class members. A website link on the Sony support website (www.support.sony.com/en/news/article58) was also established to answer inquiries and to advise Settlement Class members how to submit claim forms.

Under the terms of the Class notice, all requests for exclusion were to be mailed to plaintiff's counsel, Lance Raphael. Mr. Raphael has only received 13 requests for exclusion, two of which were from the plaintiffs in one of the two related actions. Raphael Decl., ¶23, Ex. 1. Counsel have also received many calls and letters from Settlement Class members and the Connecticut Attorney General's office to inquire about the settlement. None have raised any objection thereto and several have congratulated counsel on the terms of the settlement. *Id.* at ¶22; Mansfield Decl., ¶24.

In addition, lead counsel in the related *Demas* litigation has reviewed this settlement and found it to be fair and reasonable, believes it was fairly negotiated, and was impressed with the integrity of the settlement process. He is not receiving any compensation for dismissing that action. *See* Declaration of Jay Edelson, submitted herewith. This conclusion contrasts with that of counsel in the *Handler* action, whose objections are addressed throughout this brief. What this divergence of opinion demonstrates is that reasonable minds differ, even among counsel knowledgeable about the facts of this case. Such a difference shows why the settlement is reasonable.

Out of the approximately 175,000 Settlement Class members, only 17 timely submitted objections to the Court. Raphael Decl., ¶24, Ex. 2. Such a small percentage (less than 0.01%) shows class members' support for the settlement. *Rankin v. Rots*, 2006 U.S. Dist. LEXIS 45706, *2 (E.D. Mich. 2006) (court held fact notice elicited unfavorable response from only 0.002% of the class translated into "overwhelming support" of settlement). While courts are to look carefully at any opposition to a settlement, the Court must independently evaluate whether the objections establish

valid reasons for disapproval. *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 306-308 (E.D. Mich. 1988). Unless there are a significant number of objections that raise demonstrably serious questions about the settlement, they should be overruled. *Id.*

An analysis of the objections show there is a divergence of opinions that justify this settlement. Two of the objectors (Mr. Smith and Ms. Bravender) have had a series of problems with their Sony televisions, only one of which is being addressed here, and Mr. Smith says he did not think the settlement is reasonable because he had decided not to purchase a Blu-Ray disc player because it would not "play as intended." The fact is, however, that these devices and discs will play on these televisions. And as Justice Weiner noted in his Declaration submitted in support of preliminary settlement approval, the distinction may be difficult for the average person to see. The underlying rationale of this settlement from plaintiff's perspective is to recognize that the televisions provide a high definition resolution, but that some persons may have purchased a television with a lower resolution at a lower cost. The settlement compensates class members at least partially for that potential in the situation where that difference can arise – interfacing with a 1080p Device.

Nine of the objectors (Messrs. Goldner, Drew, Hesse, Figueiredo, Lombardi, Frank, Sheffield, DeRosa and Bustle) object to the adequacy of the amount of the settlement, claiming that class members should obtain full rescission, replacement or a recall of all the televisions due to the materiality of the defect, or at least an apology. Yet another objector (Mr. MacDonald) says this issue is "trivial" and Sony should be commended for its efforts. While full relief was a potential goal and is what plaintiff would have liked to achieve as an absolute best result, the essence of settlement is compromise and "a yielding of absolutes". *Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 624 (9th Cir. 1982). First, there was and is no "fix" available. Mansfield Decl., ¶15.

7

Thus, to obtain class-wide rescission, replacement, or recall, plaintiff would have had to prevail at all aspects of the litigation, including summary judgment, trial and appeals, and then obtain an order authorizing full rescission or replacement as compared to a reasonable calculation of damages for decreased value or overpayment – all outcomes with potential risks, as evidenced by the *Stevens v. Mitsubishi* decision discussed *infra (*see Mansfield Decl., Ex. 3). Certainly any such relief would not be ordered until years from now, even if possible, after trial. *See In re Cardizem DC Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003) ("the prospect of a trial necessarily involves the risk that Plaintiff will obtain little or no recovery.").

Four other objectors in addition to Mr. Handler (Mr. Frank, Mr. Sheffield, Mr. Goldner, and Mr. Young) raise concerns with having to purchase or own a 1080p Device in order to participate in recovery. However, because cable television broadcasts at most in 1080i mode (and there is no indication it will ever do otherwise), the time the disputed deficiency would be an issue is when interfacing with a 1080p device. And if a Settlement Class member already owns one of these devices – which, as recognized by Mr. Lombardi and others, would be one of the reasons to purchase a "1080p" television – no other purchase is required. While Mr. Frank complained that the device needs to be one from Sony, that is not the case for past purchases. A whole host of 1080p Devices qualify, many made by companies other than Sony. Mansfield Decl., ¶¶6, 16. While Mr. Young claims this settlement does not take into account those who want to later purchase a 1080p device, as explained above, the settlement so provides. Settlement Agreement, §§3.1.2-3.1.3.

Finally, one objector (Mr. Webb), in addition to Mr. Handler, raises an issue about having to use the SonyStyle website to obtain compensation. But again, this is a factor in favor of the settlement. First, unlike a "coupon" settlement, this is not a percentage-off arrangement or for a

8

certificate only good on the purchase of a "big ticket" item such as a car. This is a dollar-for-dollar credit, with shipping and handling provided for free. There are items on the website that are not Sony products, and there are items costing less than the amount of the credit's minimum. And since many of those offered products interface with entertainment systems or 1080p devices, one is not "buying" additional Sony products except in the limited situation of a future purchase when no past purchase was made. In addition, the e-credit system is automatic, ensuring greater ease and thus likely greater use by Settlement Class members. Mansfield Decl., ¶16.

### IV. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ARE SATISFIED HERE

Settlement of disputed claims is highly favored by the federal courts, and there is a particularly strong judicial policy favoring settlement of class litigation. *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). In granting final approval of a class action settlement, the Court's inquiry is to determine that the settlement: (a) was not the product of fraud or collusion, and (b) is fair, adequate, and reasonable. The Court must evaluate the settlement terms as a whole, rather than in terms of specific components or terms to accept or reject, in determining whether the settlement is fair, reasonable, and adequate. *Officers for Justice, supra*, 688 F.2d at 625.

The Court in *In re Cardizem,* analyzing federal authorities, found that the examination of the following factors is proper in determining whether a class action settlement is fair, reasonable and adequate: (1) the experience and views of counsel; (2) the strengths and weaknesses of the plaintiff's case and the range of recovery when compared against the value of the settlement; (3) the risk of obtaining liability and class action status through trial and appeals; (4) the complexity, expense, and

duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *In re Cardizem, supra*, 218 F.R.D. at 522.

In determining the adequacy and reasonableness of a proposed settlement, where the settlement is reached through arms'-length bargaining, where investigation is sufficient to allow counsel and the Court to act intelligently, where counsel is experienced in similar litigation, and where the percentage of objectors is small (or in this case minuscule), the settlement is presumed to be fair, and objectors have a heavy burden of establishing it is unreasonable. *Williams, supra,* 720 F.2d at 921; *Officers for Justice, supra*, 688 F.2d at 625; *In re Paine Webber Ltd. P'ship Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997). Such a presumption is properly invoked here.

**A.    This Settlement was the Product of Serious, Informed Litigation and Non-Collusive Negotiations.**

Part of the initial analysis of the reasonableness of a class action settlement involves an inquiry into whether the settlement in question was achieved through arm's-length negotiations by experienced counsel. Here, these negotiations were conducted under the auspices and oversight of Justice Wiener and with his assistance. He has already submitted a Declaration attesting to the arms'-length nature of the negotiations and the fairness of the settlement, as further supported by the Declaration of Mr. Edelson. The fee provisions were negotiated after Justice Wiener indicated it was appropriate for counsel to do so. Even after the terms of the settlement were agreed to in principle, the parties had substantial discussions over the precise terms of the settlement that resulted in another month of negotiations over the language of the Settlement Agreement. Mansfield Decl. ¶¶10-11. Where experienced counsel view this settlement favorably, and the evidence shows that

the settlement was negotiated at arm's-length and in an adversarial manner, this factor weighs

heavily in favor of granting final approval to the settlement. *See In re Cardizem*, 218 F.R.D. at 530.

Plaintiff's goal was to obtain not a theoretical or abstract benefit for the Settlement Class, but

rather to provide them the ability to obtain reimbursement for a significant portion of their alleged

overpayment for the Sony televisions at issue. Mansfield Decl. ¶¶16-17. By their efforts, plaintiff

was successful in realizing these goals. Certainly with counsel fees less than their lodestar, no

objector claims (and there is no evidence) that counsel's fees were "traded off" for a lesser result.

These facts show this settlement was negotiated at arms'-length and is non-collusive.

**B.      The Views of Experienced Counsel Support Approving this Settlement.**

In evaluating a settlement, one of the factors upon which the Court is entitled to rely is the

judgment of experienced counsel for the parties. When the counsel recommending approval of the

settlement are competent and experienced, significant weight may be given to their opinion.

*Williams, supra,* 720 F.2d at 922-23. As indicated in the Mansfield Decl., ¶23, Ex. 1 and in ¶¶6-12

to the Raphael Decl. (and contrary to the suggestion made by Mr. Handler in his objection), the class

has been represented throughout the course of this litigation by counsel with 20 years of experience

in litigating consumer class actions and who have negotiated numerous class settlements that have

been approved by courts throughout the United States. Both Mr. Mansfield and Mr. Raphael were

actively involved in prosecuting and negotiating the resolution of this case, and adequately

represented the interests of the Settlement Class at all stages of this proceeding.

The Court should defer to the judgment of experienced counsel who have competently

weighed the strength of their respective positions. *In re McDonnell Douglas Equipment Leasing*

*Sec. Litig.*, 838 F.Supp. 729, 737 (S.D.N.Y. 1993) (observing that courts "have consistently refused

to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching"). Based on numerous factors, such as uncertainty of the outcome at trial against Sony and the inevitable appeals, as compared to the direct and significant benefits of the settlement made available to the Settlement Class members, it was the informed conclusion of counsel on both sides that the proposed settlement is fair, reasonable, and adequate, and warrants final Court approval. Mansfield Decl., ¶¶12-14, 23. This factor weighs in favor of approving this settlement.

### C. The Settlement Terms are Fair, Reasonable, and Adequate Considering the Relevant Risk Factors.

#### 1. The Strength of Plaintiff's Claims and the Range of Possible Recovery.

While plaintiff's counsel believed they had a meritorious case, the case was certainly not without risk in terms of the range of possible recovery. Mansfield Decl., ¶¶18-22. In addition to the issue of the Court certifying a nationwide class (which was not a certain outcome), in attempting to establish liability and damages, plaintiff faced the risks that there would be disputes whether the 1080p resolution capabilities were accurately stated; if any mistake was either inadvertent or immaterial; whether reliance would be an element of some or all such claims; and the average out-of-pocket expenses class members incurred in paying for such products. The range of recovery went from zero, if the jurors accepted Sony's arguments, to payment of the difference in value for a television with "true" 1080p resolution versus the televisions sold to the class members, to rescission and a full recall. Even collection of these remedies could be limited because: (1) the Court may require class members to establish reliance on the 1080p disclosures or not award an overall class damage award; and (2) the Court might require class members submit individual claims with supporting documentation. Mansfield Decl., ¶¶18-19.

12

The benefits provided to the Settlement Class members are well within the range of possible recovery, as they have the ability by submitting a claim form to obtain a significant percentage of their estimated out-of-pocket difference in value, or the right to opt-out and pursue individual claims if they believe they are entitled to a greater recovery. This is the relevant question for purposes of evaluating the reasonableness of this settlement as a whole, since the Court cannot force consumers to submit claims. In evaluating a settlement, the Court looks at the potential recovery made available to both the individuals and the entire Settlement Class. *Cf., Williams v. MGM-Pathe Communications*, 129 F.3d 1026 (9th Cir.1997).

### 2.    Risks of Establishing Liability and the Complexity of the Litigation.

While plaintiff's counsel believed they would be successful in this litigation, they nevertheless faced many risks in proving liability and damages. Mansfield Decl., ¶¶ 15-22. This settlement provides Settlement Class members the ability to obtain substantial benefits now and the opportunity to obtain reimbursement for a significant amount of their potential losses, without delay and with less effort than if they had to litigate individual claims through trial, even if plaintiff obtained a favorable jury verdict (depending upon what the Court would have required from class members to submit a claim). This factor weighs heavily in favor of the approval of the settlement.

In addition, while plaintiff believes he had a viable case, it was not without risk. Indeed, after this settlement was preliminarily approved, summary judgment was entered in favor of another manufacturer in an action involving similar claims, brought by the same counsel in the *Handler* action who have filed an objection here. *See Stevens v. Mitsubishi,* Order Granting Defendant's Motion for Summary Judgment dated September 24, 2008. Mansfield Decl, ¶20, Ex. 3. Thus, even counsel who claim to have significant experience in handling these types of cases have lost without

13

obtaining *any* recovery for their claims on behalf of their class. This is a concrete example of the risks this litigation presented, further establishing the wisdom of this settlement. Unless the objectors establish this settlement is clearly inadequate, its approval by the Court is preferable to the continuation of lengthy and expensive litigation, with uncertain results. *Williams, supra,* 720 F.2d at 922 (approval not withheld over speculation plaintiff might have done better at trial); *Brotherton v. Cleveland,* 141 F.Supp.2d 854, 903 (S.D. Ohio 2001). The objectors do not meet this standard.

### 3. The Risk of Maintaining Class Action Status Through Trial, and Notice.

Class certification orders are conditional in nature and may be changed, modified, or reversed at any time up until final judgment. Fed. Rules of Civ. Proc., Rule 23. Here, even if a stipulation could be reached on the class certification issue (which was not likely in light of the issues Sony had raised in its initial motions to strike and dismiss), there remained a litigation risk that a class could be decertified after trial or vacated on appeal on either a state or nationwide basis. These risks are also properly considered in evaluating this settlement.

Along these lines, based on the authority and evidence previously submitted to this Court, the Court should reaffirm its initial determination on preliminary approval that certification of the class for settlement purposes is proper based on the record before this Court. No Settlement Class member has made any objection to such a finding based on the evidence submitted.

Contrary to Mr. Handler's objection, due process was satisfied and proper notice was issued to the Settlement Class  because it was directed in a reasonable manner to all class members who would be bound by the proposal, included individual notice to all class members who could be

14

identified through reasonable effort under Fed. R. Civ. P. 23(e)(1) and Fed. R. Civ. P. 23(c)(2)(B).[3]

*See Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). It "clearly explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the . . . settlement agreement and incorporated exhibits. . . ." *UAW v. GMC*, 497 F.3d 615, 630 (6th Cir. 2007).[4]

The *Handler* objection takes issue with three minor aspects of the notice, each of which is easily dismissed. First, the notice clearly informs members about their eligibility for Settlement Benefit III. This benefit was specifically designed to assist persons who had not yet purchased a 1080p device for their televisions but wanted to purchase one in the future. Therefore, any class member who purchases a Sony Blu-ray Disc Player between July 25, 2008 and 30 days after the Final Approval Hearing is eligible to claim-in for an e-credit. The *Handler* objection claims that the description of "Sony Blu-ray Disc Player" is confusing, yet it is defined on the Claim Form as: PlayStation3, BDP-S1/S1E, BDP-S300/301, BDP-S500, and BDP-S2000es. Because the models are clearly identified on the Claim Form, the notice is sufficient. Similarly, contrary to the claim that class members were not adequately informed of the status of the litigation, the notice provides class members with the case number and the district in which the litigation is pending so that the case file

---

[3]     Consistent with many of other notice programs, class notice was mailed to all class members for whom Defendant had mailing addresses and electronically mailed to all class members for whom Defendant had e-mail addresses. The class notice was also available on two separate websites (one linked to Defendant's own support website and another linked to Class Counsel's website) and a summary version of the notice was published in *USA Today*.

[4]     The class notice addressed every term of the agreement, provided instructions for class members that wanted to review a copy of the full Settlement Agreement, advised class members how to claim, object or exclude themselves from the settlement, and information to any class member who might want to appear and speak for themselves at the final fairness hearing. The class members' rights and available settlement benefits were summarized in an easy-to-understand chart, and then detailed more fully in the notice itself.

could be examined, as desired. Class members were also invited to call Class Counsel with any and all questions. If the notice became too long, it potentially could be unwieldly and confusing.

Finally, Handler is wrong in claiming that class members are unaware that benefits are only received if the settlement is approved. The notice states that all settlement benefits are subject to final approval by the Court and that "Benefits will be made if the Court approves the settlement and after appeals are resolved." The Claim Form also states, "Sony will mail E-Credits after the court grants final approval." The FAQ section explains, "Question: What happens if the Settlement is not approved by the Court?  Answer: If the Court does not approve the Settlement, the Settlement benefits will not be provided and the Lawsuit will continue." The notice program was sufficient.

**D.    The Case was Sufficiently Advanced that Plaintiff's Counsel Could Make an Informed Judgment Regarding the Merits of the Settlement.**

The final factor the Court should consider in the context of approving a class action settlement is the stage of the proceedings at which the settlement was reached. While counsel for Handler argues that this case was not sufficiently advanced, it certainly was in a better situation than *Stevens*, the case lost on summary judgment. While this case settled in its relatively early stages, the Complaint had been subject to motions to dismiss, and in response to both informal and formal discovery, Sony supplied a significant amount of evidentiary information regarding the claims at issue and the technical workings of the televisions, which was confirmed in deposition testimony. Counsel had conducted their own independent investigation and worked with a consultant that was well-versed in the design and characteristics of these televisions. Mansfield Decl., ¶¶8-10. Thus, contrary to the assertion in the *Handler* objection, the facts that were available and considered by counsel show that all counsel were in a position at the time the settlement was reached to understand

16

the strengths and weaknesses of the action such that they could make an intelligent and informed decision regarding the reasonableness of the settlement terms. This factor weighs in favor of final approval. *Williams, supra*; *In re Jiffy Lube Sec. Lit.*, 927 F.2d 155, 159 (4th Cir. 1991); *North v. Merrill Lynch*, 855 F.Supp. 825, 829 (E.D.N.C. 1994) (production of several thousand pages of documents and confirmatory deposition sufficient evidence to support settlement).

## VI. __THE COURT SHOULD APPROVE PLAINTIFF'S FEE APPLICATION__

After the parties reached agreement on the non-fee aspects of the class settlement and reported that agreement to Justice Wiener, the parties began negotiations over the fee-related aspects of the settlement. Ultimately the parties agreed to cap this fee and expense request at $300,000, plus $25,000 in out-of-pocket expenses. Settlement Agreement, §3.6.1. Under the Settlement Agreement, such amounts are to be paid on top of the class consideration being provided by Sony. The amounts requested are reasonable, based on a lodestar/multiplier approach, cross-checked as a percentage of the overall consideration, and based on the negotiated agreement between the parties.

### A.    The Requested Fee is Appropriate Based on the Lodestar Incurred by Counsel, Which Results in No Multiplier.

The fee and expense payment plaintiff requests be approved by the Court is reasonable under the circumstances using a lodestar calculation, which results in no multiplier of the lodestar after reimbursement of expenses. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996). Awarding fees on a lodestar basis is submitted to the discretion of the Court. *Rawlings v. Prudential-Bache*, 9 F.3d 513, 517 (6th Cir. 1993); *Ramey v. Cincinnati Enquirer*, 508 F.2d 1188, 1196 (6th Cir. 1974).

As a result of the efforts required in this litigation, plaintiff's counsel have expended and estimate they will finally collectively expend 575.85 hours on this litigation, from investigation

17

through final settlement approval, resulting in a total lodestar of $318,841.25. Counsel have also expended $25,786.86 in litigation expenses. All of this time and expense has not been reimbursed, even though this case has been pending for over one and a half years. The collective time and labor required was reasonable considering the substantial work performed during the course of this litigation, and was calculated using counsels' standard non-contingent hourly rates that have consistently been approved by courts. Mansfield Decl., ¶¶4, 8-11, 25-29; Raphael Decl., ¶¶1-5, 13-19; Liblang Decl., ¶¶3-12. "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate.'" *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1310 (7th Cir. 1996). This lodestar amount does not even take into consideration a multiplier based on factors such as delay, result obtained, and risk of non-payment. *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 642 (6th Cir. 1979).

Plaintiff's counsel expected to receive compensation higher than their lodestar, as they are not being paid regardless of the outcome and any payment is received years down the road. Counsel are typically to be compensated for such risks, particularly where they expend thousands of dollars in unreimbursed litigation expenses and their standard hourly rates do not account for such risk. However, counsel are not doing so here, showing the reasonableness of this fee request. As the Court found in *Steiner v. Fruehauf Corp., supra,* 121 F.R.D. at 309, where the lodestar equals or exceeds the amount of the application, a requested fee should be found reasonable.

B.     **The Fee is Reasonable when Cross-Checked as a Percentage of the Overall Settlement Value.**

As a cross-check, this amount is a small percentage of the amount being made available to the Settlement Class and to be expected by Sony, which is conservatively estimated to be over $5.5

18

million. Mansfield Decl., ¶17. How much is actually claimed does not alter the analysis of what fee is reasonable, particularly where counsel is simply receiving reimbursement of their lodestar. *Williams v. MGM-Pathe Communications, supra*, 129 F.3d at 1027 (trial court should have awarded fees based on entire fund not the amount claimed).

The Federal Judicial Center (www.fjc.gov/library) has issued several studies in recent years regarding the average amounts and percentage fees awarded in several hundred class action cases, which settled at all stages of the litigation. Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?*, 81 Notre Dame L.Rev. 591, 607 (2006); Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation* (Federal Judicial Center 2005); Thomas E. Willging, *et al.*, *Empirical Study of Class Actions in Four Federal District Courts* (Federal Judicial Center 1996). In these studies, fees ranged from 27% to 30%. The amount requested is less than 6% of the minimum value made available to the Settlement Class and being paid by Sony, and thus is significantly below the average percentage fees awarded by federal courts throughout the country.

**C.     The Fact Sony Agreed to this Amount Also Shows the Reasonableness of this Request.**

Sony agreed to a fee and expense cap of $300,000 plus $25,000 in expenses. This is another factor the Court can consider in approving this application. Because the evidence shows (and there is no dispute) the substantive terms of the settlement had been agreed to between the parties before these amounts were agreed to, and were negotiated under the auspices of a well-respected mediator, the fee provision was negotiated in such a manner as to avoid any potential conflict with the Settlement Class or any argument that such amounts were "traded off" for lesser class consideration.

19

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the United States Supreme Court held that negotiated attorneys' fee provisions are the "ideal" toward which the parties should strive: "a request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Fee arrangements between plaintiffs and defendants in class actions are to be encouraged, particularly where the attorneys' fees to be requested are negotiated separately *after* the settlement terms of the class claims has been agreed to by the parties and are to be paid on top of the class consideration. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees.")

As observed in *In Re Continental Illinois Securities Litigation,* 962 F.2d 566 (7th Cir. 1992), the virtue in the negotiation of fees by the adversarial parties to a settlement regarding the amount of fees to be paid – the defendants who want to minimize the payment to be made versus the lawyers who wish to receive it – is that the "markets know market value better than judges do." *Id.* at 570.

Here, the subsequent agreement to pay fees and costs in the amount requested, after the Settlement Class consideration had been agreed to, was negotiated under market conditions: class counsel wished to maximize fees to compensate them, as the law encourages, for risk, innovation, and delay, while Sony wished to pay the minimum amount they could, as any monies not approved by the Court would be retained by them. The result is an arm's-length negotiated amount set by market forces, resolved with the active assistance of Justice Wiener only after he confirmed the other settlement terms had been agreed to in principle. Mansfield Decl., ¶10. As long as the Court does not believe there is overreaching (which is hard to find when counsel are just receiving reimbursement of their lodestar and expenses) or that a lesser result was "traded off" for fees (which

20

in light of Justice Wiener's and Mr. Edelson's Declarations about the nature of the negotiation is simply not the case), there is no reason to second guess that negotiation process and its result.

## VI. **CONCLUSION**

Based on the above, plaintiff requests the Court finally approve this class action settlement and fee and expense application, and enter the Final Approval Order submitted to the Court.

DATED: October 20, 2008                   Respectfully submitted,

                                          LIBLANG & ASSOCIATES, P.C.

                                          By:   S/ with consent of Dani K. Liblang
                                               Dani K. Liblang
                                          Attorneys for Plaintiff David Date, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record in this action.

<div style="margin-left:40%;">

____S/ with Consent of Dani K. Liblang____
DANI K. LIBLANG (P33713)
LIBLANG & ASSOCIATES
260 East Brown Street, Suite 320
Birmingham, MI 48009
Tel: (248) 540-9270
E-Mail: danil@lemonlawlawyers.com

</div>