# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DAVID DATE, JR., and ELLIOT HANDLER
Individually and On Behalf of All Others
Similarly Situated,

|  |  |
|---|---|
| Plaintiffs, | Case No. 07-cv-15474-PDB-RSW |
| v. | **Judge:** Hon. Paul D. Borman<br>**Magistrate:** Hon. Steven Whalen |

SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC. d/b/a ABC WAREHOUSE,

Defendants.

_____/

Lance A. Raphael
THE CONSUMER ADVOCACY CENTER
180 W. Washington Street, Suite 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930
Email: Lance@caclawyers.com

Alan Mansfield
CONSUMER LAW GROUP OF
CALIFORNIA
9466 Black Mountain Road, Suite 225
San Diego, CA  92126
Tel: (619) 308-5034
Fax: (888) 341-5048
Email: alan@clgca.com

Dani K. Liblang
LIBLANG ASSOC.
346 Park Street, Suite 200
Birmingham, MI 48009-3380
Tel: (248) 540-9270
Fax: (248) 433-1989
Email: danil@lemonlawlawyers.com

Darren T. Kaplan
CHITWOOD HARLEY HARNES LLP
1230 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 873-4476
Email: dkaplan@chitwoodlaw.com

Brian S. Kabateck
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90071
Tel: (213) 217-5000
Fax: (213) 217 5010
Email: bsk@kbklawyers.com

_____/

## **THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, David Date, Jr. ("Date") and Elliot Handler ("Handler") on behalf of themselves and all others similarly situated, hereby allege as follows on information and belief, except where specifically identified, which allegations are likely to have evidentiary support after an opportunity for further investigation and discovery:

## JURISDICTION AND VENUE

1.    Jurisdiction and venue in this Court are based upon § 1332 of Title 28 of the United States Judicial Code, 28 U.S.C. § 1332, as amended by The Class Action Fairness Act of 2005 ("CAFA"), Pub. Law 109-2 (Feb.18, 2005).  The Class involves more than 100 persons.  28 U.S.C. §1332(d)(5)(A).  The aggregate amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00.  28 U.S.C. §1332(d)(2).  Plaintiff Date is a resident of Michigan, Plaintiff Handler is a resident of New York, and Defendant Sony Electronics, Inc. resides and has its principal place of business in San Diego, California based on where its executive offices and operations are located.  Therefore, minimal diversity of opposing parties is present as required under CAFA. 28 U.S.C. § 1332(d)(2)(A).

2.    Venue is proper in this District under §§ 1391(a) and 1391(c) of Title 28 of the United States Code because a substantial part of the acts and conduct charged herein, including the promotion, purchase, use, sale, marketing, and/or distribution of the products at issue, occurred in this District; because Defendant ABC Appliance, Inc. d/b/a ABC Warehouse resides in this District, and because Plaintiff Date and numerous Class members reside in this District.

## THE PARTIES

3.    On personal knowledge, Plaintiff Date is a natural person who resides in Michigan.

4.    On personal knowledge, Plaintiff Handler is a natural person who resides in New York.

5.      Defendant Sony Electronics, Inc. (referred to hereinafter as "Sony") is a corporation formed under the laws of Delaware, with a principal place of business located at 16530 Via Esprillo, San Diego, California 92727.  At all relevant times, Sony was engaged in the business of distributing, marketing, and/or selling Sony televisions in all 50 states.

6.      Defendant ABC Appliance, Inc. d/b/a ABC Warehouse ("ABC Warehouse") is a Michigan corporation, with a principal place of business at One West Silverdome Industrial Park, Pontiac, Michigan 48342.  Defendant ABC Warehouse is an authorized dealer of Sony products and acts as an agent for Sony for the sale of numerous products, including the televisions at issue.  Mr. Date purchased his Sony television from ABC Warehouse in or about March 2006.

## FACTUAL BACKGROUND

7.      A "television" is a video display combined with an internal tuner to receive television broadcast signals.  A "monitor" is a video display without an internal tuner.

8.      The Advanced Television Systems Committee, Inc. ("ATSC"), is an international organization that develops voluntary standards for digital television.  ATSC member organizations are drawn from the broadcast, broadcast equipment, motion picture, consumer electronics, computer, cable, satellite, and semiconductor industries.  On December 24, 1996, the Federal Communications Commission ("FCC") adopted the major elements of the ATSC Digital Television (DTV) Standard (A/53).  ATSC DTV standards include digital high definition television ("HDTV") as well as standard definition television ("SDTV") and designate the applicable standards for HDTV and SDTV as the standards of the Society of Motion Picture and Television Engineers ("SMPTE").

9.      In the context of a video image or a video display such as a television or monitor, resolution is measured in "pixels."  A pixel is the smallest part of a digitized image, with each

pixel making up a very small part of the entire image.  When all of the pixels are displayed in the correct position, a correct image is visible on the screen.  The more pixels that are distributed vertically and horizontally across a video display, the greater the "resolution" or detail in the displayed image.

10.     In addition to the number of pixels used, a video image is also characterized by its "aspect ratio" or its displayed width divided by its height.  Thus, in describing a video image or display resolution, it is common to incorporate both the aspect ratio and the total pixels by describing a display or image as the number of vertical pixels multiplied by the number of horizontal pixels.  Further, because the aspect ratio is standardized in certain common resolutions, both the public and the video broadcast and display industry frequently refer to the number of vertical pixels of a given image or display as shorthand for the resolution.

11.     Finally, an image is scanned (i.e. "drawn") on a video display using one of two methods.  A "progressive" scan is a method of scanning images in which the lines of each frame are drawn in sequence, line by line, from top to bottom.  In contrast, an "interlaced" scan displays an image by drawing every other line starting from the top left corner to the bottom right.  A progressive scan is claimed by companies such as Sony to produce a smoother, cleaner image than an interlaced scan, especially with sports and other motion-intensive content.

12.     The ATSC DTV standards include a number of standards for HDTV.  However, broadcasters in the United States currently broadcast HDTV using only two standards: 1280 x 720 resolution in a progressive scan ("720p") or 1920 x 1080 resolution in an interlaced scan ("1080i").  Thus, of the two standards, one offers a progressive scan (720p) while the other offers higher resolution (1080i).

13.     Both HDTV resolutions are superior to SDTV, which is 640 x 480 resolution in either an interlaced or progressive scan (480i/480p), and standard Digital Video Discs ("DVD"),

- 4 -

which is usually 720 x 480 resolution in a progressive scan (480p).

14.     The ATSC DTV standards also include a standard of 1920 x 1080 in a progressive scan ("1080p"); however, broadcasters in the U.S. have indicated that they are unlikely ever to consider broadcasting in 1080p, primarily due to bandwidth limitations.  Nevertheless, the existence of the 1080p standard--combining the smoother progressive scan of 720p with the higher resolution of 1080i--has intrigued video enthusiasts since the adoption of the DTV standard in 1996.

15.     HDTV television broadcasts in 720p and 1080i first began in 1999.  By 2004, all major networks were broadcasting at least some programming in HDTV.  During the same period, sales of HDTV televisions and monitors explosively increased on an annual basis. Indeed, by 2004, prices on HDTV televisions and monitors actually began to decline as the market became saturated.

16.     In 2005, television manufacturers began marketing so-called "1080p" televisions and monitors.  These televisions and monitors had a native resolution of 1920 x 1080 and displayed using a progressive scan.  However, at the time the 1080p televisions and monitors were first released, there was no source for a native 1080p signal since broadcasters were then and still are transmitting HDTV only in either 720p or 1080i.  Further, United States broadcasters had made clear by 2005 that they had no concrete plans to broadcast in 1080p at any time in the future, and thus were extremely unlikely to begin any such broadcasts during the usable life of the so-called "1080p" televisions.

17.     Because no 1080p sources were available, these so-called "1080p" televisions and monitors would "up-convert" SDTV, DVD, and HDTV signals to 1080p for display.  Up-conversion can result in some minor improvements in the image displayed, but it does not make the native image any sharper because resolution can never be improved.  Likewise, a native

- 5 -

interlaced image will lack the smoothness and resolution of a native progressive image, even when displayed progressively through a process known as "de-interlacing," resulting in feathering and other distortions of the image display.

18.     At the same time that so-called "1080p" televisions and monitors were introduced, final preparations were underway to release sources that promised actually to provide native 1080p signals.  These sources were two competing technologies; each supported by a consortium of consumer electronics, information technology and media content companies.  One such source was High Definition DVD ("HD-DVD").  Another source was Blu-ray Disc ("Blu-ray").  Sony Corporation of America and Sony Corporation, the U.S. and Japanese parent companies of Defendant Sony, were the primary developers of Blu-ray, and Sony Corporation has a permanent seat on the Board of Directors of the Blu-ray Disc Association.  In July and August of 2005, the HD-DVD and Blu-ray consortiums respectively announced that HD-DVD and Blu-ray players would only output 1080p signals via High-Definition Multimedia Interface ("HDMI").  Thus, a 1080p signal could only be input through an HDMI input.

19.      Both the HD-DVD and Blu-ray consortiums worked closely with all major consumer electronics manufacturers (including Sony) in developing the standards and technologies for their respective sources.

20.     Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 were marketed and sold by Sony as "1080p" televisions.

21.     However, Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 will not accept a 1080p signal from the HDMI input.  Further, Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 cannot be upgraded to accept 1080p signals.  That capability must be provided for in the initial design of the television circuitry and cannot be retrofitted.

- 6 -

22.     Despite the fact that Sony knew or reasonably should have known that its Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 were incapable of accepting 1080p signals from any available source, Sony never disclosed this fact in its advertising and marketing materials and, to date, has not disclosed it.

23.     Sony charged a significant premium for its Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 over Sony's other conventional high definition televisions and monitors.

**PLAINTIFFS' CLASS ALLEGATIONS**

24.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated as representative members of the following proposed Class:

> *All persons or entities who purchased or received as a gift from the original purchaser a Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, within the United States.*

25.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

26.     Plaintiffs and the Class bring this action for equitable, injunctive and declaratory relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

**NUMEROSITY OF THE CLASS**

27.   The proposed Class is so numerous that the individual joinder of all its members in one action is impracticable.  While the exact number and the identities of Class members are not known at this time, they can be ascertained through appropriate investigation and discovery.

**TYPICALITY OF CLAIMS**

28.   Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the Class members were injured by the same wrongful conduct and scheme of the Defendants alleged herein.

**EXISTENCE AND PREDOMINANCE OF
COMMON QUESTIONS OF LAW AND FACT**

29.   The common questions of law and fact raised in this litigation substantially predominate over any questions that may affect only individual Class members.  These common questions of law and fact include, but are not limited to:

   (a)   Whether the advertisements and statements issued about the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, by Defendants were and are untrue, misleading and/or had a likelihood of deceiving Class members;

   (b)   Whether Defendants' conduct with regard to the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, violated the consumer protection statutes of California, Michigan and New York;

   (c)   Whether Defendants' uniform course of conduct regarding the Sony-brand, rear-projection, high-definition television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, was unconscionable or constituted untrue or misleading advertising, or concealment of material facts;

   (d)   Whether Defendants omitted to disclose material facts regarding the Sony-brand, rear-projection, high-definition television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 necessary in order to make Defendants' other statements not misleading for want of disclosure of such omitted facts;

- 8 -

(e) Whether Defendants improperly failed to notify all Class members and the general public of the true facts regarding the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005's ability to receive or properly display 1080p resolution signals;

(f) Whether the gravity of the harm attributable to such conduct was outweighed by any benefits attributable thereto;

(g) The amount of revenues and profits Defendants received or saved and/or the amount of monies or other obligations imposed on or lost by Class members was as a result of Defendants' wrongdoing concerning the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005;

(h) What constitutes the terms of the warranty concerning the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005;

(i) What constitutes the nature of the breach of the warranty concerning the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005;

(j) What constitutes the nature of the defect in the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005;

(k) Whether there is an implied warranty of merchantability pertaining to the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005;

(l) Whether there exists an agency relationship between the Defendants;

(m) Whether Sony fulfilled the warranty concerning the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005;

(n) Whether Class members are threatened with irreparable harm and/or are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

(o) Whether Plaintiffs and members of the Class are entitled to damages, rescission or equitable relief and the appropriate measure of such relief.

## ADEQUATE REPRESENTATION

30.    Plaintiffs will fairly and adequately protect the interests of the members of the Class in that they have no irreconcilable conflicts with or interests materially antagonistic to those of the other Class members.

31.    Plaintiffs have retained attorneys experienced in the prosecution of class actions, and who have been previously found by numerous State and Federal courts to be adequate class counsel.

## SUPERIORITY AND SUBSTANTIAL BENEFITS OF CLASS LITIGATION

32.    A class action is manageable and superior to other available methods for the fair and efficient group-wide adjudication of this controversy for the following reasons:

(a)    It is economically impracticable for members of the Class to prosecute individual actions;

(b)    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for defendants;

(c)    Because of the nature of some of the relief sought, the prosecution of separate actions by individual Class members would create a risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications, or would substantially impair or impede the ability of such Class members to protect their interests;

(d)    It is desirable to concentrate these claims in a single forum because no member of the Class has sustained damages sufficient to warrant litigation of the claims separately; and

(e)    There are no difficulties likely to be encountered in the management of this class action.

33.    Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

34.     Notice of the pendency of and any resolution of this action can be provided to the Class members by individual mailed notice or the best notice practicable under the circumstances.

### PLAINTIFFS' PURCHASES OF THE SONY-BRAND TELEVISIONS

35.     Prior to March 31, 2006, Plaintiff Date reviewed various advertisements and specifications for televisions, seeking to find a 1080p television because he wished to utilize the television to view 1080p video sources.

36.     Prior to March 31, 2006, Plaintiff Date was told, via advertisements and other uniform representations made by both Defendants, including Defendant Sony's published specifications of the Sony-brand television model KDS-R50XBR1, and statements on ABC Warehouse's interactive website, that this model television was a 1080p television.  For instance, according to Sony's marketing documents, the following accurately describes the Model KDS-R50XBR1 television:

> **<u>*Key Features*</u>**
> **-- SXRD™ Technology**
> **-- Wega Engine™ HD System**
> **…**
> **--  HDMI™ (High Definition Multimedia Interface)**
> **-- PC Input (D-Sub 15pin**)
> **<u>*Key Technologies*</u>**
> **SXRD™ Panels SXRD technology is a new display technology developed by legendary television engineers at Sony® to meet and exceed the demands of a High Definition image at its full 1080 line resolution.  Digitally transmitted High Definition signals can contain over 2 million individual detail points that need to be *<u>displayed</u>* accurately and rapidly, SXRD displays those 2 million detail points per SXRD panel accurately since the 3 SXRD panels actually contain enough pixels to fully display a 1080 line picture without interlacing it.**
> **. . .**
> **Enjoy a stunning display of realistic images, amazing detail and sharpness, reduced noise and enhanced clarity with improved depth and contrast.**

- 11 -

37.    Nowhere in Sony's marketing materials is there an indication that the television cannot accept a 1080p signal through one or more of the television's inputs.

38.    On or about March 31, 2006, Plaintiff Date went to ABC Warehouse to purchase a 1080p television.  He was told by ABC Warehouse that the Sony-brand television model KDS-R50XBR1 was a "1080p television."  ABC Warehouse also made this representation on its store's internet site that the Sony-brand television model KDS-R50XBR1, was a "1080p television."

39.    Further, Sony itself told Plaintiff Date that the Sony-brand television model KDS-R50XBR1 was a "1080p television" by placing the word "1080p" on a sticker on the television itself, on the packaging the television was delivered in, and on in-store signage that Sony designed and distributed to retailers such as ABC Warehouse.  Advertising a television as being "1080p"  was one of the primary distinguishing factors used in advertisements at the time, and thus was intended by Defendants to be a substantial factor in consumers' purchasing decisions.

40.    In response to and as a result of Defendants' representations and advertisements identifying the television as "1080p," Plaintiff Date purchased the Sony-brand television model KDS-R50XBR1.  Plaintiff Date would not have purchased the television and/or paid the price that he did if not for the advertisements, warranties, and specification sheet that promised that the television was "1080p."

41.    Plaintiff Date paid more for the Sony-brand television model KDS-R50XBR1 than he would have paid for a comparable high definition television that was not marketed as 1080p.  A significant portion of the premium Plaintiff Date paid for his Sony "1080p" television was for its supposed capability to accept 1080p signals from all upcoming 1080p sources.

42.    A significant portion of the funds expended on products distributed by Sony and purchased at ABC Warehouse are ultimately returned back to Sony through the chain of

commerce.

43.     At the time of purchase, Plaintiff Date did not know that the Sony-brand
television model KDS-R50XBR1 would not accept a 1080p signal from any 1080p sources
available then, now, and for the foreseeable future.

44.     One of the purported characteristics of the Sony-brand television model KDS-
R50XBR1 is that it can be utilized as a monitor for a personal computer.  Sony specifically
reinforces this characteristic by manufacturing the television with inputs that are commonly used
for connecting personal computers such as the Video Graphics Array ("VGA").  As a result,
upon receipt of the television, Plaintiff Date connected the television to his computer to utilize
the benefits of the television's advertised 1080p resolution.  Because Plaintiff Date's computer
was pre-calibrated to output a 1080p video signal, when Plaintiff Date tried to watch the
television, it could not display the signal from his computer.

45.     Plaintiff Date then telephoned Sony regarding this problem and was told for the
first time by Sony that, contrary to Defendants' advertisements, the television in fact could not
accept 1080p video signals via any of its inputs and ports with the exception of the television's
over-the-air ("OTA") antenna.

46.     The Sony-brand television model KDS-R50XBR1's ostensible ability to receive
1080p video signals via the OTA antenna was and is however a useless feature because no OTA
broadcaster broadcasts in 1080p, nor has any OTA broadcaster given any indication that it will
ever broadcast in 1080p.

47.     Having been informed of the true facts, Plaintiff Date attempted to resolve this
matter, including filing a Complaint with the Better Business Bureau against ABC Warehouse,
Sony's authorized dealer/agent.  However, ABC Warehouse failed to offer Plaintiff Date his
actual damages suffered, a full refund, or even a suitable replacement television that would

perform as the television he purchased was advertised.  Instead, all ABC Warehouse offered was a Sony television that did not run at 1080p, and with fewer options than the television already purchased by Plaintiff, with no refund of the differential in price.

48.     On February 26, 2007, Plaintiff Date sent Defendants a Notice of Violation of the Consumers Legal Remedies Act and Demand for Remedy via facsimile and certified mail, with return receipt requested.  *See* Exhibit A, incorporated herein by reference.  This letter was received by Defendants.  The letter stated, in pertinent part: "This notice also serves as a demand to cure any breach of any express contract or warranty created by your uniform advertisements and offers, as well as any breach of implied warranties created by law.  The above-requested relief is equally applicable to such claims, to the extent required by law."  *Id.*

49.     On March 23, 2007, Sony sent Plaintiff Date correspondence denying any wrongdoing or liability, and refusing to provide Plaintiff Date and the Class members any form of relief.  This letter further constitutes Sony's express rejection of Plaintiff Date's demand that Sony cure the defect at issue for himself and all affected consumers, including for any claims brought in warranty.

50.     ABC Warehouse did not respond to Plaintiff Date's February 25, 2007 Notice of Violation at all.

51.     Prior to March 31, 2006, Plaintiff Handler reviewed various advertisements and specifications for televisions, seeking to find a 1080p television because he wished to utilize the television to view 1080p video sources.

52.     Plaintiff Handler was told, via advertisements and other uniform representations made by Sony, including the published specifications of the Sony-brand television model KDS-70Q006, which is the more expensive Qualia version of this line of Sony television products, that this model television was a 1080p television.  For instance, according to Sony's marketing

documents, the following accurately describes the Sony-brand television model KDS-70Q006: "[t]he world's first SXRD rear projection television capable of full (1080p) High Definition Resolution" (parenthetical in original).

53.     Nowhere in Sony's marketing materials is there an indication that the Sony-brand television model KDS-70Q006 cannot accept a 1080p signal through one or more of the television's inputs.

54.     In response to and as a result of Defendants' representations and advertisements identifying the television as "1080p," Plaintiff Handler purchased a Sony-brand television model KDS-70Q006 at New York Wholesale Audio & Video in New York City in the summer of 2005.

55.     Plaintiff Handler paid more for the Sony television than for comparable high definition televisions that were not marketed as "1080p."  A significant portion of the premium Plaintiff Handler paid for his Sony "1080p" television was for its supposed capability to accept 1080p signals from upcoming 1080p sources.

56.     Plaintiff Handler acted in response to advertisements, including those in the Sony Store in New York City, stating that the Sony-brand television model KDS-70Q006 was "1080p."

57.     A portion of the funds expended on products distributed by Sony and purchased at New York Wholesale Audio & Video are ultimately returned back to Sony through the chain of commerce.

58.     Plaintiff Handler owned his Sony QUALIA 006 high definition television for over a year believing that it was capable of receiving a 1080p signal from a device capable of delivering a 1080p signal.

59.     Only after attempting to connect a 1080p capable source did Plaintiff Handler learn that the Sony-brand television model KDS-70Q006 he purchased lacked the capability to

accept a 1080p signal for which he had paid a premium price.

60.     At the time of purchase, Plaintiff Handler did not know that the Sony-brand television model KDS-70Q006 would not accept a 1080p signal from any 1080p sources available then, now, and for the foreseeable future.

61.      Defendants also made similar representations as to the KDS-R60XBR1 and KDX-46Q005 models.

62.     The Sony-brand, rear-projection, high-definition television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, although represented as being 1080p televisions, will not accept a 1080p video signal from any available 1080p source and are therefore not "1080p" as advertised and warranted.

63.     Defendants thus have failed to comply with the representations made in their advertisements and with their statutory obligations, despite demand having been made therefore prior to initiation of the suit by Plaintiff, on behalf of himself and the Class.

64.     Defendants uniformly overcharged Plaintiffs and Class members several hundred dollars each, and for the Qualia line of televisions as much as $1,000 each, for televisions Defendants represented and claimed to be "1080p," when such televisions could not perform as advertised and represented because of inherent limitations in the line of television sets, as set forth in this Complaint.

65.     As a result of the foregoing, Defendants have systemically engaged in a series of transactions in violation of applicable law.

66.     Plaintiffs suffered injury in fact and have lost money or property as a result of Defendants' false advertisements and statements and their failure to comply with their obligations imposed under all applicable laws, as they paid for television sets that were not truly 1080p, and paid a premium for such television sets even though they do not possess this specific

characteristic, and thus did not perform as advertised.  Plaintiffs and the Class members should therefore receive all amounts improperly paid to and/or overcharged by Defendants.

67.     Plaintiffs and the Class members have not received a return of the improperly paid or retained monies despite demand therefore, and are currently owed such amounts, plus any damages, restitution, interest or other legal or equitable monetary relief required to be paid to them by law.

68.     Defendants' failure to abide by their legal obligations is ongoing and continues to this date.

## TOLLING OF APPLICABLE STATUTES OF LIMITATION

69.     Any applicable statutes of limitation have been equitably tolled by Defendants' affirmative acts of fraudulent concealment, suppression, and denial of the true facts regarding the existence of the practices at issue herein.  Such acts of fraudulent concealment included affirmatively misrepresenting, covering up and refusing publicly to disclose the fact they were not supplying products consistent with their advertisements and offers and/or by claiming a legal and contractual right to do so.  Through such acts of fraudulent concealment, Defendants were able actively to conceal from the Class the truth about and justification for Defendants' practices, thereby tolling the running of any applicable statutes of limitation until public disclosure of the true facts.  Defendants still refuse to this day to take full responsibility for their actions, despite being aware that such conduct has taken place.

**COUNT I**

**Violation of CAL. CIV. CODE § 1750, *et seq*.,
The California Consumers Legal Remedies Act**

**(Against Defendant Sony)**

70.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

71.     The California Consumers Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq*. ("CLRA"), has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property or services to consumers primarily for personal, family or household purposes.

72.     The transactions, policies, acts, and practices engaged in by Defendant Sony and alleged herein were intended to, and did, result in the sale of the products and services here at issue to a number of the members of the Class primarily for personal, family or household purposes, and violated and continued to violate the CLRA, California Civil Code § 1770(a), and other comparable consumer protection laws in at least the following respects:

        (5)     Representing that goods or services has . . . characteristics . . . uses [or] benefits . . . which they do not have;

        (7)     Representing that goods . . . are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

        (9)     Advertising goods or services with intent not to sell them as advertised;

        (14)     Representing that a transaction confers or involves rights, remedies, or obligations which it does not have, or which are prohibited by law; and

        (16)     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

- 18 -

73.     As a result, members of the Class have had their legal rights infringed upon and suffered irreparable harm, entitling them to both injunctive relief and restitution.

74.     In compliance with the provisions of California Civil Code §1782, prior to the initiation of this action, Plaintiff Date provided both Defendants the opportunity to resolve these claims and informed them of his intention to file an action for damages under California Civil Code § 1750, *et seq.* if Sony did not at least attempt to resolve such claims informally.  Plaintiff Date also requested that Defendant Sony offer an appropriate correction and other appropriate relief to all affected consumers.

75.     As Defendant Sony has failed and refused, after receipt of the §1782 notice, to adequately respond to Plaintiff Date's demand to correct or otherwise rectify the wrongful conduct described above on behalf of all Class members, Plaintiffs seek for all Class members all actual and exemplary damages permitted for violation of the CLRA (and any other comparable statutes the Court finds applicable), including for statutory damages of up to $1,000 per consumer.  In addition, Plaintiffs seek and are entitled to, pursuant to California Civil Code §1780(a)(2), an order enjoining the above-described wrongful acts and practices of Defendant Sony, providing restitution to all members of the Class who are so entitled, ordering the payment of costs and attorneys' fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code §1780.

## COUNT II

### Violation of CAL. BUS. & PROF. CODE §17200, *et seq.*, Unlawful, Unfair and Fraudulent Business Acts and Practices

### (Against Defendant Sony)

76.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

77.     Defendant Sony's acts and practices as detailed above constitute acts of unfair competition.  Defendant Sony has engaged in an unlawful, unfair, or fraudulent business act and/or practice within the meaning of California Business & Professions Code § 17200.  Such conduct also violates other comparable and applicable state consumer protection laws, which laws do not materially conflict with Business & Professions Code Section 17200.

78.     Defendant Sony has engaged in an "unlawful" business act and/or practice by advertising the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, as being 1080p televisions, *i.e.* capable of accepting 1080p signals through its relevant inputs and displaying that signal in 1080p format, and charged consumers hundreds of dollars more for a television with such a characteristic, even though these televisions were not fully capable of accepting 1080p signals through all of their inputs and displaying that signal in 1080p format.  As detailed herein, these business acts and practices violated numerous provisions of law, including, *inter alia*, California Civil Code §1709, the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, breach of contract and warranty, Business and Professions Code §17500 *et seq.*, and the Magnuson-Moss Warranty Act, all as set forth in detail herein.  Plaintiffs reserve the right to identify additional violations of law as further investigation warrants.

79.     By engaging in the above-described conduct, Defendant Sony has engaged in an "unfair" business act or practice in that the justification for selling such products or services based on the business acts and practices described above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and/or offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to consumers and competitors.

80.     By engaging in the above-described conduct, Defendant Sony has engaged in a "fraudulent" or "deceptive" business act or practice in that the business acts and practices described above had a tendency and likelihood to deceive purchasers of such goods or services, and those potentially targeted by the deceptive practices here at issue.  As detailed above, a substantial factor in Plaintiffs deciding to purchase these televisions at the prices that they did was the uniform representation that these were "1080p" televisions.

81.     The injury to Plaintiffs is substantial.  Plaintiffs and Class members paid a premium of several hundred dollars, and for the Qualia line of televisions a premium of as much as $1,000, for the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, as a result of Defendant Sony's representations that the televisions were capable of accepting 1080p signals through their inputs.  Purchasing such a television is a significant investment to a consumer, and such a purchase is made at least in substantial part as a result of Defendant Sony's representations.  Therefore, as a result of Defendant Sony's false or misleading advertising of the capabilities of the television, Plaintiff and Class members paid a significant amount of money, as well as a significant premium, for televisions with certain capabilities that those televisions did not actually have.

82.     There is no countervailing benefit to consumers or to competition to permit Defendant Sony to advertise the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 as "1080p" when they are not.

83.     The failure of Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 to be capable of accepting 1080p signals through its relevant inputs and displaying that signal in 1080p format could not have been reasonably avoided by consumers.

84.     The above-described unlawful, unfair, or fraudulent business acts and practices engaged in by Defendant Sony continue to this day and present a threat to the Class in that Defendant Sony has failed to publicly acknowledge the wrongfulness of its actions and provide the complete relief required by the statute.

85.     By paying a premium for televisions that they would not have purchased or paid the prices that they did had the true facts been disclosed to them, Plaintiffs have suffered injury in fact and a loss of money or property as a result of the acts and practices of Defendant Sony as detailed herein.

86.     Pursuant to California Business & Professions Code §17203, Plaintiffs, individually and on behalf of the Class, seek an order of this Court prohibiting Defendant Sony from continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and from failing to fully disclose the true facts as set forth herein, and/or ordering Defendant Sony to engage in a corrective informational campaign.

87.     Plaintiffs additionally request an order from the Court requiring that Defendant Sony provide complete equitable monetary relief, including that they disgorge and return or pay Defendant Sony's ill-gotten gains and such other monies as the trier of fact may deem necessary to deter such conduct or prevent the use or enjoyment of all monies wrongfully obtained, and/or pay restitution, including the return of any monies paid to Defendant Sony that would not otherwise have been paid had the true facts been disclosed by Defendant Sony or had Sony complied with its legal obligations and advertisements, plus any interest earned by Defendant Sony on such sums.  Such an order is necessary so as to require Defendant Sony to surrender all money obtained either directly or indirectly through such acts of unfair competition, including all monies earned as a result of such acts and practices, so that Defendant Sony is prevented from benefiting or profiting from the practices that constitute unfair competition or the use or

employment by Defendant Sony of any monies resulting from the sale of such goods or services and/or to ensure the return of any monies as may be necessary to restore to any person in interest any money or property which may have been acquired by means of such acts of unfair competition.

### COUNT III

### Breach of Express Warranty Pursuant to U.C.C. 2-313

### (Against All Defendants)

88.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

89.     The representations by Defendants through their advertisements and promotional materials that the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 are "1080p" operate as affirmations of fact and/or promises as well as a description of the goods in question that those televisions are capable of accepting 1080p signals through their relevant inputs and displaying those signals in 1080p format, and thus have useable 1080p-capable inputs.

90.     The affirmations of fact and/or promises and description of the goods by Defendants that the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 are capable of accepting 1080p signals through their relevant inputs and displaying those signals in 1080p format relates to the Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 and became part of the basis of the bargain for every purchase of those televisions by Plaintiffs and the Class.

91.     The affirmation of fact and/or promise and description of the goods by Defendants in their advertisements and promotional materials, that the Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 are capable of

- 23 -

accepting 1080p signals through their inputs and displaying that signal in 1080p format creates an express warranty that the televisions shall conform to that affirmation and/or promise and/or description.

92.     Such express warranties by Defendants cannot properly be disclaimed by a form contract.

93.     Plaintiffs and each member of the Class have fully performed all conditions, covenants and promises required to be performed or were excused from any conditions, covenants, and promises.

94.     Defendants have breached the express warranties they created as set forth above by failing to provide Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 capable of accepting 1080p signals through their relevant inputs and displaying those signals in 1080p format.

95.     Pre-suit notice of the breach has either been provided to Defendants or is excused. No relief has been provided despite demand therefore.

96.     As a result of Defendants' breach of warranties as set forth above, Plaintiffs and the Class members have been damaged in an amount to be determined at trial.

### COUNT IV

**For Breach of Written Warranty Under
Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.**

**(Against Defendant Sony)**

97.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

98.     Plaintiffs and the members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

99.     Sony is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

100.    The televisions at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

101.    Sony's written affirmation of fact, promises, and/or descriptions as alleged herein in its advertisements, promotional materials and documents accompanying the sales of the televisions at issue constitute  a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  Sony breached its written warranties as its televisions failed to perform as warranted, *i.e.* they were not capable of accepting 1080p signals through their relevant inputs and displaying those signals in 1080p format.

102.    Plaintiffs and Class members were damaged in that, among other things, they paid hundreds if not a thousand dollars more for a television that did not perform as advertised and warranted due to the failure of the television to be capable of accepting 1080p signals through its relevant inputs and displaying those signals in 1080p format.

## COUNT V

### For Breach of Written Warranty Under
### Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

### (Against ABC Appliance, Inc. d/b/a ABC Warehouse)

103.    Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

104.    This Count is brought by Plaintiff Date on behalf of himself and a Subclass of persons that purchased such Sony televisions through ABC Warehouse (the "ABC Warehouse Subclass").

- 25 -

105.    Plaintiff Date and the members of the ABC Warehouse Subclass are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

106.    ABC Warehouse is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

107.    The televisions at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

108.    ABC Warehouse's written affirmation of facts, promises, and/or descriptions as alleged herein are each a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  ABC Warehouse breached its written warranties as the subject televisions at issue failed to perform as warranted, *i.e.* they were not capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format.  ABC Warehouse therefore failed to honor its warranties for the televisions as to the persons affected thereby.

109.    Plaintiff Date and the ABC Warehouse Subclass members were therefore damaged in that, among other things, they purchased a Sony television worth far less than advertised by ABC Warehouse as such televisions did not conform to ABC Warehouse's representations regarding the capability of such televisions to accept input of 1080p signals through their relevant inputs and displaying those signals in 1080p format.

## COUNT VI

### Breach of Implied Warranty of Merchantability

### (Against Defendant Sony)

110.    Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

- 26 -

111.    The implied warranty of merchantability arises through operation of state law, cannot be disclaimed or modified pursuant to 15 U.S.C. § 2308, and is incorporated into the Warranty Act pursuant to 15 U.S.C. § 2301(7).  Sony, by and through Defendants' warranties and by operation of state law, impliedly warranted that the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 would conform to the promises, affirmations, undertakings, and descriptions contained in the contracts, labels, advertisements, and warranties, *i.e.* they would be capable of accepting 1080p signals through their relevant inputs and displaying those signals in 1080p format.

112.    Sony provided these warranties directly to consumers and/or through its series of authorized Sony dealer/agents, which included ABC Warehouse.

113.    As the televisions at issue are not capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format, they are thereby not fit for the ordinary and essential purpose for which they were intended or would not pass without objection in the trade or industry.

114.    As a direct and proximate result of Sony's failure to comply with the warranties as detailed above, coupled with the unmerchantable condition of the televisions, Plaintiffs and Class members suffered damages, including:

    a.    purchase and receipt of non-conforming and unmerchantable televisions that are diminished in value by hundreds of dollars;

    b.    failure to receive the full use, benefit, and enjoyment of a television that is capable of accepting 1080p signals through its relevant inputs and displaying those signals in 1080p format;

    c.    inability to utilize the television for one of its intended ordinary purposes that was the focus of its advertising;

    d.    loss of full use of the television for one of its intended ordinary purposes; and

e.      incursion of incidental and consequential damages.

115.     The defects and nonconformities present in the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 constitute a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., and a breach of the implied warranty of merchantability under state and federal law.

## COUNT VII

### Breach of Implied Warranty of Merchantability

### (Against ABC Appliance, Inc. d/b/a ABC Warehouse)

116.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

117.     The implied warranty of merchantability arises through operation of state law, cannot be disclaimed or modified pursuant to 15 U.S.C. § 2308, and is incorporated into the Warranty Act pursuant to 15 U.S.C. § 2301(7).  ABC Warehouse, by and through Defendants' warranties, impliedly warranted that the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 would conform to the promises, affirmations, undertakings, and descriptions contained in the contracts, labels, advertisements, and warranties, *i.e.* they would have useable 1080p-capable inputs and would pass without objection in the trade or industry.

118.     ABC Warehouse provided these warranties directly to consumers.

119.     As the televisions are not capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format as promised, they are thereby not fit for the ordinary and essential purpose for which they were intended.

120.   As a direct and proximate result of ABC Warehouse's failure to comply with the warranties as detailed above, coupled with the unmerchantable condition of the televisions, Plaintiffs and the ABC Warehouse Subclass suffered damages, including:

a.   purchase and receipt of non-conforming and unmerchantable televisions that are diminished in value by hundreds of dollars;

b.   failure to receive the full use, benefit, and enjoyment of a television that is capable of accepting 1080p signals through its relevant inputs and displaying those signals in 1080p format;

c.   inability to utilize the television for one of its intended ordinary purposes;

d.   loss of full use of the television for one of its intended ordinary purposes; and

e.   incursion of incidental and consequential damages.

121.   The defects and conformities present in the Sony rear-projection, high-definition televisions, coupled with ABC Warehouse's failures as described above, constitute a violation of the Warranty Act, 15 U.S.C. § 2301 *et seq.*, and a breach of the implied warranty of merchantability under state and federal law.

## COUNT VIII

### Unjust Enrichment and Common Counts

### (Against All Defendants)

122.   Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

123.    Plaintiffs and each member of the Class and the ABC Warehouse Subclass have fully performed all conditions, covenants and promises required to be performed or were excused from any conditions, covenants, and promises.

124.    A party is unjustly enriched or liable for money had and received when it retains a benefit to the detriment of another party against fundamental principles of justice, equity, and good conscience.

125.    Defendants represented to Plaintiffs and the Class members that the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, as being 1080p televisions, *i.e.* capable of accepting 1080p signals through their relevant inputs and displaying those signals in 1080p format, in order to increase the sales of such products.

126.    Defendants charged Plaintiffs and the Class members a greater amount for the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 than they charged consumers for televisions not advertised as "1080p."

127.    Defendants were also unjustly enriched by positioning themselves ahead of their market competitors when the products advertised were not as claimed.

128.    Defendants' representations were false or misleading in that these televisions were not capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format.

129.    Plaintiffs and the Class members could not have reasonably discovered prior to purchase that the Sony-brand, rear-projection, high-definition television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 were not capable of accepting 1080p signals through their inputs until after they purchased the televisions and until 1080p sources were available for purchase.

130.    Defendants have reaped millions of dollars in profits as a result of the misleading representations regarding the capabilities of the Sony-brand, rear-projection, high-definition television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 to accept 1080p signals through their relevant inputs and display those signals in 1080p format.  That Defendants amassed such earnings, and retain such benefit to the detriment of Plaintiffs and Class members, violates fundamental principles of justice, equity, and good conscience.

131.    Defendants have been unjustly enriched by their above-described conduct.

132.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class members suffered injury and therefore seek an order disgorging the monies Defendants have unjustly obtained to the detriment of Plaintiff and Class members.

## COUNT IX

### Declaratory Relief

### (Against All Defendants)

133.    Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

134.    There currently exists between the parties an actual controversy regarding the respective rights and liabilities of the parties regarding, *inter alia*, the need for Defendants to accurately disclose or correct the disclosure of the true input and resolution capabilities of the Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, and/or the need of Defendants to restore some or all amounts that were not required to be paid by Class members based on these representations as alleged above.

135.    Plaintiffs, members of the Class, and the general public may be without adequate remedy at law, rendering declaratory relief appropriate in that:

a.    Damages may not adequately compensate the Class members or the

general public for the injuries suffered, nor may other claims permit such relief;

b.    The relief sought herein in terms of ceasing such practices and providing a full and complete corrective disclosure, may not be fully accomplished by awarding damages; and

c.    If the conduct complained of herein is not enjoined, harm will result to Class members and the general public because, among other things, Defendants' wrongful conduct is continuing, claims are unresolved, and persons are entitled to the return of monies paid based on Defendants' representations.

136.    Class members and the general public may suffer irreparable harm if a determination of the parties' rights and obligations is not ordered.

137.    Accordingly, Plaintiffs request that the Court issue an order granting the following declaratory relief:

a.    That a judicial determination and declaration be made of the rights of Class members or the general public, and the corresponding responsibilities of Defendants;

b.    That Defendants be ordered to provide notice in clear and conspicuous language to inform consumers of the resolution capabilities of their televisions;

c.    An order declaring Defendants are obligated to pay restitution to all members of the Class as appropriate and/or otherwise pay over all funds wrongfully acquired either directly or indirectly as a result of collecting such monies under false pretenses, by which Defendants were unjustly enriched.

## COUNT X

## Violation of Michigan Consumer Protection Act, MCLA 445.901, *et seq.*

## (Against All Defendants)

138.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

139.      This Count is brought by Plaintiff Date on behalf of himself and a Subclass of persons that purchased the Sony televisions described herein within the State of Michigan (the "Michigan Subclass").

140.     Plaintiff Date is a "person" as defined in the Michigan Consumer Protection Act, MCLA 445.902(d).

141.     The transactions complained of herein constitute "trade or commerce" as defined in the Michigan Consumer Protection Act, MCLA 445.902(g).

142.     In the course of the transaction that is the subject of the lawsuit and as set forth throughout this Complaint, Defendants committed the following unfair and deceptive acts, methods, or practices under MCLA 445.903, including but not limited to:

    a.     Representing that the televisions at issue had characteristics, uses, and benefits, i.e. that they were capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format, when they did not, in violation of MCLA 445.903(1)(c);

    b.     Representing that the televisions at issue were of a certain quality, i.e. that they were capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format, when they did not, in violation of MCLA 445.903(1)(e);

    c.     Advertising and representing the Sony-brand, rear-projection, high-definition television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 as capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format, with the intent

not to sell those televisions with such capabilities, in violation of MCLA 445.903(1)(g);

d.      Failing to reveal that the Sony-brand, rear-projection, high-definition television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 were not capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format, in violation of MCLA 445.903(1)(s); and

e.      Failing to provide promised benefits, including but not limited to, failing to provide Plaintiffs and the Class members with televisions that were capable of accepting 1080p signals through their inputs and displaying those signals in 1080p format, in violation of MCLA 445.903(y).

143.    The above-described conduct violated the Michigan Consumer Protection Act, specifically but not limited to MCLA 445.903 and sub-paragraphs thereunder.

144.    The above violations were not due to a bona fide error in as much as Defendants failed to have the appropriate procedures in place designed to prevent said violations and, further, engaged in the same unfair and deceptive acts or practices in connection with the sale of Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 to other consumers.

145.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff Date and the Michigan Subclass members have sustained a loss within the meaning of the MCLA, including but not limited to, being deprived of the benefit of their bargain, receiving televisions that were worth less than paid for, being unable to utilize the televisions for one of their intended ordinary uses.  Plaintiff Date and the Michigan Subclass members sustained other incidental and consequential damages, including but not limited to, costs and attorney fees.

146.    In addition to the damages set forth above, Plaintiff Date and the Michigan Subclass members are entitled to damages and attorneys fees as provided in the Michigan Consumer Protection Act, specifically MCLA 445.911.

**COUNT XI**

**Violation of New York General Business Law §349 *et seq.***

**(Against Defendant Sony)**

147.     Plaintiffs hereby repeat and re-allege all of the above allegations as if fully alleged herein and further allege as follows.

148.     This Count is brought by Plaintiff Handler on behalf of himself and a Subclass of persons that purchased the Sony televisions described herein within the State of New York (the "New York Subclass").

149.     The acts and practices of Defendant Sony as described herein were "consumer oriented."

150.     The acts and practices of Defendant Sony as described herein were misleading in a material way.

151.     Plaintiff Handler and the New York Subclass suffered actual injury as a result of the deceptive acts described above.

152.     The acts and practices of Defendant Sony as described herein are likely to mislead a reasonable consumer acting reasonably under the circumstances.

153.     In addition to the damages set forth above, Plaintiff Handler and the New York Subclass request three times their actual damages up to $1,000 and for reasonable attorneys' fees pursuant to Gen. Bus. §349(h).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs David Date, Jr. and Elliot Handler, individually and on behalf of the Class and Subclasses, pray for judgment and relief against Defendants as follows:

(A)     Temporary, preliminary and permanent injunctive relief, including, but not limited to, an order of this Court ordering Defendants to immediately cease all acts of unfair competition and enjoining Defendants from continuing to conduct business via the illegal acts or practices as particularized herein, as well as from refusing to engage in a corrective information campaign regarding their policies, and imposing an asset freeze over all illegally obtained monies;

(B)     Declaratory relief in the form of an order commanding, among other things, that Defendants properly disclose the limitations on the input capabilities of the televisions at issue;

(C)     Actual, incidental, consequential, special, statutory, and exemplary damages;

(D)     Reasonable costs of suit and attorneys' fees;

(E)     Pre- and post-judgment interest;

(F)     An order certifying the Class and appointing Plaintiffs and their counsel as Class Representatives and Class Counsel; and

(G)     Such other and further relief as this Court may deem necessary, proper and/or appropriate.

### JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.


DATED:  April 30, 2010                          CHITWOOD HARLEY HARNES LLP

                                                By:  /s/  Darren T. Kaplan
                                                Darren T. Kaplan (Admitted *Pro Hac Vice*)
                                                Gregory E. Keller
                                                Mary Kathryn King
                                                1230 Peachtree Street, NE, Suite 2300
                                                Atlanta, GA 30309
                                                (404) 873-3900

LIBLANG & ASSOCIATES
Dani K. Liblang
260 East Brown Street, Suite 320
Birmingham, Michigan 48009
(248) 540-9270

THE CONSUMER ADVOCACY CENTER, P.C.
Lance A. Raphael (Admitted *Pro Hac Vice*)
Stacy M. Bardo
Allison A. Krumhorn
180 West Washington, Suite 700
Chicago, IL 60602
(312) 782-5808

CONSUMER LAW GROUP OF CALIFORNIA
Alan Mansfield (Admitted *Pro Hac Vice*)
9466 Black Mountain Road, Suite 225
San Diego, CA 92126
(619) 308-5034

KABATECK BROWN KELLNER LLP
Brian S. Kabateck
Richard L. Kellner
Alfredo Torrijos
644 South Figueroa Street
Los Angeles, CA 90071
(213) 217-5000

*Attorneys for Plaintiffs*

**EXHIBIT A**

# THE CONSUMER ADVOCACY CENTER, P.C.*

A private law firm devoted to protecting consumers' rights

Lance A. Raphael
Attorney at Law
Licensed in Illinois

Offices in Chicago and Seattle

180 West Washington Street, Suite 700
Chicago, IL 60602
Phone: (312) 782-5808
Fax:   (312) 377-9930
E-mail: Lance@caclawyers.com

February 26, 2007

**Via Facsimile and Certified Mail Return Receipt Requested**

(858) 942-9123
General Counsel
Sony Electronics, Inc.
16530 Via Esprillo
San Diego, California  92127

(248) 465-9642
Randy Simpson
General Manager
ABC Warehouse
43606 West Oaks Drive
Novi, Michigan  48377

(212) 833-8800
General Counsel
Sony Corporate
550 Madison Avenue
New York, New York  10022

(248) 335-2568
General Counsel
ABC Warehouse
One West Silverdome Industrial Park
Pontiac, Michigan 48342

Re: Notice of Violation of the Consumer Legal Remedies Act and Demand for Remedy

To Whom It May Concern:

We have been requested to assist David Date, on behalf of himself and all others similarly situated nationwide, relating to claims for damages, restitution, and equitable relief arising out of the above named companies' improper practices of falsely advertising the Sony Grand Wega television, Model KDS-R50XBR1 as well as other models potentially as well, as having 1080p, as well as requests for payments of damages and restitution that are presently due and owing.  The facts regarding this situation are as follows:

On or about March 30, 2006, David Date purchased a new Sony Grand Wega television, Model KDS-R50XBR1 from ABC Warehouse for $3,153.70 (which includes the cost of the television, five year warranty, and delivery charge, as well as applicable finance charges).  David Date made such purchase after both Sony and ABC Warehouse directly represented to him that this television would run at 1080p.  After constructing an entertainment center built specifically for this television and attaching it to a computer he specifically created for such television, he discovered that your representations regarding the capabilities of the television were false in that such television did not run at 1080p.

* The Consumer Advocacy Center, P.C. is a private law firm. It is not, and is not affiliated with, any not-for-profit, government or public-interest organization.

# THE CONSUMER ADVOCACY CENTER, P.C. *

A private law firm devoted to protecting consumers' rights

Lance A. Raphael
Attorney at Law
Licensed in Illinois

Offices in Chicago and Seattle

180 West Washington Street, Suite 700
Chicago, IL 60602
Phone: (312) 782-5808
Fax:   (312) 377-9930
E-mail: Lance@caclawyers.com

As you are aware, this is not an isolated incident as Model KDS-R50XBR1 televisions are uniformly advertised by you as having 1080p, but do not in fact have this capability.

The policies and practices of falsely advertising your products to have capabilities that they do not was not authorized or allowable under law. Such conduct constitutes a violation of the Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.* for those persons.

Specifically, these practices constitute violations of the California Civil Code §§ 1770(a), under, *inter alia,* the following subdivisions:

(5)     Representing that goods or services have . . . characteristics, . . . uses [or] benefits . . . which they do not have;

(7)     Representing that goods . . . are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(9)     Advertising goods or services with intent not to sell them as advertised;

(14)    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have, or which are prohibited by law;

(16)    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not;

(18)    Misrepresenting the authority of an . . . agent to negotiate the final terms of the transaction with a consumer;

(19)    Inserting an unconscionable provision in the contract.

You must undertake the following actions to resolve the issues raised by this letter, as well as to satisfy the requirements of California Civil Code § 1782(c), and any other applicable similar statutory or common law provisions, whether in tort or in contract:

(1)     identify all affected consumers;

(2)     advise such persons of the right upon request to a full, complete and timely refund of all amounts overpaid for this model television (the

* The Consumer Advocacy Center, P.C. is a private law firm. It is not, and is not affiliated with, any not-for-profit, government or public-interest organization.

THE CONSUMER ADVOCACY CENTER, P.C.*

A private law firm devoted to protecting consumers' rights

Lance A. Raphael
Attorney at Law
Licensed in Illinois

Offices in Chicago and Seattle

180 West Washington Street, Suite 700
Chicago, IL 60602
Phone: (312) 782-5808
Fax:   (312) 377-9930
E-mail: Lance@caclawyers.com

amount overpaid for this television is valued at the cost of the television sold versus the cost of the television if sold as advertised), plus reimbursement of any associated expenditures (such as postage, time, and telephone calls), interest on all such sums, costs, and reasonable attorneys' fees incurred;

(3)    agree to cease from advertising the Sony Grand Wega television as running with 1080p, as well as undertaking a corrective advertising campaign; and

(4)    provide proof that the acts above were the result of a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such errors.

David Date reserves the right, after thirty (30) days from the date of this letter, to file a Complaint, as permitted by Civil Code § 1782, for claims of actual, statutory, treble and exemplary damages under the CLRA, plus any other relief as may be appropriate for those Class members who are consumers, unless a full and adequate response to this letter is offered to David Date and all affected consumers. It must be made clear that an individual offer will not avoid potential suit or your liability to other class members or claims under other theories of recovery, even if accepted. Thus, to avoid litigation, it is in the interests of all parties concerned that you address this problem immediately as set forth above.

This notice also serves as a demand to cure any breach of any express contract or warranty created by your uniform advertisements and offers, as well as any breach of implied warranties created by law. The above-requested relief is equally applicable to such claims, to the extent required by law.

If you have any questions or concerns, please contact me at your earliest convenience.

Yours very truly,
The Consumer Advocacy Center, P.C.

Lance A. Raphael

* The Consumer Advocacy Center, P.C. is a private law firm. It is not, and is not affiliated with, any not-for-profit, government or public-interest organization.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 30, 2010, I electronically filed the foregoing **PLAINITIFF'S**

**THIRD AMENDED COMPLAINT** with the Clerk of the Court using the ECF system which

will send notification of such filing to all attorneys of record.


Respectfully Submitted


/s/  Darren T. Kaplan
**Chitwood Harley Harnes LLP**
1230 Peachtree Street, NE
2300 Promenade II
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 876-4476
E-mail: Dkaplan@chitwoodlaw.com