UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE JR. and
ELLIOT HANDLER,
Individually and On Behalf of All
Others Similarly Situated,

              Plaintiffs,                          Case No. 07-cv-15474

                                                    Paul D. Borman
v.                                         United States District Judge

                                                      R. Steven Whalen
SONY ELECTRONICS, INC., and                    United States Magistrate Judge
ABC APPLIANCE, INC. d/b/a ABC
WAREHOUSE,

              Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT SONY ELECTRONICS INC.'S
AND ABC APPLIANCE, INC.'S MOTIONS TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (b)(6)

This matter is before the Court on Defendant Sony Electronics, Inc.'s ("Sony") and ABC

Appliance, Inc.'s ("ABC") Motions to Dismiss the Plaintiffs' Third Amended Complaint ("TAC")

Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 125, 127.) Plaintiffs have filed

a response to both motions (Dkt. Nos. 135, 137); Sony and ABC have filed replies. (Dkt. Nos. 140,

139.) The Court held a hearing on September 1, 2010. For the reasons that follow, the Court

DENIES Defendants' motions to dismiss.

**INTRODUCTION**

Plaintiffs claim that certain models of Sony-manufactured televisions, which were advertised

by both Sony and retailer ABC as "1080p" televisions, in fact, did not possess all of the requisite

1

capabilities inherent in the term "1080p." Plaintiffs claim that by industry standard, which was in effect at the time that Plaintiffs purchased their televisions, and by specific representations in Sony and ABC advertising and product specifications which claimed that the television could display at full 1080p resolution "without interlacing," the term "1080p" included by definition a representation regarding the television's ability to accept 1080p signal natively through all of the television's inputs.[1] Therefore, Plaintiffs argue, when sold without that capability, the televisions were not as warranted and were sold through deceptive and fraudulent means. Plaintiffs interpret the term "1080p," standing alone, to include a representation as to the television's ability to accept 1080p input signals natively, i.e. through all of the television's inputs via a direct signal from a 1080p source.[2]

Sony and ABC respond that the term "1080p" as used in their product specifications and advertisements has a limited meaning, that it does not include an ability to accept and display 1080p input signals natively.[3] Sony states that knowing a television's display resolution tells a consumer

---

[1] A television that was able to accept 1080p signal natively through all of its inputs could, for example, receive a 1080p signal directly from a Blu-ray disc player or a personal computer through one or more of its inputs. The televisions marketed and sold by Sony and ABC as 1080p could not do this.

[2] Plaintiffs argue that factual findings allegedly made by this Court in the context of a fairness hearing held on the parties' joint motion for approval of settlement constitute "law of the case" and bind the Court going forward, thereby necessarily predisposing the Court to a judgment in Plaintiffs' favor on Sony's and ABC's motions to dismiss. At this stage, the Court need not determine whether any such findings constitute law of the case, because for purposes of this motion to dismiss, the Court must take the allegations of the Complaint in the light most favorable to the non-moving party. The Court notes that its fairness hearing did not purport to be a trial on the merits of Plaintiffs' claims.

[3] Sony and ABC also respond that Plaintiffs admit that the television could in fact accept 1080p signal by broadcast signal, and therefore the representation that the television could accept 1080p signal, even if implied in the term 1080p, was not false. *See e.g.* Sony Mot. 8 n.6. However, it is clear that Plaintiffs' Complaint specifically refers to the broader capability of the television to accept

nothing about which of the many types of video signals the television can accept. Sony and ABC deny that they made representations as to the ability of Plaintiffs' televisions to accept a 1080p signal natively, and without processing, by using the phrase "1080p" to describe the televisions. (Sony's Mot. 8-9.)

The erroneous assumption in Sony's and ABC's arguments in support of their motions, is that this Court can and should conclude, as a matter of law, that their interpretation of the phrase "1080p" carries the day. This the Court cannot do at the pleading stage, when it must accept as true each of the factual allegations set forth adequately in a plaintiffs' complaint that plausibly give rise to an entitlement to relief. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

## I.    BACKGROUND

### A.    Procedural History of the Case

Plaintiff David Date ("Date") originally filed this class action in the Southern District of California on April 2, 2007. (Dkt. No. 1, Record Received from the Southern District of California, p. 4.) On December 18, 2007, the District Court for the Southern District of California, the Honorable Roger T. Benitez, granted Date's motion to transfer venue to this District, finding that the transfer would serve the convenience of witnesses and parties and would best serve the interests of justice. (*Id.* pp. 11-17, Order Granting Plaintiff's Motion to Transfer Venue.) On December 27, 2007, this Court received the record from the Southern District of California and received Date's First Amended Class Action Complaint. (Dkt. Nos. 1, 2.)

---

1080p signal from an HDMI input, not from the airwaves. Plaintiffs allege that it was well known that 1080p broadcast was never going to be a reality and that the ability of televisions to accept 1080p broadcast signals via their antenna was a meaningless feature. (TAC ¶ 16.) Thus, the Court focuses on Plaintiffs' claims as they relate to the alleged representation that the television could accept 1080p signal directly through the television's inputs rather than through broadcast signals.

On March 12, 2008, the parties stipulated to the filing of the Second Amended Complaint on that date. (Dkt. Nos. 29, 30.) On March 12, 2008, the parties filed a joint request for preliminary approval of a settlement agreement. (Dkt. No. 20.) On July 25, 2008, this Court entered an Order preliminarily approving the proposed settlement agreement and scheduling a final fairness hearing for November 3, 2008. (Dkt. No. 45.)

On November 3, 2008, this Court held a final fairness hearing, considered the objections filed in response to the proposed settlement agreement, and on January 16, 2009, issued an Opinion and Order Rejecting Class Action Settlement, concluding that the objectors had met their significant burden in opposing the proposed class action settlement. (Dkt. No. 76.) On February 20, 2009, this Court filed an Amended Opinion and Order Rejecting Class Action Settlement. (Dkt. No. 86.)

On April 30, 2010, Date, joined by co-lead Plaintiff Elliott Handler ("Handler") who had been a principal objector to the proposed class action settlement, filed a Third Amended Class Action Complaint, which is the subject of Sony's and ABC's instant motions to dismiss. (Dkt. No. 125.)[4]

**B.      Allegations in the Third Amended Complaint ("TAC")**

**1.      Background Factual Allegations**

Plaintiffs purport to bring the TAC on behalf of themselves and all others similarly situated

---

[4]  *See infra* discussion at note 9 regarding the status of Handler's previously-filed California case and the potential *res judicata* implications of that decision.  Plaintiffs represent that Handler is now only prosecuting a single case against Sony in this Court.  (Pls.' Resp. Sony 13 n. 21.)  *See also* Declaration of Robert J. Wierenga in Support of Defendant Sony Electronic Inc.'s Motion to Dismiss. (Dkt. No. 126, Wierenga Decl., Exhibits B, C and D, True and Correct Copies of the Orders of the District Court of California in the Handler case and the opening brief filed by Handler in the California case.)

as representative members of a class of purchasers of (or persons who received as a gift) certain Sony-brand televisions within the United States. (TAC ¶ 24.) The televisions that are the subject of the TAC were sold as "1080p" televisions. (TAC ¶¶ 35, 36.) The TAC explains that the Advanced Television Systems Committee, Inc. ("ATSC") is an international organization that develops voluntary standards for digital television and has adopted the major elements of the ATSC Digital Television (DTV) standards that include digital high definition television ("HDTV") and standard definition ("SDTV"). (TAC ¶ 8.)

The TAC explains that a "television" is a video display combined with an internal tuner to receive television broadcast signals, and a "monitor" is a video display without an internal tuner. (TAC ¶ 7.) In the context of a video image or a video display such as a television or a monitor, resolution is measured in "pixels" which are distributed both vertically and horizontally across a video display screen - the more pixels the greater the "resolution" or detail in the displayed image. (TAC ¶ 9.) The number of vertical pixels is frequently used throughout the industry as shorthand for resolution. (TAC ¶ 10.)

According to the TAC, an image is scanned (i.e. drawn) on a video display by either a "progressive" scan, i.e. line by line from top to bottom, or by an "interlaced" scan, i.e. every other line from top left corner to bottom right. (TAC ¶ 11.) According to the TAC, "[a] progressive scan is claimed by companies such as Sony to produce a smoother, cleaner image than an interlaced scan, especially with sports and other motion-intensive content." (*Id.*) Plaintiffs claim that the ATSC DTV standards include a number of standards for HDTV but broadcasters in the United States currently use only two standards: 1280x720 resolution in a progressive scan ("720p") or 1920x1080 resolution in an interlaced scan ("1080i"). (TAC ¶ 12.)

Plaintiffs claim that the ATSC DTV standards also include a standard of 1920x1080 in a progressive scan ("1080p"), combining the smoother progressive scan of 720p with the higher resolution of 1080i, a standard not then being utilized by broadcasters but which created great excitement in the industry for other potential sources for a "native" 1080p signal. (TAC ¶¶ 14, 16.) According to the TAC, in 2005, television manufacturers began marketing "1080p" televisions but because no 1080p sources were then available, these 1080p televisions would "up-convert" signals for 1080p display. Up-conversion resulted in some minor improvements in image display but the interlaced image lacked the smoothness and resolution of a native progressive image, even when displayed progressively through a process known as "de-interlacing," which resulted in "feathering" and other image display distortions. (TAC ¶¶ 16, 17.)

The TAC claims that at the same time that the "so-called 1080p televisions and monitors were introduced, final preparations were underway to release sources that promised actually to provide native 1080p signals." The two main competing technologies for this native 1080p source were Blu-ray Disc ("Blu-ray") and High Definition DVD ("HD-DVD"). Indeed, Sony was the primary developer of Blu-ray. According to the allegations of the TAC, "[i]n July and August of 2005, the HD-DVD and Blu-ray consortiums respectively announced that HD-DVD and Blu-ray players would only output 1080p signals via High-Definition Multimedia Interface ("HDMI"). Thus, a 1080p signal could only be input through an HDMI input." (TAC ¶ 18.)

The TAC alleges that the Sony-brand television models that are the subject of the class action were marketed and sold by Sony as "1080p," but will not accept a 1080p signal from the HDMI input, rendering them incapable of accepting and displaying a native 1080p signal. Significantly, the models at issue cannot be upgraded to accept 1080p signals and cannot be retrofitted to accept

the 1080p signals. (TAC ¶¶ 20, 21.) The TAC alleges that Sony knew or reasonably should have known that the television models that are the subject of the TAC were "incapable of accepting 1080p signals from any available source" but never disclosed this fact in its advertising and marketing materials. (TAC ¶ 22.) Plaintiffs further allege that Sony charged a significant premium price for the 1080p televisions over Sony's other conventional high definition televisions and monitors. (TAC ¶ 23.)

### 2. Allegations Regarding Date's Purchase

Plaintiff Date alleges that, prior to March 31, 2006 (the date on which he claims to have purchased his 1080p television) he reviewed various advertisements and specifications for televisions looking for a 1080p television so that he could utilize the television to view 1080p video sources. (TAC ¶ 35.) Before deciding to purchase the Sony model 1080p television, Date alleges that he "was told, via advertisements and other uniform representations made by both Defendants, including Defendant Sony's published specifications of the Sony-brand television model KDS-R50XBRI, and statements on ABC Warehouse's interactive website, that this model television was a 1080p television." (TAC ¶ 36.) Specifically, Plaintiff alleges that information he received prior to purchasing his television included a statement that the television "contain[ed] enough pixels to fully display a 1080 line picture without interlacing it." (TAC ¶ 36.) The TAC alleges that "[n]owhere in Sony's marketing materials is there an indication that the television cannot accept a 1080p signal through one or more of the television's inputs." (TAC ¶ 37.)

Date alleges that on March 31, 2006, he went to ABC to purchase a 1080p television and was told that the television he purchased was a 1080p television. Date further alleges that the designation "1080p" appeared on a sticker on the television itself as well as on in-store signage that

Sony designed and distributed to retailers like ABC. (TAC ¶¶ 38, 39.) Date alleges that as a result of these representations and advertisements identifying the television as "1080p" he purchased the television. Date alleges that but for these advertisements, and information contained in the Sony specification sheets that promised that the television was 1080p capable, he would not have purchased the television. Date alleges that he paid a premium price for the 1080p television, which was significantly more than he would have paid for a comparable high definition television not designated as 1080p, because of the supposed capacity of the television to accept 1080p signals from all upcoming 1080p sources. (TAC ¶¶ 40-41.) At the time that Date purchased his television, he did not know that the television could not accept a 1080p signal from any 1080p source that was in existence then, or expected in the foreseeable future. (TAC ¶ 43.)

The TAC further alleges that Date attempted to connect his newly-purchased Sony television to his computer, which was pre-calibrated to output a 1080p video signal, and discovered that the television could not display the 1080p signal from his computer. Date telephoned Sony which for the first time informed him that, "contrary to Defendants' advertisements, the television in fact could not accept 1080p video signals via any of its inputs and ports with the exception of the television's over-the-air ("OTA") antenna." (TAC ¶¶ 44-45.) The TAC alleges that this ability of the television to receive 1080p input via the OTA was a useless feature because no OTA broadcaster was then broadcasting in 1080p, nor did any intend to do so in the future. (TAC ¶ 46.) Date attempted to resolve the matter by filing a complaint against Sony and ABC with the Better Business Bureau, and sent both Sony and ABC notice of their failure to comply with applicable statutes and regulations by failing to respond to his complaints, to which Sony responded denying liability and to which ABC never responded. (TAC ¶¶ 47-50.)

### 3. Allegations Regarding Handler's Purchase

Handler alleges that prior to March 31, 2006, he reviewed various advertisements and "other uniform representations made by Sony, including the published specifications of the Sony-brand television model KDS-70Q006, which is the more expensive "Qualia" version of this line of Sony television products" which indicated that the television was a 1080p television and was capable of "full (1080p) High Definition Resolution." (TAC ¶¶ 51-52.) Handler alleges that nowhere in the Sony marketing materials he reviewed was there any indication that the model he purchased could not accept a 1080p signal through one or more of the television's inputs. (TAC ¶ 53.) "In response to and as a result of Defendants' representations and advertisements identifying the television as '1080p' Plaintiff Handler purchased a Sony-brand television model KDS-70Q006 at New York Wholesale Audio & Video in New York City in the summer of 2005." (TAC ¶ 54.)

Handler alleges that he acted in response to advertisements, including those in the Sony store in New York City stating that the model television he purchased was "1080p." (TAC ¶ 56.) Handler states that he paid a premium for the television's supposed capability to accept 1080p signals from 1080p sources. (TAC ¶ 55.) Handler alleges that it was only after he attempted to connect his television to a 1080p capable source that he realized that it lacked the capability to accept the 1080p signal and therefore was not 1080p as advertised and warranted. (TAC ¶ 59.) Handler alleges that he made a demand on Sony under the applicable statutes prior to initiating suit, but that Defendants have failed to comply with their statutory obligations. (TAC ¶ 63.)

Plaintiffs claim that Defendants falsely advertised the televisions they purchased "as being 1080p televisions, i.e. capable of accepting 1080p signals through its relevant inputs and displaying that signal in 1080p format, and charged consumers hundreds of dollars more for a television with

such a characteristic, even though these televisions were not fully capable of accepting 1080p signals though all of their inputs and displaying that signal in 1080p format." (TAC ¶ 78.) Plaintiffs claim that they "have suffered injury in fact and have lost money or property as a result of Defendants' false advertisements and statements and their failure to comply with their obligations imposed under all applicable laws, as they paid for television sets that were not truly 1080p, and paid a premium for such television sets even though they do not possess this specific characteristic, and thus did not perform as advertised." (TAC ¶ 66.)

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).   But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).   "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).   In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 555 (internal citations omitted). The Supreme Court recently clarified, in *Iqbal*, *supra*,  that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

129 S. Ct. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

However, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Twombly, supra,* 550 U.S. at 563 n. 8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 556.

In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document.") (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997).

## III.  ANALYSIS

In their motions to dismiss, both Sony and ABC summarize the essence of Plaintiffs' claims similarly: "Date's case thus reduces to the bare assertion that it was inherently misleading for ABC to use the phrase '1080p' television to describe a 1080p television." (ABC Mot. 1.)  "Plaintiffs' case reduces to nothing more than the claim that it was misleading for Sony to use the phrase "1080p television" to describe 1080p televisions."  (Sony Mot. 2.)  But both ABC and Sony misstate the essence of Plaintiffs' claim, which is that it was misleading for Sony and ABC to use the phrase "1080p" television to describe a television that in fact did not possess all of the characteristics of 1080p television, i.e. the ability to accept 1080p signals natively through all of its inputs.

Sony and ABC's framing of the issue begs the essential question of whether the phrase 1080p television, as used by Sony in its advertising and product specifications, and ABC in its promotions,  and as understood through the ATSC standards in the industry, necessarily included the ability of the television to accept 1080p signal natively via the television's inputs, and not just through its OTA antenna.  This factual dispute is at the very heart of Plaintiffs' claims and the Court cannot conclude, taking all of the allegations of Plaintiffs' TAC as true as it must do for purposes of deciding these motions to dismiss for failure to state a claim, that as a matter of law, the phrase "1080p" does not encompass the essential characteristic that Plaintiffs claim is absent from their

televisions.[5]

## A.    Governing Law

Both Sony and ABC argue that this Court should decline to apply California law, arguing specifically that Michigan law should apply to Date's claims and New York law to Handler's claims. Sony states that: "Date's claim begins and ends in Michigan; he is a Michigan resident, who was supposedly defrauded in Michigan while purchasing his Sony television from a Michigan retail store. His claim has nothing whatsoever to do with California or California law. . . . California has no discernible interest in applying its law to Date's Michigan sales transaction." (Sony Mot. 6.)

It is incredible that Sony makes this argument when Sony argued the 180 degree opposite proposition in opposition to Date's motion to transfer the case from California to this district. In that

---

[5] This Court has already rejected Sony and ABC's argument that this Court should adopt the conclusion of the court in *Johnson v. Mitsubishi Digital Electronics, Inc.*, 578 F. Supp. 2d 1229 (C.D. Cal. 2008) that "the abstract designation 1080p does not convey a specific claim that is recognizable to the targeted consumer." (Sony's Mot. 3; ABC's Mot. 4.) First, the Court notes that the *Johnson* decision was made on a motion for summary judgment, not a motion to dismiss the complaint. As the Ninth Circuit specifically recognized in affirming the district court's conclusion that the phrase "1080p" did not create a warranty that plaintiff's television could process a native 1080p signal through its HDMI ports, the district court's conclusion was based in part on the fact that by that plaintiff's expert's definition of 1080p, the television met that definition by being ready to receive a native 1080p signal through its antenna if and when broadcasters begin transmitting in 1080p. *Johnson v. Mitsubishi Digital Electronics, Inc.*, No. 08-56792, 2010 WL 547777 at * 1 (9th Cir. Feb. 17, 2010).

At this pleading stage, this Court must accept as true the allegations of Plaintiffs' TAC, that use of the phrase 1080p to describe a television that lacked 1080p native signal inputs, was contrary to industry standards and contrary to other representations in Sony's own advertising and specifications, and was in fact misleading to these Plaintiffs. Whether Plaintiffs can support this allegation with "evidence of evidentiary quality," as they would be required to do on a motion for summary judgment, is a question that the Court leaves for another day.

Nor is the Court persuaded by the Third Circuit's opinion in *Cooper v. Samsung Electronics America, Inc*., No. 08-4736, 2010 WL 1220946 (3rd Cir. March 30, 2010) affirming the district court's dismissal of plaintiff's express warranty claim, where plaintiff based his claim on the manufacturer's warranty against defects in materials in workmanship. Plaintiffs in the TAC do not argue a manufacturing defect.

brief opposing the motion to transfer to this Court, Sony argued: "[T]he bulk of Date's allegations are directed at [Sony's] development and marketing of the products at issue and are unrelated to Date's purchase of a single television in Michigan." And elsewhere in that brief, Sony states: "[T]he fact that Date purchased the television in Michigan is of little import." Sony also argued in that brief, contrary to its latest position that California law has no application in this case, that the motion to transfer should be denied because "a Michigan court will have to apply California law." (Pls.' Sony Resp. Ex. C.) Sony makes these same hollow arguments with respect to Handler's claims, which Sony argues should be governed by New York law: "Like Date, [Handler's] claim has nothing to do with California or California or California law." (Sony Mot. 7.)

In any event, the Court finds that it is premature to decide the issue of which law should govern the claims in Plaintiffs' TAC. As recognized by both Sony and ABC, choice of law issues could ultimately play a deciding role in the decision, which has not yet been made in this case, whether or not to certify this case as a class action. "A choice of law analysis would be premature at this stage of the proceedings. . . . [T]he [ ] class has yet to be certified. This Court is unwilling to predict which state law(s) would be applicable in the event the class is certified, particularly given the fact that the anticipated complexity of a choice-of-law analysis may itself be a factor in determining the certifiability of the class." *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (internal quotation marks and citations omitted).

This Court finds that it would be inefficient and premature to determine under which state laws the Plaintiffs have viable claims before deciding the issue of class certification – and before considering the choice of law issues inherent in that decision. Accordingly, to the extent that Sony and/or ABC argue that Plaintiffs' claims must be dismissed due to the nuances of a particular state's

laws, the Court will not rule on these arguments. To the extent that the challenges are predicated on generally applicable theories of law, or to the extent that the arguably applicable law clearly does not differ, the Court will analyze the sufficiency of the TAC to state such a claim.

**B.      Plaintiffs' Claims Under the UCC for Breach of Express Warranty (Count III)[6]**

Plaintiffs claim that the phrase 1080p, as used in both Sony and ABC advertising and promotional materials, and as used by Sony in its product specifications, created an express warranty that the televisions would accept 1080p native signal over all of its inputs. They allege that the phrase "1080p" inherently makes a statement as to the television's input capabilities and that the televisions they purchased in fact did not possess all of these capabilities. As discussed below, Plaintiffs allege that the phrase "1080p" had a very specific meaning to them, that is supported by industry standards and by Sony's and ABC' own advertisements, product specifications and promotional materials, i.e. that the television would accept and display a 1080p signal natively through all of its inputs, and that they specifically relied on this express representation in purchasing their televisions.

**1.      The issue of privity.**

Sony argues, presuming the application of Michigan law, that Date's express warranty claim is foreclosed by the holding of the court in *Heritage Resources, Inc. v. Caterpillar Fin. Servs. Corp.*, 284 Mich. App. 617 (2009) that "privity of contract *is* necessary for a remote purchaser to enforce a manufacturer's express warranty." *Id.* at 344 n.12 (emphasis in original). Plaintiffs argue in

---

[6] Sony assumes that Date's UCC claims are made under Michigan law and Handler's UCC claims under New York law. ABC assumes that Michigan law applies to Plaintiffs' UCC claims. Plaintiffs imply perhaps the application of California's UCC law. For the reasons stated above, the Court will not decide which state's UCC law applies and will not rule out the application of any particular state's UCC law at this pleading stage.

response that privity of contract with Sony is established by the existence of a Limited Express One-Year Warranty and rely on *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp 364, 370 (E.D. Mich. 1977) for the proposition that the additional express warranty embodied by the phrase 1080p must be read "in tandem" with the Express Limited One-Year Warranty to arrive at the entire agreement between the parties. (Pls.' Resp. Sony Mot. 9.)

The parties concede that there was in fact an Express Limited One-Year Warranty issued by Sony directly to Date, of which Sony has asked this Court to take judicial notice for this motion and in all future proceedings. (Sony Mot. 12 n. 8; Wierenga Decl. Ex. A.) Thus, Sony concedes that there was privity of contract between Sony and Date, at least to the extent of the Express Limited One-Year Warranty on parts and labor which accompanied Date's purchase of his Sony television. Sony argues in its Reply that Date cannot rely on the existence of the Express Limited One-Year Warranty because he does not specifically seek to enforce the Express Limited One-Year Warranty in the Third Amended Complaint. (Reply 3.) However, Plaintiffs are not now seeking to enforce that warranty but only to offer its existence to support their contention that there was privity of contract between Sony and Date, limited though it may have been. Plaintiffs are not claiming, as Sony suggests in its Reply brief, that the 1080p input term is contained in the limited warranty. (Sony Reply 3.)

Plaintiffs argue that California law expressly recognizes an exception to such a privity requirement, allowing recovery in cases where privity is normally required when the purchaser of a product relied on representations made by the manufacturer on labels or in advertising. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 268 P.2d 1041, 1048-1049 (Cal. 1954)) (discussing this exception in the context

of both express and implied warranty claims). *See also Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951, 957 (1984) ("when a consumer relies on representations made by a manufacturer in labels or advertising material, recovery is allowable on the theory of express warranty without a showing of privity.") (citing *Burr, supra*). Plaintiffs argue that Handler's claims, if asserted under New York law, also would not fail for lack of privity as New York law appears to be in accord with California law. *See County of Chenango Indus. Dev. Agency v. Lackwood Green Engineers, Inc.*, 494 N.Y.S.2d 832 (App. Div. 3d Dep't 1985) (lack of privity not fatal to express warranty claim where plaintiff alleges that specific representations were made in advertising and sales literature upon which plaintiffs relied).

Plaintiffs in the TAC clearly allege that they relied on representations made by Sony in its advertising, as well as in its product specification materials, as to "1080p." Plaintiffs also clearly allege that ABC made this same representation in its sales and promotional material. While certain states may impose privity requirements that may be fatal to Plaintiffs' express warranty claims, this Court declines to analyze those claims at this stage and declines to dismiss Plaintiffs' express warranty claim for lack of privity at this stage of the proceedings. *See In re K-Dur*, 338 F. Supp. 2d at 546.

2. **Plaintiffs allege that the phrase "1080p" had specific meaning to them, indicating the television's ability to accept 1080p signal natively through all of its inputs, and further allege that they specifically relied on this representation in making their purchases.**

Sony and ABC argue that, issues of privity notwithstanding, Plaintiffs have failed to allege facts demonstrating the creation of an express warranty that the televisions would accept 1080p signals over all of their inputs, not just via their OTA antenna, because they have not demonstrated that Sony or ABC made such a representation and therefore cannot demonstrate that it became a

"basis of the bargain." (Sony Mot. 8-10; ABC Mot. 9-10.) Sony argues that Plaintiffs admitted as much with the allegation in paragraph 37 of the TAC that: "Nowhere in Sony's marketing materials is there an indication that the television cannot accept a 1080p signal through one or more of the television's inputs." But Sony and ABC ignore the fact that Plaintiffs claim that the phrase 1080p, standing alone, implies the ability of the television to accept 1080p through all of its inputs and therefore they allege in paragraph 37 of the TAC that Sony's failure to specifically state that this capability is lacking in the 1080p television it sold to Plaintiffs was false and misleading.

Sony and ABC argue that this was simply Plaintiffs' erroneous "understanding" of the television's input capabilities or that it was mere "puffery," akin to a phrase like "Premium Quality" or "Made in the USA." Again, if this Court assumes, as it must for purposes of this motion, as Plaintiffs' allege in the TAC, that the phrase 1080p means (both by ATSC standard and as described elsewhere in Sony's advertisements and specifications, i.e. "Native Resolution: 1080p" and full 1080p signal processing "without de-interlacing") that the television will accept 1080p signals through all of its inputs, i.e. that Plaintiffs could hook up a Blu-ray device or personal computer or other device that sends a 1080p signal (when and if such devices became commercially available) and have that signal displayed on their television without further processing, then Plaintiffs have adequately pled that use of the phrase"1080p" expressly promised the capabilities that Plaintiffs allege their televisions lacked.[7]

---

[7]   In *Johnson, supra* the district court rejected plaintiff's argument that the ATSC standard, in concert with certain statements made by Mitsubishi in its advertising, created a definition of the term 1080p that supported the finding of an express warranty regarding the television's input capabilities. 578 F. Supp. 2d at 1236-1237. In reaching the conclusion on summary judgment that any reliance by plaintiff on the ATSC standard would have been unreasonable, the court cited expert testimony presented by both parties interpreting these standards. *Id*. at 1237. This Court, analyzing Plaintiffs' claims for sufficiency at the pleading stage, is without benefit of such expert testimony. Moreover,

Sony and ABC also argue that the phrase "1080p" was not made a basis of the bargain because Plaintiffs do not allege that they relied on this designation when making their purchases. The Court finds, and particularly with respect to Plaintiffs Date and Handler, that allegations of reliance clearly have been made in the TAC. (TAC ¶¶ 40-41, 54-56, 90.) Whether such reliance can be proved, and whether if established it was reasonable, is again a question for another day. In *Johnson*, *supra*, the court found, on summary judgment and based upon the testimony of the plaintiff himself, that "Mr. Johnson has not shown that he would have acted any differently had MDEA explicitly told him that the HDMI input ports on his television could not accept native 1080p signals. Mr. Johnson admits that he did not search for information about the television and was not exposed to any MDEA marketing materials prior to his purchase of the television. The truth of the matter is that Mr. Johnson did not care about whether the HDMI input ports on his television could accept 1080p signals." 578 F. Supp. 2d at 1240. Based upon the allegations of the TAC, Plaintiffs in the instant case did care, very much, about whether their televisions could accept 1080p signals through all of their inputs. According to the allegations of the TAC, the phrase "1080p" had a very specific meaning to these Plaintiffs that apparently eluded, or was not significant to, Mr. Johnson.[8]

---

the court also found in *Johnson* that the Mitsubishi manual expressly listed the types of signals that the HDMI ports could process – 480i, 480p, 720p and 1080i. Conspicuously absent from this list, the court found, was 1080p. Rejecting plaintiff's fraudulent concealment claim (a claim not made by Plaintiffs in the case *sub judice*) the court concluded: "the omission of the 1080p signal from this exhaustive list is as good as an affirmative disclosure that its HDMI input ports cannot process a 1080p signal." Sony and ABC have not disclosed a similar arguably "exhaustive" list indeed they appear to concede that the Sony materials do not even mention the television's input capabilities.

[8] The Court expresses no opinion about whether all class members were aware of and understood the phrase 1080p as Plaintiffs Handler and Date allege that they did. Again, these questions are not before the Court on this motion to dismiss for failure of these purportedly lead Plaintiffs to state a claim.

The Court concludes that, irrespective of which state's law ultimately applies, Plaintiffs have sufficiently alleged that the phrase 1080p had specific meaning to them, was relied upon by them in making their decisions to purchase a 1080p television and became a basis of the bargain in their decisions to purchase their televisions. The Court will deny Defendants' motions to dismiss Plaintiffs' express warranty claims.

### C. Plaintiffs' Federal Magnuson-Moss Claims (Counts IV and V)[9]

Both Sony and ABC argue that the failure to plead a cognizable express warranty claim defeats Plaintiffs' Magnuson-Moss claim. Sony and ABC offer no other argument in support of their motions to dismiss Plaintiffs' Magnuson-Moss claim. Because the Court finds that, depending upon the Court's ultimate decision as to the appropriate choice of law to govern Plaintiffs' claims, Plaintiffs have pled cognizable claims for breach of express warranty, it finds that Plaintiffs' Magnuson-Moss claims also survive Sony's and ABC's motion to dismiss.

### D. Plaintiffs' Implied Warranty Claims (Counts VI and VII)[10]

Sony argues that Plaintiffs' implied warranty claims should be dismissed because Michigan law requires privity of contract between a plaintiff and defendant for claims of implied warranty that allege only economic loss. However, as Sony notes in its brief, this issue is far from settled under Michigan law. (Sony's Reply, Dkt. No. 140, 4.) Plaintiffs argue that California courts recognize an exception to the privity requirement where the consumer is a third-party beneficiary of the contract between the manufacturer and a third party. *NVIDIA GPU Litig.*, C-08-04312, 2009 WL

---

[9] Handler has ceded his claim under the Magnuson-Moss Act. (Pls.' Resp. to Sony's Mot. to Dismiss, Dkt. No. 135, 1 n. 5.)

[10] Handler has ceded his claim under state law for Sony's breach of implied warranty. (Pls.' Resp. to Sony's Mot. to Dismiss, Dkt. No. 135, 1 n. 5.)

4020104 at * 6 (N.D. Cal. Nov. 19, 2009).  The Court is not required to make a choice-of-law determination at this stage of the proceedings, and thus the lack of privity issue is not ripe at this stage of the proceedings.

Sony next argues that Plaintiffs' implied warranty claim fails because Sony limited the terms and conditions of any implied warranties to the terms and conditions of the Express Limited One-Year Warranty for repair or replacement for defective manufacturing.  (Sony Mot. 12; Wierenga Decl. Ex. A.)  Sony's response, however, does not address the fact that the separate and additional express warranty claim, i.e. Defendants' product specifications and advertisements touting the television as 1080p capable, contains no such disclaimer.

Lastly, both Sony and ABC argue that Plaintiffs' implied warranty claim must be dismissed because Plaintiffs have failed to allege that the inability of the televisions to accept 1080p signal through all of their inputs rendered the televisions unfit for their ordinary purpose.  (Sony Mot. 12; ABC Mot. 11.)  Plaintiffs claim that the entire 1080p technology, for which they paid a premium price when they purchased their televisions, was not as represented.  In essence they argue that Sony (and ABC) "sold the dream of 1080p" knowing, but not disclosing, that in fact the televisions were not and could never be all that 1080p implies.  The fact that Plaintiffs could watch regular programming on their television sets, even at 1080p resolution through de-interlacing, does not, in Plaintiffs' view, render the televisions fit for their intended purpose of enabling purchasers to utilize the television's inputs for accepting the better/best native 1080p signal, a reasonably foreseeable use according to the Plaintiffs given the targeted advertising and marketing of the televisions as 1080p. Plaintiffs argue, their 1080p televisions failed of their essential purpose when unable to accept and display native 1080p signal.  Again, without deciding which state's implied warranty law may apply,

this Court cannot conclude, as a matter of law, that these 1080p televisions were fit for their intended use when they were allegedly unable to perform to the essential promises made in their advertisements and marketing materials, according to the allegations of the TAC, that they would accept and display1080p signal natively through all of their inputs.[11]  The Court will deny Defendants' motions to dismiss Plaintiffs' implied warranty claims.

###   E.     Plaintiffs' Unjust Enrichment Claim (Count VIII)

The parties agree on the generally applicable legal parameters of a claim of unjust enrichment in any jurisdiction  –  the receipt of a benefit by the defendant from the plaintiff which it would be inequitable to allow the defendant to retain.  *See, e.g., Power Tools & Supply, Inc. v. Cooper Power Tools, Inc*., 543 F. Supp. 2d 749, 763 (E.D. Mich. 2008).  The parties further agree that a benefit is not unjust, and the party conferring it is not entitled to restitution, where the benefit is unconditionally conferred without mistake, coercion, or request.  *See, e.g., In re McCallum Estate*, 153 Mich. App. 328, 335 (1986).  Plaintiffs allege that they were induced to purchase their televisions based upon the misrepresentation that the televisions were capable of accepting and displaying a native 1080p digital signal through their inputs, which they were not.  Plaintiffs therefore allege that the premium they paid for their alleged 1080p televisions was conferred as a result of mistake or fraud.  (Pls.' Resp. Sony 14.)  Plaintiffs argue, correctly, that they are entitled to plead their claim for unjust enrichment as an alternative to their claims for breach of contract so

---

[11] Sony argues that Plaintiff Handler's claims for breach of implied warranty and under Magnuson-Moss are barred by the doctrine of *res judicata* as a result of the dismissal of his action in California. (Sony Mot. 13-14.)  While Plaintiffs disagree with Sony's *res judicata* analysis, Plaintiffs concede that Plaintiff Handler is no longer asserting an implied warranty or Magnuson-Moss claim in this action.  Plaintiffs argue that this does not prevent Date, on behalf of himself and the remainder of the putative class, from asserting these claims. Sony has not argued that its *res judicata* argument applies to any party but Handler and does not challenge this argument in its Reply.

long as questions of fact exist as to the existence of a claim based on contract. *In re K-Dur,* 338 F.

Supp. 2d at 544 (dismissal of unjust enrichment claim premature where federal rules allow pleading

alternate theories of recovery).  Accordingly, the Court will deny Defendants' motions to dismiss

Plaintiffs' unjust enrichment claim.

### F.  Plaintiffs' Claim for Declaratory Relief (Count IX)

"The Declaratory Judgment Act confers on federal courts unique and substantial discretion

in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277,

286-87 (1995).  Pursuant to 28 U.S.C. § 2201(a), any court "may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a) (emphasis added). Declaratory relief may be considered

independently even if there are other appropriate forms of relief. *Powell v. McCormack*, 395 U.S.

486, 499 (1969).

While it is clear that this Court has the discretion to allow or deny declaratory relief, at the

pleading stage, this Court finds that this decision is premature. If Plaintiffs succeed on the claims

stated in their TAC, "then declaratory relief may very well be superfluous and subject to dismissal

by this court." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1101 (N.D. Cal. 2006).  In the

absence of a determination as to the claims of the TAC, the Court will deny Defendants' motions

to dismiss Plaintiffs' claims for declaratory relief at this stage of the proceedings.

### G.  Plaintiffs' Claim Under the Michigan Consumer Protection Act (Count X)

Date purports to bring a claim under the Michigan Consumer Protection Act, Mich. Comp.

Laws § 445.903 *et seq.*, ("the MCPA") on behalf of himself and a subclass of purchasers within the

State of Michigan. Assuming without deciding that Michigan law ultimately will apply to Plaintiffs' claims, the Court finds that Plaintiffs have adequately pled a claim under the MCPA. Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful." Mich. Comp. Laws § 445.903(1). The MCPA is much broader than the common law tort of fraud, covering not only deceptive practices but also unfair and unconscionable conduct.

Accordingly, Date need not necessarily allege the elements of fraud and certainly need not plead a claim under the MCPA with the particularity required by Federal Rule of Civil Procedure 9(b). *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 651 (E.D. Mich. 2003) (rejecting dismissal of MCPA claim based upon plaintiff's failure to plead fraud with particularity, recognizing that "[d]eceptive trade practices, however, are not the only conduct prohibited by the MCPA" and finding that claims of breach of warranty asserted under the MCPA need not meet the heightened fraud pleading standards). *See also Game On Ventures v. General RV Center, Inc.*, 587 F. Supp. 2d 831, 839 (E.D. Mich. 2008) ("The MCPA is broader than common law torts of fraud inasmuch as it prohibits not only 'deceptive' business practices but also those which are 'unfair' and 'unconscionable.'") (internal quotation marks and citations omitted).

Specifically with respect to the common law fraud requirement of reliance, not all of the MCPA's thirty-three 'unfair, unconscionable or deceptive methods, acts or practices' require that the plaintiff show reasonable reliance by the consumer. *Evans v. Ameriquest Mtg. Co.*, No. 233115, 2003 WL 734169 at * 3 (Mich. App. March 4, 2003) (unpublished) ("While a cause of action under the MCPA has similarities to a fraud claim, the MCPA captures more conduct within its sweep and offers greater protection to consumers.") *But see Jackson v. Telegraph Chrysler Jeep, Inc*., No.

253100, 2005 WL 1459610 at * 1 (Mich. App. June 21, 2005) (unpublished) ("Reliance on the seller's representations is an implicit element of the MCPA. *See* Mich. Comp. Laws 445.903(1)(d), (e).")  Plaintiffs allege violations of several sections of the MCPA, some of which do not require a showing of reliance.  As to those which do, as discussed above, Plaintiffs have pled in the TAC that they relied on the representation that the televisions could accept native 1080p signals through their inputs, and not just through their OTA.  Accordingly, the Court will deny Defendants' motions to dismiss Date's claim under the MCPA.

**H.      Handler's New York General Business Law Claim (Count XI Against Sony Only)**

Handler purports to bring a claim on behalf of himself and a subclass of persons that purchased the Sony televisions within the State of New York under Section 349 of the New York General Business Law, N.Y. Gen. Bus. Law § 349, which declares unlawful  "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, NA*, 85 N.Y.2d 20, 24 (1995).  Proof of justifiable reliance is not required to establish a violation.  *Id*. at 26.  Sony argues that Handler's claim under this section of the New York General Business Law statute fails for the same reasons that Date's claim under the MCPA must fail.  Without deciding the applicability of New York law to Plaintiffs' claims, the Court finds that for the same reasons that Plaintiffs' claims survive Sony's and ABC's motions to dismiss the MCPA claims, Handler's claim survives under the New York General Business statute.  Accordingly, the Court will deny Sony's motion to dismiss Handler's claim under section 349 of the New York General Business Law.

**I.       Plaintiffs' Claims Under the California Consumers Legal Remedies Act and the California Business and Professional Code (Counts I and II Against Sony Only)**

Sony argues that for the same reasons that the Court should dismiss Plaintiffs' claims under the MCPA and the New York General Business Law, it should dismiss Plaintiffs' claims against Sony under the California Consumers Legal Remedies Act and the California Business and Professional Code. (Sony Mot. 7.) For the reasons discussed in sections G and H above, the Court denies Sony's motion to dismiss Plaintiffs' claims under these California consumer protection statutes.[12]

## IV. CONCLUSION

The Court DENIES Sony's Motion to Dismiss (Dkt. No. 125) and DENIES ABC's Motion to Dismiss (Dkt. No. 127).

---

[12] Sony also argues that the TAC fails to allege that Handler provided the notice required under the California Consumers Legal Remedies Act. (Sony Mot. 7.) In response, Plaintiffs attach the letters that Handler sent to Sony, giving notice of his claims. (Pls.' Resp. Sony Exs. A, B.) Plaintiffs concede that this notice was sent after Handler originally filed his suit but before Sony filed an answer and before Handler filed an Amended Complaint. (Pls.' Resp. Sony 6-7.) Plaintiffs cite California law indicating that the purpose behind the notice requirement of the CLRA is satisfied if the defendant receives notice in time to avoid liability if it chooses to correct the alleged wrongs within 30 days. *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1260-1261 (Cal. App. 2009) (notice provision intended to allow defendant to avoid liability if wrongs corrected and dismissal with prejudice not necessarily required for failure to give such notice if this purpose is met). That purpose was satisfied here where Sony had ample time after receiving notice to correct the alleged wrong before Handler filed his Amended Complaint, which Sony chose not to do. The Court concludes that, assuming without deciding that California applies, it would not be within the spirit of the CLRA to dismiss Handler's claim or to deny an opportunity to amend on this basis on the facts presented. Additionally, notice is not required at all for claims seeking injunctive relief. *Id.* at 1260.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 16, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 16, 2010.

S/Denise Goodine
Case Manager