UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR. AND ELLIOT
HANDLER.
Individually and On Behalf of All Others
Similarly Situated,

        Plaintiff,

vs.

SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC., d/b/a ABC
WAREHOUSE,

        Defendants.

Case No. 07-CV-15474

Honorable Paul D. Borman

Magistrate Judge R. Steven Whalen

_____/

CHITWOOD HARLEY HARNES LLP
Darren T. Kaplan (*pro hac vice*)
1230 Peach Street, NE
2300 Promenade II
Atlanta, GA 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476
Dkaplan@chitwoodlaw.com

KABATECK BROWN KELLNER LLP
Brian S. Kabateck
644 South Figueroa Street
Los Angeles, CA 90071
Tel: (213) 217-5000
Fax: (213) 217 5010
Email: bsk@kbklawyers.com

*Attorneys for Plaintiffs*
*(additional counsel on service page)*

MILLER, CANFIELD, PADDOCK &
STONE, PLC
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kefalas (P64949)
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415
Telephone: (313) 496-7756
wierenga@millercanfield.com

*Attorneys for Defendants*

_____/

**DEFENDANT SONY ELECTRONICS, INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL COMPLETE RESPONSES
TO REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiffs' motion to compel is a waste of time and an abuse of the Rule 37 process. There is no dispute, and there is nothing to compel. As plaintiffs very well know – indeed, do not really dispute – ***Sony has already produced the exemplars of marketing, point-of-sale and packaging materials that plaintiffs have requested.*** Plaintiffs' real complaint is not that Sony has withheld the requested exemplars, but rather that the exemplars Sony has produced do not fit plaintiffs' preconceived theories of the facts and the case, because they do not contain the term "1080p."[1] Based solely on plaintiffs' unsupported assertions that Sony must, somewhere, have documents more helpful to their case, plaintiffs now ask this Court to sanction Sony for failing to produce documents that more fully support their liability theories. That is obviously not an appropriate basis for a Rule 37 motion. Plaintiffs' motion should be denied, and Sony should be awarded its costs and attorney fees pursuant to FRCP 37(a)(5)(B).

Awarding Sony its costs is particularly appropriate here because plaintiffs knew that their motion lacked substantial justification long before they filed it. On October 6, plaintiffs sent Sony a letter in which they claimed Sony had failed to produce "exemplars of the point-of-sale advertising (which fairly includes decals Sony placed on the televisions prior to sale)" or "exemplars of all versions of packaging materials for and boxes" related to the four Sony televisions at issue here. *See* Pl. Mot., Ex. 3 (Kaplan 10/6/10 letter to Pozza). The next day, Sony pointed out that plaintiffs were seriously mistaken:

> So the record is clear: Sony has conducted an exhaustive search and produced a large volume of point of sale and marketing materials that were made available to dealers and/or used by Sony directly, and the vast majority of that information was contained in our first production in January.

---

[1] Plaintiffs have based their liability theories in this case almost entirely on the assumption that Sony used the term "1080p" to market and sell the televisions at issue in this case. *See generally* Third Amended Complaint, Docket # 123. As detailed herein, that assumption is incorrect.

> Additionally, Sony's production on July 23, 2010, which contained among other items Sony's call center data for the XBR1 model televisions, contained the "dealer network" documents—i.e., dedicated materials made available to retailers—for the XBR1 models. Those documents are at Sony 0581643-0581871. Sony 0581651-52 contains a list of dealer network "assets" for those televisions, and we have produced all of the assets listed—in some cases, as with the operating manuals for the televisions, several times over.
>
> We have no reason to believe that our production of documents responsive to your requests for this information is incomplete. You first told us that you thought the production was missing "1080p stickers" and/or "box art" in July; we immediately began the process of double-checking our document production to ensure that we hadn't missed something. We produced pictures of the XBR1 boxes on August 2. You have never asked to inspect the boxes themselves, but that can be arranged if you would like to do so.
>
> Regarding stickers, Sony has conducted a very thorough search of information about the product assembly process used with these televisions, in order to ensure that our production regarding "stickers" on the televisions is complete. In the course of that investigation, which is substantially complete, we have located an engineering build of material document that lists all production parts for the KDS-R5OXBR1 model. "Labels" for the model (which, we understand, would be the same for the KDS-R6OXBR1 model), which are placed during production are listed at the top. There is no "1080" or "1080p" label listed, consistent with Sony's understanding that there was no Sony-created or Sony-provided sticker stating "1080" or "1080p" on these televisions. We have not produced any "1080p stickers," in other words, because we have none to produce in connection with the televisions at issue in this case.

*See* Pl. Mot., Ex. 5 (Wierenga 10/7/10 letter to Kaplan).

Plaintiffs do not, because they cannot, dispute any of the above. Their decision to file this motion anyway – based on nothing more than their unsubstantiated claims that Sony must be hiding documents – was inappropriate. Plaintiffs' motion should be denied, and Sony should be awarded its costs in responding to it.

## I.      SONY HAS PRODUCED DOCUMENTS RESPONSIVE TO PLAINTIFFS' REQUESTS 9 AND 14

First, and most fundamentally, the Court should deny plaintiffs' motion because there is no basis for plaintiffs' claim that Sony has failed to produce documents

3

responsive to their requests for production 9 and 14.  As Sony has repeatedly told plaintiffs, it has made a full production of the marketing, point-of-sale and packaging materials utilized in conjunction with the televisions at issue in this case.  For example, Sony has produced the following documents and materials to plaintiffs, among thousands of others:

- Sony's point-of-sale materials (including stickers) for various promotional campaigns that included the Qualia and/or XBR1 models at issue, which were made available for retailers to order (*see, e.g.*, Sfeir Decl., Exs. H, I, J, L, N, O, P, X);

- Multiple copies, versions and drafts of the materials made available to XBR1 retailers via Sony's online networks for product information, including logos (such as "XBR," "HDMI," "SXRD" and "like.no.other"), cut-away sheets, manuals, quick set-up guides, photos of the televisions and stands, and technology white papers, including, but not limited to, SONY 0581643-71;[2]

- Sony's national advertising and marketing promotions for Qualia and XBR1 models, including newspaper/magazine ads, brochures, and Sony's FSIs (free-standing inserts) and advertorial inserts for SXRD and holiday sales, including television and radio ads, and including drafts and scripts.  These documents included, but were not limited to, SONY 0000129-34, 157, 777-889, 1838-71, 0583502-03, 0642189-90 (*see also* Sfeir Decl. Ex. K, M, Q, R, S, T, U, V, W).  Sony even produced multiple copies (again, including different versions and drafts) of promotional and marketing materials for the next generation SXRD televisions for comparison purposes; and

- Retail sales ad circulars from multiple retailers advertising the televisions at issue, including, but not limited to, SONY 0000050-75, 3814-22, 3831-40, 3855-77, 3882-84, 3888-97, 3898-3903, 3908-3911, 4173-82, 4231-40, 4247-53, 4258-66 among dozens of others.

There accordingly is no basis for plaintiffs' claim that they have "not received documents in response to Document Requests 9 and 14." *See* Pl. Mot. at 5.  Plaintiffs

---

[2] Sony has not included copies of all of the documents it produced to plaintiffs responsive to the requests at issue in this motion—to do so would require production of tens of thousands of pages of documents.  If the Court requires more information about the content of Sony's document production—which to date includes more than 600,000 images and multi-media documents, Sony is happy to provide more detail.

4

have received those documents, in great quantity and detail.  After a very diligent search, Sony has given plaintiffs not only exemplars of the marketing and point-of-sale materials used in conjunction with the televisions at issue in this case, but also drafts of and communications regarding those materials, multiple versions of those materials, marketing and point-of-sale materials for the next-generation SXRD televisions, and even Sony's television commercials for the SXRD televisions at issue in this case, including, but not limited to, Sfeir Decl. at Exs.A, B, D, X; SONY 0583502-03, 0642189-90.  Plaintiffs have also received exemplars of the only boxes – and thus the only "box art" – used in production of the XBR1 televisions.  *See* Larson Decl. at ¶¶4-6.

Plaintiffs are asking this Court to compel Sony to produce documents already in plaintiffs' possession.  That is obviously unnecessary and inappropriate.  For this reason alone, plaintiffs' motion should be denied.

## II. PLAINTIFFS' DISSATISFACTION WITH THE CONTENT OF SONY'S DOCUMENTS IS AN INSUFFICIENT AND IMPROPER BASIS FOR THIS MOTION

Plaintiffs' real complaint is not with Sony's supposed "failure" to produce documents, but rather with the content of the documents that Sony has produced.  In particular, plaintiffs are disappointed that the documents produced by Sony do not support plaintiffs' claim that Sony (1) placed "1080p" stickers on the televisions in question and (2) put the phrase "1080p" on the side of the boxes in which the televisions were sold.  *See* Pl. Mot. at 5-6.  Plaintiffs' dissatisfaction with the content of the documents produced by Sony is an insufficient basis for this motion to compel.

There is no basis whatsoever for plaintiffs' claim that Sony has withheld "1080p" stickers that were placed on the televisions at issue.  Plaintiffs first raised this

issue with Sony in July 2010, when they claimed that Sony's production was "missing" 1080p stickers. In response, Sony double-checked its production, and undertook an additional investigation to confirm what, if any, stickers were placed on the televisions in question. *See* Pl. Mot, Ex. 5 (Wierenga 10/7/10 letter to Kaplan). That investigation confirmed what Sony has repeatedly told plaintiffs: that there were ***no*** "1080p" stickers or logos used in conjunction with the televisions in this litigation. *See* Sfeir Decl. at ¶¶5, 11-12. The "1080p" stickers and logos on which plaintiffs have, unwisely, decided to base their theory of the case were not used by Sony until it introduced the ***replacement models*** for the televisions at issue here. *See id.* at ¶¶ 6-10.[3] Sony cannot be compelled to produce documents it does not have simply because one of the plaintiffs, David Date, thinks he saw a "1080p" sticker on the Sony television he purchased. He is mistaken, on this point and others,[4] and his self-serving testimony is not a sufficient basis for this motion in any event.

Nor is there any basis for plaintiffs' claim that Sony must have additional exemplars of "1080p" "box art" that it has not produced to plaintiffs. Plaintiffs asked

---

[3] Sony is not merely asking plaintiffs to take Sony's word on this point; it has produced thousands, if not tens of thousands, of documents showing that Sony used "1080p" stickers and logos in conjunction with marketing relating to the XBR2 and A2000 models that replaced the XBR1 and Qualia model televisions at issue here, but did not use "1080p" stickers or logos with the marketing relating to the XBR1 and Qualia models. *Cf., e.g.,* Sfeir Decl. Ex. D *with* Sfeir Decl. Exs. O and P.

[4] Mr. Date has a history of making very specific claims regarding what he supposedly saw, or heard, in conjunction with the purchase of his Sony XBR1 television, only to later retract those claims and admit they were inaccurate. For example, Mr. Date originally claimed that he was told by defendants that his television "would always run at 1080p." *See* Wierenga Decl., Ex. 1, Date Deposition Transcript at 194:14-196:21. Later, Mr. Date admitted that no one told him his television "would always run at 1080p;" instead, he now claims, he was told by defendants that his television was a "1080p television." *See id.* at 196:22-198:7; 191:2-193:25. There is no reason to give any weight to Mr. Date's testimony that he saw a "1080p" sticker on his television, especially when he could remember virtually no other specifics about his purchase of that television. *See, e.g., id.* at 201:2-205:8 (Mr. Date admitting that virtually the only thing he remembers about the box his television came in is that it supposedly said "1080p" on the side).

Sony to produce exemplars of the packaging materials and boxes used with the televisions at issue. Sony produced the responsive documents in its possession; plaintiffs were provided photographs of the boxes for the XBR1s, along with the materials included in the boxes—such as the manuals and the quick start guides for all of the televisions at issue in the litigation.

The boxes for which Sony provided the exemplars listed above were the only boxes used in production of the XBR1 televisions at issue here. *See* Larson Decl. at ¶¶ 4-6. This is not changed by the fact that the exemplars provided by Sony later had the word "refurbished" printed in small text on a sticker affixed to the side. *See id.* at ¶6.

There is, in sum, no basis for plaintiffs' claims that Sony has failed to produce the "stickers," "box art," or other exemplars requested in plaintiffs' requests 9 and 14. Plaintiffs' motion should be denied.

## III. PLAINTIFFS' MOTION IS BASELESS AND THEY ARE NOT ENTITLED TO ANY OF THEIR REQUESTED RELIEF

Plaintiffs' motion should also be denied because plaintiffs are not entitled to any of the relief that they have requested. First, for the reasons discussed above, plaintiffs are not entitled to any relief in connection with Sony's supposed "failure" to produce documents responsive to plaintiffs' document requests 9 and 14, since Sony has produced those documents. For this reason alone, plaintiffs' motion should be denied in its entirety.

Plaintiffs have also requested an order compelling Sony to "provide complete responses to Plaintiffs' Written Discovery." Pl. Mot. at 8. To the extent this request relates to requests 9 and 14, it should be denied for the reasons described above. To the extent this request relates to anything other than those document requests, it should be

rejected due to plaintiffs' failure to either (1) confer pursuant to FRCP 37 and Local Rule 37-1 or (2) provide any explanation of, let alone support for, the claim that Sony has failed to respond to plaintiffs' "written discovery."

Plaintiffs have also requested an extension of the fact discovery period by three months. *Id.* This request should be denied because plaintiffs have not even attempted to demonstrate that Sony's supposed "failure" to produce documents has prevented plaintiffs from completing discovery. Plaintiffs' own behavior in discovery actively undermines that claim. Plaintiffs have had Sony's initial disclosures and interrogatory responses for more than a year, and have had the vast bulk of Sony's document production for several months, and yet they have never served deposition notices on Sony or even asked Sony's counsel about potential witness availability. Plaintiffs failed to serve *any* discovery, of any kind, on defendant ABC Warehouse until October 27, 2010. Finally, although plaintiffs have had Sony's responses to plaintiffs' first set of interrogatories and requests for admission since July *2009*, they did not serve any follow-up discovery on Sony (a second set of requests for admission) until October 26, 2010, more than a year later. Plaintiffs attached several Sony documents to their second set of requests for admission; every one of them had been produced by Sony on January 8, 2010. If plaintiffs do not feel they have enough time to finish discovery, they have only themselves to blame.

Finally, plaintiffs are obviously not entitled to an order precluding Sony from "denying that the term '1080p' appeared on decals, stickers and packaging materials for the Class televisions." Pl. Mot. at 8. There is no basis for such an order here: as detailed above, Sony has made a full production of the documents requested by plaintiffs (and those documents, indeed, do not contain the term "1080p"). Moreover, plaintiffs would not be entitled to this type of

relief even if their motion had merit (and it does not); Rule 37(b)(2) provides that preclusion orders may be imposed as a discovery sanction only when a party has violated a discovery order, and Sony has not done so.

### IV. SONY SHOULD BE AWARDED COSTS AND ATTORNEY FEES BECAUSE PLAINTIFFS' MOTION LACKS SUBSTANTIAL JUSTIFICATION

In addition to denying plaintiffs' motion, the Court should award Sony the costs it has incurred in responding to that motion, because plaintiffs filed it without substantial justification. *See* FRCP 37(a)(5)(B). As detailed above, plaintiffs were well aware of the fact that Sony had not withheld the documents that plaintiffs have moved to "compel" before they filed their motion, and they filed that motion anyway. Their only proffered bases for doing so were (1) Mr. Date's self-serving testimony that he saw a "1080p" sticker on his television; (2) counsel's unsubstantiated belief that Sony must have additional exemplars of "box art" and (3) the utterly irrelevant fact that Sony LCD televisions sold in 2010, unlike the Sony SXRD televisions at issue here (which were sold in 2005-06), have "1080p" logos on their boxes.[5] None of these exceedingly thin reeds was sufficient to support the weight of the accusations that plaintiffs have made against Sony in this motion. *See, e.g., Duinninck Brothers, Inc. v. Howe Precast, Inc.*, 2008 WL 2625851 (E.D. Texas 2008) (finding motion to compel lacked substantial justification, and awarding defendants fees and costs, when plaintiff moved to compel production of documents that defendants had already produced). Sony should be awarded the costs and attorney fees it incurred while responding to plaintiffs' motion.

---

[5] Given the rapid state of change typical in the consumer electronics industry, plaintiffs' claim that Sony LCD television boxes from 2010 are somehow evidence of what Sony's SXRD television boxes from 2005 must have looked like is, to put it mildly, baseless.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK & STONE, PLC

s/ Robert J. Wierenga.
Robert J. Wierenga (P59785)
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415
Telephone: (313) 496-7756
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 5, 2010, I electronically filed the foregoing **DEFENDANT SONY ELECTRONICS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLETE RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS** with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

CHITWOOD HARLEY HARNES LLP
Darren T. Kaplan
1230 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 873-4476
Email: dkaplan@chitwoodlaw.com

KABATECK BROWN KELLNER LLP
Brian S. Kabateck
644 South Figueroa Street
Los Angeles, CA 90071
Tel: (213) 217-5000
Fax: (213) 217 5010
Email: bsk@kbklawyers.com

LIBLANG ASSOCIATES
Dani K. Liblang
346 Park St., Ste 200
Birmingham, MI 48009
Tel: (248) 540-9270
Fax: (248) 433-1989
Email: danil@lemonlawyers.com

CONSUMER LAW GROUP OF CALIFORNIA
Alan Mansfield
9466 Black Mountain Rd, Ste 225
San Diego, CA 92126
Telephone: (619) 308-5034
Fax: (888) 341-5048
Email: alan@clgca.com

THE CONSUMER ADVOCACY CENTER
Lance A. Raphael
180 W. Washington St., Ste 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930
Email: Lance@caclawyers.com

MILLER, CANFIELD, PADDOCK & STONE, PLC

s/ Robert J. Wierenga.
Robert J. Wierenga (P59785)
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415
Telephone: (313) 496-7756

*Attorneys for Defendants*