UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR. and ELLIOT
HANDLER, Individually and On Behalf of All
Others Similarly Situated,

                Plaintiffs,

vs.

SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC., d/b/a ABC
WAREHOUSE,

                Defendants.

Case No. 07-CV-15474

Honorable Paul D. Borman
Magistrate Judge R. Steven Whalen

---

*Counsel for Plaintiffs:*

Dani K. Liblang (P33713)
LIBLANG & ASSOCIATES
346 Park St., Suite 200
Birmingham, Michigan 48009
(248) 540-9270
danil@lemonlawyers.com

Lance A. Raphael (IL 6216730)
CONSUMER ADVOCACY
CENTER, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602
(312) 782-5808
lance@caclawyers.com

Alan Mansfield (CA 125988)
CONSUMER LAW
GROUP OF CALIFORNIA
9466 Black Mountain Rd.,
Suite 225
San Diego, CA 92126
(619) 308-5034
alan@clgca.com

Brian S. Kabateck (CA 152054)
KABATECK BROWN
KELLNER LLP
644 S. Figueroa St.
Los Angeles, CA 90071
(213) 217-5000
bsk@kbklawyers.com

Darren T. Kaplan (GA 2447381)
CHITWOOD HARLEY
HARNES LLP
1230 Peachtree, NE, Suite 2300
Atlanta, GA 30309
(888) 873-3999
dkaplan@chitwoodlaw.com

*Counsel for Defendants:*

Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kafalas (P64949)
MILLER, CANFIELD, PADDOCK & STONE, PLC
150 W. Jefferson Suite 2500
Detroit, Michigan 48226-4415
(313) 496-7756

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AGAINST DEFENDANT SONY ELECTRONICS, INC.**

1

Plaintiffs David Date and Elliot Handler move this Court to certify this case as a class action, stating as follows:

1.    Plaintiffs' claims are based upon Sony Electronics, Inc.'s representations and advertisements that certain Sony televisions, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005, were "1080p" televisions, even though such televisions were incapable of accepting a 1080p video signal via any input other than the Over-the-Air Antenna.

2.    Because the claims at issue arise from Sony Electronic, Inc.'s standardized practice of unfairly and deceptively representing the capabilities of the televisions, a class action is ideal.

3.    In determining whether a class will be certified, it should be noted that this court "has broad discretion in deciding whether to allow the maintenance of class actions."[1] Further, "Rule 23 is to be construed liberally in order to best serve the ends of justice and promote judicial economy."[2]

4.    As detailed in Plaintiffs' accompanying memorandum, the requirements to proceed with a class action - numerosity, commonality, typicality, and adequacy - provided for by Federal Rule of Civil Procedure 23, are satisfied in this case.  Moreover, the requirements for certifying a Rule 23(b)(3) class are also met.

WHEREFORE, Plaintiffs David Date and Elliot Handler respectfully request that this Court enter an order certifying this case as a class action, and certify <u>Classes A & B</u> as detailed in their accompanying memorandum.

---

[1]    *Stanley v. U.S. Steel Co.*, No. 04-74654,  2006 U.S. Dist. LEXIS 16582, at *13 (E.D. Mich. Mar. 17, 2006) (citation omitted)

[2]    *Walsh v. Northrup-Grunman Corp.*, 162 F.R.D. 440, 443 (E.D.N.Y. 1995)

2

Respectfully Submitted,

By:   /s/ Lance A. Raphael

Dani K. Liblang
LIBLANG & ASSOCIATES
346 Park Street, Suite 200
Birmingham, Michigan 48009

Alan Mansfield
CONSUMER LAW GROUP
OF CALIFORNIA
9466 Black Mountain Road
Suite 225
San Diego, California 92126

Lance A. Raphael
THE CONSUMER
ADVOCACY CENTER, P.C.
180 West Washington
Suite 700
Chicago, Illinois  60602

Darren T. Kaplan
CHITWOOD HARLEY
HARNES LLP
1230 Peachtree Street, NE,
Suite 2300
Atlanta, GA 30309

Brian S. Kabateck
KABATECK BROWN
KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90071

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID DATE, JR. and ELLIOT
HANDLER, Individually and On Behalf of All
Others Similarly Situated,

                Plaintiffs,                    Case No. 07-CV-15474

vs.                                        Honorable Paul D. Borman
                                           Magistrate Judge R. Steven Whalen

SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC. d/b/a ABC
WAREHOUSE,

                Defendants.

---

*Counsel for Plaintiffs:*

| | | |
|---|---|---|
| Dani K. Liblang (P33713) | Lance A. Raphael (IL 6216730) | Alan Mansfield (CA 125988) |
| LIBLANG & ASSOCIATES | CONSUMER ADVOCACY | CONSUMER LAW |
| 346 Park St., Suite 200 | CENTER, P.C. | GROUP OF CALIFORNIA |
| Birmingham, Michigan 48009 | 180 West Washington, Suite 700 | 9466 Black Mountain Rd., |
| (248) 540-9270 | Chicago, Illinois 60602 | Suite 225 |
| danil@lemonlawyers.com | (312) 782-5808 | San Diego, CA 92126 |
| | lance@caclawyers.com | (619) 308-5034 |
| | | alan@clgca.com |
| | | |
| Brian S. Kabateck (CA 152054) | Darren T. Kaplan (GA 2447381) | |
| KABATECK BROWN | CHITWOOD HARLEY | |
| KELLNER LLP | HARNES LLP | |
| 644 S. Figueroa St. | 1230 Peachtree, NE, Suite 2300 | |
| Los Angeles, CA 90071 | Atlanta, GA 30309 | |
| (213) 217-5000 | (888) 873-3999 | |
| bsk@kbklawyers.com | dkaplan@chitwoodlaw.com | |

*Counsel for Defendants:*
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kafalas (P64949)
MILLER, CANFIELD, PADDOCK & STONE, PLC
150 W. Jefferson Suite 2500
Detroit, Michigan 48226-4415
(313) 496-7756

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR CLASS CERTIFICATION
<u>AGAINST DEFENDANT SONY ELECTRONICS, INC.</u>**

## TABLE OF CONTENTS

**PAGE**

CONCISE STATEMENT OF THE ISSUES PRESENTED...............................................ii

INDEX OF MOST CONTROLLING AUTHORITIES ....................................................iii

I.     INTRODUCTION.................................................................................................1

II.    STANDARD FOR CLASS CERTIFICATION. ...................................................3

III.   LEGAL DISCUSSION. ........................................................................................4

       A.     PLAINTIFFS MEET THE RULE 23(a) REQUIREMENTS.........................4

              1.     Numerosity ...................................................................................4

              2.     Commonality.................................................................................5

              3.     Typicality......................................................................................8

              4.     Adequacy Of Representation.......................................................9

       B.     PLAINTIFFS MEET THE RULE 23(b) REQUIREMENTS. ......................10

              1.     Common Factual Issues Predominate.......................................11

              2.     Common Legal Issues Predominate..........................................11

              3.     Superiority...................................................................................13

       C.     APPLICATION OF PLAINTIFFS' CLAIMS TO A NATIONWIDE CLASS IS
              APPROPRIATE. ......................................................................................15

              1.     Application Of California Law Is Constitutional......................16

              2.     Sony Cannot Meet Its Burden To Show That Another State's
                     Law Applies...............................................................................17

IV.    CONCLUSION....................................................................................................19

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.  Should the court find that the requirements of Federal Rule of Civil Procedure 23 have been met, and certify a class consisting of all persons nationally who purchased a Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and/or KDX-46Q005?

    PLAINTIFFS' ANSWER:       YES

2.  Have Plaintiffs satisfied the numerosity requirement of Rule 23(a)(1)?

    PLAINTIFFS' ANSWER:       YES

3.  Have Plaintiffs satisfied the commonality requirement of Rule 23(a)(2)?

    PLAINTIFFS' ANSWER:       YES

4.  Have Plaintiffs satisfied the typicality requirement of Rule 23(a)(3)?

    PLAINTIFFS' ANSWER:       YES

5.  Have Plaintiffs satisfied the adequacy requirement of Rule 23(a)(4)?

    PLAINTIFFS' ANSWER:       YES

6.  Have Plaintiffs satisfied the predominance requirement of Rule 23(b)(3)?

    PLAINTIFFS' ANSWER:       YES

7.  Have Plaintiffs satisfied the superiority requirement of Rule 23(b)(3)?

    PLAINTIFFS' ANSWER:       YES

8.  Is application of California law to a nationwide class appropriate in this case, where Sony is headquartered in California and the advertisements and representations that form the basis of Plaintiffs' claims were devised in and emanated from California?

    PLAINTIFFS' ANSWER:       YES

## <u>INDEX OF MOST CONTROLLING AUTHORITIES</u>

**Issue 1**

Fed. R. Civ. P. 23

**Issue 2**

Fed. R. Civ. P. 23(a)(1)

*Gilkey v. Central Clearing Co., et al.,*
202 F.R.D. 515 (E.D. Mich. 2001)

*Parkinson v. Hyundai Motor America,*
258 F.R.D. 580 (C.D. Cal. 2008).

*Van Els v. Premier Athletic Center of Plainfield, Inc.,*
182 F.R.D. 500 (W.D. Mich. 1998)

*Rannis v. Recchia,*
 No. 09-55859, 2010 U.S. App. LEXIS 10858 (9th Cir. May 27, 2010).

**Issue 3**

Fed. R. Civ. P. 23(a)(2)

*Staton v. Boeing,*
327 F.3d 938 (9th Cir. 2003)

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).

*Sterling v. Velsicol Chemical Corp.,*
 855 F.2d 1188 (6th Cir. 1988).

*Gilkey v. Central Clearing Co., et al.,*
202 F.R.D. 515 (E.D. Mich. 2001)

*Dix v. American Bankers Life Assurance Company of Florida,*
429 Mich. 410 (1987)

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009)

*In re Steroid Hormone Product Cases,*
181 Cal. App. 4th 145 (2d Dist. 2010)

**Issue 4**

Fed. R. Civ. P. 23(a)(3)

*Gilkey v. Central Clearing Co., et al.*,
202 F.R.D. 515 (E.D. Mich. 2001)

*Dukes v. Wal-Mart Stores,*
603 F.3d 571(9th Cir. 2010).

*Baby Neal for & By Kanter,*
43 F.3d 48 (3d Cir. 1994)

*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006)

**Issue 5**

Fed. R. Civ. P. 23(a)(4)

*In re Mutual Sav. Bank Sec. Litig.*,
166 F.R.D. 377 (E.D. Mich. 1996)

*Senter v. General Motors Corp.*,
532 F.2d 511 (6th Cir. 1976)

*Menagerie Productions v. Citysearch,*
No. CV-08-4263, 2009 U.S. Dist. LEXIS 108768 (C.D. Cal.  Nov. 9, 2009)

**Issue 6**

Fed. R. Civ. P. 23(b)(3)

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)

*Gradisher v. Check Enforcement Unit, Inc.*,
203 F.R.D. 271 (W.D. Mich. 2001)

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)

*Gasperoni v. Metabolife, International Inc.*,
No. 00-71255, 2000 U.S. Dist. LEXIS 20879 (E.D. Mich. Sept. 27, 2000)

*Thomas v. Baca,*
231 F.R.D. 397 (C.D. Cal. 2005).

*Klaxon Co. v. Stentor Elec. Mfg.,*

313 U.S. 487 (1941)

*Polydene, Inc. v. Kirk*,
Nos. 99-4085, 99-4153, 2000 U.S. App. LEXIS 33892 (6th Cir. Dec. 19, 2000)

*Kearney v. Salomon Smith Barney*,
39 Cal. 4th 95 (2006)

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Marketing Litigation*,
270 F.R.D. 521 (N.D. Cal. 2010)

*American Airlines v. Wolens*,
513 U.S. 219 (1995)

*Walsh v. Ford Motor Co.*,
588 F. Supp. 1513 (1995)

*Norwest Mortgage Inc. v. Superior Court*,
72 Cal. App. 4th 214 (4th Dist. 1999)


**Issue 7**

Fed. R. Civ. P. 23(b)(3)

*Carroll v. United Compucred Collections*,
No. 1-99-0152, 2002 U.S. Dist. LEXIS 25032 (M.D. Tenn. Nov. 15, 2002)

*Califano v. Yamasaki*,
442 U.S. 682 (1979)

*Gasperoni v. Metabolife, International Inc.*,
No. 00-71255, 2000 U.S. Dist. LEXIS 20879 (E.D. Mich. Sept. 27, 2000)

*Gilkey v. Central Clearing Co., et al.*,
202 F.R.D. 515 (E.D. Mich. 2001)

*Gonzalez v. Arrow Financial Services, LLC.*, 233 F.R.D. 577 (S.D. Cal. 2007)

*Appoloni v. U.S.*,
218 F.R.D. 556 (W.D. Mich. 2003);

**Issue 8**

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (6th Dist. 2001)

*In re Pizza Time Theatre Sec. Litig.*,

112 F.R.D. 15 (N.D. Cal. 1986)

*See Washington Mutual Bank, FA v. Super. Ct.,*
 24 Cal. 4th 906 (2001)

*Clothesrigger, Inc. v. GTE Corp.,*
191 Cal. App. 3d 605 (1987)

*Diamond Multimedia Systems v. Superior Court,*
19 Cal. 4th 1036, 1063-1064 (1999)

## I.  INTRODUCTION

Plaintiffs David Date and Elliot Handler each purchased Sony televisions that were aggressively marketed by Sony, individually and through its authorized retailers, as being "1080p" televisions.[1]  In addition to its advertisements, Sony affirmatively stated in the KDS-70Q006 brochure that the television is "the world's first rear projection television capable of full (1080p) High Definition resolution."[2]  Sony also describes the KDS-R50XBR1 as able to "meet and exceed the demands of a High Definition image at its full 1080 line resolution,"[3] and furthered that the television would "fully display a 1080 line picture without interlacing it."[4]  The spec sheet located at the retailer's and Sony's website further describes the KDS-R50XBR1 as having 1080p Native Resolution, without any qualification as to the actual ability of the consumer to view a 1080p picture.[5]  Sony's representation that the KDS-R50XBR1 would "accurately" display High Definition is misleading due to the artifacts and feathering that appear on the screen, which has already been observed by this Court. [6]

In fact, while advertising and warranting that the Televisions[7] were "1080p" Native Resolution, individually and through its agent-retailers,[8] the Televisions were, for all practical purposes, incapable of receiving and displaying a native 1080p signal.  Specifically, while the Televisions can theoretically can accept a 1080p signal via antenna, there are no plans for such

---

[1]    *See* <u>Exhibit A</u>, various Sony advertisements for the Televisions at issue, made by Sony directly and by its retailers, at SONY0000129-30, 33018-25, 4232, 4249, 4513, 4532, 4539, and 4557.

[2]    *See* <u>Exhibit B</u>, brochure for the Sony Television Model KDS-70Q006, at SONY0033019.

[3]    *See* <u>Exhibit C</u>, at DATE00001.

[4]    *Id.*

[5]    *See* <u>Exhibit C</u>, at DATE00002.

[6]    *See* <u>Exhibit C</u>, at DATE00001; *see* Am. Op. and Order at p. 2 (Doc. 86), *available at Date v. Sony Electronics, Inc.,* No. 07-15474, 2009 U.S. Dist. LEXIS 15837, *4 (E.D. Mich. Feb. 20, 2009).

[7]    Sony Television Models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005 (the "Televisions")

[8]    *See* <u>Exhibit D</u>, DATE000215.  Not only did Sony hold out retailers such as ABC Warehouse as its agents, but ads for Sony televisions on ABC Warehouse's website also linked back to Sony literature. *See* <u>Exhibit E</u>, DATE000213.

programming underway.[9]  The Televisions are also incapable of accepting a 1080p signal via any

other usable input.  As a result, not only do the Televisions not qualify as 1080p televisions under

the Advance Television Systems Committee's standard, but Sony's use of "1080p" runs contrary to

the term's meaning to a reasonable consumer.[10]

    In fact, Sony's own internal correspondence confirms the unfairness and deceptiveness of

Sony's decision to market televisions as "1080p" when those televisions lacked useable 1080p inputs.

As early as January 2005, Matthew Seymour, a Senior Manager at Sony's Consumer Electronics

division, e-mailed Sony's parent corporation and inquired as to whether or not the Sony televisions

would accept 1080p[11]:

> Now more brands are moving to 1080p display, but one key point
> will be whether they can accept 1080p input capability.  I heard that
> Q004, [KDX-46]Q005 and [KDS-70]Q006 could not accept 1080p
> input, but if new devices from Sony have 1080p output, we should
> consider how to achieve.

Michihiko Matsutani of Sony Japan responded, "*It is quite natural that some customer has*

*thought [sic] 1080p display can accept 1080p input capability.*"[12]

    As Sony represented and warranted that the televisions at issue had capabilities they did not,

and charged Plaintiffs and other consumers a premium for such phantom capabilities, Plaintiffs

brought suit on behalf of themselves and all others similarly situated, for among other things, Sony's

violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, breach

of express warranty under California and Federal Law, Cal. Civ. Code § 1790, *et seq.* and 15 U.S.C. §

2301, *et seq.*, and for unjust enrichment.

---

[9]    *See* Decl. of Jean-Pierre Guillou In Support of Joint Application for Preliminary Approval of
Settlement of Class Action, at  ¶¶10, 12 ("Guillou Decl.") ("The Televisions can accept 4 of the 5
types of digital signals: 480i, 480p, 720p, and 1080i.")  *See also* Trans. of Final Fairness Hearing, at p.
34, l. 3 ("[T]here are no 1080p television broadcasts.")
[10]    *See* Am. Op. and Order at p. 14 (Doc. 86), *available at* Date, 2009 U.S. Dist. LEXIS 15837, at
*23.
[11]    *See* Exhibit F, SONY0350934-35.
[12]    *Id.* (emphasis added).

Plaintiffs Date and Handler and the class members now seek redress for the standard misrepresentations and false contractual promises made by Sony in its attempt to induce the purchase of these televisions.  Plaintiffs seek to certify Class A, which is defined as:

> all persons nationally who purchased a Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and/or KDX-46Q005.

Class A seeks relief under the California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, breach of express warranty under California law, Cal. Civ. Code § 1790, *et seq.*, and for unjust enrichment.

Plaintiff David Date additionally seeks to certify Class B,[13] which consists of the same individuals described in Class A, but seeks relief for breach of express warranty under the Magnuson Moss Warranty Act.[14]

If this Court denies class certification as to Classes A & B, Plaintiffs alternatively seek to certify Class C and Class D, defined as follows:

> Plaintiff Date seeks to certify Class C, which consists of all Michigan residents who purchased a Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and/or KDX-46Q005.[15]

> Plaintiff Handler seeks to certify Class D: all New York residents who purchased a Sony-brand television, models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and/or KDX-46Q005.[16]

## II.    STANDARD FOR CLASS CERTIFICATION

Class certification is appropriate where the proposed class representatives satisfy the four prerequisites of Rule 23(a) and one of the requirements of Rule 23(b).[17]  Not only is Rule 23 to be

---

[13]    Plaintiff Handler is not seeking to be a class representative for Class B.

[14]    Plaintiffs do not currently seek certification for breach of implied warranty or for violation of the California Consumer Legal Remedies Act on behalf of Class A and B, but expressly reserve the right to do so.

[15]    Class C seeks relief under the Michigan Consumer Protection Act, breach of express and implied warranty under Michigan and federal law, as well as for unjust enrichment.

[16]    Class D seeks relief under New York General Business Law § 349, breach of express warranty, and for unjust enrichment.

liberally construed and read to favor the maintenance of class actions,[18] but there is broad judicial discretion in determining whether to allow the certification of a class action.[19]  Further, when evaluating a motion for class certification, a court should not delve into the merits of the ultimate issues of the case.[20]  Instead, "the district court must take the allegations of plaintiffs as true and any doubts as to certification should be resolved in favor of plaintiffs."[21]  As demonstrated herein, all requirements necessary to certify a class in this case have been satisfied.

## III.    LEGAL DISCUSSION

### A.    PLAINTIFFS MEET THE RULE 23(a) REQUIREMENTS.

#### 1.    Numerosity.

Rule 23(a)(1) requires that a proposed class be so numerous that joinder is impractical. "Although there is no magic number that determines whether joinder of all members would be impracticable, when class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone."[22]  Though there is no bright line test for numerosity, a class with as few as 35 members has satisfied numerosity requirement, and courts rely on common sense

---

[17]    *Quintero v. Mulberry Thai Silks, Inc.*, No. C-08-02294-MHP, 2008 U.S. Dist. LEXIS 84976, at *3-4 (N.D. Cal. Oct. 22, 2008); *Eddleman v. Jefferson County*, No. 95-5394, 1996 U.S. App. LEXIS 25298, at *10-11 (6th Cir. Aug. 29, 1996).

[18]    *Cannon v. Nationwide Acceptance Corp.*, No. 96-C1136, 1997 U.S. Dist. LEXIS 3517, at *4 (N.D. Ill. March 25, 1997).

[19]    *United Steel, Paper & Forestry, Rubber, Manufacturing Energy v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010); *Bittinger v. Tucumseh Products Company*, 123 F.3d 877, 884 (6th Cir. 1997).

[20]    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *United Steel, Paper & Forestry, Rubber, Manufacturing Energy*, 593 F.3d at 808-09.

[21]    *Eddleman*, 1996 U.S. App. LEXIS 25298, at *9; *Dukes v. Wal-Mart Stores*, 603 F.3d 571, 588 (9th Cir. 2010).  *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (Even in a "doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.")

[22]    *Gilkey v. Central Clearing Co., et al.*, 202 F.R.D. 515, 521 (E.D. Mich. 2001); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 588 (C.D. Cal. 2008).

and reasonable inferences to determine whether an estimate of class size is reasonable and meets the numerosity requirement.[23]

Here, Sony has admitted selling approximately 172,000 of the KDS-R50XBR1 and KDS-R60BXR1 model televisions and approximately 3,000 of the KDS-70Q006 and KDX-46Q005 model televisions.  Clearly, numerosity is satisfied.

### 2. Commonality.

The commonality requirement of Rule 23(a)(2) requires that class members have either questions of law or fact in common, but it does not require both, and it does not require that all questions of law or fact be common.[24]  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."[25]  "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."[26]  In fact, "[w]hen the legality of the defendant's standardized conduct is at issue [as it is here], the commonality factor is normally" satisfied:[27]

> "[w]here a question of law refers to a standardized conduct of the defendants towards members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met . . . .[A] lack of identical factual situations will not necessarily preclude certification where the class representative has shown sufficient common questions of law among the claims of the class members."[28]

---

[23]    *Id.*; *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 507 (W.D. Mich. 1998) (*citing Afro American Patrolmens League v. Duck*, 503 F.2d 294 (6th Cir. 1974)); *Rannis v. Recchia*, No. 09-55859, 2010 U.S. App. LEXIS 10858, at *9-11 (9th Cir. May 27, 2010).

[24]    *Bittinger*, 123 F.3d at 884 ("Rule 23(a) simply requires a common question of law or fact"); *Dukes*, 603 F.3d at 599.

[25]    *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

[26]    *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

[27]    *Gilkey*, 202 F.R.D. at 521; *Hunt v. Check Recovery Systems*, 241 F.R.D. 505, 510 (N.D. Cal. 2007).

[28]    *Id.* (*quoting Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984)).

Moreover, commonality exists when there are underlying facts or legal theories common throughout the class, even if the common facts support different legal theories or common legal theories rest on different facts.[29]  In fact, where class members seek a common remedy for a common course of wrongful conduct, common questions of law exist even where the class members may have "widely differing experiences as they relate to the case."[30]

Here, the adjudication of the same core questions of fact and law will resolve all of the claims for the members of Class A & Class B.  The factual and legal issues to be resolved on a class-wide basis for each of the classes Plaintiffs seek to certify are straightforward.  Among other things, these common questions include:

1.  Whether Sony accurately represented the capabilities of the Televisions;

2.  Whether Sony marketed, advertised, represented, sold, and/or delivered for sale Televisions that were advertised, represented, and warranted as "1080p" Televisions when in fact they did not accept a 1080p signal via any useable input;

3.  Whether Sony made material, uniform misrepresentations to Plaintiffs and the class members with respect to the capabilities of the Televisions;

4.  Whether Sony's use of the term "1080p" to describe the Televisions was unfair and misleading to a reasonable consumer;

5.  Whether the Televisions were "1080p" Televisions under the Advance Television Systems Committee's definition;

6.  Whether Sony inflated the cost of the Televisions based on their alleged "1080p" capabilities;

7.  Whether Sony unfairly and deceptively represented the Televisions as "1080p" in violation of the UCL, Cal. Civ. Code §§ 17,200, *et seq.*;

8.  Whether Sony's conduct breached its express warranty under California or federal law; and

9.  Whether Sony was unjustly enriched by its conduct.[31]

---

[29]  *Hanlon*, 150 F.3d at 1019-20.
[30]  *Parra v. Bashas' Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).
[31]  Alternatively, the common questions for Class C are: 1) whether Sony unfairly and deceptively represented the Televisions as "1080p" in violation of the Michigan Consumer Protection Act, MCL

In other words, the common nucleus of operative fact for the proposed classes is whether Sony falsely and unfairly represented the Televisions as "1080p" televisions. And the legal issues that predominate are whether Sony's conduct violated the UCL, the Magnuson-Moss Warranty Act, and constituted breach of express warranty under California law as well as unjust enrichment.[32] As all class members purchased the Televisions, and determination of the lawsuit hinges on whether those representations violated statutory and common law, "there are common issues that apply to all class members."[33]

Finally, Sony cannot argue that commonality is defeated based on any purported need to show that any class member relied on Sony's statements regarding the capabilities of the Televisions. For instance, under the UCL, relief is available "without individualized proof of deception, reliance and injury" because to state a claim under the UCL based on false advertising or promotional practices, "it is necessary only to show that members of the public *are likely* to be deceived."[34] Thus at trial, Plaintiffs will only need to show that the deceptive and misleading statements are, objectively, the type of statement likely to deceive a reasonable consumer. By its very nature, such a determination is uniform and common to the entire class.

---

§ 445.901, *et seq.*; 2) Whether Sony's conduct breached its express and/or implied warranty under Michigan and federal law; and 3) whether Sony was unjustly enriched by its conduct. The common questions for <u>Class D</u> are: 1) whether Sony unfairly and deceptively represented the Televisions as "1080p" in violation of N.Y. Gen. Bus. Law § 349, *et seq.*; 2) Whether Sony's conduct breached its express warranty under New York law; and 3) whether Sony was unjustly enriched by its conduct.

[32]   *See id.*

[33]   *Gilkey*, 202 F.R.D. at 522. *See Parra*, 536 F.3d at 978; *Dix v. American Bankers Life Assurance Company of Florida*, 429 Mich. 410, 416 (1987) ("All the plaintiffs allege a common scheme of misrepresentation, and all allege the same fraud and Consumer Protection Act claims.")

[34]   *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (emphasis added). *See In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 154 (2d Dist. 2010) ("[O]nce the named plaintiff meets that burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of the absent class members.") Likewise, Michigan and New York law do not require that individual reliance be proved. *Dix*, 429 Mich. at 418 ("members of a class proceeding under the [Michigan] Consumer Protection Act need not individually prove reliance on the alleged misrepresentations."); *Hershey Foods Corp. v. Voortman Cookies Ltd.*, 367 F. Supp. 2d 596, 600 n. 2 (S.D.N.Y. 2005) ("a showing of reliance is not necessary to maintain a § 349 claim).

### 3. Typicality.

"Rule 23 requires that the claims asserted by class representatives be typical of class members."[35] " 'The test for typicality, like commonality, is not demanding[.]' "[36] "Typicality may be presumed when the plaintiff's claim 'arises from the same conduct that gives rise to the claims of other class members.' "[37] Indeed, the typicality requirement is satisfied "even where factual distinctions exist between the claims of the named representative and the other class members."[38] And it is not necessary that all class members suffer the same injury as the class representative.[39] Differences in the amount of damages sustained, the size or manner of purchase, and/or the nature of the purchase are insufficient to defeat class certification.[40]

Moreover, because commonality and typicality are closely related, a finding of one often results in a finding of the other.[41] Here, because typicality is innate in the class claims asserted, certification is appropriate. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfies the typicality requirement irrespective of the varying fact patterns underlying the individual claims."[42] By definition, all class members purchased the Televisions at issue and were subjected to the same conduct as the Plaintiffs. In other words, each of their claims arose from Sony's standard practice of selling the televisions at issue as being

---

[35]   *Van Vels*, 182 F.R.D. at 510.
[36]   *Gilkey*, 202 F.R.D. at 524 (*quoting Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)); *Hanlon*, 150 F.3d at 1020.
[37]   *Id.* (*quoting* 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 3.13, at 3-76 (3d ed. 1992)). *See Dukes*, 603 F.3d at 613 ("representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.") (citation omitted).
[38]   *Danis v. USN Communications, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).
[39]   *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).
[40]   *Schaefer v. Overland Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996).
[41]   *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality."); *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).
[42]   *Baby Neal for & By Kanter*, 43 F.3d 48, 58 (3d Cir. 1994) (*citing* NEWBERG ON CLASS ACTIONS, § 3.13). *See In re First Alliance Mortgage Co.*, 471 F.3d 977, 992 (9th Cir. 2006) (where a "centrally-orchestrated scheme to mislead" is alleged, it is the scheme and not the precise details of any individual's experience that forms the nucleus of the class claims.)

"1080p" televisions, even though they did not accept a 1080p video signal via any usable inputs. Clearly, typicality is satisfied as all class members' claims arise from the same practices that give rise to Plaintiffs' claims.

### 4.    Adequacy Of Representation

Rule 23 also requires that the named Plaintiffs provide fair and adequate protection for the interests of the classes.  "Adequate representation requires: 1) that the representative share common interests with unnamed class members; and 2) an appearance that the representatives will vigorously prosecute class interests through qualified counsel."[43]

As to the first factor, there is no conflict or antagonism whatsoever between Plaintiffs and the class members given the identical nature of their claims.  Both Plaintiffs and the class members seek money damages for Sony's unlawful conduct.  Given the identity of the claims between the Plaintiffs and the class members, there is neither any antagonism nor any potential for conflicting interests between them.

As to the second factor, Plaintiffs have a clear interest in the successful outcome of the lawsuit as they seek to recover damages on behalf of themselves and the class members.  Further, they have already demonstrated their interest in this case by bringing it in the first place, by participating in settlement discussions, and by responding to discovery and having their depositions taken.  As the case progresses, Plaintiffs expect to, and will, participate in any additional discovery and trial.

Finally, Plaintiffs have hired counsel who are active practitioners in consumer class cases with experience, diligence, and commitment to this litigation that will adequately protect the interests of the class.  Not only are they experienced generally, but they have particular and thorough

---

[43]    *In re Mutual Sav. Bank Sec. Litig.*, 166 F.R.D. 377, 382 (E.D. Mich. 1996); *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976); *Menagerie Productions v. Citysearch*, No. CV-08-4263, 2009 U.S. Dist. LEXIS 108768, at *26 (C.D. Cal.  Nov. 9, 2009) (citation omitted).

experience in litigating class actions involving consumer issues.  In fact, Plaintiffs' lawyers have been

certified as class counsel in numerous consumer cases.  As a result, Plaintiffs' counsel can and will

adequately and vigorously prosecute the interests of the classes.

### B.   PLAINTIFFS MEET THE RULE 23(b) REQUIREMENTS.

A plaintiff seeking certification must also satisfy one of the subparts of Rule 23(b).  In

discussing Rule 23(b)(3), the Supreme Court in *Amchem Products, Inc. v. Windsor* stated:

> Framed for situations in which "class-action treatment is not as
> clearly called for" as it is in Rule 23(b) (1) and (b) (2) situations,
> Rule 23(b) (3) permits certification where class suit "may
> nevertheless be convenient and desirable."  To qualify for
> certification under Rule 23(b) (3), a class must meet two
> requirements beyond the Rule 23(a) prerequisites:  Common
> questions must "predominate over any questions affecting only
> individual members"; and class resolution must be "superior to
> other available methods for the fair and efficient adjudication of
> the controversy."  In adding "predominance" and "superiority"
> to the qualification-for-certification list, the Advisory Committee
> sought to cover cases "in which a class action would achieve
> economies of time, effort, and expense, and promote . . .
> uniformity of decision as to persons similarly situated, without
> sacrificing procedural fairness or bringing about other undesirable
> results."[44]

In this case, Plaintiffs' claims satisfy Rule 23(b)(3) because (1) " 'questions of law or fact common to

the members of the class predominate over any questions affecting individual members' " and (2) "

'a class action is superior to other available methods for the fair and efficient adjudication of the

controversy.' "[45]

---

[44]   521 U.S. 591, 615 (1997).

[45]   *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 279 (W.D. Mich. 2001) (*quoting* FED. R.
CIV. P. 23(b)(3)); *Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of
the case and they can be resolved for all members of the class in a single adjudication, there is clear
justification for handling the dispute on a representative rather than on an individual basis." (citation
omitted)).

### 1.    Common Factual Issues Predominate.

"To satisfy the predominance requirement, 'the plaintiff must show that common issues not only exist, but outweigh the individual questions.' "[46] "When factual allegations are common to all potential plaintiffs and the causes of action resulting from these facts are all the same, the predominance requirement is met."[47] "Thus, this requirement is essentially a heightened commonality inquiry: do the common legal and factual questions appear more significant than the individualized legal and factual questions?"[48]

Here, the factual issues central to Plaintiffs' UCL, warranty, and unjust enrichment claims are common to all class members.  Specifically, Plaintiffs and the class members purchased the Televisions at issue that were advertised as "1080p" Televisions, when for all practical purposes, they were not.  The issue of whether such uniform conduct violated state and federal law is also identical to the class members.  There exist no individual differences, thus mandating a finding that common issues predominate.  Accordingly, Plaintiffs meet the predominance requirement.

### 2.    Common Legal Issues Predominate.

The law for the national classes (Classes A & B) are common to all class members based on California choice-of-law principles.  A district court applies the choice of law rules of the forum in which it sits, subject to constitutional limitations.[49]  "When a diversity case is transferred from one federal court to another, the transferee court applies the same laws that the original court would

---

[46]    *Dhamer v. Bristol-Myers Squibb, Co.*, 183 F.R.D. 520, 529-30 (N.D. Ill. 1998).

[47]    *See Gasperoni v. Metabolife, International Inc.*, No. 00-71255, 2000 U.S. Dist. LEXIS 20879, at *17 (E.D. Mich. Sept. 27, 2000) (Finding predominance where "all the plaintiffs allege a common method of misrepresentation, and all allege the same legal claim.") and *citing In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine Products Liability Litigation)*, Nos. 1203, 99-C20593, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28, 2000) (holding that common issues involving "a common product, defendant and course of conduct" predominated over any individual issues between class members.").

[48]    *Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005).

[49]    *Klaxon Co. v. Stentor Elec. Mfg., Inc.*, 313 U.S. 487, 496 (1941).

have applied."[50]  Since this case was transferred from the Southern District of California, California

law applies.  California courts utilize the three-step "governmental interest" approach to determine

choice of law questions.[51]  Under the "governmental interest" approach, the court must first

determine whether the laws of each potentially concerned state are different from California state

law.[52]  If those laws differ, the court must determine whether each state has an interest in having its

law applied to the case.[53]  Only if the court finds that the laws are different and that each state has an

interest in having its law applied ("a true conflict"), does the court proceed to the final step, which is

to select the law of the state whose interests would be most impaired if its policy were subordinated

to that of another state.[54]

 Here, with regard to Plaintiffs' claim for breach of express contract under the UCC, as

recently held by the Northern District of California, the variations in state law are nonmaterial and

will not prevent certification of a nationwide class under California law.[55]  Likewise, because

Plaintiffs' Magnuson-Moss claims are premised on breach of contract under California state law, the

claims are identical federal claims for all class members.[56]  In addition, the Central District of

---

[50] *Polydene, Inc. v. Kirk*, Nos. 99-4085, 99-4153, 2000 U.S. App. LEXIS 33892, at *5 (6th Cir. Dec. 19, 2000) (*citing Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)).

[51] *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95, 107 (2006).

[52] *See id.* at 107-08.

[53] *See id.*

[54] *See id.*

[55] *In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litigation*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) ("Conseco overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence . . . .  Contrary to Conseco's representations, several courts have recognized that the law relating to the element of breach does not vary greatly from state to state. *See, e.g., Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-63 (11th Cir. 2004); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997)." *See also, Durant v. ServiceMaster Co.*, 208 F.R.D. 228 (E.D. Mich. 2022), *vacated and remanded on other grounds,* 109 Fed. Appx. 27 (6th Cir. 2004)(granting motion to certify nationwide class on breach of contract claims).  *See also, American Airlines v. Wolens*, 513 U.S. 219, 233 (1995) ("contract law is not at its core diverse, nonuniform and confusing").

[56] Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.  See, also, Walsh v. Ford Motor Co.,* 588 F. Supp. 1513, 1527 (D.D.C.1984) (*citing* H.R. Rep. No. 93-1107 (1973)*, reprinted in* 1974 U.S.C.C.A.N. 7702) ("When Congress passed the [Magnuson-Moss] Act, it incorporated [Uniform Commercial

California has found that common factual and legal issues predominate on claims of unjust

enrichment where the determination of liability can be made from common class-wide proof.[57]

Similarly, with regard to the claims under California's Unfair Competition Law, § 17200 *et.*

*seq.*, it is well settled that such claims may be brought even by non-residents where a defendant

makes fraudulent statements and omissions in California that induced non-Californians to make out-

of-state purchases.[58]  Indeed to the extent that Sony argues that its fraudulent statements and

omissions took place at some location other than its principal place of business in San Diego,

California, that issue is manifestly one in which common questions of fact and law predominate.

Of course, there is no question that common legal issues predominate with regard to the

claims on behalf of a Michigan subclass asserting claims under MCLA § 445.901 *et seq.* and a New

York subclass asserting claims under New York General Business Law § 349, and state classes

asserting those claims are routinely certified.[59]

### 3.    Superiority.

Rule 23(b)(3) also requires the court to determine that "a class action is superior to other

methods for the fair and efficient adjudication of the controversy."  "[C]lass actions are the superior

method for resolving controversies when the main objectives of Rule 23 are served, *i.e.*, the efficient

resolution of the claims of many individuals in a single action, as well as the elimination of

---

Code]-based State warranty law and not State tort law.")

[57]    *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239 (C.D. Cal. 2003).

[58]    *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224-225 (4th Dist. 1999).  *See, also, Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (granting motion for certification of class consisting of all persons "who purchased in the United States any beverage bearing the Blue Sky mark or brand" on claims arising under § 17200.)

[59]    *See, e.g., Gilkey v. Central Clearing Co.*, 202 F.R.D. at 532 (certifying class of Michigan borrowers asserting claims under M.C.L.A. § 445.901 *et seq.*); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008) (certifying class consisting of New York citizens and residents asserting claims under Gen Bus. §349).

repetitious litigation and possibly inconsistent adjudications."[60]  "Finally, and most importantly, it
should be emphasized that in general, any doubts concerning the propriety of a class certification
should be resolved in favor of upholding the class."[61]

Here, given the vast size of the classes, requiring each of approximately 175,000 potential
class members to individually bring an action would not only overwhelm the courts, but it would
also create the possibility for inconsistent adjudications.  Thus, a class action is superior here as it:

> permits a large group of claimants to have their claims adjudicated in a single lawsuit.
> This is particularly important where, as here, a large number of small and medium
> sized claimants may be involved.  In light of the awesome costs of discovery and
> trial, many of them would not be able to secure relief if class certification were
> denied.[62]

Moreover, the class action is the most superior method for adjudicating the legality of Sony's
standard conduct of falsely advertising the televisions.  "[C]laims dealing with the legality of

---

[60]   *Carroll v. United Compured Collections*, No. 1-99-0152, 2002 U.S. Dist. LEXIS 25032, at *49
(M.D. Tenn. Nov. 15, 2002) (*citing Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).
[61]   *Gasperoni*, 2000 U.S. Dist. LEXIS 20879, at *24 (*citing Esplin v. Hirschi*, 402 F.2d 94, 101 (2d Cir.
1968) ("The interests of justice require that in a doubtful case . . . any error, if there is to be one,
should be committed in favor of allowing the class action."))
[62]   *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).  In fact, this Circuit
has specifically recognized that cases like this are a "classic Rule 23(b)(3) case:

> "The claims of a large number of individuals can be adjudicated at one time, with
> less expense than would be incurred in any other form of litigation.  The claims are
> relatively small . . . and the questions of law is one that applies to alike and all.  While
> it may be necessary to make individual fact determinations with respect to charges, if
> that question is reached, these will depend on objective criteria that can be organized
> by a computer, perhaps with some clerical assistance.  It will not be necessary to hear
> evidence on each claim.

> A number of similar class actions have been certified by district courts, and appear to
> have been susceptible of management.  Certification will achieve one of the primary
> purposes of the class action, 'enhancing the efficacy of private actions by permitting
> citizens to combine their limited resources to achieve a more powerful litigation
> posture.' "

*Gilkey*, 202 F.R.D. at 526 (*quoting Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978) (*quoting
Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 266 (1972))).

standardized . . . conduct are generally appropriate for resolution by means of a class action because the . . . conduct is the focal point of the analysis."[63]

Finally:

> "[c]lass actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file suit."[64]

In sum, the class action is the most superior method for adjudicating this controversy because: 1) it avoids the possibility of inconsistent adjudications by allowing approximately 175,000 claims to be adjudicated in one action; 2) it prevents courts from being overwhelmed with litigation; 3) Sony's routine conduct that violated Plaintiffs and the class members' rights is the focal point of the analysis; and 4) it ensures that those that are unable to bring a lawsuit on their own behalf will have their claims resolved.

## C.   APPLICATION OF PLAINTIFFS' CLAIMS TO A NATIONWIDE CLASS IS APPROPRIATE.

More than two decades ago, in *Phillips Petroleum v. Shutts*, the Supreme Court confirmed a court's authority to certify nationwide classes for violations of state law.  Since that decision, numerous state and federal courts have certified such classes.[65]  *See, e.g. Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (6th Dist. 2001) (affirming certification of a nationwide settlement class for violations for the UCL); *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214 (4th Dist. 1999); *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D. Cal. 1986) (certifying nationwide class for violations of California common law claims).

---

[63]   *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 836 (N.D. Ill. 2008).  *See Gonzalez v. Arrow Financial Services, LLC.*, 233 F.R.D. 577, 582 (S.D. Cal. 2007); *Appoloni v. U.S.*, 218 F.R.D. 556, 563 (W.D. Mich. 2003); *Aramburu v. Healthcare Financial Services*, No. 02-CV-6535, 2005 U.S. Dist. LEXIS 42257, at *12-13 (E.D.N.Y. Apr. 18, 2005).
[64]   *Colbert v. Trans Union Corp.*, No. 93-6106, 1995 U.S. Dist. LEXIS 578, at *9-10 (E.D. Penn. Jan. 12, 1995) (*citing Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980)).
[65]   472 U.S. 797 (1985).

Courts may certify a nationwide class for violation of a state's laws so long as the application of the state's laws to out-of-state class members is constitutional under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, Art. IV, § 1, of the U.S. Constitution.[66]   Once Plaintiffs make this showing, the burden shifts to the party opposing nationwide certification to show that some other state's laws apply. [67] As demonstrated below, the application of California law to Classes A & B is constitutional and Sony will be unable to show that another state's laws apply.

1.      **Application Of California Law Is Constitutional.**

The Due Process and the Full Faith and Credit Clauses impose only "modest" restrictions.[68]   To apply California's substantive law to non-California residents in a constitutional manner, Plaintiffs must only show that California has a "significant contact or significant aggregation of contacts" to the claims asserted by each class member; contacts "creating state interests" that ensure that the choice of California law is not arbitrary or unfair.[69]

The showing required under *Shutts* is not arduous.  For instance, the court of appeals in *Wershba* found the application of California law constitutional where the defendant was incorporated and headquartered in California, the brochures at issue were prepared and distributed in California, substantial numbers of the class were located in the California, and the core decision at issue in the case was made at the defendant's California headquarters. [70]  In *Clothesrigger, Inc. v. GTE Corp.*,[71] the California Appellate Court held that it was constitutional to apply California's consumer protection statutes to out-of-state class members where the defendant did business and maintained its principal

---

[66]     *See id.* at 819.
[67]     *See Washington Mutual Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001); *Harmsen v. Smith*, 693 F.2d 932, 946 (9th Cir. 1982).
[68]     *Shutts*, 472 U.S. at 818 (*citing Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)).
[69]     *See id.* at 822.
[70]     91 Cal. App. 4th at 242.
[71]     191 Cal. App. 3d 605 (1987).

16

offices in California, a number of class members resided in California, and the defendant's agents who prepared the advertising at issue were located in California.

Likewise here, Sony has a substantial presence in and contacts with California. Sony's principal place of business is located in California, and the advertisements that form the basis for Plaintiffs' claims were devised in and emanated from California. As such, the nature and extent of California's contacts with the class members' claims meets or exceeds constitutional requirements. Based on these contacts, the application of California law to the proposed nationwide class here is both constitutional and warranted. Additionally, Sony has already asserted that California law applies to the claims asserted here.[72]

### 2. Sony Cannot Meet Its Burden To Show That Another State's Law Applies.

When the party seeking nationwide certification under California law shows the requisite contacts under *Shutts*, the burden shifts to the party challenging certification to show that application of another state law is appropriate.[73] Thus, only if the opposing party can show that another state "has a greater interest in having its law applied," should a court decline to apply California law to a case, where as here, the case was originally filed in California.[74] Moreover, this burden is "substantial" when the defendant itself is located in California and the alleged misconduct emanated from California.[75]

The numerous and significant contacts identified above shift the burden to Sony to show that another state's laws apply.[76] Sony, however, cannot demonstrate how any other state has

---

[72]   *See* Sony's Opp. to Pl.'s Mtn. to Transfer, at p. 6 (*citing Van Dusen v. Barrack*, 376 U.S. 612, 627 (1964) (arguing that if the case is transferred to Michigan, "a federal court in Michigan will be tasked with applying California law[.]")

[73]   *See Washington Mutual*, 24 Cal. 4th at 921; *Harmsen v. Smith*, 693 F.2d 932, 946 (9th Cir. 1982).

[74]   *See Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1196 (9th Cir. 1982).

[75]   *See In Re Activision Sec. Litig.*, 621 F. Supp. 415, 430 (N.D. Cal. 1985).

[76]   *See Washington Mutual*, 24 Cal. 4th at 919-920.

interests that would be more impaired if California's laws were applied.  As such, Sony cannot refute the showing that application of California law to the claims on non-California residents is proper.[77]

To begin, a true conflict does not exist in this case.  In certifying a nationwide settlement class under the UCL, one of the claims alleged here, the court in *Wershba* rejected the argument that the laws of other states are materially different from California's consumer protection statutes and that consumers could do better by litigating in their home states.[78]  According to the court in *Wershba*, California's consumer protection laws are among the strongest in the nation.[79]  Further, the court in *Wershba* noted that while there may be differences in consumer protection laws from state to state, such laws are "relatively homogeneous."[80]

Moreover, even if a true conflict existed, Sony cannot show that any other state has a greater interest than California in having its laws apply to the claims here.  Courts have repeatedly recognized California's strong state interest in policing wrongful conduct occurring within its borders by allowing recovery to out-of-state residents for harm caused by such conduct.  For example, in *Diamond Multimedia Systems v. Superior Court*, the California Supreme Court applied California law to a nationwide class for misconduct that occurred in California, stating that California has a "clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the county."[81]  Similarly, in *Wershba*, the court of appeals held that California's consumer protection statutes applied to a nationwide class for a California corporation's misconduct in California.[82]  The court in *Wershba* reiterated that California's

---

[77]   *See, e.g. In re Pizza Time*, 112 F.R.D. at 20-21; *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 685 (N.D. Cal. 1986).

[78]   91 Cal. App. 4th at 242.

[79]   *Id.*

[80]   *Id.* at 244 (*citing Hanlon*, 150 F.3d 1011, 1022-23) (certifying nationwide settlement class)).

[81]   19 Cal. 4th 1036, 1063-1064 (1999).

[82]   91 Cal. App. 4th at 244.

"more favorable laws" may be invoked by out-of-state residents when they are harmed by conduct occurring in California.[83]

Given that Sony is headquartered in California and does substantial business in California, and that the alleged misconduct emanated from California, California has a strong interest in having its corporations litigate under its laws in order to preserve a "business climate free of fraud and deceptive practices."[84] Since Sony cannot show that another state has a greater interest in having its laws applied, application of California law is appropriately applied to the proposed nationwide class.

## IV.   CONCLUSION

In light of the appropriateness of the class action device applied in the context of Sony's conduct, Plaintiffs respectfully request that this Court certify this case as a class action and certify Classes A & B as defined herein.  In the alternative, Plaintiffs seek to certify Classes C & D.


|  |  | By:   /s/ Lance A. Raphael |
|---|---|---|
| Dani K. Liblang | Alan Mansfield | Lance A. Raphael |
| LIBLANG & ASSOCIATES | CONSUMER LAW GROUP | THE CONSUMER |
| 346 Park Street, Suite 200 | OF CALIFORNIA | ADVOCACY CENTER, P.C. |
| Birmingham, Michigan 48009 | 9466 Black Mountain Road | 180 West Washington |
|  | Suite 225 | Suite 700 |
|  | San Diego, California 92126 | Chicago, Illinois  60602 |
|  |  |  |
| Darren T. Kaplan | Brian S. Kabateck |  |
| CHITWOOD HARLEY | KABATECK BROWN |  |
| HARNES LLP | KELLNER LLP |  |
| 1230 Peachtree Street, NE, | 644 South Figueroa Street |  |
| Suite 2300 | Los Angeles, CA 90071 |  |
| Atlanta, GA 30309 |  |  |

---

[83]   *Id.* (quoting *Clothesrigger*, 191 Cal. App. 3d at 616).
[84]   *Diamond*, 19 Cal. 4th at 1064.

## CERTIFICATE OF SERVICE

I certify that on January 3, 2011, I electronically filed the foregoing **Plaintiffs' Motion for Class Certification Against Sony Electronics, Inc.** with the Clerk of Court using the ECF system that will send notification of such filing to all attorneys of record.

Respectfully Submitted,
/s/ Lance A. Raphael
Lance A. Raphael
The Consumer Advocacy Center, P.C.
180 W. Washington St., Ste 700
Chicago, IL 60602
Tel: (312) 782-5808
Email: lance@caclawyers.com