UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR., and ELLIOT
HANDLER, Individually and On Behalf of
All Others Similarly Situated,

        Plaintiffs,

vs.

SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC., d/b/a ABC
WAREHOUSE,

        Defendants.

Case No. 07-CV-15474

Honorable Paul D. Borman
Magistrate Judge R. Steven Whalen

**SONY ELECTRONIC, INC.'S
OPPOSITION TO MOTION FOR CLASS
CERTIFICATION**

---

*Counsel for Plaintiffs:*
Dani K. Liblang (P33713)
LIBLANG & ASSOCIATES
346 Park St., Suite 200
Birmingham, Michigan 48009
(248) 540-9270
danil@lemonlawyers.com

Brian S. Kabateck (CA 152054)
KABATECK BROWN
KELLNER LLP
644 S. Figueroa St.
Los Angeles, CA 90071
(213) 217-5000
bsk@kbklawyers.com

Lance A. Raphael (IL 6216730)
CONSUMER ADVOCACY
CENTER, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602
(312) 782-5808
lance@caclawyers.com

Darren T. Kaplan (NY 2447381)
CHITWOOD HARLEY
HARNES LLP
1230 Peachtree, NE, Suite 2300
Atlanta, GA 30309
(888) 873-3999
dkaplan@chitwoodlaw.com

Alan Mansfield (CA 125988)
CONSUMER LAW
GROUP OF CALIFORNIA
9466 Black Mountain Rd.,
Suite 225
San Diego, CA 92126
(619) 308-5034
alan@clgca.com

*Counsel for Defendants:*
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kefalas (P64949)
MILLER, CANFIELD, PADDOCK AND STONE, PLC
150 W. Jefferson Suite 2500
Detroit, Michigan 48226-4415
(313) 963-6420
pozza@millercanfield.com
cranmer@millercanfield.com
wierenga@millercanfield.com
kefalas@millercanfield.com

## <u>TABLE OF CONTENTS</u>

**Page**

I.     PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN ON THIS
       MOTION………………………………………………………………………2

II.    PLAINTIFFS HAVE FAILED TO IDENTIFY SUFFICIENT COMMON FACTS........ 2

       A.     Sony Did Not Make Common Use Of The Term "1080p" ................................. 4

       B.     There Is No Common Evidence That "1080p" Was Misleading........................... 5

III.   THE MOTION FAILS TO SATISFY RULE 23(A)(2) ..................................................... 7

       A.     Legal commonality is not established .................................................... 7

       B.     Factual commonality does not exist .................................................. 11

IV.    THE PROPOSED CLASS DOES NOT SATISFY RULE 23(A)(3) OR 23(A)(4)......... 14

V.     THE PROPOSED NATIONAL CLASS DOES NOT SATISFY RULE 23(B)(3)......... 16

VI.    THERE IS NO SHOWING THE STATE CLASSES SATISFY RULE 23 .................. 19

CONCLUSION................................................................................................................ 20

## <u>INDEX OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Anderson v. Bungee Int'l Manuf. Corp.*,
    44 F. Supp. 2d 534 (S.D.N.Y. 1999) .......................................................................20

*Avritt v. Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) ........................................................................14, 18

*Bell v. Caruso*,
    2007 WL 3275067 (W.D. Mich. Nov. 5, 2007) ......................................................11

*Blank v. Jacobs*,
    2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) .......................................................15

*Campion v. Old Republic Home Prot. Co., Inc.*,
    2011 WL 42759 (S.D. Cal. Jan. 6, 2011) ...............................................................17

*Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortgage*,
    624 F.3d 185 (5th Cir. 2010) ..................................................................................7

*Castano v. Am. Tobacco*,
    84 F.3d 734 (5th Cir. 1996) ...................................................................................16

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ...............................................................................17

*CLN Props., Inc. v. Republic Servs., Inc.*,
    2010 WL 5146734 (D. Ariz. Dec. 13, 2010) ...........................................................7

*Cohen v. DirecTV, Inc.*,
    178 Cal. App. 4th 966 (Cal. App. 2 Dist. 2009) ....................................................14

*Converse v. Ameritech Corp.*,
    179 F.R.D. 533 (W.D. Mich. 1997) ..................................................................14, 17

*Cummins v. Superior Court*,
    36 Cal. 4th 478 (2005) ...........................................................................................10

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ...................................................................................18

*Drooger v. Carlisle Tire & Wheel Co*,
    2006 WL 1008719 (W.D. Mich. Apr. 18, 2006) .................................................7, 10

*Faralli v. Hair Today, Gone Tomorrow*,
    2007 WL 120664 (N.D. Ohio Jan. 10, 2007)..........................................................................15

*Ford Motor Co. Ignition Switch Prods. Liability Litig*,
    174 F.R.D. 332, 348 (D.N.J. 1997) ......................................................................................8

*Galicia v. Country Coach, Inc.*,
    324 Fed. Appx. 687 (9th Cir. 2009)....................................................................................10

*Gartin v. S&M NuTec LLC*,
    245 F.R.D. 429 (C.D. Cal. 2007) ........................................................................................15

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982).............................................................................................................2

*Guesse v. Damon Corp.*,
    470 F. Supp. 2d 1110 (C.D. Cal. 2007) .............................................................................10

*Hillis v. Equifax Consumer Servs., Inc.*,
    237 F.R.D. 491 (N.D. Ga. 2006).........................................................................................15

*In re Activated Carbon-Based Hunting Clothing Mktg. and Sales Practices Litig.*,
    2010 WL 3893807 (D. Minn. Sept. 29, 2010) ....................................................................18

*In re Am. Med. Sys.*,
    75 F.3d 1069 (6th Cir. 1996) .............................................................................2, 7, 14, 15

*In re Aqua Dots Products Liability Litig.*,
    270 F.R.D. 377 (N.D. Ill. 2010)..........................................................................................10

*In re Charles Schwab Corp. Sec. Litig.*,
    264 F.R.D. 531 (N.D. Cal. 2009)..........................................................................................7

*In re Conagra Peanut Butter Products Liability Litig.*,
    251 F.R.D. 689 (N.D. Ga. 2008).........................................................................................10

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007) .......................................................................................16

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................................................10

*In re Hitachi Television Optical Block Cases*,
    2011 WL 9403 (S.D. Cal. 2011).............................................................................8, 9, 10, 11

*In re Jackson National Life Ins. Co. Premium Litig.*,
    183 F.R.D. 217 (W.D. Mich. 1998).....................................................................................11

*In re Light Cigarette Mktg. Sales Practices Litig.*,
  2010 WL 4901785 (D. Me. Nov. 24, 2010)..............................................18

*In re OnStar Contract Litig.*,
  2010 WL 3516691 (E.D. Mich. 2010) ..............................8, 10, 11, 18

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass. 2004)......................................................9

*In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.*,
  2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ..............................................15

*In re St. Jude Med., Inc.*,
  522 F.3d 836 (8th Cir. 2008) .......................................................17

*In re St. Jude Medical, Inc.*,
  425 F.3d 1116 (8th Cir. 2005) .......................................................8

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................17, 18

*Johns v. Bayer Corp.*,
  2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ..............................................15

*Johnson v. Mitsubishi Digital Electronics America, Inc.*
  578 F. Supp. 2d 1229 (C.D. Cal. 2008) ..............................................19

*Kaser v. Swann*,
  141 F.R.D. 337 (M.D. Fla. 1991)......................................................17

*Kwikset Corp. v. Superior Court*,
  _ Cal. Rptr. 3d _, 2011 WL 240278 (Cal. 2011) ..............................................17

*Martin v. Stokes*,
  623 F.2d 469 (6th Cir. 1980) .......................................................8

*Murrin v. Ford Motor Co.*,
  756 N.Y.S. 2d 596 (N.Y. App. 2003) ..............................................20

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) ......................................................9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y. 2d 20 (N.Y. 1995) ......................................................20

*Payne v. FufiFilm U.S.A., Inc.*,
  2010 WL 2342388 (D.N.J. May 28, 2010) ..............................................19

iv

*Pfizer, Inc. v. Supreme Court*,
  182 Cal. App. 4th 622 (Cal. App. 2 Dist. 2010) ........................................................14, 15, 17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................................................11

*Porcell v. Lincoln Wood Prods., Inc.*,
  713 F. Supp. 2d 1305 (D.N.M. 2010) ...............................................................................19

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) ...............................................................................................15

*Rivera v. Bio Eng'd Supplements & Nutrition, Inc.*,
  2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ...................................................................10

*Roberts v. The Scott Fetzer Co.*,
  2010 WL 3937312 (M.D. Ga. Sept. 30, 2010) ..................................................................19

*Rosen v. Chrysler Corp.*,
  2000 WL 34609135 (E.D. Mich. July 18, 2000) ........................................................8, 13, 14

*Sevidal v. Target Corp.*,
  189 Cal. App. 4th 905 (Cal. App. 4 Dist. 2010) ................................................................14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  _ U.S. _, 130 S. Ct. 1431 (2010) .....................................................................................18

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1988) ......................................................................................11, 14, 15

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ............................................................................................18

*Thompson v. Jiffy Lube Int'l, Inc.*,
  250 F.R.D. 607 (D. Kan. 2008) ..........................................................................................8

*Ultimar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
  579 N.Y.S. 2d 353 (N.Y. App. 1992) .................................................................................20

*Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
  259 F.R.D. 484 (S.D. Cal. 2009) .......................................................................................10

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) .........................................................................................7

*Webb v. Carter's Inc.*,
  2011 WL 343961 (C.D. Cal. Feb. 3, 2011) ........................................................................18

*Yadlosky v. Grant Thorton, L.L.P.*,
    197 F.R.D. 292 (E.D. Mich. 2000) ...............................................................................7, 11, 16

**STATUTES**

California Business and Professions Code §17200 .................................................7, 11, 14, 17, 18

California's Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq. .........10

New York Civil Code §349 ...........................................................................................................20

**COURT RULES**

Fed. R. Civ. P. ...............................................................................................2, 7, 14, 16, 17, 18, 19

In 2004 and 2005, Sony introduced a series of televisions based on a new display technology: SXRD.  Televisions incorporating SXRD technology were among the first in the consumer market to offer a 1920x1080 progressive, or "1080p," display.  When Sony advertised those televisions – the XBR1 and the 70 inch Qualia models at issue in this case[1] – it stressed SXRD and its superior high-resolution display.  Sony did ***not*** claim, or even imply, that the televisions had HDMI inputs that could accept 1080p signals.

Plaintiffs have spent years arguing otherwise.  This motion was their chance to show that there is sufficient common evidence to prove, for a putative class of more than 172,000 purchasers, that Sony misrepresented the televisions at issue and led consumers to believe that the televisions had 1080p-capable HDMI inputs.  They have not done so.  The evidence does not support the claim that Sony "aggressively" marketed the televisions as "1080p televisions" and made multiple common misrepresentations regarding the televisions' 1080p "capabilities."  Just the opposite: the advertising materials that Sony and third-party retailers used with these televisions were anything but consistent.  Most did not mention the term "1080p" at all:

- Sony ran three national television commercials for the XBR1 televisions, during CBS NFL broadcasts and other prime-time cable and sports programming over several months in 2005 and 2006.  Those ads focused on the televisions' SXRD technology and high-quality picture, and did not mention 1080p.  Fawcett Decl. ¶¶15-17, Ex. 2-4.

- Sony placed several advertisements in magazines and newspapers (such as the Wall Street Journal, Sound & Vision, Esquire, Rolling Stone, and others) throughout 2005 that did not use the term "1080p."  Fawcett Decl. ¶¶18-21, Exs. 5-8.  Sony also widely distributed magazine and newspaper inserts and circulars that advertised the televisions without reference to 1080p.  Fawcett Decl. ¶¶24-26, Exs. 11-13; Sfeir Decl. ¶¶14-16, Exs. 64-66.

- Most of the brochures Sony created for these televisions did not use "1080p," and none claimed that the televisions had 1080p HDMI inputs.  Sony's "ad bugs" for the Qualia

---

[1]   The KDS-70Q006 (the "Qualia 006"), KDS-R60XBR1, and KDS-R50XBR1 (together, the "XBR1") televisions are Sony SXRD rear-projection televisions.  The KDX-46Q005 television, the "Qualia 005," was one of the first commercially available large-screen (46") LCD televisions to offer a 1920x1080 progressive display.

006, which were provided to Qualia dealers for use in their advertising, did not say "1080p."  Sfeir Decl. ¶¶17-19, 21-25; Ex. 67-71, 73-77.

- Despite the fact that there were nearly 200 authorized Qualia dealers and 800 retailers selling the XBR1s, Fawcett Decl. ¶¶29, 31, plaintiffs have attached only a few retail advertisements that include the term "1080p," none of which mentions 1080p input capabilities.  Moreover, plaintiffs' selection of retail advertisements has been cherry-picked: many retailers, including Sears, Best Buy and CompUSA, did not uniformly use "1080p" in their advertisements.  *See, e.g.,* Fawcett Decl., Exhibits 14-32.

These are the facts, and they have left plaintiffs with no choice but to argue that a national class can be certified based on only three Sony documents – two of which they cannot show were seen by the ***named plaintiffs***, let alone by all members of their proposed national class.[2]  This is not the stuff of a national, or even state, class action.

## I.    Plaintiffs Have Failed To Carry Their Burden On This Motion

"Subsection (a) of Rule 23 contains four prerequisites which must *all* be met before a class can be certified.  Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b)."  *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (emphasis in original).  The "burden of establishing the elements of a class action rests on the party seeking certification." *Id.* at 1086. The district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class.  *General Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982).  Plaintiffs' motion does not withstand that "rigorous analysis."

## II.    Plaintiffs Have Failed To Identify Sufficient Common Facts

Plaintiffs argue that Sony "misled" them by saying something about the televisions that plaintiffs grudgingly admit is true, i.e., that the televisions utilized 1080p technology.  Plaintiffs

---

[2]   None of the evidence that plaintiffs have, in the past, claimed would support class certification – such as evidence that Sony put "1080p" stickers on the televisions, or sold them in boxes labeled "1080p" – has materialized, because those claims are not true.  Sfeir Decl. ¶¶7-12; Larson Decl. ¶¶4-7.

admit that these televisions have display screens with "1080p" resolution, Handler Dep., 34:3-9,[3] and are therefore capable of displaying every pixel of a 1920x1080 image. *Id*. at 137:3-13.[4]  In other words, they admit that these televisions are "1080p" and incorporate 1080p technology.  It is undisputed that this 1080p technology helps these televisions provide a superior picture. *Id.*, 94:15-95:9, 138:17-20; Fawcett Decl. ¶13, Exs. 10, 33-44.

That the televisions have 1080p capabilities renders plaintiffs' fraud and warranty claims inappropriate for class treatment.  Plaintiffs claim Sony misled them about the televisions' input capabilities, not their display resolution.  And not just any input capabilities: plaintiffs admit that the televisions' RF antenna input is capable of receiving 1080p signals, and also admit that it would have been unreasonable to assume that the televisions' component, composite and S-video inputs were capable of 1080p.  TAC, Dkt. 123, ¶¶45-46; Handler Dep., 100:4-101:20, 242:8-243:5; Date Dep., 241:2-23.  As a result, the claims all come down to the allegation that Sony's limited use of the term "1080p" misled plaintiffs and other purchasers about the televisions' HDMI input capabilities, and *only* about those input capabilities.[5]

Because it is undisputed that Sony never claimed that the televisions had 1080p HDMI inputs, plaintiffs are forced to show that Sony's purported use of terms like "1080p" or "full 1080 line resolution" reasonably caused consumers to make three very particular assumptions: (1) that those terms referred to something other than the televisions' display resolution; (2) that those terms refer specifically to the televisions' HDMI inputs; and (3) that only a television with both a 1080p display and 1080p HDMI inputs would be described as "1080p." *See, e.g.*, Handler

---

[3]  Handler's Deposition is attached as Kefalas Decl. Ex. 89; Date's as Kefalas Decl. Ex. 88.

[4]  *See also* Schmidt Decl. ¶¶4-5, 12-15; Goldberg Decl. ¶¶22-31; Souder Decl. 5-7.

[5]  Mr. Date's claim is actually focused on his television's computer input capabilities, *see* Date Dep., 191:13-193:6, but that does not appear to be the focus of the class claims.

Dep., 34:3-23, 85:21-86:3, 149:11-152:20, 272:6-273:20; Date Dep., 196:22-197:6, 198:8-11.[6]

Plaintiffs have not shown that a case dependent on proving that more than 172,000 purchasers all made those very particular assumptions (the "HDMI Input Assumptions") – at a time when no 1080p source components were widely available to consumers, Fawcett Decl. ¶8 – can properly be tried as a class action.[7]

### A.   Sony Did Not Make Common Use Of The Term "1080p"

The Third Amended Complaint depended critically on the notion that Sony repeatedly and consistently advertised the televisions at issue as "1080p televisions." Discovery has proven otherwise. Plaintiffs' motion identifies only three Sony documents in support of its claim that Sony had the "standard practice" of "aggressively marketing" the television in question as 1080p. *See* Pl. Mot., Ex. A-C. Those documents were the exception, not the rule. The majority of Sony's advertisements and marketing materials for these televisions did ***not*** use the term "1080p." Fawcett Decl. ¶7, Exs. 2-8, 10-13; Sfeir Decl. Exs. 64-68, 70-72, 73-77. None represented that the televisions could accept a 1080p signal over HDMI. Fawcett Decl. ¶7.

---

[6]  Plaintiffs have been inconsistent about these assumptions or about what, precisely, they claim the term "1080p" implies about the subject televisions' input capabilities. Earlier, they claimed "1080p" implied that the televisions "always ran at 1080p." *See, e.g.,* Kefalas Decl, Ex. 92, Compl. ¶23. Later, it purportedly meant the televisions could accept 1080p signals over ***all*** of their inputs. *See, e.g.,* SAC, Dkt. 30, ¶¶19, 21. Only recently do plaintiffs argue that "1080p" implies a television that can accept 1080p signals over what plaintiffs call its "relevant" inputs – i.e., over HDMI. *See* TAC, Dkt. 123, ¶¶78, 83. Plaintiffs' inability to identify their own assumptions about the term "1080p" undercuts their current claim that this Court can identify the assumptions made by more than 172,000 putative class members.

[7]  Plaintiffs cite to an internal Sony email from January 2005 as evidence that Sony itself believed that "it is natural that some customer has thought 1080p display can accept 1080p input capability…" Pl. Mot. Ex. E. Plaintiffs have carefully edited that email to make it appear as though it says something it does not. In the email – and in the quoted passage specifically – Sony personnel are discussing the likelihood that consumers would prefer the (at the time) upcoming XBR1 televisions to have 1080p HDMI inputs to go along with their 1080p display screens. The Sony employees are ***not*** discussing, as plaintiffs suggest, that consumers are likely to believe that a television advertised as a "1080p television" must therefore have 1080p HDMI inputs. Nor would the email provide any support for this motion even if plaintiffs had quoted it accurately: it remains undisputed that Sony did not uniformly, or even commonly, advertise these televisions as "1080p." *See* discussion *supra*.

There is accordingly no support for the claim that Sony marketed the subject televisions first and foremost as "1080p televisions."  Sony's focus was, instead, on its SXRD display technology and the televisions' high-resolution picture.  Fawcett Decl. ¶¶9, 13; Souder Decl. at 3-8.

Plaintiffs have also submitted advertisements run by third parties like Best Buy, Circuit City and ABC Warehouse, but plaintiffs have provided neither evidence nor legal argument to support their apparent claim that Sony is responsible for, or could be found liable based on, the contents of those documents.  Materials created by anyone other than Sony cannot be used to support this motion.  Moreover, third-party advertisements would not support the motion even if they were relevant.  Many retailers advertised these televisions without reference to "1080p," including Sears, CompUSA, and Best Buy.  *See, e.g.*, Fawcett Decl. Exs. 14-32.  More than 800 retailers sold the XBR1s, and almost 200 sold Qualia.  A handful of ads from three of those retailers provides no support for the claim that putative class members saw "common" representations regarding the televisions' 1080p capabilities.

### B.      There Is No Common Evidence That "1080p" Was Misleading

Even if there was sufficient evidence to show that all purchasers of these televisions were told by Sony that they were "1080p" televisions, it would not be enough.  Plaintiffs' fraud and warranty theories require plaintiffs to prove that all class members who saw the term "1080p" assumed that term referred to HDMI input capabilities.  But plaintiffs themselves do not believe that: Handler testified at deposition that calling the televisions "1080p high-definition televisions" is ***not*** sufficient to imply that the televisions had a 1080p input.  Handler Dep. at 143:5-24.  And there are many other reasons why plaintiffs cannot prove that the class as a whole made the HDMI Input Assumptions:

**Sony's affirmative disclosures.**  Plaintiffs' motion impermissibly ignores the fact that Sony ***disclosed*** the televisions' input capabilities – including the lack of a 1080p HDMI input –

in the Qualia and XBR1 manuals that were available on Sony's website.  Schmidt Decl. ¶¶17-19,

Exs. 84-86.  Significantly, the link to the XBR1 manual was located next to the link to the XBR1

"spec sheet" on which plaintiffs' motion heavily relies.  Pl. Mot., Ex. C; *see* Schmidt Decl. ¶20.

Moreover, Sony's marketing brochure for the KDX-46Q005 listed the HDMI input signals

accepted.  Sfeir Decl. Ex. 17.  There is no reason to presume that class members made the HDMI

Input Assumptions in the face of Sony's disclosures regarding the televisions' HDMI inputs.

**Other information sources.**  Plaintiffs also ignore the evidence that consumers –

including Date and Handler themselves – consult multiple information sources before making

purchases.[8]  Many of the information sources available openly discussed the fact that the

televisions' HDMI inputs did not accept 1080p signals.  Souder Decl. at 6; Fawcett Decl. Exs.

33-44.  For example, the CNET review of the KDS-R60XBR1 began by noting that the HDMI

inputs did not accept 1080p signals, and then noted:

> [The television's 1920x1080 display], combined with the inherently progressive
> nature of the display device, qualifies the KDS-R60XBR1 as a 1080p HDTV...

Fawcett Decl. Ex. 36.  Particularly given the undisputed fact that Sony never expressly claimed

that the televisions had 1080p HDMI capability, it is unreasonable for plaintiffs to simply assert

that all 172,000 putative class members assumed that "1080p" meant "1080p HDMI input" when

it is almost certain that many class members knew it did not, if they ever saw "1080p" associated

with the televisions at all.

**The ATSC standards.**  Nor does Plaintiffs' reference to ATSC standards help prove that

class members made the HDMI Input Assumptions.  Both Date and Handler admit that the

ATSC standards had nothing to do with either their understanding of the term "1080p" or their

---

[8]  *See* Date Dep. at 74:4-25; Handler Dep. at 45:10-22, 46:17-47:11, 49:18-50:3, 135:21-25;
Souder Decl. at 2-3; Fawcett Decl. ¶¶5-6.

decisions to buy their televisions.  Date Dep., 188:5-12; Handler Dep., 220:17-24.  The ATSC is

not a consumer-oriented body, does not define standards for either the advertising or

manufacture of televisions, and does not purport to address the question of which televisions

may properly be considered (or sold as) "1080p" televisions.  Goldberg Decl. ¶¶16-21.  In

particular, the ATSC has nothing to do with HDMI inputs or capabilities.  *Id*. at ¶20.

     In sum, there is no evidence before the Court showing that Sony used the term "1080p"

in a standardized fashion.  Nor is there any evidence that would allow the question of which class

members, if any, made the HDMI Input Assumptions to be tried using common proof.  The

claimed "common nucleus of operative fact" does not exist.

## III.   The Motion Fails To Satisfy Rule 23(a)(2)

     Plaintiffs have failed to show that the commonality requirement has been satisfied.

### A.   Legal commonality is not established

     Plaintiffs are attempting to certify a national class action based on state law.  Such class

actions cannot be certified "[i]f more than a few of the laws of the fifty states differ."  *In re Am.*

*Med. Sys.,* 75 F.3d at 1085.  Plaintiffs bear the burden of showing that choice of law concerns do

not preclude certification.  *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C. Cir. 1986); *see*

*also Yadlosky v. Grant Thorton, L.L.P.,* 197 F.R.D. 292, 300 (E.D. Mich. 2000).  Failure to carry

this burden necessitates denial of plaintiffs' motion.  *Id.* at 301; *see also CLN Props., Inc. v.*

*Republic Servs., Inc.,* 2010 WL 5146734, at *12 (D. Ariz. Dec. 13, 2010).[9]  Plaintiffs have not

carried their burden.[10]

---

[9]  *See also Drooger v. Carlisle Tire & Wheel Co*, 2006 WL 1008719, at *6 (W.D. Mich. Apr.
18, 2006); *Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortgage*, 624 F.3d 185, 194 (5th
Cir. 2010).

[10]  Plaintiffs try to cover up this deficiency by arguing that it is Sony's burden to disprove legal
commonality, rather than plaintiffs' burden to prove it.  That is not the law, and neither case cited
in "support" of this point by plaintiffs says otherwise.

**Choice of law on the fraud claim.**  Proposed "Class A" would apply California Business and Professions Code §17200 to the class as a whole.  California's "governmental interest" choice of law test requires the Court to determine whether a conflict exists between California law and the laws of other potentially affected states and, if there is a conflict, select the law of the state whose interests would be most impaired if its law was not applied.  *See In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009).  This analysis indicates that California law cannot be applied to the class.  *See, e.g., In re Hitachi Television Optical Block Cases*, 2011 WL 9403 at *6-10 (S.D. Cal. 2011).[11]

There is a conflict:  there are material differences between the consumer protection laws of the 50 states, *In re OnStar Contract Litig.*, 2010 WL 3516691 at *8 (E.D. Mich. 2010); *In re Hitachi Television Optical Block Cases*, 2011 WL 9403 at *6; *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625 (D. Kan. 2008),[12] and each state in a national consumer fraud class action has an interest in applying its consumer protection laws to the claims of class members who made their purchases in that state.  *In re OnStar Contract Litig.*, 2010 WL 3516691 at *15; *Ford Motor Co. Ignition Switch Prods. Liability Litig*, 174 F.R.D. 332, 348 (D.N.J. 1997).  Moreover, the "home" state of each putative class member would have its interests more impaired if California law was applied to claims arising outside of California.  *In re OnStar Contract Litig.*, 2010 WL 3516691 at *15; *Rosen v. Chrysler Corp.*, 2000 WL 34609135, at *10 (E.D. Mich. July 18, 2000); *Ford Motor*

---

[11]   Sony continues to believe that Michigan, not California, choice of law rules govern this action.  Plaintiffs have failed to show that the *Van Dusen* doctrine applies here, because they have failed to show that the Southern District of California had jurisdiction over defendant ABC at the time of transfer.  *See Martin v. Stokes*, 623 F.2d 469 (6th Cir. 1980).  Because the difference between Michigan and California choice of law rules does not appear to be material on this motion, however, Sony's analysis assumes that California choice of law rules apply.

[12]   *See also* Appendix I, State-by-State Analysis of Material Differences Among State Consumer Protection Laws.

*Co. Ignition Switch Prods. Liability Litig.*, 174 F.R.D. at 348.  California choice of law rules

would therefore ***not*** select California law to govern the claims of all putative class members.

Plaintiffs' only argument otherwise is their conclusory claim that California would permit

foreign purchasers to sue Sony in California for "making fraudulent statements and omissions in

California that induced non-Californians to make out-of-state purchases."  Pl. Mot. at 13, 18-

19.[13]  But there is no evidence that all, or many, putative class members saw or relied on Sony

advertisements that contained the allegedly misleading phrase "1080p."  *See* Sections II and

III.B.  Instead, the putative class members' purchasing decisions were likely local: made at local

stores, after reviewing local retail advertisements (if any) and having conversations with local

retail sales staff.  *See* Handler Dep. at 46:17-47:11; Date Dep. at 80:6-89:16, 90:17-93:15, 99:15-

25, 105:7-24; Souder Decl. at 2-5.[14]  Plaintiffs have simply not identified enough alleged

misstatements supposedly "emanating" from Sony in California to justify applying California

law to the class as a whole.[15]  *In re Hitachi Television Optical Block Cases*, 2011 WL 9403 at

*7-10 (refusing to apply California law to national fraud claims brought  by television purchasers

---

[13]   Plaintiffs also argue that Sony somehow "conceded" that California law could govern the
claims of the class when it discussed the *Van Dusen* doctrine on the motion to transfer venue.
Sony did not; instead, it merely pointed out that California law would likely be applied to Date's
***personal*** claims even after transfer to this Court.  *See, e.g.*, Kefalas Decl., Ex. 93 at 6.  Moreover,
application of the proper states' laws to the class claims is a matter of due process for both the
parties and the absent class members; this is not an issue that can be decided by reference to a
(nonexistent) waiver in an early brief filed on another topic.

[14]   The facts surrounding Date and Handler's purchases make the point.  Date is a Michigan
resident whose claims are based solely on (1) an advertisement he saw in Michigan prepared by
ABC Warehouse, a Michigan corporation; and (2) a purchase made in Michigan.  Kefalas Decl.,
Ex. 90, No. 7; Date Dep., 84:21-85:3, 99:9-16. The same is true for Handler's claim: he is a New
York resident who bought his Qualia television in New York, after visiting a Sony retail store in
New York and talking with a Sony employee at that New York store about the television (but not
asking any questions about the supposedly critical presence of a 1080p HDMI input).  Handler
Dep., 46:17-47:11, 66:20-68:7, 120:3-121:13.

[15]   The fact that Sony is headquartered in California is insufficient to support application of
California law to a national class.  *See Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App.
4th 214, 226 (1999); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276-77 (D. Mass. 2004).

against manufacturer, since televisions were purchased from retailers, not manufacturer); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) ("It is hard to see why the laws of other states should be tossed overboard and their residents remitted to California law for transactions that, for individual consumers, are local in nature."); *Utility Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487 (S.D. Cal. 2009).

**Choice of law on the warranty claim.** The claim that California's Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq., can be applied to the warranty claims of the national class is even weaker.[16]  The Song-Beverly Act cannot be applied to a national class, because it does not apply to purchases made outside of California. *See, e.g., Galicia v. Country Coach, Inc.*, 324 Fed. Appx. 687, 688 (9th Cir. 2009); *Guesse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1112 (C.D. Cal. 2007) ("the Song-Beverly Act is expressly limited to goods sold in California"); *Cummins v. Superior Court,* 36 Cal. 4th 478, 487-88 (2005).

A national class could not be certified on the warranty claim even if plaintiffs had attempted to certify that claim under the Uniform Commercial Code or similar state warranty laws.[17]  It is well settled that there are material differences in state warranty laws, even among states that have adopted the UCC.[18]  *In re OnStar Contract Litig.*, 2010 WL 3516691 at *15; *Drooger*, 2006 WL 1008719 at *7-8.  In light of these variations, California would select the law

---

[16]  This is also true of plaintiffs' unjust enrichment claims.  Unjust enrichment laws vary greatly from state to state.  *In re Aqua Dots Products Liability Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (collecting cases); *In re Conagra Peanut Butter Products Liability Litig.*, 251 F.R.D. 689, 696-98 (N.D. Ga. 2008); *see also* Appendix III, State-by-State Analysis of Material Differences Among State Unjust Enrichment Laws. These variations would require the law of the plaintiffs' home states to be applied, not California law.  *See Rivera v. Bio Eng'd Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *2-3 (C.D. Cal. Nov. 13, 2008) (declining to certify a nationwide class on unjust enrichment).

[17]  Plaintiffs attempt to sidestep this problem by pretending they are suing Sony for "breach of contract" instead of breach of warranty.  *See* Pl. Mot. at 12.  That argument gets them nowhere: they are suing Sony for breach of warranty.

[18]  *See also* Appendix II, State-by-State Analysis of Material Differences Among State Express Warranty Laws.

of each class member's home state to govern the warranty claims.  *In re OnStar Contract Litig.*, 2010 WL 3516691 at *18-19; *see also In re Hitachi Television Optical Block Cases*, 2011 WL 9403 at *7-10 (refusing to apply California law to national warranty claims brought  by television purchasers against manufacturer).

　　　　**Due process.**  Similarly, there has been no showing that applying §17200 to the entire class would comport with due process.  Plaintiffs were required to show sufficient contacts between California and ***each individual class member's*** claims to create California interests in this litigation such that application of California law "will not be arbitrary or unfair."  *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-822 (1985); *Yadlosky,* 197 F.R.D. at 300; *In re Jackson National Life Ins. Co. Premium Litig.,* 183 F.R.D. 217, 223 (W.D. Mich. 1998).  They have not done so, and it would violate due process to apply California law to transactions, like these, that had little or no relationship to California.  *Shutts,* 472 U.S. at 821-822; *In re Hitachi Television Optical Block Cases*, 2011 WL 9403 at *6-10.

　　　　**B.　　　Factual commonality does not exist**

　　　　Not every common question will suffice to satisfy the commonality requirement. *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1988).  The test, rather, is whether there is "a common issue the resolution of which will advance the litigation." *Id.; see also Bell v. Caruso*, 2007 WL 3275067, at *3 (W.D. Mich. Nov. 5, 2007).  Plaintiffs' motion fails the test: their "common nucleus of operative fact" consists of only three Sony documents, *see* Pl. Mot at Ex. A-C, which raise no "common issue the resolution of which will advance the litigation."

　　　　 **The "incredible 1080p experience" ad.**  Plaintiffs argue that this ad, Pl. Mot. Ex. A, is an example of Sony "aggressively marketing" the televisions as "1080p televisions."  The facts are otherwise.  The ad had very limited exposure: it ran for only one day, September 7, 2005, in

11

two newspapers.[19]  Fawcett Decl. ¶14, Ex. 1.  The ad was obviously not seen by the class as a whole; it was not even seen by Date and Handler.  Kefalas Decl. Ex. 90, No. 7, 9; Handler Dep., 221:20-222:7.  Moreover, the ad says nothing at all about the televisions' inputs, and there is no evidence that consumers who saw the ad would have made the HDMI Input Assumptions.  Handler Dep., 223:7-12; Souder Decl. at 4-5; Section II, above.

The Qualia Brochure.  The second piece of "common" evidence – a brochure for the 70-inch Qualia purchased by Mr. Handler, attached to the motion as Exhibit B – suffers from the same problems.  The brochure was used only in the limited number of stores authorized to sell the Qualia televisions.  Sfeir Decl. ¶6; Fawcett Decl. ¶¶10, 31.  Most class members purchased XBR1 televisions; only approximately 3,000 Qualias were sold.  Fawcett Decl. ¶¶32-33.  There is no evidence that any XBR1 purchasers saw the Qualia brochure.[20]  Nor is there evidence that the phrase complained about – i.e., that the Qualia was "the world's first rear projection television capable of full (1080p) High Definition resolution" – would have caused absent class members to make the HDMI Input Assumptions.  The evidence is to the contrary, particularly given the wide availability of information about the televisions' HDMI input capabilities.  Souder Decl. at 6; Fawcett Decl. Exs. 33-44; Schmidt Exs. 84-85.[21]

The XBR1 "spec sheet."  The final piece of "evidence" is the XBR1 "spec sheet" that was available on the Sony support website.  Pl. Mot., Ex. C.  There is no evidence that the "spec sheet" was seen by all, or many, class members, and Date and Handler both admit that they did

---

[19]  The ad does not mention the Qualia SXRD television, which was launched a year earlier.

[20]  Mr. Date, who purchased a XBR1, admitted that he did not see the Qualia brochure or any other piece of Qualia advertising.  Kefalas Decl. Ex. 90, No. 7, 9.

[21]  For example, Handler agreed that a purchaser who read *The Perfect Vision*'s review of the Qualia 006 would not have been misled about that television's HDMI input capabilities, since the review disclosed that the HDMI input accepted only 1080i signals.  Handler Dep., 204:7-206:6; *see also* Fawcett Decl. Ex. 55.

*not* see it prior to purchase.  Date Dep., 118:8-120:15; Handler Dep., 218:19-219:2.  Nor is there any evidence that class members who saw the "spec sheet" would have made the HDMI Input Assumptions.  The "spec sheet" is silent as to capabilities of the HDMI input,[22] and its claim that the televisions' SXRD display technology would "meet and exceed" the demands of high definition television "at its full 1080 line resolution" says nothing about input capabilities in general or HDMI specifically.[23]

Courts have repeatedly held that these types of isolated statements are insufficient to satisfy the commonality requirement.  In *Rosen*, plaintiffs tried to certify a nationwide class of Jeep Grand Cherokee purchasers, claiming Chrysler misrepresented the "Quadra-Trac 4WD system" by distributing uniform marketing and advertising materials to its dealers.  This Court refused to certify because plaintiffs failed to show that the dealers marketed the Jeeps uniformly, or that any putative class representative received or relied upon the Chrysler materials.  2000 WL 34609135 at *6.  The proposed class here is similarly flawed.  There is no uniform marketing, uniform receipt or uniform reliance.  There is no evidence that the three "common" Sony documents were seen by the class as a whole.  Certifying a class based solely on the existence of those three documents would result in a class containing television purchasers who never saw a Sony ad prior to purchase, or never saw a Sony ad that contained the term "1080p," or bought a Sony television neither knowing nor caring whether the television

---

[22]   The "spec sheet" uses the term "1080p" to (accurately) describe the video resolution of the XBR1 televisions, and nowhere else.  Pl. Mot., Ex. C.  Input capabilities are discussed in a separate section, and no claims regarding "1080p" are made there.

[23]   Additionally, the "spec sheet" was available on the exact webpage from which consumers could obtain the manual, which expressly disclosed that the HDMI input accepted only 480i, 480p, 720p and 1080i.  Schmidt Decl. ¶20.

was "1080p" in whole or part.[24]  That is not what Rule 23 contemplates.[25]

The lack of evidence showing that all class members would have made the HDMI Input

Assumptions also defeats commonality.  *Rosen* is again instructive.  This Court rejected the

proposed class in that case because the importance of the phrase "4WD" to absent class

members was not a common question: "[w]hile some purchasers may have wanted a 4WD

system, the majority of customers likely based their purchase decisions on other factors."  2000

WL 34609135 at *7; *see also Avritt*, 615 F.3d at 1035.  The same is true here.  Plaintiffs have

provided no common evidence that class members cared about 1080p, HDMI or made the

HDMI Input Assumptions.  Without such evidence, the three Sony documents do not present "a

common issue the resolution of which will advance the litigation." *Sprague,* 133 F.3d at 397.

## IV.  The Proposed Class Does Not Satisfy Rule 23(a)(3) or 23(a)(4)

The proposed class claims do not satisfy the typicality or adequacy requirements of Rule

23(a)(3) and (4).  "Typicality determines whether a sufficient relationship exists between the

---

[24]  The recent decision in *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966 (Cal. App. 2 Dist. 2009), is also instructive.  The *DirectTV* plaintiff alleged that DirecTV violated §17200 when it advertised that its broadcasts were made in a higher resolution than what plaintiff ultimately received.  178 Cal. App. 4th at 969.  Based on that alleged misrepresentation, plaintiff attempted to certify a class of "residents of the United States of America who subscribed to DirecTV's High Definition Programming Package."  *Id.* at 970.  The court found that the proposed class action was inappropriate, since the proposed class would include subscribers who never saw DirecTV ads or representations of any kind before deciding to purchase DirecTV's HD services, subscribers who only saw ads or representations that did not mention technical terms regarding bandwidth or pixels, and subscribers who purchased DirecTV HD because they saw it in a store, or at someone's home, or based on word of mouth.  *Id.* at 979.

[25]  *See, e.g., Am. Med. Sys.*, 75 F.3d at 1080-81; *Converse v. Ameritech Corp.,* 179 F.R.D. 533, 540-41 (W.D. Mich. 1997) (commonality not satisfied when plaintiffs "failed to introduce any evidence suggesting that defendants' oral communications with customers contained similar misrepresentations and omissions"); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034-35 (8th Cir. 2010); *see also Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 928 (Cal. App. 4 Dist. 2010) (denying certification where majority of customers never saw misrepresentation regarding origin of goods on Target.com); *Pfizer, Inc. v. Supreme Court*, 182 Cal. App. 4th 622, 631-32 (Cal. App. 2 Dist. 2010) (denying certification where misrepresentation did not appear on all bottles of Listerine and there was no evidence that a majority of Listerine purchasers viewed television commercials).

injury to the named plaintiff and the conduct affecting the class, so that the court may properly

attribute a collective nature to the challenged conduct." *Sprague,* 133 F.3d at 399.  The

typicality requirement therefore "limits the class claims to those fairly encompassed by the

named plaintiffs' claims." *Id.; see also Am. Med. Sys.*, 75 F.3d at 1082.

 **Date's claims are not typical.**  Date's claims are not typical of ***any*** claims against Sony,

because Date has admitted that he neither saw, nor relied on, any of the supposedly "common"

Sony advertisements or promotional materials before he purchased his television.  *See* Kefalas

Decl. Ex. 90, No. 7.  Date cannot represent a class suing Sony over alleged "misrepresentations"

that he, personally, did not see or rely on when purchasing his television.[26]  For the same reason,

Date would not be an adequate class representative on any claims against Sony.[27]  *Faralli v. Hair

Today, Gone Tomorrow*, 2007 WL 120664, at *16 (N.D. Ohio Jan. 10, 2007); *Hillis v. Equifax

Consumer Servs., Inc.*, 237 F.R.D. 491, 501-2 (N.D. Ga. 2006).

 **Handler's claims are not typical.**  Similarly, Handler cannot represent a class of XBR1

purchasers, because he neither  saw nor relied on any of Sony's XBR1 advertising when he

purchased his Qualia television.  *See* Kefalas Decl. Ex. 91, No. 7, 9.  Indeed, Handler purchased

his Qualia television several months before the XBR1 televisions were even introduced to the

market, Handler Dep., 138:4-16, and admitted that he paid no attention to the marketing of the

XBR1 televisions.  *See* Kefalas Decl. Ex. 91, No. 7, 9.  Further, Sony used many different

---

[26] *See, e.g., Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993); *Blank v. Jacobs*, 2009 WL 3233037, at *7 (E.D.N.Y. Sept. 30, 2009); *In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, 2007 WL 4287511, at *6-7 (N.D. Ill. Dec. 4, 2007); *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 434-35 (C.D. Cal. 2007); *see also Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (finding plaintiff lacked standing to challenge misrepresentations made in radio, television, or internet advertising regarding Men's Health vitamin when he only alleged that he relied on representations on vitamin packaging); *Pfizer*, 182 Cal. App. 4th at 633.

[27] Date's claims are also not typical because Date's complaint is with the XBR1's computer input, not its HDMI input.  *See* Date Dep. at 189:23-190:3; 191:13-193:6.  Date's idiosyncratic focus on using his television as a 60-inch computer monitor is not typical of the purported class.

advertisements and promotional materials in connection with the Qualias, and Handler admitted that he did not see most of them.  *See* Handler Dep. at 223:13-234:9.  His claims are therefore not typical of the claims of Qualia purchasers, and he would not be an adequate representative for those claims.

## V.        The Proposed National Class Does Not Satisfy Rule 23(b)(3)

Even if the requirements of Rule 23(a) were satisfied, the motion fails because it does not demonstrate that Rule 23(b)(3)'s predominance and superiority elements are met.  *In re Foundry Resins Antitrust Litig.,* 242 F.R.D. 393, 401 (S.D. Ohio 2007).

**Individual legal issues will predominate on plaintiffs' claims.**  Common legal issues will not predominate on the proposed fraud, warranty and unjust enrichment claims because this Court would have to apply the laws of all 50 states in order to try this case as a class action.  *See* Section III.A, above.  It is well recognized that the need to apply such disparate legal standards defeats predominance and superiority.  *See, e.g., Castano v. Am. Tobacco*, 84 F.3d 734, 741 (5th Cir. 1996).

**Individual factual issues will predominate on the fraud claims.**  Similarly, individual factual issues will predominate on plaintiffs' fraud claims.  As discussed above, the fraud claims depend on a series of individualized showings: (1) that class members saw an ad with the term "1080p"; (2) that they made all of the plaintiffs' HDMI Input Assumptions; (3) that they did not learn about the televisions' HDMI input capabilities from other sources; (4) that they reasonably relied on the term "1080p" as a representation regarding HDMI input capabilities; and (5) that they were damaged as a result.  There is no common evidence on any of these issues, which means the Court would have to conduct an individualized inquiry for ***every class member***.  That is not appropriate or feasible.  *See, e.g., Yadlosky,* 197 F.R.D. at 299 ("Class action status is

usually inappropriate where oral representations are relied upon to support fraud claims, due to the highly individualized nature of the statements")*; Converse,* 179 F.R.D. at 540 (denying class certification where individual reliance had to be proven as to each phone customer based on various written advertisements and conversations with service representatives).[28]

  This would be true even if §17200 could be applied to the claims of the class as a whole. Such claims may be brought only by "those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." *Kwikset Corp. v. Superior Court*, _ Cal. Rptr. 3d _, 2011 WL 240278, at *4 (Cal. 2011).  Given that few Sony advertisements contained the allegedly misleading statements, *see* Section II, above, the Court would be required to conduct a class member-by-class member inquiry to determine whether any particular class member had seen one of the few Sony ads that plaintiffs claim constituted an "unfair business practice," and therefore even arguably could bring a claim against Sony under §17200.[29]  That cannot be done in a class action.  *See Campion v. Old Republic Home Prot. Co., Inc.*, 2011 WL 42759, at *15 (S.D. Cal. Jan. 6, 2011) (no predominance on §17200 class action when alleged misrepresentations varied).

  The reliance requirement of §17200 poses a similar, insuperable obstacle to certification. Section 17200 plaintiffs must show "actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).  The individual issues

---

[28] *See also In re St. Jude Med., Inc.*, 522 F.3d at 838 ("fraud cases often unsuitable for class treatment"); *Kaser v. Swann*, 141 F.R.D. 337, 339 (M.D. Fla. 1991); 1966 Advisory Committee Comments on Rule 23(b)(3) ("a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed").

[29] *See, e.g., Pfizer, Inc.*, 182 Cal. App. 4th at 633.  Date and Handler's own testimony on this point would no nothing to prove the purported class claims under §17200.  *See, e.g., Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008) (holding that plaintiff's "largely undefined personal assumptions and expectations" were insufficient to show that consumers were likely to be deceived in violation of §17200).

associated with determining whether absent class members could satisfy this actual reliance element would predominate.  *See Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000).  Nor does plaintiffs' argument that §17200's reliance requirement does not apply in class actions solve the problem.  *Tobacco II*, the case cited for this proposition, is a decision of the California Supreme Court interpreting California law.  To the extent *Tobacco II* created a special rule of procedure for California class actions involving §17200 claims, that rule is clearly inconsistent with Rule 23, which has consistently been interpreted to limit federal class actions to class members who possess viable, personal claims against the defendant.  *See, e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (collecting cases).  The Supreme Court recently held that Rule 23 trumps inconsistent state rules regarding class actions in federal court. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. C*o., _ U.S. _, 130 S. Ct. 1431 (2010); *see also In re OnStar Contract Litig.*, 2010 WL 3516691 at *4 (Michigan limitations on class actions conflict with Rule 23 and cannot be applied in federal court); *Avritt*, 615 F.3d at 1034 (rejecting argument that *Tobacco II* excuses plaintiffs from showing that all class members have standing).[30]  Rule 23, not the "rule" of *Tobacco II*, must be applied here.

**Individual factual issues will predominate on the express warranty claims.**  Since plaintiffs have not shown that all class members saw a common advertisement, document or promotion, there is no common basis for determining the existence of terms of the alleged "warranty."  Instead, the Court would need to determine (1) which Sony documents, if any, each class member saw prior to purchase; (2) whether those documents created an express warranty between Sony and the class member; (3) what "terms" were included in that warranty; and (4)

---

[30]   *See also Webb v. Carter's Inc.*, 2011 WL 343961, at *6 (C.D. Cal. Feb. 3, 2011) (same); *In re Activated Carbon-Based Hunting Clothing Mktg. and Sales Practices Litig.*, 2010 WL 3893807, at *2 (D. Minn. Sept. 29, 2010) (same); *In re Light Cigarette Mktg. Sales Practices Litig.*, 2010 WL 4901785, at *16 (D. Me. Nov. 24, 2010) (same).

whether those "terms" were violated by Sony's sale of the televisions in question without a HDMI input capable of 1080p.  *See Johnson v. Mitsubishi Digital Electronics America, Inc*. 578 F. Supp. 2d 1229, 1235-38 (C.D. Cal. 2008) (rejecting warranty claim under California law for lack of evidence that documents containing word "1080p" created warranty of 1080p HDMI inputs).  Those lengthy and complicated individual inquiries would obviously swamp any common issues.[31]

**Individual issues will predominate on damages.**  Plaintiffs have not demonstrated that the damages claims of the purported class could be tried based on common evidence.  This issue, which plaintiffs ignored, is fatal to the motion: class proponents are required to demonstrate that class damages can be determined using common evidence.  *Roberts v. The Scott Fetzer Co.*, 2010 WL 3937312, at *9 (M.D. Ga. Sept. 30, 2010).  The failure to do so necessitates denial of their motion.

## VI. There Is No Showing The State Classes Satisfy Rule 23

Finally, plaintiffs' request that Michigan and New York classes be certified as an alternative to the proposed national class should be rejected for all of the reasons discussed above.[32]  The only problem arguably solved by limiting the classes to those states is choice of law, and the problems with the proposed class go far beyond choice of law.

Even if the classes were limited to Michigan and New York, the requirements of Rule 23 would not be satisfied; Date cannot represent a class of all Michigan purchasers, and Handler

---

[31]   *See Payne v. FufiFilm U.S.A., Inc.*, 2010 WL 2342388, at *3 (D.N.J. May 28, 2010) (collecting warranty cases recognizing "even the basic issue of whether the common defect exists may defeat predominance"); *Porcell v. Lincoln Wood Prods., Inc.*, 713 F. Supp. 2d 1305 (D.N.M. 2010) (same).

[32]   Plaintiffs have made no attempt to actually demonstrate that certifying either the Michigan or New York class would be appropriate; instead, they have simply requested that those classes be certified if the national class is not.  *See* Pl. Mot. at 3, 19.  If the Court is inclined to overlook plaintiffs' failure to carry their burden, and consider their request, Sony would request additional briefing so the question could be given the "rigorous analysis" required by Rule 23.

cannot represent a class of all New York purchasers.  Sections III-IV, above.  Similarly, the same individualized issues of common misrepresentations, reliance, damages and warranty formation discussed above would predominate in the state class actions just as they would in the national.[33] *See* section VI, above; ABC Opp. to Mot. for Class Cert. at Sections II-V.

## CONCLUSION

Plaintiffs have failed to carry their burden on this motion.  They have given the Court no evidence that all, or even many, class members saw marketing materials that used the phrase "1080p," and that failure alone is fatal to the motion.  Nor have they explained how the HDMI Input Assumptions could or would be proved on behalf of the class as a whole, or how the numerous individual factual and legal issues discussed above could be resolved in one proceeding.  Sony respectfully requests that plaintiffs' motion be denied in its entirety.

Respectfully submitted,

Date:   February 14, 2011

MILLER, CANFIELD, PADDOCK & STONE PLC
 s/  Clarence L. Pozza Jr.
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415
Telephone: (313) 496-7556
*Attorneys for Defendants*

---

[33]   To prove a breach of express warranty under New York law, plaintiffs must demonstrate "an affirmation of fact or a promise by the seller the natural tendency of which was to induce the buyer to purchase." *Anderson v. Bungee Int'l Manuf. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999).  They must also show that they actually received, understood and relied on the terms of the alleged warranty prior to the purchase of the televisions. *See Murrin v. Ford Motor Co.*, 756 N.Y.S. 2d 596, 597 (N.Y. App. 2003).  To prove a violation of New York Civil Code §349, the plaintiffs must show that Sony "is engaging in act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof" and that Sony's "material deceptive act" cause plaintiffs to suffer actual harm. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y. 2d 20, 25 (N.Y. 1995).  To prove a claim for unjust enrichment under New York law, the plaintiffs must show (1) the receipt of a benefit by Sony from plaintiffs and (2) an inequity resulting to plaintiffs because of Sony's retention of that benefit. *Ultimar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 579 N.Y.S. 2d 353 (N.Y. App. 1992).

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on February 14, 2011, I electronically filed the foregoing **OPPOSITION TO MOTION TO CERTIFY CLASS** with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Respectfully Submitted

MILLER, CANFIELD, PADDOCK & STONE, PLC

<u>s/   Clarence L. Pozza Jr.</u>
Clarence L. Pozza Jr. (P24168)
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415
Telephone: (313) 496-7556
pozza@millercanfield.com

18,811,684.1\140018-00001