UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR., and ELLIOT
HANDLER, Individually and On Behalf of
All Others Similarly Situated,

        Plaintiffs,

vs.

SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC., d/b/a ABC
WAREHOUSE,

        Defendants.

Case No. 07-CV-15474

Honorable Paul D. Borman
Magistrate Judge R. Steven Whalen

**DEFENDANTS' STATEMENT IN
CONNECTION WITH APRIL 5, 2011
HEARING ON DISCOVERY ISSUES**

*Counsel for Plaintiffs:*
Dani K. Liblang (P33713)
LIBLANG & ASSOCIATES
346 Park St., Suite 200
Birmingham, Michigan 48009
(248) 540-9270
danil@lemonlawyers.com

Brian S. Kabateck (CA 152054)
KABATECK BROWN
KELLNER LLP
644 S. Figueroa St.
Los Angeles, CA 90071
(213) 217-5000
bsk@kbklawyers.com

Lance A. Raphael (IL 6216730)
CONSUMER ADVOCACY
CENTER, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602
(312) 782-5808
lance@caclawyers.com

Darren T. Kaplan (NY 2447381)
CHITWOOD HARLEY
HARNES LLP
1230 Peachtree, NE, Suite 2300
Atlanta, GA 30309
(888) 873-3999
dkaplan@chitwoodlaw.com

Alan Mansfield (CA 125988)
CONSUMER LAW
GROUP OF CALIFORNIA
9466 Black Mountain Rd.,
Suite 225
San Diego, CA 92126
(619) 308-5034
alan@clgca.com

*Counsel for Defendants:*
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kefalas (P64949)
MILLER, CANFIELD, PADDOCK AND STONE, PLC
150 W. Jefferson Suite 2500
Detroit, Michigan 48226-4415
(313) 963-6420
pozza@millercanfield.com
cranmer@millercanfield.com
wierenga@millercanfield.com
kefalas@millercanfield.com

1.	Defendants Sony Electronics, Inc. ("Sony") and ABC Appliance, Inc. ("ABC") respectfully submit the following statement in connection with the April 5, 2011 hearing on the status of discovery in this matter.

2.	Defendants do not believe there are any serious disputes between the parties over deposition scheduling, defendants' written responses to plaintiffs' discovery, or the format of defendants' voluminous document production to plaintiffs. Plaintiffs' unfortunate decision to use false accusations of defendants' "failure" to provide, or cooperate in, discovery as a justification for plaintiffs' repeated requests for extensions of the Court's scheduled deadlines has created the appearance of issues where none actually exist.

3.	Indeed, defendants are aware of no currently outstanding discovery disputes between the parties. On April 1, 2011, counsel for defendants spoke with Allison Krumhorn, one of plaintiffs' counsel in this matter, and asked whether plaintiffs intended to raise any discovery issues at the April 5, 2011 hearing that plaintiffs had not previously raised with defendants. Ms. Krumhorn could not identify any such issues; nor could she confirm that plaintiffs would not raise new issues at the April 5 hearing. Defendants requested that they be informed if plaintiffs intended to raise new issues at the April 5 hearing. As of the time of filing of this statement, plaintiffs have not apprised defendants of any such issues.

## STATUS OF DEPOSITION DISCOVERY SERVED ON SONY

4.	Plaintiffs have, to date, not served any notices on Sony pursuant to Fed.R.Civ.P. 30(b)(1) requesting personal depositions of specific Sony witnesses. There have, therefore, been no disputes over the scheduling of such depositions.

5. Plaintiffs have served three Rule 30(b)(6) corporate deposition notices on Sony: one on November 16, 2010; one on December 2, 2010; and one on April 1, 2011. As explained below, Sony promptly agreed to make witnesses available in response to the November 16 and December 2 notices. Sony anticipates making witnesses available in response to the April 1 notice as well. Sony is not aware of any outstanding disputes related to the three Rule 30(b)(6) notices that plaintiffs have served on Sony.

6. **The November 16, 2010 notice.** Plaintiffs' November 16 notice was very narrowly limited to the topics discussed in a declaration that Naila Sfeir, a Sony employee, submitted in opposition to the motion to compel that plaintiffs filed in October 2010. *See* Exhibit A. Sony agreed to make a witness (Ms. Sfeir) available in response to the November 16 notice. *See* Exhibit B. After further conferences between counsel, plaintiffs declined Sony's offer to take Ms. Sfeir's deposition and withdrew their November 16 notice (and their motion to compel).

7. **The December 2, 2010 notice.** Similarly, Sony offered to make the Vice President of its television business, Chris Fawcett, available for deposition on December 23 on the general subject matter areas identified in plaintiffs' December 2 notice (i.e., Sony's marketing and advertising of the televisions at issue in this case).[1] *See* Exhibit C. Plaintiffs declined Sony's offer, citing vacation plans of counsel.[2]

8. Plaintiffs' December 2 notice was accompanied by a document request that purported to require Sony to "produce" at deposition documents that, as plaintiffs knew, Sony had already produced to plaintiffs. *See id.* The purpose of this document

---

[1] This offer was made during a personal meeting between counsel on December 10, 2010.

[2] Plaintiffs had requested that this deposition take place on December 20, 2010. Mr. Fawcett was not available for deposition on that date.

request seemed to be to require Sony's counsel, rather than plaintiffs' counsel, to review Sony's document production, identify the documents that plaintiffs intended to use as exhibits at the deposition, and provide those deposition exhibits to plaintiffs' counsel. Sony objected to this aspect of the December 2 notice. *See* Exhibit D at ¶ 2.

9. The parties further conferred on Sony's objections to the December 2, 2010 notice on January 12, 2011. At that conference, Sony's counsel reiterated that Sony did not object to providing a witness for questioning on Sony's marketing or advertising of the televisions at issue, but instead objected only to plaintiffs' demand that Sony's counsel review Sony's document production and provide plaintiffs with the documents they intended to use as deposition exhibits. In response to plaintiffs' claim that Sony's document production failed to comply with Rule 34(b) because the documents were supposedly produced "out of order," Sony's counsel also offered to make a Rule 30(b)(6) witness available on the topics of Sony's document collection and/or production.

10. Plaintiffs instead requested, and Sony agreed to provide, a document identifying the requests for production to which the documents produced by Sony were responsive. After negotiations regarding the form and timing of this "responsiveness" document, Sony produced the requested document to plaintiffs on March 22, 2011.

11. **The April 1, 2011 notice.** Plaintiffs' most recent Rule 30(b)(6) notice was served on Sony last Friday, April 1, in the afternoon. This notice covers the same general subject matter as the December 2 notice, but largely drops the document requests to which Sony had objected. *See* Exhibit E. Sony has already informed plaintiffs that it anticipates providing one or more witnesses in response to this notice. Since this notice was just served on Sony, Sony has not yet had an opportunity to determine whether it has

3

objections to any aspect of the notice, to determine whether plaintiffs' requested deposition date is feasible, or to propose alternative dates, but anticipates doing so shortly. Sony will meet and confer with plaintiffs regarding any issues that may arise in connection with this notice.

## STATUS OF DEPOSITION DISCOVERY SERVED ON ABC

12. Plaintiffs have, to date, not served any notices on ABC pursuant to Fed.R.Civ.P. 30(b)(1) requesting personal depositions of specific ABC witnesses. There have, therefore, been no disputes over the scheduling of such depositions.

13. On December 22, 2010, plaintiffs served their first deposition request on ABC, a Rule 30(b)(6) notice that was very similar to the December 2 notice that plaintiffs served on Sony. *See* Exhibit F. ABC made the same objections to that request that Sony had made, and both requests were discussed at the parties' January 12, 2011 conference discussed in paragraph 9, above. ABC understood the agreement described in paragraph 10 to resolve the parties' dispute over the ABC deposition notice as well.

14. On April 1, 2011, plaintiffs served their second Rule 30(b)(6) on ABC. This notice is substantially identical to the December 22 notice. *See* Exhibit G. ABC has already informed plaintiffs that it anticipates providing one or more witnesses in response to this notice. Since this notice was just served on ABC, ABC has not yet had an opportunity to determine whether it has objections to any aspect of the notice, to determine whether plaintiffs' requested deposition date is feasible, or to propose alternative dates, but anticipates doing so shortly. ABC will meet and confer with plaintiffs regarding any issues that may arise in connection with this notice.

## STATUS OF WRITTEN DISCOVERY AND DOCUMENT PRODUCTION

15.     **Defendants' written responses to plaintiffs' discovery requests.** Plaintiffs have served numerous sets of requests for production, requests for admission and interrogatories on both Sony and ABC.  Sony and ABC have provided timely responses to all of plaintiffs' requests.

16.     On May 15, 2009, Plaintiffs served 41 document requests, 22 interrogatories, and 37 requests for admission on Sony.  Sony responded, after a negotiated extension, on July 17, 2009, and further supplemented its interrogatory responses on December 31, 2010.

17.     Plaintiffs did not serve any further discovery until October 26, 2010 – more than a year later – when they served 75 additional requests for admission on Sony.  Sony responded on November 29, 2010.

18.     On October 27, 2010, Plaintiffs served 17 interrogatories, 40 requests for production, and 269 requests for admission on ABC; this was the first discovery of any kind that plaintiffs had served on ABC.  ABC responded on November 29, 2010, and amended its responses to the requests for admission on December 20, 2010.

19.     On November 23, 2010, Plaintiffs served 7 additional interrogatories and 2 additional requests for production on Sony.  Sony responded on December 27, 2010.

20.     Defendants are not aware of any outstanding disputes over their written responses to plaintiffs' discovery requests.

21.     **Defendants' production of documents**.  Plaintiffs' document requests sought comprehensive information (financial, sales and marketing) regarding the televisions at issue in the lawsuit, and also asked for all marketing, related

5

communications, and exemplars regarding every television Sony has ever advertised as having any "1080p" characteristic or capability. Sony collected and reviewed more than 2.5 million pages of documents in response to plaintiffs' requests, subject to some objections that were primarily related to scope. Although Sony did not agree to search for every document related to every television advertised as having "1080p" characteristics (which would have included multiple televisions every year since 2006), it did attempt to find any and all documents related to the marketing and sales of the four televisions at issue in this lawsuit, other televisions marketed at the same time, and relevant documents regarding the five model televisions that were introduced the year after the televisions at issue here.

22. Sony has produced approximately 26,825 documents, totaling approximately 636,000 pages, primarily in TIFF formats, along with many native files (movie files, sound files, and large excel files, for example). The vast majority of that production was electronically stored information, collected from custodians and centralized or shared files. By July 24, 2010, Sony had produced to plaintiffs approximately 90% of its total document production in this litigation. By September 4, 2010, Sony had produced to plaintiffs at least 98% of its total document production in this litigation.

23. Nearly all of Sony's ESI documents were produced, *at plaintiffs' request*, Exhibit H, as TIFF images with both Summation and Concordance load files, as well as load files for IPRO and Trial Director, and with corresponding searchable .TXT files for each TIFF image. The bundle of files produced included a metadata file to populate the following fields: beginning bates, ending bates, beginning attachment, ending attachment,

page count, custodian, from, to, cc, bcc, date sent, subject, author, date created, and MD5HASH.  *See* Exhibit I.  The production is therefore sortable by any of those fields.  The production also contained a large number of files in native format, which were not convertible to TIFF format; the load files, however, contained bates numbered placeholder documents that corresponded to the native file, and, in Summation, are linkable so that review in Summation can launch the native file software program.

25.  Plaintiffs were informed of the format of Sony's document production, including the metadata fields provided with the electronically stored information, and never communicated to Sony's counsel that they did not receive documents as they were expecting them.  Sony's document production complied with Rule 34(b).

26.  Despite the fact that plaintiffs had received the vast majority of Sony's document production by July 2010, plaintiffs did not raise any issue regarding the format of Sony's document production, or its compliance with Rule 34(b), until the January 12, 2011 conference described in paragraph 9, above.  That dispute was resolved when Sony provided the "responsiveness" document to plaintiffs on March 22, 2011.

27.  Defendants are not aware of any current disputes between the parties regarding defendants' document productions in this case.

                    Respectfully submitted,

                    MILLER, CANFIELD, PADDOCK & STONE, PLC

                    s/ Robert J. Wierenga.
                    Robert J. Wierenga (P59785)
                    150 West Jefferson, Suite 2500
                    Detroit, MI 48226-4415
                    Telephone: (313) 496-7756
                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 4, 2011, I electronically filed the foregoing **DEFENDANT SONY ELECTRONICS, INC.'S STATEMENT IN CONNECTION WITH HEARING ON DOCUMENT PRODUCTION AND DEPOSITION SCHEDULING** with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

CHITWOOD HARLEY HARNES LLP
Darren T. Kaplan
1230 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309
Tel: (404) 873-3900
Fax: (404) 873-4476
Email: dkaplan@chitwoodlaw.com

CONSUMER LAW GROUP OF CALIFORNIA
Alan Mansfield
9466 Black Mountain Rd, Ste 225
San Diego, CA 92126
Telephone: (619) 308-5034
Fax: (888) 341-5048
Email: alan@clgca.com

KABATECK BROWN KELLNER LLP
Brian S. Kabateck
644 South Figueroa Street
Los Angeles, CA 90071
Tel: (213) 217-5000
Fax: (213) 217 5010
Email: bsk@kbklawyers.com

THE CONSUMER ADVOCACY CENTER
Lance A. Raphael
180 W. Washington St., Ste 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930
Email: Lance@caclawyers.com

LIBLANG ASSOCIATES
Dani K. Liblang
346 Park St., Ste 200
Birmingham, MI 48009
Tel: (248) 540-9270
Fax: (248) 433-1989
Email: danil@lemonlawyers.com

MILLER, CANFIELD, PADDOCK & STONE, PLC

s/ Robert J. Wierenga.
Robert J. Wierenga (P59785)
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415

*Attorneys for Defendants*

18,956,530.1\140018-00001