IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR., Individually and On
behalf of All Others Similarly Situated,

    Plaintiff,

v.                                          Case No. 07-CV-15474

SONY ELECTRONICS, INC. and ABC     Honorable Paul D. Borman
APPLIANCE, INC. d/b/a ABC             Magistrate Judge R. Steven Whalen
WAREHOUSE,

    Defendants.

Counsel for Plaintiff:

| Dani K. Liblang (P33713) | Lance A. Raphael (IL 6216730) | Alan Mansfield (CA 125988) |
|---|---|---|
| LIBLANG & ASSOCIATES | CONSUMER ADVOCACY CENTER, P.C. | CONSUMER LAW GROUP OF CALIFORNIA |
| 346 Park St., Ste 200 | 180 West Washington, Ste 700 | 9466 Black Mountain Rd., Ste 225 |
| Birmingham, MI 48009 | Chicago, Illinois 60602 | San Diego, CA 92126 |
| (248) 540-9270 | (312) 782-5808 | (619) 308-5034 |
| danil@lemonlawyers.com | lance@caclawyers.com | alan@clgca.com |

Counsel for Defendants:
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kafalas (P64949)
MILLER, CANFIELD, PADDOCK & STONE, PLC
150 W. Jefferson Suite 2500
Detroit, Michigan 48226-4415
(313) 496-7756

**PLAINTIFF DAVID DATE'S SUPPLEMENTAL BRIEF IN RESPONSE TO
THE COURT'S JULY 21, 2011 ORDER**

A.     **The Pending Motion For Class Certification Should Be Amended**

On April 30, 2010, Plaintiffs Date and Handler filed a Third Amended Complaint [Doc. 123] regarding Sony-brand television models KDS-R50XBR1, KDS-R60XBR1, KDS-70Q006, and KDX-46Q005.

Date purchased the KDS-R50XBR1[1] ("XBR1") at ABC Warehouse. [Doc. 123 at ¶¶ 38-40]. Handler purchased the KDS-70Q006 ("Qualia") at New York Wholesale Audio & Video. [Doc. 123 at ¶ 54]. During the deposition of Sony's 30(b)(6) witness, it was discerned that the Qualias were sold as a "boutique line" of Sony televisions. (Fawcett Dep., 96:11).[2]

Further, the marketing information gleaned from Sony's witnesses and documents shows that the Qualias were predominantly distributed through a concierge-type service, unlike the XBR1s. (Fawcett Dep., 141:10-17). Thus, with Handler's departure from the case, Date seeks to withdraw the class allegations pertaining to the Qualias without prejudice. Ironically, this is consistent with the First Amended Complaint, which Date originally filed before Handler's intervention that contained a more narrowly tailored class definition. [Doc. 2]. Date's request is appropriate because, without Handler as a Qualia purchaser, Defendants can argue Date's adequacy under Fed. R. Civ. P. 23(a)(4).[3] Therefore, Date seeks to modify the class definitions against Sony as follows:

<u>Class A</u> -- all persons nationally who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1, seeking relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, for breach of express warranty under California law, Cal. Civ. Code § 1790, *et seq.*, for breach of express warranty under the Magnuson Moss Warranty Act, and for unjust enrichment.

---

[1]     The KDS-R50XBR1 and KDS-R60XBR1 are identical televisions, with the exception that one has a 50-inch screen and one has a 60-inch screen.

[2]     The Christopher Fawcett, Michael Shelby, and Randy Waynick depositions reference exhibits the Defendants designated as confidential. Pursuant to the Protective Order entered in this case on February 10, 2011, the relevant transcript pages are not being publicly filed but are only being provided to the Court in a sealed envelope, as Confidential Exhibits A, B, and C.

[3]     Sony previously argued that Handler was not an adequate representative for a class of XBR1 purchasers because he would not have considered XBR1 advertising when he purchased a Qualia. [Doc. 175 at p. 15].

1

Class B (in the alternative to Class A) -- all Michigan residents who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1, seeking relief under the Michigan Consumer Protection Act, for breach of express and implied warranty under Michigan and federal law, and for unjust enrichment.

The class alleged against ABC would be similarly modified: all Michigan residents who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1 from ABC Appliance, Inc.

To the extent this Court finds it appropriate for Plaintiff to file a separate, amended motion and memorandum for class certification reflecting these class definitions, Plaintiff requests leave to do so.  Further, to the extent this Court would like more specific information about the manner in which Sony advertised the XBR1s as "1080p," on its own and by directing its retailers,[4] Plaintiff is prepared to file an additional supplement.  Because Defendants have objected to Plaintiff's position that new class certification papers should be filed, Plaintiff seeks the Court's ruling on the issue.

**B.     Certification Of The Above Classes Is Appropriate**

The very facts which Sony chose to omit from every print ad, marketing brochure, and spec sheet used to market the XBR1s,[5] and which forms the gravamen of Plaintiff's complaint for a deceptive omission of a material fact, is present on Sony's website today.  Sony's website now explains the true "1080p" nature of the XBR1s as follows:

> The television display has a native resolution of 1080p.  This means that any supported signal (480i, 480p, 720p or 1080i) that is input to the TV will be up-converted from its original resolution and displayed in 1080p.
>
> None of the input jacks on the television have the capability of receiving a 1080p signal; trying to input a 1080p signal into the TV will result in a blank or distorted picture on the screen.  If you are connecting a video device that is outputting a 1080p signal, the video

---

[4]     See Confidential Exhibit D, SONY 0000081 - SONY0000087 (email from Sony to retailer Best Buy).  Pursuant to the Protective Order entered in this case on February 10, 2011, the document is not being publicly filed but is only being provided to the Court in a sealed envelope.

[5]     The period in which Sony and its retailers actively marketed the XBR1s was from approximately September 2005 through March 2006.  See Confidential Exhibit E, SONY 0595592 – SONY 0595641.  Pursuant to the Protective Order entered in this case on February 10, 2011, the document is not being publicly filed but is only being provided to the Court in a sealed envelope.

device will need to be reconfigured to output at a different resolution, such as 480i, 480p, 720p or 1080i.[6]

The problem with this "up-conversion" was demonstrated for the Court, and caused this Court to state, in rejecting the parties' settlement agreement, "This process creates a picture that is close to what would appear if the television displayed a native 1080p signal, but the picture quality does not reach the level of a native 1080p signal displayed on a 1080p resolution television." [Doc. 76 at p. 19]. Because the superiority of 1080p was widely touted, Sony was able to charge a premium on the XBR1s.[7]

Sony's spec sheet for the XBR1s,[8] which was transmitted to retailers such as ABC through Sony's "Dealer Asset Management" network,[9] describe the televisions as being able to "fully display a 1080 line picture without interlacing it" and having the capacity to "met and exceed the demands of a High Definition image at its full 1080 line resolution." The spec sheets are still available on Sony's consumer-facing website.[10] The Sony spec sheet (which still exists on Sony's website today) continues with the equivalent descriptive terms of: "Native Resolution: 1080p" and "Display Resolution: 1920 x. 1080." And ABC's sales tag headline (which was created directly from the Spec Sheet) for the XBR1s stated, "1080p SXRD Grand WEGA HDTV with Built-in HDTV/Cable Card." (Shelby Dep., 92-95;102: 15-25; 103: 1-18; 104-105). Date is an appropriate class representative because he specifically testified he saw this information on the sales tag, which said "1080p." (Doc. 211-2, Date Dep.: 89-21-25; 90:5-14; 91-4-7).

---

[6] *See* Exhibit 1.

[7] *See* Confidential Exhibit F, SONY 0104256 and SONY 0104259. Pursuant to the Protective Order entered in this case on February 10, 2011, the document is not being publicly filed but is only being provided to the Court in a sealed envelope.

[8] Even if there were different versions of Spec sheets over time for the XBR1s, Sony's Rule 30(b)(6) deponent could not identify any material differences in them related to the issues in this case. (Fawcett Dep., 58: 16-24; 59: 1-8). The Spec sheets are attached as Exhibit 2.

[9] [Doc. 178, Declaration of Chris Fawcett at ¶ 27]; (Shelby Dep. 70: 19-25).

[10] *See* http://esupport.sony.com/US/perl/model-documents.pl?mdl=KDSR50XBR1 (which links to the spec sheet).

3

The terms "1920 x 1080" were synonymous with the term "1080p" between mid-2005 and mid-2006, and used as such in a technical sense and in marketing materials. It was also a "key feature for the television industry." (Waynick Dep., 76-78; 102-107). Because of the consistent use of terms and phrases all connoting "1080p" in conjunction with the XBR1s, while not disclosing that the television lacked a 1080p input (and thus requiring the use of an "up-converted" signal, as Sony elegantly explains now), certification is appropriate.

**C.    Fact Discovery Should Be Extended By A Period Of 60 Days To Permit The Parties To Complete Already Issued Discovery and Identify Issues for Which Court Assistance is Required**

Fact discovery is set to close on August 19, 2011 but when this date was set, Handler and his counsel were still in the case. As such, they were assisting in Plaintiff's counsel's review of the Defendants' 600,000+ page document production. The Kabateck and Chitwood Harley firms departed the case, after brokering an individual deal for Handler, and Date's counsel became solely responsible for completing both the document review and all remaining fact depositions.

Plaintiff's request is also reasonable because Defendants did not provide an index of documents until March 22, 2011 and did not tender their privilege log until June 14, 2011. Without the index, Plaintiff's counsel was left to search through hundreds of thousands of pages in hopes of being able to guess which documents were produced in response to a particular discovery request. Even though Plaintiff originally issued written discovery to Sony in May of 2009, less than one month after receiving Sony's Rule 26(a) disclosures, Sony took until October of 2010, or approximately 17 months, to complete its rolling document production. However, this immense document production did not comport with: (1) Rule 34(b)(2)(E)(i), which requires a party to produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;" or (2) Rule 26(b)(5)(A), which requires documents withheld on the basis of privilege to be appropriately described. It was only after several

4

Rule 37.2 conferences, that Sony eventually provided the index and privilege log, as noted above.

Thus, Plaintiff requests that the schedule be modified as follows:

Close of fact discovery – October 17, 2011[11]
Plaintiff's merit expert report deadline – November 11, 2011
Defendants' merit expert report deadline – November 22, 2011
Plaintiff's rebuttal expert deadline – December 20, 2011
Close of expert discovery – January 13, 2012
Dispositive motion deadline – February 13, 2012

Under Local Rule 7.1, there were conferences between the attorneys in which counsel for

Date asked for Defendants' agreement on a discovery extension, and Defendants did not concur.

> Respectfully submitted,
> By: /s/ Lance A. Raphael
> One of Plaintiff's Attorneys

| Dani K. Liblang (P33713) | Lance A. Raphael (IL 6216730) | Alan Mansfield (CA 125988) |
|---|---|---|
| LIBLANG & ASSOCIATES | CONSUMER ADVOCACY CENTER, P.C. | CONSUMER LAW GROUP OF CALIFORNIA |
| 346 Park St., Ste 200 | 180 West Washington, Ste 700 | 9466 Black Mountain Rd., Ste 225 |
| Birmingham, MI 48009 | Chicago, Illinois 60602 | San Diego, CA 92126 |
| (248) 540-9270 | (312) 782-5808 | (619) 308-5034 |
| danil@lemonlawyers.com | lance@caclawyers.com | alan@clgca.com |

---

[11] Plaintiff has issued third party subpoenas which have not yet been answered. For example, third party subpoena respondent Best Buy advised counsel that it was experiencing technical issues with its search system and needed additional time to produce the requested documents.

5

## CERTIFICATE OF SERVICE

I certify that on August 11, 2011, I electronically filed the foregoing *Plaintiff David Date's Supplemental Brief In Response To The Court's July 21, 2011 Order* with the Clerk of Court using the ECF system that will send notification of such filing to all attorneys of record.

        Respectfully submitted,

        By: /s/ Lance A. Raphael
        One of Plaintiff's Attorneys
        The Consumer Advocacy Center, P.C.
        180 West Washington, Suite 700
        Chicago, Illinois 60602
        (312) 782-5808
        lance@caclawyers.com