IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR., Individually and On
behalf of All Others Similarly Situated,

    Plaintiff,

v.                                                                                  Case No. 07-CV-15474

SONY ELECTRONICS, INC. and ABC                  Honorable Paul D. Borman
APPLIANCE, INC. d/b/a ABC                       Magistrate Judge R. Steven Whalen
WAREHOUSE,

    Defendants.

Counsel for Plaintiff:

| | | |
|---|---|---|
| Dani K. Liblang (P33713) | Lance A. Raphael (IL 6216730) | Alan Mansfield (CA 125988) |
| LIBLANG & ASSOCIATES | CONSUMER ADVOCACY CENTER, P.C. | CONSUMER LAW GROUP OF CALIFORNIA |
| 346 Park St., Ste 200 | 180 West Washington, Ste 700 | 9466 Black Mountain Rd., Ste 225 |
| Birmingham, MI 48009 | Chicago, Illinois 60602 | San Diego, CA 92126 |
| (248) 540-9270 | (312) 782-5808 | (619) 308-5034 |
| danil@lemonlawyers.com | lance@caclawyers.com | alan@clgca.com |

Counsel for Defendants:
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kafalas (P64949)
MILLER, CANFIELD, PADDOCK & STONE, PLC
150 W. Jefferson Suite 2500
Detroit, Michigan 48226-4415
(313) 496-7756

**PLAINTIFF DAVID DATE'S SUPPLEMENTAL BRIEF IN RESPONSE TO
THE COURT'S AUGUST 18, 2011 ORDER**

**I.      INTRODUCTION**

As stated in his August 11, 2011 supplemental brief, Plaintiff requests that the following modified classes be certified against Defendant Sony:

> Class A -- all persons nationally who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1, seeking relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, for breach of express warranty under California law, Cal. Civ. Code § 1790, *et seq.*, for breach of express warranty under the Magnuson Moss Warranty Act, and for unjust enrichment.
>
> Class B (in the alternative to Class A) -- all Michigan residents who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1, seeking relief under the Michigan Consumer Protection Act, for breach of express and implied warranty under Michigan and federal law, and for unjust enrichment.

With regard to Defendant ABC, Plaintiff requests certification of the following modified class:

> All Michigan residents who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1 from ABC Appliance, Inc.

Certification of these classes is appropriate because Sony marketed and sold approximately 172,000[1] of the Model KDS-R50XBR1 or KDS-R60XBR1 televisions (the "Televisions") from August 2005[2] through December of 2006[3] as "1080p" televisions.[4] However, the Televisions were not capable of accepting a native 1080p signal[5] through any of their inputs, such as 1080p signals

---

[1]     Decl. of Chris Fawcett (Dkt. 178), at ¶ 32 ("Sony sold approximately 172,000 KDS-R60XBR1 and KDS-R50XBR1 model televisions, the vast majority of those to retailers.")
[2]     Decl. of Chris Fawcett (Dkt. 178), at ¶ 12 ("The KDS-R50XBR1 and KDS-R60XBR1 were introduced to the U.S. market in August 2005.")
[3]     Decl. of Chris Fawcett (Dkt. 178), at ¶ 29 ("To the best of Sony's knowledge, approximately 800 authorized retailers sold the KDS-R50XBR1 and/or KDS-R60XBR2 model televisions between approximately October 2005 and December 2006. The last shipments from Sony of these new television models to retailers were made in September 2006.")
[4]     Although Sony denied that it marketed the Televisions as "1080p", *see* Sony's Answer (Dkt. 146), Sony's 30(b)(6) designee, Chris Fawcett, in charge of advertising and marketing for the Televisions, admits that Sony did: "Q: So is it fair to say that Sony marketed the XBR1s as 1080p TVs? A: Yes, is it. They are." See Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, 333:21-23) (filed under seal).
[5]     "None of the input jacks on the television have the capability of receiving a 1080p signal; trying to input a 1080p signal into the TV will result in a blank or distorted picture on the screen."

from Blu-ray players being sold at the same time the Televisions were marketed.[6] Sony's central "1080p" message is confirmed in its ads:

> WHAT MAKES SONY GRAND WEGA SXRD THE BEST HDTV ON THE PLANET?
> THREE COLOR PANELS. TWO MILLION PIXELS EACH. ONE INCREDIBLE 1080p EXPERIENCE.

> excellent, innovative TVs says it all." What more can we say? Except, with two million pixels and 1080p resolution, what more could you want? Check it out for yourself at **sony.com/hdtv**.[7]

Thus, despite their protestations to the contrary, Sony marketed the Televisions as "1080p" televisions[8] and advertised them as having a "native display resolution of 1920x1080."[9] Sony further admits that "native display resolution of 1920x1080" in and of itself means "1080p."[10] Conversely, at the time the Televisions were marketed, neither Sony nor its retailers chose to disclose that "none of the input jacks on the television have the capability of receiving a 1080p signal; trying to input a 1080p signal into the TV will result in a blank or distorted picture on the screen."[11] Nor did any Defendant, at the time the Televisions were marketed, disclose that: "any supported signal (480i, 480p, 720p or 1080i) that is input to the TV will be up-converted from its original resolution and displayed in 1080p."[12] Thus, any 1080p source material, such as a Blu-ray disc, would first need to be "down-converted"[13] by the device. Then, the "down-converted" 1080i signal would be "up-

---

*See* Exhibit B, Sony's May 25, 2011 article *available at* http://www.kb.sony.com/selfservice/microsites/search.do?cmd=displayKC&externalId=C427127&fes=true&mdl=KDSR50XBR1.

[6] *See* Exhibit C, June 9, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, 172:8-13 ("Q … when were the blu-rays being sold? When did they first come out? A: The first blu-ray disk device was available for sale not from Sony but from a competing company in the summer of 2006.") (Filed under seal).

[7] *See* Group Exhibit D, SONY0230791-93, SONY0230796-97.

[8] *See* fn. 4, *supra*.

[9] *See, e.g.*, Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, 327:14-23, 406:4-7 (filed under seal); Exhibit C, June 9, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett,156:21-24; 157:1; 195-196; 212-215 (filed under seal).

[10] *See, e.g.*, Exhibit C, June 9, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, pp. 46-47, 156-157, 161-63 (filed under seal).

[11] *See* fn. 5, *supra*.

[12] *See* fn. 5, *supra*.

[13] See Exhibit E, at SONY0087432, SONY0087440-87442 (filed under seal).

2

converted" back to a 1080p signal by the Television in order to display the "down-and-up-converted 1080p signal" (i.e. non-native signal) on the Televisions' native 1080p resolution panels.[14]

This "down-conversion" and "up-conversion" process not only creates an inferior picture with artifacts,[15] but is a far cry from Sony's ad messaging. In this messaging, published by Sony and sent to its retailers, Sony tried to distinguish the Televisions from those of its competitors by claiming that the Televisions could "reproduce 1920 by 1080 resolution without using a complicated process to fill the timing gaps that exist between frames of data."[16] All the while, both Sony and its retailers uniformly omitted from all advertisements that the Televisions would not display a true "1080p" signal, and that any signal accepted would have to undergo a "down-conversion" and "up-conversion" process in order to be displayed, creating an inferior picture.

Moreover, Sony set a price for its Televisions (using as part of its basis a "1080p premium" of a specific dollar amount)[17] and sold those Televisions at that uniform price[18] to its retailers, who then passed on the uniform cost of the "1080p premium" to consumers, using Sony's central theme of the "1080p" experience.[19] Thus, every single person in the class was uniformly damaged as they ended up with a product, sold at a premium, which was incapable of receiving a native 1080p signal through any inputs. Thus, there are no individual issues that preclude certification.

## II. FACTORS WARRANTING CERTIFICATION

The purpose of this brief is to supplement Plaintiffs' previous motions for class certification and replies in further support thereof by narrowing the class definitions and presenting additional

---

[14] *See* Order Amending Opinion and Order Rejecting Class Action Settlement, at p. 2 (Dkt. 86) (*citing* Fairness Hr'g Schmidt, 67-68)). Sony's documents explain native resolution as well as the significance of using a signal that does not match the display's own native resolution. *See* Exhibit E, at SONY0087432 (filed under seal).
[15] *Id.*
[16] *See, e.g.*, Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, 327-28 (filed under seal); Exhibit F, SONY 000133.
[17] See Exhibit G, at SONY0104259 (filed under seal).
[18] *See* Group Exhibit Z, at SONY579305-10, SONY037115 (filed under seal).
[19] Exhibit H, Dep. of Hideaki Yamaguchi, 184-185; 199:6-25; 200:1 (filed under seal).

3

facts gleaned from discovery to demonstrate Defendants' uniformity of messaging for the Televisions. (Dkt. 165-168, 197-200). However, because the same issues of fact and law remain for these modified classes, Plaintiff incorporates his former briefs, including all statements of law and fact, into the instant supplement.

### A. PLAINTIFF MEETS THE RULE 23(a) REQUIREMENTS.

#### 1. Numerosity.

Sony admits selling approximately 172,000 of the KDS-R50XBR1 and KDS-R60BXR1 model televisions and ABC has admitted selling more than 2,000; thus numerosity is met.[20]

#### 2. Commonality.

Sony's objection to commonality is really a dispute as to the merits. The factual and legal issues to be resolved on a class-wide basis for Class A and Class B are straightforward – the common issue is whether Sony, individually and through its retailers, accurately represented the capabilities of the Televisions. Discovery shows that Sony advertised the Televisions as 1080p and touted them as "real" 1080p televisions, as opposed to their "virtual" 1080p competitors.[21]

Sony ran its own national advertisements stating that the Televisions were "1080p" televisions.[22] Simultaneously, Sony coordinated with its retailers so they would use Sony's own materials to market the Televisions as "1080p."[23] Through its campaign, Sony carefully omitted informing consumers and its retailers (unless independently discovered)[24] of the Televisions' input limitations. The objectively deceptive nature of Sony's advertising messaging was conclusively demonstrated during the July 15, 2011 deposition of Sony's own Rule 30(b)(6) designee Naila Sfeir.

---

[20] See Sony's Resp. to Pls.' First Set of Interr., at ¶ 3; ABC's Am. and Supp. Resp. to Pl.'s Req. for Admission, at ¶ 31.
[21] See Exhibit I, Bravia and SXRD Activity and Budget Summary (Dec. 2, 2005), at SONY0595612 (field under seal)
[22] See Group Exhibit D, SONY0230791-93, SONY0230796-97.
[23] Exhibit J, SONY0000076-87.
[24] See Exhibit K, SONY 0197537-38.

4

Sfeir reviewed Sony's messaging, the first key point of which was "Full 1080p High Definition Picture Quality," and after her review, Sfeir stated that she thought the Televisions could accept video 1080p signals and display them on a 1080p screen.[25]

Sony implemented this central messaging of "Full 1080p High Definition Picture Quality" in its marketing schedule for the Televisions. In fact, Sony's August 2005 "launch brief," which was sent to one of its largest retailers,[26] includes the "Full 1080p High Definition Picture Quality" message.[27] This Launch brief message was reiterated in other Sony materials, including its website.[28]

In fact, for all other "authorized dealers" such as ABC, Sony created a dealer network website, or DAM, to provide materials for retailers to use when creating advertisements for the Televisions.[29] But Sony did not merely provide its authorized dealers with materials on its website. In order to ensure the "1080p" message was received and understood, Sony also provided its

---

[25] *See* Exhibit L, Dep. of Naila Sfeir, pp. 161-65 (filed under seal). By way of example, Ms. Sfeir was asked "would it surprise you that this TV is not able to accept 1080p input through its HDMI cable?" to which Ms. Sfeir responded: "My understanding is it can accept it and it can -- it will process it and display it." *Id.* at 162:11-18. Further, Ms. Sfeir was asked: "Your understanding from the messaging in the August 25th email is that the XBR1's are able to accept 1080p signals and display them on a 1080p resolution screen, right?" Ms. Sfeir responded, over counsel's objection: "Yes." *Id.* at 164:3-13. In fact, Sfeir believed that all 1080p video signals could be displayed via the Televisions' input. *Id.* at 162:2-9.

[26] *See* Exhibit J. According to Chris Fawcett, Best Buy constitutes "Approximately 30 percent" of Sony's sales. Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, pp. 355:6-14 (filed under seal).

[27] *See* Exhibit J.

[28] *See* current version of Sony Televisions web ad available on its website. The features are *available at* http://store.sony.com/webapp/wcs/stores/servlet/ProductDisplay?catalogId=10551&storeId=10151&langId=-1&productId=11038341#features, and the specifications are *available at* http://store.sony.com/webapp/wcs/stores/servlet/ProductDisplay?catalogId=10551&storeId=10151&langId=-1&productId=11038341#specifications. *See* Group Exhibit AA. *See also*, Exhibit M, 2005 2nd Half Promotion Review (Dec. 21, 2005).

[29] Exhibit L, Dep. of Naila Sfeir, 17:1-23, 21:8-11 (filed under seal). Exhibit N, printout of DAM website. One of the materials available on the website was the specification sheet, a copy of which is attached as Exhibit O. The specification sheet, which described the Televisions as "1080p," was provided by Sony to consumers in substance on its website, *see* Exhibit AA, to retailers through the DAM, and was the document that ABC used to create its advertisements. *See infra*. Moreover, for the sellers of Sony products that were not "authorized dealers," Sony directly provided such sellers with a spec sheet that described the Televisions as "1080p." *See* Exhibit P, at SONY 335548 (filed under seal); Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, pp. 340-44 (filed under seal).

5

retailers with a computer program called "Cyberscholar."[30] Cyberscholar was designed to teach and educate retail sales associates on how to promote the Televisions on the sales floor. In fact, Cyberscholar stressed that the "1080p" picture was a key part of the sales pitch, and informed salespersons that they should advertise the Televisions as "1080p."[31] Cyberscholar also stressed that the Televisions were equipped with HDMI and PC connectivity "designed for maximum versatility"[32] and without any noted limitations (such as the inability to accept a 1080p signal).[33] This of course belies Sony's argument that Date was somehow "idiosyncratic" or that his claims are not common or typical because he wanted to use the PC input.

This information also renders Sony's argument that it had no idea how retailers advertised the Televisions preposterous. Best Buy and Circuit City ads touted the Televisions as "1080p" and these very ads are contained in Sony's internal marketing reports.[34] Yet Sony denies responsibility for ads paid for, sponsored by, and provided to Sony.[35]

But even if the above were not enough to convince this Court that Sony created and controlled the advertising message,[36] there can be no dispute that the class of persons who bought the Televisions at ABC must be certified. Most critically, ABC displayed fact tags in front of the Televisions which, without limitation, stated "**1080p Sxrd Grand WEGA HDTV with Built-in hdtv/cable card**."[37] And every single purchaser would have had to see this tag. ABC testified that it designed its product description for the Television solely from Sony's own materials, which ABC

---

[30] Exhibit L, Dep. of Naila Sfeir, p. 201:8-19 (filed under seal).
[31] Exhibit Q, at SONY0581633 (filed under seal).
[32] Exhibit Q, at SONY0581629, 0581634 (filed under seal).
[33] *See id.*
[34] *See, e.g.*, Exhibit G, at SONY0104267 (filed under seal). Additionally, *see* Exhibit R, Sony complimenting an ABT ad describing the televisions as "Grand WEGA™ 1080p HDTVs."
[35] *See, e.g.*, Exhibit S, Dep. of Mike Shelby, pp. 136-142.
[36] *See also*, Exhibit BB, ABC000013, at ¶ 1; ABC000025, at ¶¶ 4-5 (excerpts of ABC's contract with Sony containing Sony's requirements as to training and advertising).
[37] Exhibit S, Dep. of Mike Shelby, pp. 92-94, 102-104; Exhibit T, DATE 000213.

6

obtained through the DAM website.[38] More specifically, ABC's advertisements were derived from Sony's "spec sheet,"[39] which was made available to consumers on ABC's website. The substance of the spec sheet, including the "1080p" designation, was also available on Sony's website for consumers to review.[40]

As ABC only used Sony materials, without materially altering the substance from the original, to advertise the Televisions, Sony cannot disclaim responsibility. By analogy, this is no different than the common law notion of slander or libel, where the originator of the false statement is responsible for occurrences in which it is reasonably anticipated to be repeated. Here, ABC met with Sony to ensure that Sony's message was clearly conveyed by ABC;[41] namely, that the Televisions are "1080p" or that they have a "1080p" display resolution, while uniformly omitting the material fact that the Televisions did not accept 1080p video signals, and for all practical purposes, would never display a native 1080p signal.

Moreover, Sony conducted a nationwide promotion entitled "Race to the Endzone," which consisted of brochures with the same 1080p message and same uniform omissions.[42] Sony provided uniformly trained-Sony personnel to the top 80% market share of stores for the XBR1 market to market the Televisions.[43] Sony in-store reps, when training retailers, stressed the key selling point of

---

[38] Exhibit S, Dep. of Mike Shelby, pp. 70-71, 93-94; Exhibit N-O.
[39] *Id.*
[40] *See id. See also* current version of Sony Televisions web ad available on its website. The features are *available at* http://store.sony.com/webapp/wcs/stores/servlet/ProductDisplay?catalogId=10551&storeId=10151&langId=-1&productId=11038341#features, and the specifications are *available at* http://store.sony.com/webapp/wcs/stores/servlet/ProductDisplay?catalogId=10551&storeId=10151&langId=-1&productId=11038341#specifications. Group Exhibit AA.
[41] *See* Exhibit U, Dep. of Tom Brillati, at pp. 73-74 (filed under seal).
[42] *See* Exhibit M, 2005 2d Half Promotion Review (Dec. 21, 2005) (filed under seal); *See* Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, pp. 477-478 (filed under seal).
[43] *See* Exhibit M, at SONY 0228595 (filed under seal); Exhibit A, August 5, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, pp. 477-478 (filed under seal).

7

the Televisions' "1080p" resolution and "HDMI integrated Digital audio and video connection."[44] Thus, it was Sony-trained personnel that were sent to train, advertise and promote the Televisions as "1080p" to both consumers and retailers.[45] The "Race to the Endzone" brochures touted the Televisions as having 1080p ("full 1920 x 1080") resolution, without limitation.[46] However, consumers who bought the Televisions will never see a native 1080p signal on them. Notably, like salt in the wound, Sony drafted literature for the replacement model television (that does accept a 1080p input and that was launched as the class members' Televisions were still being unpacked) stating: "there are a lot of ways to define Full HD 1080. With Sony Grand Wega SXRD XBR HDTV's, Full HD 1080 means 1920 x 1080 pixels and 1080p video inputs."[47]

This literature explains in part why the subject Televisions produce an inferior picture. Thus, Sony deceptively chose to represent to consumers that the Televisions reproduce on-screen each individual pixel in a full (1920 x 1080) HDTV signal when it is actually converted.[48]

Finally, Plaintiff is not asserting that a class should be certified against Sony simply because its authorized retailers used the term "1080p" when describing the Televisions. Rather, a class should be certified against Sony because Sony is directly responsible for the "1080p" message as it: (1) sent materials to its retailers that omitted critical information about the lack of a 1080p input or, at minimum, created confusion as to the Television's 1080p capabilities; (2) trained retail sales personnel to promote the Televisions' "Full 1080p High Definition Picture Quality;" (3) complemented retailers' advertisements that claimed the Televisions were "1080p;" and (4) sent

---

[44] See Exhibit M, at SONY0228590-95 (filed under seal). It is important to note that while Sony never limited the input capabilities of the Televisions in its advertising, it did so with other products. See id. at SONY0228590.

[45] See Exhibit K, SONY0197537-197538 (In a letter from Diamond Kirk, one of the Sony-trained personnel to a Sony employee, he states "From my experiences with Sony trainers, I understand that the SXRD of course is 1080p[.]")

[46] See, e.g. Exhibits V, at SONY0003466-69, Exhibit W, at SONY0000903-04; See Exhibit C, June 9, 2011 Dep. of Sony's Rule 30(b)(6) designee Chris Fawcett, pp. 41-42 (filed under seal).

[47] Exhibit E, at SONY0087443 (filed under seal).

[48] See, e.g., Exhibit W, at SONY000093.

8

Sony-trained personnel to retail stores for Television marketing purposes. Sony's dealer agreement with ABC confirms that Sony instructs its authorized dealers on the key product features of Sony products.[49]

In sum, Sony's "1080p" campaign ensured that its message was heard loud and clear by consumers. Even after being presented with clear evidence of deception and confusion, Sony failed to inform consumers of its omissions.[50] This supplement demonstrates that it was not just a few newspaper ads in which Sony or an uninformed retailer would describe the Televisions as 1080p. Rather, it was this newspaper campaign, combined with Sony's central DAM dealer network materials, Sony's spec sheet, Sony's website, Sony's retailer training materials, Sony's brochures, and finally, Sony's own presence on sales floors across the country that promoted a consistent message – the Televisions were 1080p and any limitation on the accepted signals was omitted. As such, these facts demonstrate that Date has presented common proof as to Defendants' unfair and deceptive use of the term 1080p in conjunction with the sale of the Televisions.

### 3. Typicality and Adequacy

Additionally, Sony goes to great lengths to argue that Date did not view any Sony advertisements, which is completely false. Date testified that he wanted to buy a "1080p" television,[51] and to this end, researched and reviewed various materials, including Sony's website and ABC's website created from Sony materials,[52] both of which described the Televisions as 1080p.[53] As such, Date is an adequate class representative whose claims are typical to the proposed classes.

---

[49] Exhibit BB, ABC000013, at ¶ 1; ABC000025, at ¶¶ 4-5 (excerpts of ABC's contract with Sony containing training and advertising requirements).
[50] *See, e.g.*, Exhibit X. Discovery has revealed that no clarification to the dealers regarding the "1080p" capabilities of the Television was provided. *See* Exhibit L, Dep. of Naila Sfeir, 188-196 and Exhibit 5 thereto.
[51] Exhibit Y, Dep. of David Date, 75:21-25.
[52] Exhibit Y, Dep. of David Date, 74:4-20.
[53] *See e.g.*, Exhibit B and Exhibit T.

9

### III. CONCLUSION

WHEREFORE, for all the reasons stated herein and in his previous motions for class certification and replies in further support thereof (Dkt. 165-168, 197-200), Plaintiff David Date respectfully requests that this Court enter an order certifying this case as a class action, and certify Class A as to Sony and as to ABC, certify a class consisting of "all Michigan residents who purchased a Sony-brand television, models KDS-R50XBR1 or KDS-R60XBR1 from ABC Appliance, Inc." In the alternative to Class A, Plaintiff seeks to certify Class B.

Respectfully Submitted,

By:   /s/ Lance A. Raphael

| | | |
|---|---|---|
| Dani K. Liblang | Alan Mansfield | Lance A. Raphael |
| LIBLANG & ASSOCIATES | CONSUMER LAW GROUP | THE CONSUMER |
| 346 Park Street, Suite 200 | OF CALIFORNIA | ADVOCACY CENTER, P.C. |
| Birmingham, Michigan 48009 | 9466 Black Mountain Road | 180 West Washington |
| | Suite 225 | Suite 700 |
| | San Diego, California 92126 | Chicago, Illinois  60602 |

## CERTIFICATE OF SERVICE

  I, Kym Lozano, a paralegal, certify that on September 2, 2011, I electronically filed the foregoing *Plaintiff David Date's Supplemental Brief In Response To The Court's August 18, 2011 Order* with the Clerk of Court using the ECF system that will send notification of such filing to all attorneys of record.

                Respectfully submitted,

                By: /s/ Kym Lozano
                Paralegal
                The Consumer Advocacy Center, P.C.
                180 West Washington, Suite 700
                Chicago, Illinois 60602
                (312) 782-5808