UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID DATE, JR., Individually and On Behalf of All Others Similarly Situated, Plaintiffs, vs. SONY ELECTRONICS, INC. and ABC APPLIANCE, INC., d/b/a ABC WAREHOUSE, Defendants. | Case No. 07-CV-15474  Honorable Paul D. Borman  Magistrate Judge R. Steven Whalen  **DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF ON CLASS CERTIFICATION** |

*Counsel for Plaintiffs:*
Dani K. Liblang (P33713)
LIBLANG & ASSOCIATES
346 Park St., Suite 200
Birmingham, Michigan 48009
(248) 540-9270
danil@lemonlawyers.com

Lance A. Raphael (IL 6216730)
CONSUMER ADVOCACY CENTER, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602
(312) 782-5808
lance@caclawyers.com

Alan Mansfield (CA 125988)
CONSUMER LAW GROUP OF CALIFORNIA
9466 Black Mountain Rd., Suite 225
San Diego, CA 92126
(619) 308-5034
alan@clgca.com

*Counsel for Defendants:*
Clarence L. Pozza Jr. (P24168)
Thomas W. Cranmer (P25252)
Robert J. Wierenga (P59785)
Kimberly K. Kefalas (P64949)
MILLER, CANFIELD, PADDOCK and STONE, PLC
150 W. Jefferson Suite 2500,
Detroit, Michigan 48226-4415
(313) 963-6420
pozza@millercanfield.com
cranmer@millercanfield.com
wierenga@millercanfield.com
kefalas@millercanfield.com

Plaintiff David Date's latest attempt to convince the Court to certify his proposed class of purchasers of Sony's KDS-R50XBR1 and KDS-R60XBR1 televisions ("the Televisions") fails on several levels. It fails to address the question presented by the Court, providing no support for the contention that Sony's alleged "responsibility" for its retailers' advertisements fixes the fatal flaws in Date's proposed class. It fails to advance any *new* arguments as to why certification is appropriate; all of the arguments Date makes are addressed in Sony's and ABC's briefs in opposition (Dkt. 175 and 173). Finally, it fails in its deliberate ignorance of what, in this case, is a critical issue: ***what consumers actually saw*** in the advertising for the Televisions.

As defendants have previously noted, Date can point to no common, class-wide evidence that putative class members either (1) saw the supposedly misleading term "1080p" when purchasing their Televisions, or (2) if they did, reasonably understood that term to be a representation that the Televisions accepted 1080p signals, over their HDMI inputs, without any signal processing (i.e., made the HDMI Input Assumptions). Dkt. 175 at 5-7; Dkt. 173 at 8-10. As courts have repeatedly held, claims like Date's – that depend on proving that class members all relied on the term "1080p" when deciding to purchase the Televisions – cannot be certified in the absence of such proof. *See Rosen v. Chrysler Corp.,* 2000 WL 34609135 at *7-8 (E.D. Mich July 18, 2000)*; Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034-35 (8th Cir. 2010).[1]

Date's supplemental brief does not fill this fatal hole in his certification motion. Date continues to simply ignore the inconvenient – and undisputed – fact that much of the advertising for the Televisions did not mention "1080p" at all. Instead, Date now focuses on

---

[1] As Sony explained in its original opposition brief, choice of law issues also preclude certification of a national class. See Dkt. 175 at 7-11. None of Date's new arguments fix, or indeed even address, this problem.

1

communications between Sony and its retailers, as if those communications could somehow constitute, or substitute for, evidence that the Televisions were uniformly advertised as "1080p televisions." They cannot. *Rosen*, 2000 WL 34609135 at *6-7. None of Date's "new" evidence – even if taken at face value – stands as sufficient, class-wide proof that putative class members saw the supposedly misleading term "1080p" when purchasing the Televisions, or made the HDMI Input Assumptions, or relied on defendants' alleged misrepresentations, or received a "1080p" warranty from defendants. The motion for class certification should be denied.

I. **DATE'S SUPPLEMENTAL BRIEF FAILS TO PROVIDE COMMON EVIDENCE OF COMMON MISREPRESENTATIONS TO THE CLASS AS A WHOLE**

Date argues that Sony (a) provided retailers with product information that described the Televisions as "1080p," (b) ran national advertisements for the Televisions that used the term "1080p," and (c) used a national marketing program (the "Race to the Endzone" campaign) to sell the Televisions. Date claims that Sony thereby "promoted a consistent message" that "the Televisions were 1080p." Dkt. 223 at 9. The record evidence supports neither Date's argument nor his motion for class certification.

**Retailer advertisements.** Date ignores the undisputed fact that many retail ads for the Televisions said *nothing* about "1080p." For example, the record evidence shows that Sears, one of Sony's largest national retailers, *did not advertise* the Televisions as "1080p," but instead emphasized other features such as the three SXRD panels and the "Cinema Black Pro."[2] Similarly, retailers such as Circuit City, Comp USA and Best Buy ran many weekly ads that did

---

[2] These Sears advertisements were attached to the February 9, 2011 Declaration of Chris Fawcett, submitted in Support of Sony's Opposition to Plaintiff's Motion for Class Certification, as Exs. 17, 19, 20, 24, 25, 29 and 30.

not advertise "1080p."[3]

**Sony's national advertisements.**  Date also ignores the undisputed fact that most of Sony's newspaper and magazine ads, brochures, and television commercials did not use the allegedly misleading term "1080p."  Date references only two newspaper advertisements, one of which used the phrase "1080p experience" and was published on one day, September 7, 2005, in the Wall Street Journal and USA Today.[4]  The second, which uses the phrase "1080p resolution," was only published regionally, on two consecutive Sundays in January, 2006.[5]

The majority of Sony's advertisements for the Televisions, however, did not mention "1080p."  Sony's "Pinwheel" and "Putty" ads, for example, ran in magazines throughout the fall of 2005, and neither mentioned 1080p.[6]  A September 2005 Wall Street Journal ad for several products, including the Televisions, did not mention 1080p.  2/9/11 Fawcett Decl. ¶21, Ex. 8.  The three 2005 holiday brochures that ran in newspapers across the country did not mention 1080p.[7]  The television commercials did not mention 1080p.  *Id.* at Exs. 2-4.  And only one of the brochures retailers could order (for training and for consumer use) included the term 1080p.[8]  There was no consistent "1080p" messaging in Sony's advertising for these televisions.

---

[3] See, e.g., 2/9/11 Fawcett Decl. Exs. 14-16, 18, 21-23, 27, 28 and 31.

[4] 2/9/11 Fawcett Decl., ¶14, Ex. 1.

[5] 2/9/11 Fawcett Decl., ¶22, Ex. 9.  The ad in question ran in the New York Times (Regional only), the Los Angeles Times, the Chicago Tribune, the Boston Globe, the San Francisco Chronicle, the San Diego Tribune, and the Indianapolis Star.

[6] 2/9/11 Fawcett Decl., ¶18-20, Exs. 5-7.

[7] The holiday brochures were sent out in Sunday newspapers in 40 markets across the country, and the second, published on December 9 and 11, 2005, was also sent out—3 million inserts—in the USA Today First Edition.  2/9/11 Fawcett Decl. ¶¶24-26, Exs. 11-13.

[8] Cf. 2/10/11 Sfeir Decl. Ex. 72 with Exs. 70, 71, 73 and 74.  Other marketing materials for the Televisions, including some that were also marketing the Qualia brand televisions Date has chosen to "drop" from his class certification motion, did not use 1080p.  See 2/10/11 Sfeir Decl. ¶14-15 and Ex. 64 and 67.

3

Date also argues that Sony "carefully omitted" informing consumers about the input signals accepted over HDMI in these Televisions, but that is not true. It is undisputed that the Televisions' HDMI input capabilities were disclosed: in the manual; to the retailers; and in numerous published reviews. *Id*. at Exs. 36-40, 42 & 44; Dkt. 184 (2/9/11 Schmidt Decl.) at ¶19-20 and Ex. 86; Dkt. 223 at Ex. N. Date has given this Court no reason to believe that he can prove, with common evidence, that putative class members "received" any message – false or not – about the Televisions' 1080p HDMI input capabilities. Nothing in Date's Supplemental Brief changes that.

**The "Race to the Endzone" campaign.** Date also points to Sony's "Race to the Endzone" promotional campaign as "new" evidence supporting certification. But Date's discussion of "Race to the Endzone" – which promoted several Sony products, not just the Televisions at issue – impermissibly ignores the fact that most of that campaign's marketing materials did not discuss "1080p" ***at all.*** *See, e.g.*, 2/10/11 Sfeir Decl. at Ex. 70, pp. 10, 15; Ex. 71, pp. 14, 16; Ex. 76; cf. Ex. 72. *See also* Ex. A (Sfeir Dep.) at 97:11-99:14. Date's express assertion to the contrary is simply false, and belied by the materials themselves; only one of the brochures even mentions "1080p," and then only briefly. *Id.*

Nor do Date's claims about "Race to the Endzone" training save his certification motion. To the extent that Date now intends to rely on training as "evidence" of (wholly undocumented) misstatements by retailers regarding the Televisions' HDMI input capabilities, not only does he not have standing to raise such a claim, [9] *see* Dkt. 211, but such "oral representation" claims are

---

[9] Moreover, it is undisputed that Date himself did not participate as a consumer in the Race to the Endzone program and was not a "recipient" of any alleged "Race to the Endzone" misrepresentations.

4

not sufficient to support class certification under Rule 23(b)(3).  *See, e.g., In re Am. Med. Sys.*, 75 F.3d 1069, 1080-81, 1085-86 (6th Cir. 1996); *Converse v. Ameritech Corp.*, 179 F.R.D. 533, 540-41 (W.D. Mich. 1997); *Avritt*, 615 F.3d at 1034-35.

All of the above failures are fatal to both Date's proposed "Class A" (on behalf of all purchasers nationally) and "Class B" (on behalf of all Michigan purchasers).  The only problem that "Class B" arguably solves for Date is choice of law.  Date's lack of common proof regarding the putative class members' purported exposure to the allegedly misleading term "1080p" is as fatal to the proposed Michigan class as it is to the national class.  Date has not even attempted to show, for example, how he could prove that someone who purchased the Television from a Sears store in Michigan would have seen, or been misled by, or received a warranty concerning, the term "1080p"; nor has he explained how he could make this showing for *all* Michigan purchasers, no matter the advertisements they saw, disclosures they received or store they patronized.  Date's motion should be denied.

**II.     PLAINTIFF HAS IDENTIFIED NO BASIS FOR HIS CLAIM THAT SONY IS RESPONSIBLE FOR THE STATEMENTS OF ITS RETAILERS**

This Court's August 18, 2011 instructed Date to discuss the theory that Sony "is legally responsible for the information contained on the webpages and advertising materials of Sony retailers."  Dkt. 220 at 2.  Date's supplemental brief fails to do so adequately.  This failure is especially glaring in light of the fact that California courts have found that "[t]he concept of vicarious liability has no application to actions brought under the unfair business practices act" on which plaintiff has staked his claim.  *People v. Toomey*, 157 Cal. App. 3d 1, 14, 203 Cal. Rptr. 642 (1984).  "A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section

5

17200 or 17500." *Perfect 10, Inc. v. Visa International Service Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007). Date has not even argued, let alone attempted to prove, that Sony has "unbridled control" over the websites and advertising materials of any of its retailers, including ABC. Ex. B (Shelby Dep.) at 148:6-18; Ex. C (Fawcett Dep.) at 224:5-225:7. Nor has Date attempted to show that Sony could be held vicariously liable on any of his other legal theories.

Additionally, Date failed to support the "viability of such a theory under the requirements of Rule 23(b)(3)." Dkt. 220 at 2. Even if it was possible to hold Sony vicariously liable for statements made by its retailers, Date would still have to prove what statements each of the 800 retailers who sold these televisions nationwide actually made. Date's "straightforward" common issue – "whether Sony, individually and through its retailers, accurately represented the capabilities of the Televisions" – would therefore require mini-trials on, at a minimum, (1) whether, and how, each retailer used the supposedly misleading term "1080p" in its advertising and (2) whether they did so as a result of Sony's "unbridled control" or otherwise in a manner on which Sony could be held liable.

Date has not shown that these mini-trials could be conducted consistent with Rule 23(b)(3). As discussed above, Date has no evidence that retailers uniformly advertised the Televisions as "1080p." Date has taken almost no discovery in this case to determine the content of advertising by the Televisions' 800 retailers or what role – if any – Sony played in determining that content. What evidence there is of retailer advertising demonstrates that many retailers did not consistently use the term 1080p. *See supra* Part I. Date asks the Court to simply assume that (1) all retailers used "1080p" in their advertising; (2) all did so as a result of Sony's "unbridled control" or other direction; and (3) all did so in a way that would cause putative class

6

members to make the HDMI Input Assumptions. Date has offered no evidence to support any of those propositions on a class-wide basis,[10] and they cannot be assumed, particularly in the face of the ample evidence that retailers did *not* uniformly advertise the Televisions as 1080p. Similarly, it is undisputed that Sony could not "control" or "require" particular content in retailer advertising, and does not approve advertisements. Ex. B (Shelby Dep.) at 148:6-18; Ex. C (Fawcett Dep.) at 224:5-225:7.[11] Indeed, the retailer ads themselves – which are anything but uniform – prove that Sony did not exercise the requisite control.

Nor does the existence of Sony's "Cyberscholar" training program, or its "DAM" network of product information, prove that Sony is legally responsible for every ad that every retailer ran for the Televisions. There is no evidence to support Date's bare assertion that retailers made uniform use of these resources in advertising. On the contrary: an ABC Warehouse employee testified that ABC Warehouse did not use Cyberscholar in 2005 and 2006. Ex. D (Brillati Dep.) at 158:16-161:6. Nor does the record support Date's claim that the Cyberscholar and DAM materials emphasized advertising the Televisions as "1080p." It is undisputed that Sony made a great deal of information about the Televisions available to retailers

---

[10] Date's blanket statements that retailers failed to disclose the Televisions' lack of a 1080p HDMI input, Dkt. 223 at 2, and his claims regarding the information that Best Buy received from Sony, *id.* at 5, are similarly insufficient without evidence. As to the former, there is no evidence in this case that retailers acted uniformly in their consumer-facing dealings. As to the latter, evidence as to what Best Buy saw is not proof as to what Sears, or Circuit City, or Harris Tweeter, or any other retailer saw or utilized.

[11] Date mischaracterizes Sony's position in its prior briefing opposing class certification. Sony did not claim that it had no idea what retailers said in their advertisements, Dkt. 223 at 6; Sony said that there was no uniformity among the advertisements and no emphasis on 1080p. Dkt. 175 at 5. Date also states that the evidence shows that Sony "reviews" advertisements. Dkt. 223 at 6. The evidence is to the contrary; although Sony sales representatives attempt to have some communication with certain large retailers about advertisements, there is no requirement that advertisements be reviewed or approved prior to publication. Ex. B (Shelby Dep.) at 148:6-18; Ex. C (Fawcett Dep.) at 224:5-225:7.

through the DAM – including materials that disclosed the lack of a 1080p HDMI input – and the vast majority of it had nothing to do with "1080p." Indeed, many key features were emphasized more prominently than any reference to "1080p."[12] Even if there was record support for Date's claim that retailer advertising was "controlled" by Sony through materials placed in Cyberscholar or the DAM – and there is not – that evidence would not show that retailers uniformly advertised the Televisions as "1080p."

Finally, with regard to Sony "training" of retailers and representatives in the stores, there is no evidence that Sony training, or the "Race to the Endzone" program, emphasized or focused on the Televisions' 1080p displays to the exclusion of other information about the televisions, including the information about the HDMI inputs. Moreover, as demonstrated above, allegations about purported "oral representations" to consumers cannot be the basis for certifying a class.

### III. PLAINTIFF HAS FAILED TO SHOW THAT A CLASS OF ABC PURCHASERS CAN BE CERTIFIED

Finally, none of the "new" evidence cited by Date addresses the problems with Date's motion to certify a class of persons who purchased televisions from ABC.

**Commonality**. First, there is no common evidence that would permit Date's claims that he was misled by ABC about the HDMI input capabilities of his television to be tried on a class-wide basis. Date now asserts that ABC stores placed a "fact tag" in front of the Televisions that

---

[12] The DAM network information and Cyberscholar module for these Televisions are attached to Date's Supp. Br. as Exhibits N and Q, respectively. The Cyberscholar module contains pages and pages of information about the Televisions' features, including not only the large screen and the 1080 line display, but also the color, the contrast ratio, the three SXRD panels, the WEGA engine, "Cinema Black Pro," and other features. The term "1080p" appears only three times, twice in reference to the specification of a 1080p native resolution panel, and once, at the end, in the sentence "And Grand Wega SXRD televisions offer 1080p resolution." Date's description of the DAM and Cyberscholar materials as pushing a consistent 1080p message is disingenuous at best, and Date's claim, Dkt. 223 at 6, that the Cyberscholar module "informed salespersons that they should advertise the Televisions as '1080p'" is simply false.

8

contained the phrase "1080p Sxrd Grand WEGA HDTV with Built-in hdtv/cable card." Date further claims that "every single purchaser would have had to see this tag." Dkt. 223 at 6. But Date offers no evidence at all to support this second point. Worse, this assertion is undermined by Mr. Date's own testimony: ***Date himself could not testify that he saw this phrase on the "fact tag."*** *See* Dkt. 186 at Ex. 88 (Date Dep.) at 90:17-93:5. It would be improper to certify a class based on a supposedly "common" misrepresentation that not even the class representative is sure he saw. *CLN Properties v. Republic Servs.*, 2010 WL 5146734, at \*6 (D. Ariz. 2010).

Moreover, the ABC "fact tag" could not serve as common evidence sufficient to justify certification even if the Court overlooked plaintiff's lack of evidence regarding which, if any, of the putative class members saw the "fact tag." The fact tag says nothing about HDMI input capabilities; it merely identifies the Television as "1080p." As defendants have explained at length, this designation is not even arguably misleading unless a purchaser made the HDMI Input Assumptions and interpreted "1080p" to mean or imply "1080p HDMI input." Nothing in plaintiff's supplemental brief fills the gaping hold in plaintiff's theory on this critical point. Indeed, what little record evidence there is on this point actively undermines Date's claims: Elliot Handler testified that terms like "1080p" or "HDTV" were ***not*** sufficient to imply the presence of a 1080p HDMI input. *See* Dkt. 186 at Ex. 89 (Handler Dep.) at 138:4-139:11 (not misleading to call the Televisions "high definition"); 142:17-143:24 (phrase "1080p high-definition television" not sufficient to imply the presence of a 1080p HDMI input). Date cannot certify a class based on a supposedly "common" misrepresentation that the only other plaintiff in this case has agreed was ***not*** a misrepresentation. Date has satisfied neither Rule 23(a)(2) nor Rule 23(b)(3). *See* Dkt. 173 at 10-11, 14-20.

9

**Typicality and adequacy.** Similarly, Date's claims against Sony and ABC satisfy neither the typicality nor adequacy requirements of Rule 23(a), particularly with respect to his new claims regarding the ABC "fact tags, the "Race to the Endzone" promotion, and the like. As defendants have already shown, Date's claims against defendants are based on only one alleged misrepresentation: the product information page for the 50-inch XBR1 television that he claims he viewed on the ABC website before purchasing his television. *See* Dkt. 173 at 4-5. Despite his attempt to suggest otherwise in his supplemental brief, it is undisputed that Date cannot recall seeing any other advertisement for his television, and he has *admitted* that the ABC product information page is the only document on which he relied before purchasing his television. *See id.* He has also admitted that he cannot recall, and did not rely on, any oral representations regarding his television's HDMI input capabilities. *See id.* at 4.

In light of the above, plaintiff's new claims regarding supposedly "common" evidence of Sony "messaging," training, or promotional activities get his class certification motion nowhere. It is black letter law that a plaintiff cannot represent a class based on alleged misrepresentations he did not see or rely on. *See* Dkt. 211 at 2-3. For this reason as well, the motion for class certification should be denied.

Respectfully Submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   /s/ Robert J. Wierenga
      Robert J. Wierenga (P59785)
      Attorneys for Defendants
      150 West Jefferson, Suite 2500
      Detroit MI 48226-4415
Dated: September 16, 2011      wierenga@millercanfield.com

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2011, I electronically filed the foregoing **RESPONSE TO REQUEST FOR DISCOVERY EXTENSION** with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

| | |
|---|---|
| LIBLANG ASSOCIATES<br>Dani K. Liblang<br>346 Park St., Ste 200<br>Birmingham, MI 48009<br>Tel: (248) 540-9270<br>Fax: (248) 433-1989<br>Email: danil@lemonlawyers.com | CONSUMER LAW GROUP OF CALIFORNIA<br>Alan Mansfield<br>9466 Black Mountain Rd, Ste 225<br>San Diego, CA 92126<br>Telephone: (619) 308-5034<br>Fax: (888) 341-5048<br>Email: alan@clgca.com |

THE CONSUMER ADVOCACY CENTER
Lance A. Raphael
180 W. Washington St., Ste 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930
Email: Lance@caclawyers.com

MILLER, CANFIELD, PADDOCK & STONE, PLC

s/ Robert J. Wierenga.
Robert J. Wierenga (P59785)
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415

*Attorneys for Defendants*

19,419,526.1\140018-00001

11