# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Sony Electronics, Inc., a Delaware corporation ("SEL") and ABC Appliance, Inc. d/b/a ABC Warehouse, a Michigan corporation ("ABC"), on the one hand, and David Date, Jr., both individually and in his capacity as representative of the settlement class defined below. This Agreement is made for the purpose of finally and completely settling all presently pending claims asserted in this lawsuit and/or known or unknown causes of action and/or claims by and between the parties to this Agreement, as more fully described below.

## 1.0    DEFINITIONS

1.1    ACTION means the lawsuit titled *David Date, Jr. v. Sony Electronics Inc. et al.,* Case No. 02:07-cv-15474, currently pending in the United States District Court, Eastern District of Michigan.

1.2    CLAIMS PERIOD means the time period beginning one day after the last day on which SEL mails Notice of the proposed settlement to the SETTLEMENT CLASS and continuing thereafter for 45 days.

1.3    COURT means the United States District Court, Eastern District of Michigan, the Honorable Paul D. Borman presiding.

1.4    DATE OF SETTLEMENT ORDER AND JUDGMENT shall be the later of: (a) the day after the deadline for the filing of any appeal of the SETTLEMENT ORDER AND JUDGMENT, if no notice of appeal is filed; or (b) if any notice to appeal the SETTLEMENT ORDER AND JUDGMENT is filed, the day following the date on which the SETTLEMENT ORDER AND JUDGMENT is not subject to further judicial review or appeal, either by reason of affirmance by a court of last resort or by lapse of time or otherwise, provided that the SETTLEMENT ORDER AND JUDGMENT is not reversed or modified by the trial court or an appellate court.

1.5    DEFENDANTS means SEL and ABC.

1.6    DEFENDANTS' COUNSEL means attorneys with Miller Canfield PLC and Schiff Hardin LLP.

1.7    FINAL FAIRNESS HEARING means the final settlement approval hearing to be conducted by the COURT in connection with determining the fairness, adequacy, and reasonableness of this Agreement in accordance with the Federal Rules of Civil Procedure and the date on which the SETTLEMENT ORDER AND JUDGMENT shall be entered.

1.8     FIRST CLASS MAIL NOTICE means one of the two forms of direct mail notice to the SETTLEMENT CLASS, detailed in Section 4.3 below.

1.9     READILY AVAILABLE FOR RETAIL PURCHASE means, with respect to components made by Sony, a 1080p HDMI SOURCE COMPONENT identified by Sony as being readily available for retail purchase as of the date this Agreement is executed.  With respect to components made by any other manufacturer, READILY AVAILABLE FOR RETAIL PURCHASE means a 1080p HDMI SOURCE COMPONENT that class counsel has substantiated, and Sony has agreed, was available for retail purchase as of the date this Agreement is executed.

1.10    PARTIES means SEL, ABC, and David Date, Jr.

1.11    PLAINTIFF means David Date, Jr.

1.12    PLAINTIFF'S COUNSEL means attorneys with the Consumer Advocacy Center, P.C., the Liblang Law Firm, P.C., and the Consumer Law Group of California.

1.13    PRELIMINARY APPROVAL ORDER means the order to be entered by the COURT authorizing the distribution of the various forms of notice to the SETTLEMENT CLASS, setting dates for the SETTLEMENT CLASS to claim-in, opt-out or object to this Agreement, and setting a date for a FINAL FAIRNESS HEARING.

1.14    PUBLICATION NOTICE means a one-time publication notice consisting of a 1/4 page advertisement in the daily edition of the USA Today newspaper with a link to the SETTLEMENT WEBSITE.

1.15    REQUEST FOR MORE INFORMATION NOTICE means the letter sent to claimants, at the address listed on the submitting class member's claim form, advising that additional proof of a 1080P HDMI SOURCE COMPONENT purchase is required because the claimant only submitted photographic evidence of a 1080p HDMI SOURCE COMPONENT that is READILY AVAILABLE FOR RETAIL PURCHASE on or after the settlement date.

1.16    SETTLEMENT CLASS means all United States end user consumers who purchased, or received as a gift from the original retail purchaser, a KDS-R50XBR1 or KDS-R60XBR1 television (individually and collectively, the "Television(s)").  The SETTLEMENT CLASS does not include any person/entity who purchased or acquired a TELEVISION for resale or commercial use.

1.17    SETTLEMENT DATE means the last date on which a party executes this Agreement.

2

1.18   SETTLEMENT ORDER AND JUDGMENT means an order and judgment issued by the COURT as binding upon the PARTIES, granting final approval of this proposed settlement and Agreement, and finally disposing of the ACTION.

1.19   SETTLEMENT WEBSITE means an Internet website built and hosted by SEL, having substantially the same content as Exhibit F attached hereto, with links to such website posted on: (a) SEL's "Sony Support" home page; and (b) on the model home pages for the TELEVISIONS, which shall disseminate notice of this Settlement and provide information on the Settlement Agreement and the claims process.  The SETTLEMENT WEBSITE shall be live until the last day of the CLAIMS PERIOD. The link from SEL's "Sony Support" home page to the SETTLEMENT WEBSITE shall be maintained for fourteen days.  The link from the model homes pages for the TELEVISIONS to the SETTLEMENT WEBSITE shall be maintained until the last day of the CLAIMS PERIOD.

1.20   TELEVISION or TELEVISIONS means the following Sony-brand, rear-projection, high-definition television models: KDS-R50XBR1, KDS-R60XBR1.

1.21   1080p HDMI SOURCE COMPONENT means any device that produces an output visual signal of 1080p, and can connect to a TELEVISION, via an HDMI interface.

1.22   SETTLEMENT BENEFIT means a $60 gift card that does not expire and is redeemable for the purchase of any item available on the http://store.sony.com website or at a Sony retail store (including, without limitation, music or movies).

1.23   FINAL APPROVAL means the date on which the Court grants final approval of the class action settlement set forth in this agreement.

## 2.0   STATEMENT OF DISPUTE

This Agreement is entered into with respect to the following facts:

2.1   On April 2, 2007, PLAINTIFF filed a lawsuit against DEFENDANTS in the United States District Court for the Southern District of California, entitled *David Date, Jr. v. Sony Electronics Inc., et al.*, Case No. 07-cv-0592.  Date subsequently filed an amended complaint on July 2, 2007.  On December 17, 2007, the Southern District of California transferred this case to the Eastern District of Michigan, which assigned the ACTION Case No. 2:07-cv-15474, pursuant to 28 U.S.C. § 1404(a).  The current operative complaint is Date's Third Amended Complaint, filed on April 30, 2010, a true copy of which is attached as Exhibit A hereto.

2.2     PLAINTIFF alleges in the Third Amended Complaint that DEFENDANTS represented and advertised that the TELEVISION models at issue had a 1080p display resolution, that such representations were misleading because the TELEVISIONS were incapable of accepting input of 1080p signals and could not accept and display video content at 1080p resolution via the TELEVISIONS' PC or HDMI Input.  PLAINTIFF further alleges that the TELEVISIONS are defective in that they are missing one or more components that would permit them to accept input at a 1080p resolution.   PLAINTIFF further asserts that the ACTION should proceed as a class action, but no class has yet been certified by the COURT.  DEFENDANTS deny all of these allegations.

2.3     PLAINTIFF and DEFENDANTS have engaged in vigorous litigation of the ACTION, including but not limited to: (a) exchanging multiple sets of interrogatories and document production requests; ( b) reviewing hundreds of thousands of discovery documents; (c) completing depositions of all parties and third party witnesses; (d) briefing class certification and motions to dismiss; and (e) preliminary expert discovery.

2.4      PLAINTIFF and DEFENDANTS have also engaged in several months of arms-length settlement discussions, in an effort to resolve this nearly six-year old litigation.

2.5     DEFENDANTS have denied any and all wrongdoing or liability to PLAINTIFF or members of the SETTLEMENT CLASS for the claims alleged, or that could have been alleged, in the ACTION and further deny that the ACTION should be treated as a class action, except for purposes of settlement.  However, DEFENDANTS wish to resolve the ACTION, on the terms and conditions of this Agreement, to avoid the inconvenience, interference with business operations, further expense, and risks inherent in litigation.

2.6     PLAINTIFF and PLAINTIFF'S COUNSEL have further considered the risks and costs of continued litigation and trial, as well as the issues associated with certifying a merits class in this ACTION, and after extensive discovery and consideration of the ultimate likelihood of success and the ability to prove damages, conclude that the terms and conditions of this Agreement are fair, reasonable, and adequate and that a settlement of the ACTION is in the best interest of the members of the SETTLEMENT CLASS.

### 3.0     TERMS OF SETTLEMENT

3.1     <u>Benefits to the SETTLEMENT CLASS</u>

Members of the SETTLEMENT CLASS will each be eligible to receive the

$60.00 benefit as follows:

a)    All members of the SETTLEMENT CLASS who SEL agrees for settlement purposes have previously submitted a completed and valid claim form, and which are identified in <u>Exhibit B</u> (to be filed separately, under seal, as soon as practicable), shall receive the SETTLEMENT BENEFIT without need for further action, unless they opt-out or object to this Settlement.

b)    All members of the SETTLEMENT CLASS not identified in <u>Exhibit B</u> shall receive the SETTLEMENT BENEFIT upon completion and timely return of a claim form which evidences: (1) proof of ownership of one of the TELEVISIONS; and (2) proof of purchase of any brand 1080p HDMI SOURCE COMPONENT.

    1)    Proof of ownership of one of the TELEVISIONS shall be deemed satisfied for those members of the SETTLEMENT CLASS for whom SEL agrees a record exists demonstrating (for settlement purposes) TELEVISION ownership, which are identified in <u>Exhibit C</u> (to be filed separately, under seal, as soon as practicable).

    2)    For those members of the SETTLEMENT CLASS not previously identified in <u>Exhibit B</u> or <u>Exhibit C</u> (*i.e.*, those for whom SEL does not possess a record demonstrating TELEVISION ownership) proof of TELEVISION ownership shall be satisfied by providing the unique serial number affixed to the SETTLEMENT CLASS  member's TELEVISION, subject to Sony's validation of the serial number.

    3)    For those members of the SETTLEMENT CLASS not previously identified in <u>Exhibit B</u>, proof of purchase of any brand 1080p HDMI SOURCE COMPONENT shall be satisfied by providing any of the following:

        (a)    a legible and dated copy of an original receipt identifying the 1080p HDMI SOURCE COMPONENT;

        (b)    a legible copy of a dated invoice marked "paid" that identifies the retail seller, the seller's address, and identifies the purchase of the 1080p HDMI SOURCE COMPONENT;

        (c)    a legible copy of a dated cancelled check contemporaneously identifying the purchase of the 1080p HDMI SOURCE COMPONENT;

(d)     a legible copy of a credit card bill that identifies the date and purchase of the 1080p HDMI SOURCE COMPONENT;

(e)     a legible dated shipping invoice identifying the 1080p HDMI SOURCE COMPONENT; or

(f)     "photographic evidence" sufficient to prove ownership of a 1080p HDMI SOURCE COMPONENT on or before the SETTLEMENT DATE.

The "photographic evidence" must be original and unique to the class member (*i.e.*, it cannot be copied from the internet or other sources), and must clearly show the brand, model number and unique serial number of the 1080p HDMI SOURCE COMPONENT.

If the 1080p HDMI source component depicted in the photograph(s) was no longer READILY AVAILABLE FOR RETAIL PURCHASE on the SETTLEMENT DATE, this photographic proof shall be sufficient to establish ownership of a 1080p HDMI SOURCE COMPONENT. If, however, the 1080p HDMI SOURCE COMPONENT depicted in the photograph(s) was READILY AVAILABLE FOR RETAIL PURCHASE on or after the SETTLEMENT DATE, the submitting class member will be required to submit additional proof (such as a receipt, credit card statement or other payment record) sufficient to substantiate purchase on or before the SETTLEMENT DATE.  The parties shall direct the Settlement Administrator to contact each claimant who must submit this additional information and the claimant shall have 20 days from the date on the REQUEST FOR MORE INFORMATION NOTICE to so submit.

Each eligible SETTLEMENT CLASS member may receive one SETTLEMENT BENEFIT per TELEVISION purchased or received as a gift.  SEL shall provide the SETTLEMENT BENEFIT, at its sole expense, within 30 days following the DATE OF SETTLEMENT ORDER AND JUDGMENT.

3.2     Benefit to PLAINTIFF

In exchange for PLAINTIFF returning his KDS-R50XBR1 and providing SEL with his receipts for the TELEVISION, associated electronic components, and installation, SEL agrees to pay PLAINTIFF $7,000.00, subject to COURT approval. This payment is intended to compensate PLAINTIFF both for his individual claims, as well as for his time and service in acting as class representative over the last five years which include his several full-day appearances.  PLAINTIFF will request approval from the Court of this $7,000.00 payment, which in an aggregate amount will not

6

exceed $7,000.00, and DEFENDANTS will not oppose the application by PLAINTIFF for such reimbursement.   The payment to PLAINTIFF shall be made within 14 days of the DATE OF SETTLEMENT ORDER AND JUDGMENT.  Nothing in this Section shall preclude PLAINTIFF's eligibility to receive any other benefit provided under Section 3.1.

3.3    Payment of Attorneys' Fees and Costs

In addition to the Benefits to the SETTLEMENT CLASS and PLAINTIFF, and subject to COURT approval, DEFENDANTS will pay PLAINTIFF'S COUNSEL the sum of no more than $435,000.00.  The payment of no more than $435,000.00 will cover all past, current, and future attorneys' fees, costs, and expenses associated with this ACTION and Agreement. The payment of no more than $435,000.00 will be shared between PLAINTIFF'S COUNSEL, first to reimburse any allocable costs or expenses incurred by PLAINTIFF'S COUNSEL, the remaining amount will be divided between PLAINTIFF'S COUNSEL on a pro-rata basis of work performed from November 3, 2008 (the date of the prior FINAL APPROVAL hearing in this ACTION) through the FINAL APROVAL of this ACTION.  PLAINTIFF'S COUNSEL are solely responsible for allocating such fees, costs and expenses among themselves.  DEFENDANTS shall have no responsibility for, no interest in, and no liability whatsoever with respect to the allocation amongst PLAINTIFF'S COUNSEL. If any dispute amongst PLAINTIFF'S COUNSEL arises relating to the allocation of attorneys' fees, costs or expenses, PLAINTIFF'S COUNSEL shall indemnify and hold DEFENDANTS harmless from any and all liabilities, costs, and expenses that arise from such dispute.

PLAINTIFF'S COUNSEL will file an application with the COURT seeking approval of the payment of $435,000.00.  DEFENDANTS agree that they will not object, or cause another to object, to the COURT'S approval of a payment of $435,000.00.  PLAINTIFF'S COUNSEL agree not to request attorneys' fees, costs, and expenses exceeding $435,000.00 and DEFENDANTS shall have no obligation to pay any sums to PLAINTIFF'S COUNSEL in excess of $435,000.00.  The attorneys' fees, costs, and expenses provided for under this Subsection shall be paid in lieu of any applicable fee-shifting statute.

Should the COURT grant FINAL APPROVAL to the terms expressed in this Agreement, and such Approval is upheld on appeal, PLAINTIFF'S COUNSEL does hereby waive any claim or right to an award by the COURT for attorneys' fees, costs and expenses that exceed the amounts provided under this Subsection.  Except as expressly provided above, PLAINTIFF and DEFENDANTS shall each bear their own costs incurred in connection with the ACTION.

The parties hereby agree that DEFENDANTS shall pay the amount of attorneys' fees, costs and expenses ordered by the Court (the "awarded fees"), up to but not exceeding $435,000.00, into an interest-bearing escrow account within 7 days of the COURT's entry of the SETTLEMENT ORDER AND JUDGMENT.  The awarded fees shall be released to PLAINTIFF'S COUNSEL, along with any actual interest accrued, at the request of PLAINTIFF'S COUNSEL, provided such request is made, after the DATE OF SETTLEMENT ORDER AND JUDGMENT.  The awarded fees shall be released within 14 days of a request by PLAINTIFF'S COUNSEL made in accordance with the provisions of this paragraph.  DEFENDANTS shall have no obligation to release the awarded fees to PLAINTIFF'S COUNSEL prior to the DATE OF SETTLEMENT ORDER AND JUDGMENT.  If the SETTLEMENT ORDER AND JUDGMENT is reversed, modified or vacated by a trial or appellate court, such that the DATE OF SETTLEMENT ORDER AND JUDGMENT does not occur, the escrow account established by DEFENDANTS in accordance with this paragraph shall be closed and all monies placed therein shall be returned to DEFENDANTS, along with all accrued interest.

### 3.4 Payment of Class Notice and Settlement Administration Costs

DEFENDANTS shall pay all costs associated with class notice and the administration of settlement benefits.

### 3.5 Claims Process

a)      Obtaining a Settlement Benefit

      1)      SETTLEMENT CLASS members who previously submitted a completed and valid claim form (identified in Exhibit B filed under seal) do not need to complete a written claim form to receive the settlement benefit.  SEL shall mail or cause to be mailed FIRST CLASS MAIL NOTICE in the form of Exhibit D1 to these persons.

      2)      SETTLEMENT CLASS members not identified in Exhibit B but for whom SEL agrees (for settlement purposes) have already demonstrated TELEVISION ownership (*i.e.*, members of the SETTLEMENT CLASS identified in Exhibit C, filed under seal) shall be sent FIRST CLASS MAIL NOTICE in the form of Exhibit D2, which shall be mailed or caused to be mailed by SEL.  SETTLEMENT CLASS members identified in Exhibit C must submit a claim form, along with proof of purchase of any brand 1080p HDMI SOURCE COMPONENT, to the third-party administrator identified on the claim form.

3)    SETTLEMENT CLASS members not identified in <u>Exhibit B</u> or <u>Exhibit C</u> (*i.e.*, SETTLEMENT CLASS members who neither submitted a completed and valid claim form or for whom SEL does not possess proof of TELEVISION ownership) will receive notice solely by PUBLICATION NOTICE with a link to the SETTLEMENT WEBSITE. SEL represents that it lacks a practical way to identify the specific contact information for SETTLEMENT CLASS members not identified in <u>Exhibit B</u> or <u>Exhibit C</u>, thus making notice solely by PUBLICATION NOTICE to these SETTLEMENT CLASS members the best practicable notice.  SETTLEMENT CLASS members not identified in <u>Exhibit B</u> or <u>Exhibit C</u> must submit a claim form, along with all other required documentation establishing TELEVISION ownership and proof of purchase of any brand 1080p HDMI SOURCE COMPONENT, to the third-party administrator identified on the settlement claim form.

4)    If a SETTLEMENT CLASS member has more than one TELEVISION and wishes to obtain one benefit per TELEVISION, that member must submit a valid claim form, establishing TELEVISION ownership for each TELEVISION, along with all other required documentation.

5)    All claim forms must be received by the last day of the CLAIMS PERIOD to be valid, except as provided in Section 3.5(b)(2) below or Section 3.1(a)(3) above.

6)    SEL will send or cause to be sent the claim forms, along with the one of the two forms of FIRST CLASS MAIL NOTICE, to all SETTLEMENT CLASS members who can be identified by SEL in any records it maintains, including warranty registration data and the settlement claim forms previously submitted.  FIRST CLASS MAIL NOTICE shall be sent within 30 days after the Court's entry of the PRELIMINARY APPROVAL ORDER.

b)    Determining Eligibility for Settlement Benefits

1)    If SEL and/or the claims administrator rejects a claim, it shall have the right, but not the obligation (except as set forth in Section 3.1(b)(3) above), to provide notice of its determination to the relevant SETTLEMENT CLASS member in order to allow the SETTLEMENT CLASS member to remedy any deficiency in the claim form.

9

2:07-cv-15474-PDB-RSW Doc # 254 Filed 12/21/12 Pg 10 of 27 Pg ID 7448

2)     SEL and/or the claims administrator shall promptly provide to PLAINTIFF'S COUNSEL copies of all rejected claims and the basis for rejecting those claims. PLAINTIFF'S COUNSEL has the right, but not the obligation, to dispute such rejections if PLAINTIFF'S COUNSEL in good faith believes the rejection does not comport with the spirit of the Agreement. If the PARTIES' counsel cannot work out their differences as to such rejections, PLAINTIFF'S COUNSEL has the right, but not the obligation, to raise an objection to the COURT as to the rejection of the claim of such SETTLEMENT CLASS member.

c)     Selection and Duties of Claims Administrator

SEL may use Hegelson Enterprises or another vendor agreed by the parties to administer the settlement and claims process. SEL will bear the costs of retaining the third-party administrator and administering the claims process. The claims administrator shall be responsible for processing all claim forms and providing reports to counsel for the PARTIES upon reasonable request during the CLAIMS PERIOD, but no more frequently than once every two weeks. SEL shall cause the claims administrator to provide to SEL and PLAINTIFF'S COUNSEL the information concerning rejected claims described in Subsection 3.5(b).

3.6     Release of Claims

In consideration of the benefits provided under this Agreement, PLAINTIFF and members of the SETTLEMENT CLASS shall release claims against DEFENDANTS and others pursuant to Section 5.1 below.

3.7     Right to Withdraw

DEFENDANTS shall have the right to withdraw from the Agreement at any time before the DATE OF SETTLEMENT ORDER AND JUDGMENT if: (a) any court issues an injunction against SEL, ABC or their attorneys from proceeding with this settlement in any jurisdiction; and/or (b) the COURT grants a fee and/or cost application(s) that would cause the total award of attorney fees and costs to exceed $435,000.00, and PLAINTIFF refuses to be solely responsible for fully reimbursing all such attorney fees and/or costs awarded in excess of the PARTIES' agreement regarding fees and costs.

If DEFENDANTS elect to terminate this Agreement as provided under this Subsection, DEFENDANTS shall notify PLAINTIFF'S COUNSEL of their election, and upon such election, the Agreement shall have no force and effect whatsoever, and shall not be used in the ACTION or in any other proceeding for any purpose

whatsoever, and any judgment or order entered by the COURT pursuant to this Agreement shall be treated as vacated *nunc pro tunc*, the ACTION may continue, any order certifying a class for settlement purposes only or approving certification of a settlement class shall be vacated, and any other action taken pursuant to this Agreement shall be of no force or effect.

### 3.8   Non-disparagement Clause

Neither the PARTIES nor their respective counsel shall proactively discuss the settlement or this Agreement with media and hereby agree not to disparage in public, PLAINTIFF, DEFENDANTS, any subsidiary or corporate affiliate of DEFENDANTS, or any counsel for the PARTIES, including describing the settlement as a recall.  Nothing in this Section shall prohibit the PARTIES' attorneys from posting details of the settlement on their respective web sites, provided that any such posting complies with the prohibition against disparagement as set forth in this Section.

### 3.9   Cooperation Clause

The PARTIES' counsel shall use their best efforts to cause the COURT to give preliminary approval to this proposed settlement and Agreement as promptly as practical, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, to do all acts and execute and deliver all documents necessary to effect all provisions of this Agreement, and to cause the COURT to enter the SETTLEMENT ORDER AND JUDGMENT and to oppose any appeal thereof.

## 4.0    CLASS SETTLEMENT PROCEDURES

### 4.1   Requesting Preliminary Approval

As soon as practical after the signing of this Agreement, PLAINTIFF and DEFENDANTS shall submit to the COURT a Joint Application requesting: preliminary approval of this proposed settlement and Agreement; approval of notice of the proposed settlement as described in Section 4.3 below; certification of the SETTLEMENT CLASS for settlement purposes only; and a hearing date to consider final approval of the settlement and any objections thereto.

### 4.2   Class Certification for Settlement Purposes Only

The Joint Application for preliminary approval of this proposed settlement and Agreement shall seek entry of an order, substantially in the form of Exhibit E ("Order Granting Preliminary Approval of Settlement of Class Action") that: (a) certifies the SETTLEMENT CLASS in accordance with the definition set forth in Subsection 1.16 of this Agreement; (b) appoints PLAINTIFF as the SETTLEMENT CLASS

representative; and (c) appoints PLAINTIFF'S COUNSEL as SETTLEMENT CLASS counsel, all for purposes of settlement only.  DEFENDANTS acknowledge that class certification for settlement purposes only will facilitate settlement, and thus will not oppose the request for class certification for settlement purposes only.  In agreeing not to oppose class certification for settlement purposes only, DEFENDANTS do not waive, and hereby reserve, any and all rights to oppose any request to certify a class in this ACTION if the COURT does not, for any reason, enter a SETTLEMENT ORDER AND JUDGMENT in this ACTION or in the event of termination of this Agreement for any reason.

The certification of the SETTLEMENT CLASS, the appointment of PLAINTIFF to act as representative of the SETTLEMENT CLASS, and the appointment of PLAINTIFF'S COUNSEL as SETTLEMENT CLASS counsel shall be binding only with respect to this proposed settlement and this Agreement.

If the COURT does not, for any reason, enter a SETTLEMENT ORDER AND JUDGMENT in this ACTION or if this Agreement is terminated for any reason, the Order Granting Preliminary Approval of Settlement of Class Action, and all of its provisions, shall have no force or effect whatsoever, shall not be used in the ACTION or in any other proceeding for any purpose, and the ACTION shall revert to its status as it existed prior to the execution of this Agreement.

### 4.3    Notice of Settlement

DEFENDANTS will provide notice of this proposed settlement and Agreement to the SETTLEMENT CLASS as follows:

a)    Form of Notice

The PARTIES agree on the two forms of direct FIRST CLASS MAIL NOTICE, attached as Exhibit D1 and Exhibit D2 hereto.  SEL will direct the claims administrator to mail one of the two forms of FIRST CLASS MAIL NOTICE to each member of the SETTLEMENT CLASS for whom SEL possesses a mailing address and as identified in Exhibit B and Exhibit C (to be filed separately, under seal, as soon as practicable).  The PARTIES agree that, to preserve the privacy of the customer information included in Exhibits B and C, those Exhibits will be filed with the COURT under seal, and the PARTIES will take all reasonable efforts to preserve the confidentiality of this information.  The parties further agree to treat Exhibits B and C, and the information contained therein, with the protection afforded documents designated as CONFIDENTIAL MATERIAL under the protective order entered in this case.

1) The form of <u>Exhibit D1</u> shall be mailed to all members of the SETTLEMENT CLASS identified in <u>Exhibit B</u>, *i.e.*, those who previously submitted a completed and valid claim form.  <u>Exhibit D1</u> shall not require the submission of a claim form because proof of TELEVISION ownership and proof of purchase of 1080p HDMI SOURCE COMPONENT shall be deemed satisfied.

2) The form of <u>Exhibit D2</u> shall be mailed to all members of the SETTLEMENT CLASS identified in <u>Exhibit C</u>, i.*e*., those who did not previously submit a claim form but for whom SEL possesses proof of TELEVISION ownership.

The parties also agree on the attached forms of SETTLEMENT WEBSITE and PUBLICATION NOTICE, attached as <u>Exhibits F</u> and <u>G</u>, respectively. This will be the sole form of notice provided to members of the SETTLEMENT CLASS who have not been identified in <u>Exhibit B</u> or <u>Exhibit C</u> as addresses for such SETTLEMENT CLASS members are not practicably capable of being obtained.   The parties further agree that SEL shall maintain the link between SEL's "Sony Support" home page and the SETTLEMENT WEBSITE for fourteen days.

If the COURT orders the PARTIES to provide notice of this settlement by any method beyond that described under Section 4.3(a), SEL may elect to terminate this Agreement by notifying PLAINTIFF'S COUNSEL of its election.  If SEL elects to terminate this Agreement as provided under this Subsection, the Agreement shall become null and void as provided under Section 4.7.

a) Method of Notice

1) U.S. Mail

The PARTIES agree that the two forms of FIRST CLASS MAIL NOTICE shall be mailed to the SETTLEMENT CLASS members' last known mailing addresses. SEL shall pay for and cause the FIRST CLASS MAIL NOTICE to be sent no later than 30 days after entry of the PRELIMINARY APPROVAL ORDER.  SEL shall cause proof of the mailing to be filed with the COURT.

2) USA Today

The parties agree that SEL shall pay for and cause the dissemination of the PUBLICATION NOTICE, consisting of a 1/4 page advertisement in the daily edition of the USA Today newspaper.  SEL will use its best efforts to cause the advertisement to be placed promptly after the Court grants preliminary approval of the settlement and in no event shall the publication be later than 30 days after entry of the

PRELIMINARY APPROVAL ORDER.  SEL shall cause proof of the PUBLICATION NOTICE to be filed with the Court.

        3)     Website Posting

SEL shall build, pay for, and host the SETTLEMENT WEBSITE.  Such website shall disseminate notice of this settlement and provide information on the settlement and the claims process, with information in substantially the same form as the information contained in <u>Exhibit F</u>.  Links to the SETTLEMENT WEBSITE shall be posted on: (a) SEL's "Sony Support" home page; and (b) on the model home pages for the TELEVISIONS to the extent such pages exist.  The SETTLEMENT WEBSITE shall be live until the last day of the CLAIMS PERIOD and provide information about the Settlement, including at least the following: (a) the full text of this Agreement and all Exhibits; (b) DEFENDANTS' Answers and Defenses to PLAINTIFF'S Third Amended Complaint; (c) instructions on how to submit a claim form, opt-out or object to the Settlement; and (d) a telephone number to call with questions about the Settlement.  The link from SEL's "Sony Support" home page to the SETTLEMENT WEBSITE shall be maintained for fourteen days.  The link from the model home pages for the TELEVISIONS to the SETTLEMENT WEBSITE shall be maintained until the last day of the CLAIMS PERIOD.  SEL shall cause proof of the establishment and maintenance of the SETTLEMENT WEBSITE to be filed with the COURT.  The website notice shall be posted no later than 30 days after entry of the PRELIMINARY APPROVAL ORDER.

        4.3     <u>Request for Settlement Order and Judgment</u>

Before the final approval or fairness hearing, the parties shall move, either separately or jointly, for a SETTLEMENT ORDER AND JUDGMENT that: (a) grants final approval of this proposed settlement and Agreement as final, fair, reasonable, adequate, and binding on all members of the SETTLEMENT CLASS who have not excluded themselves as provided in Section 4.5 of this Agreement; (b) orders the releases as set forth in Section 5.1 below; and (c) enters judgment in the ACTION. The parties agree to request entry of the SETTLEMENT ORDER AND JUDGMENT in the form attached hereto as <u>Exhibit H</u>.  The SETTLEMENT ORDER AND JUDGMENT will, among other things, approve the Settlement as fair, reasonable, and adequate, approve the award of attorneys' fees, costs, and expenses agreed to herein, direct consummation of the Settlement in accordance with the terms of this Agreement, and dismiss the ACTION with prejudice (except as to those SETTLEMENT CLASS members who opt out).

        4.4     <u>Opting Out of the Settlement</u>

A member of the SETTLEMENT CLASS who elects not to be part of the SETTLEMENT CLASS must mail a valid opt-out notice to Lance Raphael of the Consumer Advocacy Center, P.C.  The various forms of notice will provide instructions on how to opt-out, explaining that the SETTLEMENT CLASS members may exclude themselves by writing a letter stating words to the effect of, "I want to be excluded from the Settlement Class in Case No. 02:07-cv-15474."  SETTLEMENT CLASS members shall have no less than 45 days from the last day on which SEL mails notice of the proposed settlement to opt out of the proposed settlement.  Every prospective member of the SETTLEMENT CLASS who opts out of the settlement pursuant to this section shall forego the benefits of this proposed settlement and shall not be bound by this Agreement.  A SETTLEMENT CLASS member who does not file a timely exclusion request shall be bound by all subsequent proceedings, orders, and judgments in the ACTION.  Prior to or at the Final Fairness Hearing, the Court may permit a SETTLEMENT CLASS member who has filed a timely exclusion request to withdraw such request.

Not later than 3 calendar days after the expiration of the CLAIMS PERIOD, PLAINTIFF'S COUNSEL shall prepare a list of the persons who have validly and timely opted out of the settlement, shall deliver that list to the COURT, and serve the list on DEFENDANTS' COUNSEL.

Notwithstanding anything else contained in this Agreement, if more than 1% of the members of the SETTLEMENT CLASS opt out, then any DEFENDANT, at its sole discretion, may notify PLAINTIFF'S COUNSEL of its election to terminate this Agreement.  If any party elects to terminate this Agreement as provided under this section, the Agreement shall become null and void as provided under Section 4.7.

4.5     Objecting to the Settlement

A member of the SETTLEMENT CLASS who wants to object to the proposed settlement must file a written objection with the Clerk of the COURT and serve copies upon PLAINTIFF'S COUNSEL and DEFENDANTS' COUNSEL, as described in the various forms of notice.

SETTLEMENT CLASS members shall have no less than 45 days from the last day on which SEL mails notice of the proposed settlement to object to the proposed settlement.  A prospective member of the SETTLEMENT CLASS who objects to the settlement pursuant to this section shall be bound by this Agreement, if the Court overrules the member's objection.

4.6     Agreement is Null and Void if Terminated or Not Approved

This Agreement was entered into only for purposes of settlement.  If the COURT does not, for any reason: (a) grant preliminary approval of this settlement; or

(b) issue the SETTLEMENT ORDER AND JUDGMENT, or in the event of termination of this Agreement, the terms and provisions of the Agreement shall become null and void *ab initio*, shall have no force and effect whatsoever, and shall not be used in the ACTION or in any other proceeding for any purpose whatsoever; any judgment or order entered by the COURT pursuant to this Agreement, including any order certifying a class for settlement purposes only or approving certification of a settlement class, shall be treated as vacated *nunc pro tunc*, and any other action taken pursuant to this Agreement shall be of no force or effect.

## 5.0    MUTUAL GENERAL RELEASES

### 5.1    Release By Plaintiff and the Settlement Class

Upon the DATE OF THE SETTLEMENT ORDER AND JUDGMENT, in exchange for the consideration specified herein and save and except for the rights, duties and obligations of this Agreement, PLAINTIFF and members of the SETTLEMENT CLASS (except any such person who filed a proper and timely request for exclusion from the SETTLEMENT CLASS) on behalf of themselves and any and all of their respective successors-in-interest, assigns, heirs, insurers, executors, officers, directors, agents, employees, attorneys, including PLAINTIFF'S COUNSEL, parent companies, subsidiaries, administrators, principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts, trustors, trustees, beneficiaries, and all others who may take any interest in the matter herein, jointly and severally, fully and forever release, acquit and discharge (a) SEL, Sony Corporation of America, Sony Corporation, Sony Pictures Entertainment, Inc., Sony Computer Entertainment Inc., Sony Computer Entertainment America Inc., and ABC (for purposes of this Paragraph, "Sony and ABC Entities"); (b) all third-party vendors, retailers or other business entities in the manufacturing, marketing, or distribution chain for the TELEVISIONS (for purposes of this Paragraph "Released Third Parties") but only to the extent that any advertising by the Released Third Parties concerning the TELEVISIONS is consistent with the product specifications and marketing information provided by SEL to the Released Third Parties; and (c) any and all of their respective successors-in-interest, affiliates, assigns, heirs, insurers, executors, officers, directors, agents, employees, attorneys, parent companies, subsidiaries, administrators, principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts, trustors, trustees and beneficiaries and all others who may take any interest in the matter herein from all past, present and future claims, causes of action, demands, losses or damages of any kind, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether now known or unknown, suspected or unsuspected, existing, claimed to exist or which can ever hereinafter exist, arising out of the facts alleged in the ACTION and/or constituting, containing, arising out of or relating in any way to, any claim involving the TELEVISIONS' video input, display resolution or 1080p capabilities, including without limitation the

16

TELEVISIONS' alleged ability or inability to display or accept a 1080p input signal or to function properly as a 1080p device in any other way.

     5.2    <u>Release by Defendants and the Settlement Class</u>

Upon the DATE OF THE SETTLEMENT ORDER AND JUDGMENT, in exchange for the consideration specified herein and save and except for the rights, duties and obligations of this Agreement, DEFENDANTS and members of the SETTLEMENT CLASS (except any such person who filed a proper and timely request for exclusion from the SETTLEMENT CLASS), and any and all successors-in-interest, affiliates, assigns, heirs, insurers, executors, officers, directors, agents, employees, attorneys, parent companies, subsidiaries, administrators, principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts, trustors, trustees and beneficiaries and all others who may take any interest in the matter herein, fully and forever releases, acquits and discharges PLAINTIFF, PLAINTIFF'S COUNSEL and other members of the SETTLEMENT CLASS (except any such person who filed a request for exclusion from the SETTLEMENT CLASS in accordance with Section 4.5), and any and all of their successors-in-interest, affiliates, assigns, heirs, insurers, executors, officers, directors, agents, employees, attorneys, parent companies, subsidiaries, administrators, principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts, trustors, trustees and beneficiaries and all others who may take any interest in the matter herein from all past, present and future claims, causes of action, demands, losses or damages of any kind, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether now known or unknown, suspected or unsuspected, existing, claimed to exist or which can ever hereinafter exist, arising from the investigation, filing, or prosecution of the ACTION.

     5.3    <u>Obligations under this Agreement Not Released</u>

The mutual general releases contained herein shall not constitute a release of or relieve the PARTIES of any of their respective future obligations under this Agreement.

## 6.0    WAIVER OF CALIFORNIA CIVIL CODE SECTION 1542 AND OTHER PROVISIONS

     6.1    <u>Waiver</u>

The PARTIES to this Agreement acknowledge that the consideration exchanged in this Agreement is intended and shall release and discharge any claim and/or cause of action by them, or any of them, with regard to any unknown or future damage, loss or injury, as provided under Sections 5.1 and 5.2, and that they, and each of them, do

hereby waive any rights under California Civil Code Section 1542 (or similar law of any other state or jurisdiction), which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

The PARTIES acknowledge, warrant, and represent that they are familiar with Section 1542 of the California Civil Code (or similar law of any other state or jurisdiction) and that the effect and import of that provision has been fully explained to them by their respective counsel.

The PARTIES acknowledge that there is a risk that subsequent to the execution of this Agreement, one or more of the PARTIES will incur or suffer losses, damages, or injuries related to the subject matter of this Agreement, which are unknown and unanticipated at the time this Agreement is signed.  The PARTIES, and each of them, hereby assume the above-mentioned risks and understand that this Agreement shall apply to all unknown or unanticipated claims, losses, damages or injuries relating to the subject matter of this Agreement, as well as those known and anticipated, and upon advice of legal counsel, the PARTIES, and each of them, do hereby waive any and all rights under Section 1542 relating to the subject matter of this Agreement.  The PARTIES acknowledge that they fully understand that they may hereafter discover facts in addition to or different from those which they now know or believe to be true relating to the subject matter of this Agreement, but that it is their intention hereby to fully, finally and forever release all claims, obligations and matters released herein, known or unknown, suspected or unsuspected, which do exist, may exist in the future or heretofore have existed between the PARTIES relating to the subject matter of this Agreement, and that in furtherance of such intention, the releases given herein shall be and remain in effect as full and complete releases of the matters released herein, notwithstanding the discovery or existence of any such additional or different facts.

6.2   Receipt of Legal Advice

The PARTIES each represent to the other that they have received legal advice from attorneys of their own choosing with respect to the advisability of making the settlement provided for in this Agreement, and with respect to the advisability of executing this Agreement, and/or that they have been advised of their right to seek such legal advice, that they have read this Agreement in its entirety and fully understand its contents, and that each is executing this Agreement as a free and voluntary act.

6.3     No Assignment of Released Claims

Each of the PARTIES hereto ("Releasing Party") represents and warrants to each party to which it is giving a release ("Released Party") that the Releasing Party has not heretofore assigned, hypothecated, or otherwise transferred, or attempted to assign, hypothecate or transfer, any claim or claims against the Released Parties and that there is no other person or legal entity that has not executed this Agreement as a Releasing Party that has any interest in any such claim or claims against the Released Parties.  SEL hereby agrees to indemnify and hold harmless PLAINTIFF and PLAINTIFF agrees to indemnify and hold harmless DEFENDANTS from any and all liabilities, claims, demands, obligations, damages, costs, expenses and attorneys' fees arising from or related to any such purportedly assigned claim.

6.4     Entire Agreement

This Agreement is the entire Agreement between the PARTIES with respect to the claims and causes of action relating to the ACTION.  This Agreement supersedes any prior or contemporaneous oral or written agreement and discussions between the PARTIES.  This Agreement may be modified or amended only in writing reflecting the express consent of each of the PARTIES.

6.5     No Admission of Liability

This Agreement is a compromise of the ACTION which is being settled to avoid the cost, expense and disruption of litigation.  This Agreement is the product of arm's-length negotiations that occurred over several months.  By entering into this Agreement, DEFENDANTS are in no way admitting to any wrongdoing or liability to PLAINTIFF or to any member of the SETTLEMENT CLASS and deny any such wrongdoing or liability, nor are DEFENDANTS conceding the validity of any claim asserted in the ACTION.  No PARTY shall use either the Agreement or any act performed or any document prepared or executed in relation to or in furtherance of this Agreement as an admission of, or evidence of, the validity of any released claim, or of any wrongdoing or liability of any of the other PARTIES.

This Agreement shall not be used as evidence in any court, judicial or non-judicial proceeding(s) concerning any lawsuit that now exists or may in the future exist between the PARTIES related to the ACTION except to enforce or comply with the terms of this Agreement, or as otherwise provided under this Section.

Nothing in this section shall preclude any of the PARTIES from submitting the Agreement and/or SETTLEMENT ORDER AND JUDGMENT in any action to support a defense or counterclaim based on *res judicata*, collateral estoppel, release,

good-faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

### 6.6   Authority to Enter into this Agreement

Each of the PARTIES represents and warrants to the other that the person executing this Agreement on its behalf has full authority and capacity to execute this Agreement and to give the releases and other promises contained herein on behalf of that person or entity or any person or entity whom that person represents.  Each of the PARTIES hereby represents and warrants that it has the right, power, legal capacity and authority to enter into and satisfy the terms of this Agreement, and that no further approval or consent of any person or entity is necessary to enter into and satisfy the terms of this Agreement.  Each of the PARTIES hereby acknowledges that no other party or agent or attorney of any other party has made a promise, representation, or warranty whatsoever, express or implied, not contained herein concerning this Agreement.  Each of the PARTIES hereby acknowledges that it has not executed this instrument in reliance upon such promise, representation or warranty, if any, not contained herein

### 6.7   Binding Effect

This Agreement shall be binding upon and inure to the benefit of each of the PARTIES hereto and their respective officers, directors, shareholders, agents, employees, heirs, insurers, successors, assigns and legal representatives.

### 6.8   Execution in Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which, together, shall be deemed to be one and the same instrument.  Telefax or scanned signatures shall be deemed originals.

### 6.9   Waiver

No provisions hereof may be waived unless in writing and signed by the person or entity whose rights are thereby waived.  Waiver of any one provision herein shall not be deemed to be a waiver of any other provision herein.

6.10    Finality of Settlement

This proposed settlement and Agreement shall become final upon the DATE OF SETTLEMENT ORDER AND JUDGMENT.  This Agreement shall be of no force and effect until it has been signed by each of the PARTIES.

6.11    Governing Law and Choice of Forum

This Agreement shall be subject to, construed in accordance with, governed by, and enforced pursuant to the laws of the State of California.  The COURT shall retain jurisdiction to enforce any order it enters in connection with this proposed settlement and/or the Agreement.  If a dispute arises out of, or relates to, this Agreement, the PARTIES agree that any action relating to such dispute shall be brought only, and exclusively, before this COURT.  The PARTIES to this Agreement and their counsel agree to submit to the jurisdiction of the COURT with respect to any such dispute.

6.12    Interpretation of Agreement

The sections, titles and captions contained in this Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the intent of any of its provisions.  This Agreement shall be construed without regard to its drafter, and shall be construed as though the PARTIES participated equally in the drafting of this Agreement.

6.13    Severance

It is the belief of the PARTIES and their counsel that this Agreement does not contain any provision contrary to law.  However, if any provision of this Agreement is found to be unenforceable, invalid, or illegal by a court of competent jurisdiction, then the remainder of the Agreement shall be considered valid and enforceable and shall remain in full force and effect

6.14    Modification of Time Periods and Dates under the Agreement

The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the COURT or by the written agreement of counsel, without notice to members of the SETTLEMENT CLASS.  If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

APPROVED AND AGREED:

DATED: _12-21_, 2012

David Date, Jr.
Individually and as Representative of the
SETTLEMENT CLASS

DATED: _____, 2012

Sony Electronics Inc.

DATED: _____, 2012

ABC Appliance, Inc.

APPROVED AS TO FORM:

THE CONSUMER ADVOCACY CENTER, P.C.

DATED _12-22_, 2012

Lance Raphael
Attorneys for Plaintiff and the Plaintiff
Settlement Class

THE CONSUMER LAW GROUP OF
CALIFORNIA

DATED: _____, 2012

Alan Mansfield
Attorneys for Plaintiff and the Plaintiff
Settlement Class

THE LIBLANG LAW FIRM, P.C.

DATED: _____, 2012

Dani Liblang

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

APPROVED AND AGREED:

DATED: _____, 2012        _____
                               David Date, Jr.
                               Individually and as Representative of the
                               SETTLEMENT CLASS

DATED: _12-18_, 2012           _Ronald a. Weisinger_  Vice President
                               Sony Electronics Inc.

DATED: _____, 2012        _____
                               ABC Appliance, Inc.


APPROVED AS TO FORM:

THE CONSUMER ADVOCACY CENTER, P.C.

DATED: _____, 2012        _____
                               Lance Raphael
                               Attorneys for Plaintiff and the Plaintiff
                               Settlement Class


THE CONSUMER LAW GROUP OF
CALIFORNIA

DATED: _____, 2012        _____
                               Alan Mansfield
                               Attorneys for Plaintiff and the Plaintiff
                               Settlement Class

THE LIBLANG LAW FIRM, P.C.

DATED: _____, 2012        _____
                               Dani Liblang

22

DATED: _____, 2012

_____
Sony Electronics Inc.

DATED: 12-14, 2012

_____
ABC Appliance, Inc.

APPROVED AS TO FORM:

THE CONSUMER ADVOCACY CENTER, P.C.

DATED: _____, 2012

_____
Lance Raphael
Attorneys for Plaintiff and the Plaintiff
Settlement Class

THE CONSUMER LAW GROUP OF
CALIFORNIA

DATED: _____, 2012

_____
Alan Mansfield
Attorneys for Plaintiff and the Plaintiff
Settlement Class

THE LIBLANG LAW FIRM, P.C.

DATED: _____, 2012

_____
Dani Liblang
Attorneys for Plaintiff and the Plaintiff
Settlement Class

MILLER CANFIELD PLC

DATED: _____, 2012

_____
Attorneys for Sony Electronics, Inc. and ABC
Appliance, Inc.

23

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

APPROVED AND AGREED:

DATED: _____, 2012        _____
                                David Date, Jr.
                                Individually and as Representative of the
                                SETTLEMENT CLASS

DATED: _____, 2012        _____
                                Sony Electronics Inc.

DATED: _____, 2012        _____
                                ABC Appliance, Inc.

                                APPROVED AS TO FORM:

                                THE CONSUMER ADVOCACY CENTER, P.C.

DATED: _____, 2012        _____
                                 Lance Raphael
                                Attorneys for Plaintiff and the Plaintiff
                                Settlement Class

                                THE CONSUMER LAW GROUP OF
                                CALIFORNIA

DATED: 12/14, 2012             _____
                                Alan Mansfield
                                Attorneys for Plaintiff and the Plaintiff
                                Settlement Class

                                THE LIBLANG LAW FIRM, P.C.

DATED: _____, 2012        _____
                                 Dani Liblang

22

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

APPROVED AND AGREED:

DATED: _____, 2012

_____
David Date, Jr.
Individually and as Representative of the
SETTLEMENT CLASS

DATED: _____, 2012

_____
Sony Electronics Inc.

DATED: _____, 2012

_____
ABC Appliance, Inc.

APPROVED AS TO FORM:

THE CONSUMER ADVOCACY CENTER, P.C.

DATED: _____, 2012

_____
Lance Raphael
Attorneys for Plaintiff and the Plaintiff
Settlement Class

THE CONSUMER LAW GROUP OF
CALIFORNIA

DATED: _____, 2012

_____
Alan Mansfield
Attorneys for Plaintiff and the Plaintiff
Settlement Class

THE LIBLANG LAW FIRM, P.C.

DATED: Dec. 15, 2012

_____
Dani Liblang

22

Attorneys for Plaintiff and the Plaintiff
Settlement Class

MILLER CANFIELD PLC

DATED: _12/21_, 2012          _Clarence L. Pozza Jr._

Attorneys for Sony Electronics, Inc. and ABC
Appliance, Inc.


SCHIFF HARDIN LLP

DATED: _12/21_, 2012          _Robert Wierenga_

Attorneys for Sony Electronics, Inc. and ABC
Appliance, Inc.

23