EUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID DATE, JR., Individually and On
Behalf of All Others Similarly Situated,

Case No. 07-15474

                    Plaintiff,

Paul D. Borman
United States District Judge

v.


SONY ELECTRONICS, INC. and ABC
APPLIANCE, INC., d/b/a ABC
WAREHOUSE,

                    Defendants.
_____/

OPINION AND ORDER (1) GRANTING FINAL APPROVAL OF PROPOSED
SETTLEMENT; (2) GRANTING PLAINTIFF'S COUNSEL'S REQUEST FOR ATTORNEYS'
FEES OF $435,000; AND (3) APPROVING PLAINTIFF'S REQUEST FOR A $7,000
INCENTIVE AWARD FOR HIS SERVICES AS A CLASS REPRESENTATIVE

This matter is before the Court on the parties' joint application for final approval of class

action settlement, for approval of Plaintiff's counsels request for an award of attorneys' fees and for

approval of a $7,000 incentive/service award for named Plaintiff, David Date.  Both Plaintiffs and

Defendants have filed memoranda and supporting declarations and affidavits in support of their joint

request for final approval.  (ECF Nos. 279-284.)  The Court held a Final Fairness Hearing on July

24, 2013.  Having considered the written submissions and the oral presentations to the Court at the

Final Fairness Hearing, the Court GRANTS final approval of the proposed Settlement Agreement,

GRANTS Plaintiff's counsel's request for a fee award of $435,000 and GRANTS Class

Representative David Date's request for a $7,000 incentive/service award for his efforts and service

as the named class representative in this multi-year litigation.

1

## I.      BACKGROUND

Plaintiff David Date, Jr. ("Date") originally filed this class action against Sony Electronics, Inc. ("Sony") and ABC Appliance, Inc. d/b/a ABC Warehouse ("ABC") in the Southern District of California on April 2, 2007, alleging misrepresentations in the marketing of Sony's Grand Wega Televisions, Models KDS-R50XBR1 and KDS-R60XBR1 ("XBR1s" or "Televisions").  (ECF No. 1, Record Received from the Southern District of California, 2-4.)  On December 18, 2007, the District Court for the Southern District of California, the Honorable Roger T. Benitez, granted Date's motion to transfer venue to this District, finding that the transfer would serve the convenience of witnesses and parties and would best serve the interests of justice.  (*Id.* at 11-17, Order Granting Plaintiff's Motion to Transfer Venue.)  On December 27, 2007, this Court received the record from the Southern District of California and received Date's First Amended Class Action Complaint. (ECF Nos. 1, 2.)

On March 12, 2008, the parties stipulated to the filing of the Second Amended Complaint. (ECF Nos. 29, 30.)  Also on March 12, 2008, the parties filed a joint request for preliminary approval of a settlement agreement.  (ECF No. 20.)  On July 25, 2008, this Court entered an Order preliminarily approving the proposed settlement agreement and scheduling a final fairness hearing for November 3, 2008.  (ECF No. 45.)

On November 3, 2008, this Court held a final fairness hearing on the proposed settlement, considered the objections filed in response to the proposed settlement agreement, and on January 16, 2009, issued an Opinion and Order Rejecting Class Action Settlement, concluding that the objectors had met their significant burden in opposing the proposed class action settlement.  (ECF No. 76.)  On February 20, 2009, this Court filed an Amended Opinion and Order Rejecting Class

Action Settlement.  (ECF No. 86.)

On April 30, 2010, Date, joined by Elliott Handler ("Handler"), who had been a principal objector to the proposed class action settlement, filed a Third Amended Class Action Complaint, seeking certification of several different classes and seeking declaratory relief and monetary damages.  ("The TAC") (ECF No. 123.)  The TAC contained the following Counts: Count I (Against Sony on Behalf of the Proposed Nationwide Class Under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*); Count II (Against Sony on Behalf of the Proposed Nationwide Class Under the California Unlawful, Unfair and Fraudulent Business Acts and Practices Act, Cal. Bus. Prof. Code § 17200); Count III (Against Sony and ABC on Behalf of the Proposed Nationwide Class for Breach of Express Warranty Pursuant to U.C.C. § 2-313); Count IV (Against Sony on Behalf of the Proposed Nationwide Class for Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*); Count V (Against ABC on Behalf of Date and a Proposed Subclass of ABC Purchasers for Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*); Count VI (Against Sony on Behalf of the Proposed Nationwide Class for Breach of Implied Warranty of Merchantability under 15 U.S.C. § 2308); Count VII (Against ABC on Behalf of Date and a Proposed Subclass of ABC Purchasers for Breach of Implied Warranty of Merchantability under 15 U.S.C. § 2308); Count VIII (Against Sony and ABC on Behalf of the Proposed Nationwide Class and on Behalf of Date and the Proposed Subclass of ABC Purchasers for Unjust Enrichment); Count IX (Against Sony and ABC on Behalf of the Proposed Nationwide Class for Declaratory Relief); Count X (Against Sony and ABC on Behalf of Date and a Proposed Subclass of Michigan Purchasers Under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*); Count XI (Against Sony on Behalf of Handler and a Proposed Subclass of New

York Purchasers Under New York General Business Law § 349 *et seq.*).

Following the filing of the TAC, the Court denied motions to dismiss (ECF No. 142) and the parties began the process of extensive discovery. According to the parties, Sony produced over 27,000 documents and eight witnesses for depositions. (ECF No. 281, Defs.' Memo In Support 9.)

On January 3, 2011, Date and Handler filed motions for class certification. (ECF Nos. 165 and 167.) On July 18, 2011, pursuant to the parties' stipulation, this Court entered an Order dismissing Handler from the case and dismissing each and every claim pled by him against Sony and ABC with prejudice. (ECF No. 207.) The Handler dismissal prompted the Court to seek from the parties supplemental briefing on the class certification motions, setting forth their positions as to how, if at all, the Handler dismissal affected the pending motions for class certification. On August 11, 2011, Sony and ABC (ECF Nos. 211, 212) and Date (ECF No. 213) filed supplemental briefs. In his supplemental brief, Date sought to withdraw from the TAC all allegations pertaining to the Qualia model of television set purchased by Handler (not an XBR1) and also sought to modify his class definitions against Sony and ABC. The Court thereafter required Date to file a further supplemental brief in support of the motion for class certification. (ECF No. 220, August 18, 2011 Order Requiring Supplemental Briefing.)

On September 2, 2011, Date filed his second supplemental brief. (ECF No. 223.) As permitted by the Court's August 18, 2011 Order, Sony and ABC filed a joint response to Date's second supplemental brief. (ECF No. 241.) On November 9, 2011, the Court held a hearing on the motions for class certification. On November 21, 2011, the Court requested the parties to submit supplemental briefing on the issue of class certification in light of a then-recent Sixth Circuit decision, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011). (ECF No. 243,

4

Order Requiring Supplemental Briefing.) The parties completed their supplemental briefing in mid-December, 2011.

In January, 2012, before the Court issued its Opinion and Order on Date's motion for class certification, the parties informed the Court that they had resumed settlement negotiations. On December 21, 2012, the parties filed a Joint Application for Preliminary Approval of Class Settlement. (ECF No. 252.) On January 25, 2013 the Court held a hearing on the parties' joint motion for preliminary approval of settlement of class action and on March 25, 2013, after several follow up discussions with the parties regarding changes to the proposed Notices and other matters, the Court issued an Order Preliminarily Approving the Parties' Class Action Settlement. (ECF No. 262.) On June 24, 2013, the parties filed their respective memoranda in support of final approval of the proposed settlement agreement, with supporting affidavits and declarations. (ECF Nos. 279-284.) On July 24, 2013, as set forth in the Preliminary Approval Order and in the approved Class Notices, the Court held a Final Fairness Hearing. No objectors asked to be heard or appeared at the Final Fairness Hearing. For the reasons that follow, the Court GRANTS final approval of the proposed settlement agreement, GRANTS Plaintiff's counsel's request for a fee award of $435,000 and GRANTS the request for a $7,000 incentive/service award for named Plaintiff, David Date.

## II.   CERTIFICATION OF THE SETTLEMENT CLASS

For purposes of settlement only, the settlement class is defined as:

All United States end user consumers who purchased, or received as a gift from the original retail purchaser, a KDS-R50XBR1 or KDS-R60XBR1 television (individually and collectively, the "Television(s)").[1]

---

[1] The settlement class does not include purchasers of Qualia televisions, the model that was purchased by former Plaintiff Handler, who has settled his claim against the Defendants and has been dismissed from the case. (ECF No. 253, Jt. Mot. 5.)

The settlement class does not include any person/entity who purchased or acquired a TELEVISION for resale or commercial use.  (ECF No. 254, Settlement Agreement ¶1.16.)

Certification of a class must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and one of the three subsections of Federal Rule of Civil Procedure 23(b).  *Int'l Union v. Ford Motor*, No. 05-74730, 06-10331, 2006 WL 1984363*, at *18 (E.D. Mich. July 13, 2006) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).  The Court finds that the Settlement Class satisfies the Rule 23 requirements.

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a).

Federal Rule of Civil Procedure 23(a) provides that class members may represent a class if the following prerequisites are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four prerequisites are met here:

**1.    Rule 23(a)(1):** Sony represents that approximately 175,000 Televisions were sold. A class of this size satisfies the numerosity requirement.   *See Ford Motor*, 2006 WL 1984363, at *19 (holding that class of over 170,000 satisfied the numerosity requirement).  The Settlement Class is too large for joinder to be practicable.

**2.    Rule 23(a)(2):** "The requirement of commonality requires only a common question of law or fact." *Ford Motor*, 2006 WL 1984363, at *19 (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)).  There exist common questions of law and fact to satisfy Rule

6

23(a)(2), i.e. whether Sony deceptively marketed the Televisions as having 1080p input capabilities that the Televisions did not actually possess.

     **3.**     **Rule 23(a)(3):** The claims of the Class Representatives are typical of the Settlement Class in satisfaction of Rule 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Ford Motor*, 2006 WL 1984363, at *19. Because all Class Members' claims arise from the same course of conduct, i.e. whether Sony misrepresented the 1080p capabilities of the Televisions, their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met.

     **4.**     **Rule 23(a)(4):** The named Plaintiff will fairly and adequately represent the interests of the Settlement Class Members in satisfaction of Rule 23(a)(4). "The two criteria for determining whether class representatives are adequate are '(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Ford Motor*, 2006 WL 1984363, at *19 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Plaintiff's interests are aligned with the Class Members because they all possess the same interests and have suffered the same alleged injury, i.e. they have each purchased a 1080p television that they claim cannot natively accept and display a 1080p signal, and the class is represented by competent and experienced Class Counsel. There is no indication that the named Plaintiff's interests are unjustifiably advanced at the expense of unnamed Class Members or that the named Plaintiff's interests conflict in any way with those of the Class Members. *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) ("In determining fairness, a court should consider

7

whether the interests of counsel and the named plaintiffs are 'unjustifiably advanced at the expense of unnamed class members.'") (quoting *Williams v. Vukovich*, 720 F.2d 909, 921-923 (6th Cir. 1983)).

### B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3).

Finally, the Court concludes that the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because for purposes of this Settlement Agreement "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Because of the small size of any potential individual claim in this case, i.e. the full value of an individual class member's claim has been calculated to be approximately $200, no class member's interest in "individually controlling" prosecution of a separate action is significantly greater than the benefit to the class of aggregating the claims.

 For the foregoing reasons, the Court concludes that the proposed class meets the requirements of Rule 23 and certifies the Settlement Class for settlement purposes only.


### III. NOTICE

The Notice provided to the class members, both by direct mail and by publication, satisfied the requirements of Rule 23(e).  In addition to running a one-quarter page advertisement in USA Today on April 18, 2013, containing a summary version of the Notice, on April 19, 2013, Helgeson Enterprises, Inc. ("Helgeson") mailed 2,278 D1 Notices (sent to those consumers who previously had submitted a claim form to Sony in connection with the previous proposed settlement) and 42,074

8

D2 Notices (all other consumers for whom Sony had postal addresses) via United States mail.  (ECF No. 282, Amended Declaration of Charles Schroeder ¶¶ 3-6; ECF No. 276, Declaration of Danielle Hayman ¶ 3.)  For those consumers for whom Sony did not have addresses, but had an email address, Helgeson sent two (2) D1 Notices and 8,496 D2 Notices by electronic mail.  (ECF No. 274, Declaration of Charles Schroeder ¶¶ 3-5.)  These Notices contained detailed information explaining clearly to consumers how to participate, file a claim, object or opt out of the proposed settlement and informed consumers of the date of Final Fairness Hearing and of steps to take in order to be heard at the Hearing.  The Notices also contained a link to a website that went live on April 18, 2013, that was dedicated to providing information about the settlement, which itself contained links to claim forms and the underlying settlement documents.  (ECF No. 275, Declaration of Jennifer DiCarlo ¶¶ 1-5.)  Although the link on the website that enabled a consumer to print a copy of the claim form was inactive for a period of approximately three weeks, Sony corrected any deficiency caused by this malfunction by extending the date for the submission of claim forms to July 24, 2013 and running an additional advertisement in USA Today on July 3, 2013, explaining that the claim form submission date had been extended.  (ECF No. 283, Second Declaration of Danielle Hayman.)

Additionally, Sony satisfied the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b) by serving notice of the proposed settlement on the State Attorneys General for all 50 states, together with the Attorney General of the United States, the Attorney General of the District of Columbia and the Attorneys General for American territories.  (ECF No. 280, Declaration of Clarence Pozza ¶ 3.)  Notice also was provided to each of the above-named Attorneys General of the date of the Preliminary Approval Hearing that took place on January 25, 2013. (ECF No. 280, Declaration of Clarence Pozza ¶ 4.)  None of the state or federal officials who received notice of the

9

proposed settlement has filed any objection.

To date, the claims administrator has received 6,594 claims.  This response rate far exceeds the number of claims filed in response to the 2008 settlement that this Court rejected and speaks favorably to the sufficiency of the Notice procedures, as well as to the attractiveness of the settlement terms to consumers.

## IV.    THE ADEQUACY AND REASONABLENESS OF THE SETTLEMENT

Settlement of class action litigation is strongly favored in the law and as a matter of federal policy.  *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting federal policy favoring settlement of class actions); *Ford Motor*, 2006 WL 1984363, at *21 ("The law favors the voluntary settlement of class action litigation.").  To ensure the fairness of such settlements to all class members, however, this Court must determine whether the settlement is "fair, reasonable, and adequate."  *Id.*

### A.    The Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, all Settlement Class members who (a) previously submitted valid claim forms in connection with the earlier rejected settlement or (b) now provide a valid claim form with evidence of their purchase of a Television and a 1080p HDMI source component prior to the Settlement Date (defined in the settlement agreement as the last date on which a party executes the agreement which was David Date on December 21, 2012), will receive a $60.00 gift card that does not expire and is redeemable for the purchase of any item available online at the Sony store or at a Sony retail store (including music or movies).  Plaintiff has estimated that the value of an individual class member's actual claim would be approximately $200.  This figure is derived from a measure of the difference in value between a television with 1080p display

10

capabilities and a television with 1080p native input capabilities, i.e. the diminished value of an upconverted picture. The parties arrived at the $60 settlement figure as a reasonable discount from the $200 value, factoring in the risk of loss, the risks of class certification being denied and the costs of continued litigation and appeals. The gift cards never expire and will be redeemable for the purchase of any item available from the store.sony.com website or at any Sony retail store.

As to class members who submitted valid claim forms in connection with the previous proposed but rejected settlement (those identified in sealed Exhibit B to the Settlement Agreement), they received Notice D1 by mail informing them they do not have to do anything to receive the $60 benefit but explaining that they may opt out. As to class members who previously demonstrated ownership of a Television, or as to whom Sony agrees a record of ownership exits, but who did not previously submit a valid claim form (those identified in sealed Exhibit C to the Settlement Agreement), they received Notice D2 by mail and were informed that they must submit proof of ownership of any brand 1080p HDMI source component. All remaining class members, who received Notice by publication, were informed that they must provide both proof of ownership of a Television (satisfied by providing the unique serial number affixed to the Television, subject to Sony's validation of the serial number) and proof of purchase of a qualifying 1080p source component by the Settlement Date.

Regarding the required proof of ownership of a 1080p source component, the parties have agreed that all devices, of any brand, capable of sending a 1080p video signal over an HDMI output shall be deemed to satisfy the definition of "1080p HDMI source component." The settlement claims administrator, Hegelson, will be responsible, with the help of the parties, for determining whether a particular device qualifies. A list of example products was available on the settlement

11

website and on the class notice itself.

Settlement class members not identified on Exhibit B are able to demonstrate ownership of a 1080p HDMI source component by providing: (a) a legible and dated copy of a receipt; (b) a legible copy of an invoice for a 1080p HDMI source component marked "paid;" (c) a legible copy of a canceled check that identifies the payment as being for a 1080p HDMI source component; (d) a legible copy of a credit card bill that identifies the purchase of a 1080p HDMI source component; (e) a legible, dated shipping invoice that identifies a 1080l HDMI source component; or (f) photographic evidence sufficient to establish ownership of a 1080p HDMI source component on or before the Settlement Date.

Regarding option (f), if a class member uses photographic proof, there is a further limitation – if the 1080p device depicted in the photograph is not readily available for retail purchase on the Settlement Date, no further proof is required.  If the 1080p device depicted in the photograph is readily available for retail purchase on or after the Settlement Date, then the class member will be required to submit additional evidence (receipt, credit card statement or other payment record) to substantiate that the device was purchased before the Settlement Date.  The claims administrator shall contact each claimant who must submit this additional information and they shall have 20 days from the date of the request for additional information to submit further proof.

Sony and/or its claims administrator will promptly notify Plaintiff's counsel of all rejected claims.  Plaintiff's counsel has the right but not the obligation to dispute rejections if there is a good faith belief that the rejection does not comport with the spirit of the agreement.  Objections to the claims process may be raised with the Court.

In addition to the benefits to the Settlement Class, under the terms of the Settlement

Agreement, named Plaintiff Date, subject to approval by this Court, may receive a $7,000 incentive/service award, paid to compensate him for his time and service acting as class representative. Also in addition to the benefits to the Settlement Class, Defendants agree to and did bear the entire cost of providing Notice to the class members, including running an additional advertisement in USA Today following the three-week glitch that temporarily disabled the ability to print the claim form on the dedicated website. Defendants also agree to pay Class Counsel's attorneys' fees and costs, subject to Court approval, in an amount not to exceed $435,000.00. Also in addition to the benefits to the Settlement Class, Defendants agree to bear all of the costs associated with the claims process and administration of the settlement benefits.

### B.       Fairness, Reasonableness and Adequacy

The Sixth Circuit has identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: "(1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest." *UAW*, 497 F.3d at 631. In determining the fairness of a settlement, the Court must recognize that settlement "embodies a bargained give and take between the litigants that is presumptively valid, about which the Court should not substitute its judgment for that of the parties." *Id*. at *21 (internal quotation marks and citations omitted). Determining that a settlement is fair, reasonable and adequate does not require a finding that "it is the most favorable possible result in the litigation." *Id*. (internal quotation marks and citation omitted). In fact, given the very nature of the act of compromise, this will nearly never be so.

13

In conducting the fairness analysis, "[t]he Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Ford Motor*, 2006 WL 1984363, at *22. Consideration of the factors most relevant in this case leads the Court to conclude that, given the potential legal hurdles that remain in this case, particularly in certifying a litigation class, and given the overall favorable response of class members, the Settlement Agreement falls within the range of reasonableness, fairness and adequacy required under Fed. R. Civ. P. 23. The Court notes that the release of claims by which all class members will be bound, regardless of whether or not they are qualified to obtain the benefit by demonstrating their purchase of a 1080p device, is limited to claims that relate to the 1080p input functionality of the Televisions. Thus, although the settlement targets and only provides a benefit to those class members who purchased a 1080p device, this is fair in view of the fact that these are the purchasers who could most successfully assert the only claim being waived, i.e. a claim that they have been damaged by the lack of 1080p input capability. While there may be consumers who decided not to purchase a 1080p device after learning of the input capability issue and who will be bound by the settlement but ineligible to receive the $60 gift card, they are likely to be few in number and have been given the option to be excluded from the settlement and continue with an individual claim against Sony.

Finally, the Court notes that, unlike a "coupon" settlement, this is not a percentage off arrangement. Here, the gift card can be used to pay the full price for any item costing $60 or less, of which there are many available through the Sony website and at its retail outlets. Additionally, to the extent that Sony carries third party products at its retail outlets, or offers them online, these third party products are available for purchase with the gift card.

14

**1.    The likelihood of Plaintiff's success on the merits weighed against the amount and form of relief offered in the settlement supports approval.**

In determining whether the relief offered in a settlement outweighs the Plaintiff's chances of ultimate success on the merits, the Court "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion." *IUE-CWA*, 238 F.R.D. at 594.  The Court "is not to decide whether one side is right or even whether one side has a better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute." *UAW*, 497 F.3d at 632.

The Court concludes that the Settlement Agreement seeks to resolve a genuine legal and factual dispute. After extensive discovery and full briefing and argument on the Plaintiff's motion for class certification, there are several legal hurdles that Plaintiff faces in taking this case further. First, Plaintiff faces the task of obtaining certification of litigation class.  As Plaintiff recognizes, "[n]ational consumer fraud cases, while possible, are difficult to obtain."  (Pls.' Mem. in Support 6.)  Plaintiff acknowledges that "[s]ince the inception of this suit, class certification has become an even rarer occurrence."  *Id*. at 7.  Additionally, in a case such as this where discovery has disclosed that Sony's and its retailer's advertising of "1080p" was not perhaps entirely uniform, it may be difficult and costly to establish that all consumers in fact were even exposed to or viewed the allegedly deceptive advertising.  In this respect, Plaintiff's chance of successfully establishing their claims on a class-wide basis is further weakened.

Weighing against these potential weaknesses is the immediate availability of a $60 gift card that can be used on any item available on the Sony website or at a Sony store.  Unlike a "coupon," the $60 gift card can be used to fund the entire purchase of small items or can be applied to the purchase of a more valuable item, at the consumer's option.  The parties submit, and the Court has

15

received no evidence to the contrary, that the actual value of an individual class member's claim would be approximately $200, the difference between a Television with a 1080p native input capability and one without that capability. In addition, Plaintiff has figured into the analysis the additional costs that would be associated with what would certainly be a long appellate process even if they were to succeed at the trial level. Balanced against the tentative probabilities of a successful outcome for the Plaintiff in the absence of a settlement, the $60 gift card provides real value compared to what otherwise could amount to an adverse judgment which could yield class members $0.

**2.      The complexity, expense and likely duration of the litigation favor approval.**

"[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict . . . ." *Id.* As discussed above, the Plaintiff has conceded that significant obstacles remain in obtaining certification of a litigation class and of establishing the claim of deceptive advertising on a class wide basis. Sony and ABC, on the other hand, have contested this case for years, and continue to maintain that they did not misleadingly market the Televisions and assert that they never represented to consumers that the Televisions had HDMI inputs that could accept 1080p inputs. As one of the "objectors" noted, the input capabilities of the Televisions were readily apparent from a review of the specification sheets. While some consumers may not have appreciated that the Televisions lacked the 1080p input capability, Sony maintains that this fact was disclosed and several reviews of the Televisions in the media discussed this shortcoming contemporaneous with their release. There is no reason to believe that Defendants

16

would not continue the fight were a favorable judgment rendered in this Court. They likely will rely on the fact that the Ninth Circuit rejected this exact 1080p claim in *Johnson v. Mitsubishi Digital Electronics America, Inc.*, 365 F. App'x 830 (9th Cir. 2010) (finding that the phrase "1080p" was not false and misleading given that the TV has a 1080p display, although it lacks a 1080p input).

The Court concludes that this factor weighs in favor of final approval, given the real possibility that Plaintiff and Class Members could ultimately recover $0 if this case continues through the class certification phase and beyond. As discussed *infra*, while some of the 11 objectors complain that $60 is not sufficient to compensate them for the inconvenience and disappointment of the lack of a 1080p input, very few actually make this objection and they fail to appreciate that every settlement inherently involves compromise. *Sheick v. Automotive Component Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010) (finding that the potential that a full blown trial might leave plaintiffs with "absolutely nothing" was a significant factor favoring final approval).

### 3.     The opinions of class counsel and class representatives.

The Court appointed class counsel after thorough review of his credentials and abilities. Class Counsel's judgment that settlement is in the best interests of the class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick*, 2010 WL 4136958, at *18 (citation omitted). Class counsel has devoted extensive time and effort to pursuing this litigation and after extensive discovery, both parties have a very good idea of the relative strength of their legal positions. In the absence of evidence of collusion (there is none here) this Court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). The Court concludes that this factor

17

weighs in favor of final approval of the Settlement Agreement.

**4.    The amount of discovery conducted to date weighs heavily in favor of approval.**

As discussed above, this proposed settlement agreement comes after years of protracted litigation, one failed settlement, production of over 27,000 documents, depositions of eight Sony witnesses, and full briefing and oral argument on the issue of class certification.  The discovery to date is assuredly sufficient "to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," and to permit this Court "to intelligently approve or disapprove the settlement."  *UAW v. Ford Motor*, No. 07-14845, 2008 WL 4104329, at *26, 27 (E.D. Mich. Aug. 29, 2008).

**5.    The reaction of absent Class Members.**

The number of claims filed (6,594) represents approximately 4% of the total number of Televisions sold (175,000).  This ratio is even higher (approximately 13%) when the number of claims filed is compared to the number of direct mail and email Notices sent, 45,000.  *See Touhey v. United States*, No. EDCV 08-01418, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable - 38 responses out of 1,875 notices mailed - where there were no objections and the overall recovery was fair and reasonable); *In re Cardizem*, 218 F.R.D. at 526 (finding favorable class reactions in a 6.9% response rate (1,800 proofs of claim out of 26,000 notices sent) and a 9% response rate (37,000 proofs of claim out of 400,000+ notices sent).

As the court recognized in *In re Serzone Pdcts. Liability Action*, 231 F.R.D. 221 (S.D. W.Va. 2005), many factors affect response rates and this ratio should not be given great significance:

> Objectors also assert that because the settlement class could have potentially included millions of Class Members, and only 6,524 have "shown their hands" to be included in the class by filing an inventory form, the notice is inadequate. However, many factors contribute to the claims response rate. *See, e. g., Zimmer Paper Prod.,*

*Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92-93 (3d Cir.1985) (holding that where defendant engaged in customary and court approved notice procedure, the response rate was not determinative of the adequacy of the class notice.); 3 Alba Conte & Herbert Newberg, Newberg on Class Actions § 8.45 (4th ed. 2002)("Claims response levels will tend to vary with the circumstances, types of class notices employed, and size of individual claims involved in each case."). . . . [T]he adequacy of notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation.

231 F.R.D. at 235-36.

There have been only 11 objections filed, and only 6 actually complain about the 1080p input capability.  To briefly summarize the objections:

(1) **ECF No. 263**, Letter from Kirkland, WA, complaining that the settlement agreement is not fair to the class because "in no way, shape or form does a $60 dollar Sony gift card (which can only be used to purchase Sony products) is an equal or fair substitute for all estimated expenses" to repair the defective TVs.  This objector claims the settlement agreement is a "contract of adhesion" and asks that Sony be required to (a) pay for all costs related to the repair of the defective TVs; and (b) that Sony be required to replace all defective sets with an equivalent brand new model, at no cost to Plaintiffs.  This objector appears to be complaining about a "green and yellow tint" on his television screen, apparently due to a faulty "optical block," and attaches communications that he had with Sony regarding resolving his picture quality issues.  This optical block defect is not an issue in this case and this objector does not appear to complain about the 1080p capabilities of his TV.

(2) **ECF No. 264**, Letter from Cypress, TX, objecting to yet another case where the injured party gets a useless gift card while the lawyers get hundreds of thousands of dollars in cash. He requests that the lawyers get paid in Sony gift cards or the class members get cash, like the attorneys.

(3) **ECF No. 265**, Letter from Sauk Village, Ill, objecting that the $60 gift card (for the loss

19

of a feature that has been valued at $200) does not adequately compensate the buyers who bought gaming units.  He asks that the amount be increased or have a non-Sony gift card issued because these buyers don't necessarily want to do business with Sony.

(4) **ECF No. 266**, Letter from Idaho Falls, ID, objecting because this is a frivolous case and the plaintiffs should get nothing. He states that the user specifications (copies of which he attaches to his letter) disclose the 1080p signal limitations and the case should be dismissed.  This "objector" actually objects to the filing of this case, and to the fact that Defendants are having to pay anything to settle this matter.

(5) **ECF No. 267**, Letter from Wilmington, DEL, objecting that the $60 pay out is too small compared to the $200 value of the 1080p feature. Also states that at the time, the 1080p TVs were selling at a huge premium over the non-1080p TVs.  Asks the Court to increase the award amount.

(6) **ECF No. 268**, Letter from Trumbull, CT, objecting that $60 does not come close to covering the heartbreak he has suffered of not being able to play games in 1080p from the numerous devices he purchased, Playstation 3, X-Box and Wii-V.

(7) **ECF No. 269**, Letter from Middleton, MA, objecting and asking to opt-out because his TV has not worked properly since he spent about $5,000 on it - it takes 5 minutes to turn on and get a signal.  This objector does not complain about the lack of full 1080p.  This objector has been considered an opt-out.

(8) **ECF No. 270**, Letter from Cadiz, KY, objecting that consumers will be forced to accept a $60 gift card to a store that "has already soured him."  He states that Sony sold a TV that deceptively stated it would support other devices.  Now he can use a gift card to buy a 1080p device that his TV won't support.  Thinks the attorneys should receive gift cards that they can redeem at

the Sony store instead of a sizable award.  If the court decides he has been damaged, he asks, why should he be forced to spend the money at Sony instead of a competitor.

(9) **ECF No. 271**, Letter from Clermont, FL, objecting that consumer's optical block is defective and does not appear to complain about the 1080p feature. It will cost $1,000 to get it fixed and she thinks the $60 gift card is "absurd."

(10) **ECF No. 272**, Letter from Moiches, NY, consumers bought the TV because they wanted to be sure they bought a 1080p because they knew the Playstation 3 and Blu-Ray DVD player would have a 1080p signal.  They were aware that a 1080p signal is better than 1080i because 1080p is progressive scan and 1080i is split into two interfaced fields of 540 lines. They realized that the 1080p was not supported and they have been watching a 1080i signal for 7 years when they should have been watching a 1080p resolution and don't feel the $60 gift card seems right.  This objector did file a complaint with Sony about the inability to accept 1080p and in that communication said he was happy with the TV anyway and it was "one of the best HDTV on earth!"

(11) **ECF No. 273**, Letter from Tequesta, FL, objecting to the picture quality of his TV and having to pay $600 to fix the unit.  He feels that he should be paid at least $600.

(12) On June 10, 2013, the Court received a letter from a consumer in Burbank, Alaska, who wanted a copy of the original complaint.  The Court responded by giving him Class Counsel's contact information.  No further communications have been received from him.

The number of objections compared to the number of filed claims indicates that the response overall to the terms of the Settlement Agreement was quite favorable.  One "objection" actually opines that the lawsuit lacks merit as the 1080p input capabilities were directly disclosed in the specifications accompanying the Televisions.  Those who do complain about the 1080p capabilities

only complain that $60 is not a sufficient amount to compensate them. Moreover, although admittedly there is "distortion" that results from the upconverting of the 1080p signal, the Televisions are not incapable of being used with a 1080p device, as one objector notes when stating that his Television still is the best HDTV on earth. As Plaintiffs concede, "even if someone purchased the television for the sole purpose of using a 1080p device with it, that device will play . . . [and] the [visual] distinction complained of by Mr. Date may be difficult for the average person to see." (Pls.' Mem. in Support 15.)     In this case, only 23 class members have elected to be excluded, and only 6 objections have been filed that actually complain about the 1080p capabilities that are at issue in this case (*See* Exhibit A to Final Order of Class Action Settlement and Judgment, filed separately by the Court this day.). These facts speak strongly to the positive reaction of affected class members. Consideration of this factor weighs in favor of approval of the Settlement Agreement.

### 6.    The risk of fraud or collusion.

"Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Ford Motor*, 2006 WL 1984363, at * 26. There is no evidence in this case of any collusion and counsel on both sides are presumed to have acted in good faith. This factor weighs in favor of final approval.

### 7.    The Settlement Agreement is consistent with the public interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530. There do not appear to the Court to be any countervailing public interests that would suggest that the Court should disapprove the Settlement

22

Agreement and, significantly, no one has come forward to suggest one to the Court. This factor weighs in favor of final approval.

### 8.  Overall the Settlement Agreement is Fair, Reasonable and Adequate

The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits. "The evaluation and approval of a class settlement is committed to the sound discretion of the district court" and the district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE–CWA*, 238 F.R.D. at 593, 594. "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Ford Motor Co.*, 2006 WL 1984363 at *21 (internal quotation marks and citations omitted). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted); *Sheick*, 2010 WL 4136958 at *14 ("In assessing a proposed settlement, the district court judge 'may not substitute his or her judgment for that of the litigants and their counsel' and 'should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'") (quoting *IUE–CWA*, 238 F.R.D. at 593). "Settlement embodies a bargained give and take between the litigants that is presumptively valid about which the Court should not substitute its judgment for that of the parties." *Ford Motor*, 2006 WL 1984363, at *21 (internal quotation marks and citation omitted).

Bearing in mind the Court's function in approving class action settlements, and considering all of the relevant factors, each of which weighs in favor of final approval, the Court concludes that the Settlement Agreement is fair, reasonable and adequate and merits Final Approval.

## V.      ATTORNEYS' FEE REQUEST

Defendants have agreed to pay, in addition to (1) the benefits to the settlement class, and (2) the costs of notice and claims processing, $435,000.00 in attorneys' fees, to be shared among all Plaintiff's counsel.  Plaintiff's counsel seek an award calculating fees under the lodestar method, which is determined by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.  (ECF No. 278, Declaration of Plaintiff's Counsel Lance A. Raphael; ECF No. 284, Certification of Plaintiff's Counsel Dani Liblang.)  In this case, the actual lodestar for class counsel is in excess of $1,075,000, based upon a blended rate (including hourly rates of support staff) of $375 per hour. (Raphael Decl. ¶¶ 2-4.)  Counsel requests a significant reduction from the actual lodestar.  The $435,000.00 represents over a 50% reduction from Plaintiff's counsel's actual fees, costs and expenses.  (*See* ECF No. 255, Lance Raphael's Certification, ¶ 2 explaining that counsels' combined lodestar is $1,075,016.27.)  Costs and expenses shall first be deducted from the $435,000 payment and the remaining amount will be divided among Plaintiff's counsel on a pro rata basis for work performed from November 3, 2008 (the date of the prior final approval hearing in this action) through final approval of this action.  Plaintiff's counsel shall be solely responsible for allocating such fees, costs and expenses and Defendants shall be held harmless from any liability arising from any dispute regarding the allocation. Plaintiff's counsel seeks approval of the $435,000 payment and agrees not to request attorneys' fees, expenses or costs in excess of this amount. The Court finds that Plaintiff's counsel's request for a fee award of $435,000, a 50% reduction from his

24

actual lodestar, is fair and reasonable and approves the award of fees.

## VI.    INCENTIVE PAYMENT FOR CLASS REPRESENTATIVE

In *In re Cardizem, supra*, the court considered and awarded incentive payments to class representatives that the court found were "well deserved" given the class representatives devotion of time and effort in producing documents and attending depositions, all to the general benefit of the class. 218 F.R.D. at 535.    The Sixth Circuit has "never explicitly passed judgment on the appropriateness of incentive awards." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).  Such awards have been approved, however, largely in common fund cases.  "[I]ncentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole." *Id*. at 899.  While this is not a common fund case, the amount of and possibility for an incentive award was agreed to in the Settlement Agreement as a separate item for which Sony agreed to be responsible and the incentive award was disclosed in all of the class notices.  None of the objections mentioned or objected to the incentive award.  Class Representative Plaintiff David Date has spent extensive time and effort in this litigation acting as a class representative, appearing at hearings, responding to discovery and sitting for his deposition. Thus, the Court approves the $7,000 incentive award to Mr. Date.

## IV.    CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS the joint application for final approval of class settlement and enters

final judgment as set forth in the attached Final Order of Approval of Class Action

Settlement and Judgment filed contemporaneously with this Opinion and Order;

(2) GRANTS Plaintiff's counsel's request for a fee award of $435,000.00 to be paid

directly by Defendants as per the Settlement Agreement;

(3) GRANTS an incentive/service award to named Plaintiff David Date of $7,000.00

to be paid directly to him as per the Settlement Agreement.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 31, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 31, 2013.

s/Deborah Tofil
Case Manager